

1  Joseph M. Breall, Esq. (SBN 124329)
   BREALL & BREALL, LLP
2  1255 Post Street, Suite 800
   San Francisco, California 94109
3  Telephone: (415) 345-0545
   Facsimile: (415) 345-0538
4  e-mail: jmbreall@breallaw.com

5  Joseph M. Breall, Esq. (SBN 124329)
   NATIONAL CAB COMPANY, INC.
6  2270 McKinnon Avenue
   San Francisco, California 94127
7  (415) 648-4444
   (415) 552-1300

8
   Elliott A. Myles, Esq. (SBN 127712)
9  MYLES LAW FIRM, INC.
   P.O. Box 11094
10 Oakland, CA 94611
   Tel: (510) 986-0877
11 Fax: (510) 986-0843
   email: elliott@myleslawfirm.com

12
   Attorneys for Plaintiffs
13 WILLIAM SLONE and MICHAEL MERRITHEW

14          THE UNITED STATES DISTRICT COURT FOR THE

15              NORTHERN DISTRICT OF CALIFORNIA

                      SAN FRANCISCO DIVISION
16

17 WILLIAM SLONE and MICHAEL            ) Case No.:
   MERRITHEW                            )
18                                      )
                                        ) CLASS ACTION
19        PLAINTIFFS,                    )
            vs.                         ) COMPLAINT FOR:
20 TAXI COMMISSION, CITY AND            ) 1. DECLARATORY RELIEF
   COUNTY OF SAN FRANCISCO,             ) 2. PERMANENT INJUNCTION
21 Executive Director Heidi Machen; CITY )
   AND COUNTY OF SAN FRANCISCO, a )
22 California public entity             )
                                        )
23        DEFENDANTS.                    )
   _____ )

24

COMPLAINT                                              Page 1

1    Plaintiffs William Slone and Michael Merrithew ("Plaintiffs") allege as follows:

2    1.    Plaintiffs are and at all relevant times were citizens of the State of California and

3    are post-Proposition K taxicab permit/medallion holders in the City and County of San

4    Francisco.

5    2.    Defendants City and County of San Francisco (hereinafter "City") and the San

6    Francisco Taxicab Commission (hereinafter "Commission"), collectively referred to herein as

7    "Defendants," are local municipalities and municipal agencies located in this judicial district and

8    public entities within the meaning of 42 U.S.C. § 12131(1)(A).

9    3.    This Court has federal question jurisdiction over this action pursuant to 28

10    U.S.C.A. § 1331 and the Americans With Disabilities Act ("ADA"), 42 U.S.C., Chapter 126, §

11    12101(b)(1).

12    4.    Venue is proper in the Northern District of California pursuant to 28 U.S.C.A.

13    § 1391(a)(2) in that Defendants are public entities located in this judicial district and the events

14    or omissions giving rise to the claims asserted herein occurred in this judicial district.

15    5.    Plaintiffs bring this action on their own behalf and on behalf of all persons

16    similarly situated pursuant to Federal Rules of Civil Procedure ("FRCP") 23(a).

17    6.    The class that Plaintiffs represent is composed of post-Proposition K taxicab

18    permit holders who now, or in the future will, suffer from physical or mental disabilities and who

19    have been or will be denied an accommodation for their disability by Defendants in violation of

20    the ADA. According to minutes of Defendant Commission's meetings, Plaintiffs estimate that

21    the class includes over one hundred fifty individuals.

22

23

24

7.     Plaintiff William Slone is disabled due to wasting lung disease that requires him to be connected to oxygen 24-hours a day and, therefore, unable to operate his taxicab vehicle personally.

8.     Plaintiff Michael Merrithew is physically disabled and unable to operate his taxicab vehicle personally. In administrative proceedings, Defendant Commission admitted both the fact of and the extent of Merrithew's disability, which therefore is not at issue in this proceeding.

9.     The persons in the class are so numerous, consisting of potentially over one hundred fifty individuals based on the applications for ADA accommodation pending before Defendants, that the joinder of all such persons is impracticable, and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the court. Therefore, the class meets the requirement of FRCP 23(a)(1).

10.    There is a well-defined community of interest in the questions of law and fact involved affecting the plaintiff class.

11.    Plaintiffs' requested accommodation under the ADA is to modify or waive the enforcement of San Francisco Police Code ("Police Code") Section 1081(f) "Full-Time Driving Requirement" and Section 1090(a)(i) "Revocation of Permit" based solely upon each Plaintiff's disability and only during the period of each Plaintiff's disability, subject to annual review, while concurrently requiring each Plaintiff to comply with all other sections of the Police Code, including the "continuous operation" requirement of arranging for the daily operation of his taxicab under Police Code Section 1096(a).

12.    Defendants rejected Plaintiffs' requests for such an accommodation under the ADA based solely upon their disabilities.

13.   Defendants have also stated that they are not required under the ADA to waive or modify the full-time driving provisions of Police Code Sections 1081(f) and 1090(a)(i) for any taxicab permit/medallion holders suffering from a disability that would limit or prevent his or her personally driving his or her taxicab.

14.   The claims of Plaintiffs are typical of the claims of the class, in that Plaintiffs suffer from physical disabilities that prevent them from personally driving their taxicabs for extended periods of time but do not prevent them from arranging for the daily operation of their taxicabs.

15.   Defendants have acted on grounds generally applicable to the class in that they have adopted a policy of refusing to make accommodations to the "full-time driving requirement" to disabled taxicab permit/medallion holders, and instead have adopted a policy for temporary illnesses, which by exclusion, effectively sanctions all taxicab permit/medallion holders with disabilities other than temporary illness that prevent or substantially limit their ability to drive their taxicabs personally.

16.   The present lawsuit is necessary to obtain a legal determination requiring Defendants to comply with the ADA by providing an accommodation to class members, relieving them of the "full-time driver" provisions of the Police Code while requiring them to continue to comply with the continuous operations requirement of the Police Code during such time as they are disabled and until their disabilities have medically resolved.

17.   These questions of law and fact predominate over questions that affect only individual class members. Therefore, there is a commonality of questions of law and fact that meet the requirement of FRCP 23(a)(2).

1    18.    Both representative Plaintiffs are post-Proposition K permit holders who suffer

2  from disabilities which prevent them from being a "full-time driver" but do not prevent them

3  from "continuously operating" their taxicabs.

4    19.    Both representative Plaintiffs have asked the Commission for the requested

5  accommodation under the ADA and have been informed by Defendants that their requests either

6  have been or will be denied.

7    20.    The claims of the Representative Plaintiffs are typical of those of the class and

8  Plaintiffs will fairly and adequately represent the interests of the class and therefore meet the

9  requirement of FRCP 23(a)(3) and (4).

10    21.    There is no plain, speedy, or adequate remedy other than by maintenance of this

11  class action since Plaintiffs are informed and believe that the damage to each of them and each

12  member of the class is relatively small making it economically infeasible to pursue remedies

13  other than a class action. Consequently, there would be a failure of justice but for the

14  maintenance of the present class action.

15    22.    The prosecution of individual remedies by members of the plaintiff class would

16  also tend to establish inconsistent standards of conduct by City and Commission, and to result in

17  the impairment of class members' rights and the disposition of their interests through actions to

18  which they were not parties.

19                              **FACTUAL ALLEGATIONS**

20    23.    On June 6, 1978, San Francisco voters passed Proposition K, changing the system

21  under which Defendants administered taxicab permits/medallions in the City and County of San

22  Francisco.

23

24

1    24.    The fundamental nature of Proposition K is set out in the Ballot analysis and

2  Section 1 of the proposition.

3    25.    The Ballot analysis of Proposition K states in relevant part:

4    "A YES VOTE MEANS: If you vote yes, you do not want taxicab permits to be

5    sold on the open market and you want to phase out ownership by companies. A

6    NO VOTE MEANS: If you vote no, you either want the taxicab permit rules to

7    stay the way they are now, or you want to change them in some other way."

8    26.    Section 1 of Proposition K declares that all taxicab permits issued by Defendant

9  City are property of the people of San Francisco and cannot be sold, assigned or transferred; that

10  the Police Chief shall establish regulations to assure prompt, courteous and honest service to the

11  riding public; that the taxicab business shall operate under principles of free enterprise; and that

12  the Police Commission shall issue sufficient permits to assure adequate service.

13    27.    Based on the Ballot analysis and language of the proposition, the fundamental

14  nature of the Proposition K taxicab permit program is to prohibit sale of permits on the pen

15  market and to phase out ownership by companies while assuring prompt, courteous, honest and

16  efficient service.

17    28.    Section 2 of Proposition K enacted a "full-time driver pledge," requiring each

18  applicant for a permit to declare under penalty of perjury, "his or her intention actively and

19  personally to engage as permittee driver under any permit issued to him or her for at least four

20  hours during any 24 hour period on at least 75 percent of the business days during the calendar

21  year."

22

23

24

COMPLAINT                                                                    Page 6

1    29.    Section 3 of Proposition K in part requires the Commission to consider, among

2    other factors, whether the applicant would be a full-time driver before deciding to issue an

3    applicant a permit.

4    30.    Section 4 of Proposition K imposed a "continuous operation" requirement on all

5    individuals who were issued a permit by requiring a permit holder to "regularly and daily operate

6    the taxicab or other motor vehicle for hire."

7    31.    Proposition K was later codified in Article 16 of the Police Code.

8    32.    Section 1076(o) of the Police Code repeats the "full-time driver" definition in

9    Proposition K, Section 2(b). A "full-time driver" is

10    "any driver actually engaged in the mechanical operation and having physical

11    charge or custody of a motor vehicle for hire which is available for hire or

12    actually hired (i) for at least four hours during any 24-hour period on at least 75

13    percent of the business days during the calendar year or (ii) for at least 800 hours

14    during the calendar year."

15    33.    Section 1081(b) repeats the "full-time driving pledge" for permit applicants in

16    Proposition K, Section 2(b).

17    34.    Section 1096(a) repeats the "continuous operation" requirement for all permit

18    holders in Proposition K, Section 4(a).

19    35.    Two sections of the Police Code, however, go beyond the strict language of

20    Proposition K.

21    36.    Section 1081(f) of the Police Code extends the "full driving pledge" made by

22    permit applicants to a "full-time driving requirement" for all permit holders. This section was

23    last amended in 1988.

24

37.    Section 1090(a)(i) of the Police Code provides that a permit shall be suspended or revoked if the permit holder ceases to be a full-time driver. This section, which does not appear in the language of Proposition K, was last amended in 1988.

38.    The only exception to the "continuous operation requirement" of Police Code Section 1096(a) is one 90-day suspension in any 12-month period "in case of sickness, death, or similar hardship" under Police Code Section 1096(c).

39.    In 1990, twelve years after passage of Proposition K and two years after the last amendments to Police Code Sections 1081(f) and 1090(a)(i), Congress passed the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

40.    The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

41.    Under the ADA:

(a)    A public entity cannot deny a qualified individual with a disability the opportunity to participate in a service by licensing arrangements, 28 C.F.R. § 35.130(b)(1);

(b)    A public entity cannot administer a licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of the disability, 28 C.F.R. § 35.130(b)(6); and

(c)    A public entity must make reasonable modifications in its policies, practices or procedures when the modification is necessary to avoid disability discrimination unless the entity can show that the modification would fundamentally alter the program, 28 C.F.R. § 35.130(b)(7).

42.      The ADA defines a qualified individual with a disability as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

43.      Defendants City and Commission are both "public entities" under the ADA.

44.      Plaintiffs Slone and Merrithew are both qualified individuals with a disability under the ADA.

45.      In response to questions by Defendant Commission, on August 5, 1999, Deputy City Attorney Thomas J. Owen authored a legal opinion that "permanently dispensing with the driving requirement for permit holders who cannot drive on account of a disability or upon retirement would conflict with Proposition K and constitute an impermissible attempt to amend the initiative without voter approval."

46.      In response to additional questions by Defendant Commission, on April 25, 2000, Deputy City Attorney Owen advised the Defendant Commission that Defendants are obligated to comply with the ADA even if such compliance meant disregarding or not enforcing current City ordinances that did not comply with the ADA, but that the Defendant Commission "may decide that being a full-time driver is an essential eligibility requirement for permit holders under Proposition K and that full or partial waiver of the requirement would fundamentally alter the program."

47.      As of April 25, 2000, Defendants recognized that "being a full time driver" was not an essential eligibility requirement of Proposition K as adopted by the voters in 1978.

1     48.    In November 2000, the San Francisco Taxi Permitholders and Drivers

2   Association filed a lawsuit against the City and County of San Francisco, San Francisco Taxi

3   Permitholders and Drivers Associate v. City and County of San Francisco, 2002 WL 1485354

4   (Cal.App. 1 Dist., July 11, 2002), challenging the adoption of the "full-time pledge" by permit

5   applicants of Proposition K as a "full-time driving requirement" for all permit holders under the

6   Police Code. The complaint sought, in relevant part, a determination of the scope and extent of

7   the full-time driving requirement.

8     49.    In overruling the lower court's sustaining the City's demurrer to the complaint

9   without leave to amend, the Court of Appeal stated:

10        "Nevertheless, appellants may seek a declaration that the general standard in

11        section 4 does not necessarily mirror in all cases the quantitative driving standard

12        of sections 2 and 3. More specifically, they may request a declaration that the

13        standard for continuous operation in section 4 would allow the enactment of local

14        legislation or regulations, or the exercise of discretion under existing legislation

15        and regulations, so as to make some limited allowance, consistent with the strong

16        policy of Proposition K favoring full-time operation of taxicabs by permit holders,

17        for a permit holders' leadership position in a taxicab cooperative or physical

18        disability."[1]

19     50.    The decision of the Court of Appeal invalidated the August 5, 1999, opinion of

20   Deputy City Owen that there could be no dispensation of the "full-time driving requirement" for

21   disabled permit holders.

22

23

24   [1] The suit did not raise the ADA and the Court of Appeal also did not raise the ADA in its review of Prop. K.

1     51.    The decision of the Court of Appeal also implicitly recognizes that full time

2 driving is not an essential eligibility requirement of Proposition K as adopted by the voters in

3 1978.

4     52.    On June 19, 2006, relying on the quoted language from <u>S.F. Taxi Permitholders &</u>

5 <u>Drivers Assn. v. CCSF</u>, Defendant City through its Board of Supervisors modified the driving

6 requirement for designated taxi company key personnel by adopting section 1081.5 of the Police

7 Code. However, to date, Defendant City has not enacted equivalent legislation for disabled

8 permit holders.

9     53.    Having been told by the Court of Appeal in <u>S.F. Taxi Permitholders & Drivers</u>

10 <u>Assn. v. CCSF</u> that it could make accommodations for disabled permit holders, on October 8,

11 2002, Defendant Commission adopted a Resolution 2002-93, declaring that "continuous driving"

12 is an essential eligibility requirement of the Proposition K permit program, that exempting a

13 permit holder from the continuous driving requirement would fundamentally alter the permit

14 program; and that the Resolution does not restrict either the Commission's discretion in devising

15 alternative definitions of continuous driving to accommodate disabled permit holders or its

16 discretion "in determining what sanction or sanctions may be appropriate to impose on a disabled

17 permitholder."

18     54.    The term "continuous driving" is not used in either Proposition K or the Police

19 Code, and, specifically, is not mentioned either in the Voter's Pamphlet or Proposition K as an

20 essential eligibility requirement of Proposition K.

21     55.    The fundamental nature of Proposition K is to prohibit the sale of taxicab permits

22 on the open market and phase out ownership by corporations.

23

24

1    56.    The purpose of Proposition K can be achieved without "continuous driving" as
2    defined in Resolution 2002-93.

3    57.    Proposition K only imposes a "continuous operation" requirement on permit
4    holders, which may be satisfied under Police Code Section 1096(a) by regularly and daily
5    operating a taxicab or arranging for the operation of the taxicab.

6    58.    The "continuous driving" definition of Resolution 2002-93 discriminates against
7    permit holders who, because of a physical or mental disability, cannot regularly and daily operate
8    their taxicabs personally, but who are able to arrange for the regular and daily operation of their
9    taxicabs under Police Code Section 1096(a).

10    59.    The adoption in Resolution 2002-93 by Defendant Commission of "continuous
11   driving" as an essential eligibility requirement for Proposition K, apparently based upon the
12   April 25, 2000, legal opinion of Deputy City Attorney Owen, constitutes an improper attempt to
13   amend a proposition adopted by the voters in violation of the San Francisco City Charter, section
14   14.101.

15    60.    Resolution 2002-93 also violates the ADA on its face by reserving to Commission
16   the right to sanction disabled permit holders solely because of their disability.

17    61.    In January 29, 2003, Defendant Commission revoked the permit of Querida
18   Rivera, a disabled permit holder, for, among other violations, her failure to comply with the full-
19   time driving requirement.

20    62.    In July 2003, the San Francisco Board of Appeals, a quasi-judicial body for the
21   processing, hearing and deciding of appeals of departmental decisions involving the granting,
22   denial, suspension, or revocation of permits, including taxicab permits, overruled Defendant
23   Commission and allowed Ms. Rivera keep her permit.

24

COMPLAINT                                                                                    Page 12

1    63.    Neither the Commission's record nor the record of the Board of Appeal cite to or

2    argue Resolution 2002-93.

3    64.    In making its ruling, the Board of Appeals recognized that disabled permit holders

4    had to be accommodated by Defendant Commission under the mandate of the ADA, and that a

5    permit cannot be revoked by Commission based solely upon a permit holder becoming disabled.

6    65.    In failing to cite or rely on Resolution 2002-93, both the Commission and the

7    Board of Appeals implicitly abandoned the resolution and recognized it was not binding.

8    66.    Later in 2003, The Board of Appeals reached similar decisions with respect to the

9    attempted revocation of permits held by permit holders Mark Hollander and Joel Hollander, who

10   were both disabled and unable to comply with the full-time driving requirement but able to

11   comply with the continuous operation requirement.

12   67.    In Mark Hollander's case, the Board of Appeals stated that "it would be unfair to

13   impose a harsh penalty in this case in light of the fact that the Taxi Commission has not yet

14   adopted procedures for those who because of age and infirmity can no longer drive."

15   68.    On or about July 30, 2003, in response in part to the decisions of the Board of

16   Appeals and to be in compliance with ADA requirements, Defendant Commission by its

17   Executive Director Naomi Little adopted a permanent disability program for post-Proposition K

18   permit holders.

19   69.    The program adopted by the Commission was substantially similar to a program

20   administered by and in conjunction with the San Francisco Health Department, and allowed a

21   waiver or reduction of the full-time driving requirement depending on the severity of an

22   individual permit holder's disability.

23

24

1    70.    Under the program adopted in July 2003, the permit holder's disability had to be

2    certified by the head of the City's Department of Health, Dr. Mitchell Katz, who reviewed the

3    permit holder and his or her disability status on an annual basis.

4    71.    If Dr. Katz medically determined that the permit holder was disabled, the

5    Commission would modify or waive the application of Police Code Sections 1081(f) and

6    1090(a)(i) with respect to the disabled permit holder until the next disability medical review.

7    72.    Despite the waiver, the disabled permit holder would still be required to arrange

8    for the continuous operation of his or her taxicab.

9    73.    Executive Director Little described the Taxi Commissions Disability Program in a

10   July 2003 Memorandum to San Francisco Supervisor Jake McGoldrick, stating:

11   "On February 26, 2002, the Taxi Commission passed Resolution 2002-14,

12   authorizing the Executive Director to establish guidelines and process requests

13   under the American with Disabilities Act. As part of implementing the Taxi

14   Commission's disability program, the Commission is working with the

15   Department of Public Health ("DPH"). Dr. Mitch Katz, Director of Health, is

16   assisting in the design of the program. In addition, health care professionals from

17   the DPH will assist in reviewing request for accommodations under the American

18   with Disability Act by taxi permit holders. Proposition K already allows the Taxi

19   Commission to waive the driving requirement for a permit holder who becomes

20   partially or temporarily disabled. However, for permit holders who are

21   permanently disabled, the Taxi Commission and the DPH are developing an ADA

22   accommodation program that is somewhat similar to the City's catastrophic

23   illness program for City employees in how it handles long-term or ongoing

24

1    conditions.  A disabled permit holder may apply for a waiver or reduction of the

2    driving requirement, and waiver or reduction, in appropriate cases, maybe

3    renewed on a yearly basis"

4    74.    The program adopted in July 2003 was recognized in October 2003, by the Board

5    of Appeals in its decision regarding the permit for Joel Hollander.

6    75.    In its decision, the Board of Appeals suspended Hollander's permit for improper

7    waybills, but instructed him "to contact the Taxi Commission concerning ADA accommodations

8    after the suspension period."

9    76.    The program adopted in July 2003 also demonstrated that

10    (a)    Defendant Commission could legally accommodate disabled post-Proposition K

11    permit holders as required under the ADA and as suggested by the Court of Appeal;

12    (b)    Continuous driving was not an essential eligibility requirement of the continuous

13    operation requirement under Police Code Section 1096(a); and

14    (c)    Resolution 2002-93 was improperly adopted, and abandoned and overruled by

15    implication.

16    77.    In 2005, Defendant Commission began to change the program adopted in July

17    2003.

18    78.    Requests for disability accommodation were not being reviewed by Dr. Katz or

19    any other medical practitioner, but were being reviewed by Tristan Bettencourt, Defendant

20    Commission's ADA Coordinator, who had no formal medical or legal training.

21    79.    Requests for disability accommodation were being denied on the basis that

22    "continuous driving" was an essential eligibility requirement of Proposition K and no

23    accommodation could be made.

24

1    80.    The change in Defendant Commission's handling of requests for accommodation
2    appears to have been based upon a third legal opinion by Deputy City Attorney Owen dated
3    December 9, 2005.

4    81.    Despite the Court of Appeal decision in <u>S.F. Taxi Permitholders & Drivers Assn.</u>
5    <u>v. CCSF</u>, Section 14.101 of the City Charter and the procedure adopted by Executive Director
6    Little, Deputy City Attorney Owen advised Defendant Commission that it could make a
7    determination and adopt the position that "full-time or continuous driving" is an essential
8    eligibility requirement for a permit holder, and any accommodation under the ADA would alter
9    the fundamental nature of Proposition K.

10    82.    In February 2006, Defendant Commission abolished the disability program
11    adopted in July 2003.

12    83.    In its place, pursuant to Resolution 2006-28, Defendant Commission adopted a
13    policy allowing a 120-day leave per year, to be annually reviewed with a three year cap, or up to
14    one year exemption from the full-time driving requirement once per five years "for treatment for
15    catastrophic recoverable illness."

16    84.    Unlike the program adopted in July 2003, Resolution 2006-28 does not address
17    either mental or physical disability as defined by the ADA. Instead, it only addresses temporary,
18    recoverable illness or sickness.

19    85.    Although Defendants have acknowledged that permit holders such as Plaintiffs
20    have qualified ADA disabilities, in Resolution 2006-28, Defendants take the position that there is
21    no accommodation that can be given disabled permit holders, despite the prior adoption by
22    Defendant Commission of such an accommodation from July 2003 to December 2005, despite
23
24

1 || the mandate of the ADA to adopt such an accommodation, and despite the invitation of the Court

2 || of Appeal in July 2002 to do so.

3 || ## FIRST CAUSE OF ACTION

4 || (Declaratory Relief)

5 || 86.    Plaintiffs re-allege and incorporate by reference the allegations contained in

6 || paragraphs 1 through 85, inclusive, above.

7 || 87.    An actual controversy has arisen and now exists between Plaintiffs and

8 || Defendants regarding the following:

9 || (a)    There is a conflict between the parties relating to Defendants refusal to recognize

10 || the ADA and its requirement to accommodate Proposition K permit holders, even though

11 || Defendants made such an acknowledgement in a previous disability program adopted under

12 || Executive Director Little;

13 || (b)    There is a conflict between the parties relating to Defendant's refusal to

14 || accommodate Plaintiffs' disabilities and Plaintiffs' position that a reasonable accommodation is

15 || possible for disabled permit holders by allowing the permit holder to meet the fundamental

16 || nature of continuous operation under Police Code Section 1096(a), by arranging for the regular

17 || and daily operation of his or her taxicab permit, and by reducing or relieving the permit holder of

18 || full-time driving subject to an annual review of the permit holder's disability to determine when

19 || lifting of the waiver or modification of full-time driving would be appropriate; and

20 || (c)    There is a conflict between the parties regarding Defendants' position that an

21 || accommodation under the ADA would affirmatively require Defendants to modify an essential .

22 || eligibility requirement of a taxicab permit, because it would alter the voters' intended purpose of

23 || the permit program, even though the ADA was not in existence at the time of the passage of the

24 ||

COMPLAINT                                                                          Page 17

1  voter initiative, the fundamental nature of Proposition K is not related to full-time driving

2  beyond the requirement of a full-time driving pledge, and full-time driving under Sections

3  1081(f) and 1090(a) of the Police Code, at least as applied to persons protected under the ADA,

4  is not part of Proposition K.

5       88.    A declaratory judgment is necessary in that Plaintiffs contend that:

6       (a)    As proved by the adoption of the July 2003 disability program, Defendants can

7  accommodate Plaintiffs' disabilities by waiver or modification of "the full-time driving

8  requirement" without altering the fundamental nature of Proposition K or the continuous

9  operation requirement of the Police Code; and

10       (b)    Modification or waiver of "the full-time driving requirement" subject to annual

11  review of the permit holder's disability while requiring the permit holder to meet the

12  fundamental nature of the continuous operation requirement under Police Code Section 1096(a),

13  by arranging for the regular and daily operation of his or her taxicab, is an appropriate

14  accommodation required under the ADA.

15       89.    Plaintiffs have incurred and, during the pendency of this action, will incur

16  expenses for attorneys' fees and costs herein. Such attorney's fees and costs are necessary for the

17  prosecution of this action and will result in a benefit to each of the members of the class. Such

18  attorneys fees are proper and allowed under both 42 USCS § 12205 and FRCP 23. The total

19  amount of attorneys' fees will be established according to proof at the trial of this matter.

20       WHEREFORE, plaintiffs pray for judgment and relief as set forth below.

21

22

23

24

1

**SECOND CAUSE OF ACTION**

2

(Injunction)

3      90.     Plaintiffs re-allege and incorporate by reference the allegations contained in

4    paragraphs 1 through 85 and 87 through 89 above.

5      91.     Unless and until enjoined and restrained by order of this court, Defendants' and

6    each of their refusal to acknowledge Plaintiffs' federal right to an accommodation pursuant to the

7    ADA by the reasonable modification or waiver of the full-time driving requirement will cause

8    great and irreparable injury to Plaintiffs in that Plaintiffs will lose their permits under Police

9    Code, Section 1090(a).

10     92.     Plaintiffs have no adequate remedy at law for the injuries being suffered as a

11   result of Defendants' refusal to provide ADA accommodation, in that Plaintiffs' permits are

12   unique and Plaintiffs will lose these permits.

13     93.     Plaintiffs have incurred and, during the pendency of this action, will incur

14   expenses for attorneys' fees and costs herein. Such attorney's fees and costs are necessary for the

15   prosecution of this action and will result in a benefit to each of the members of the class. Such

16   attorneys fees are proper and allowed under both 42 USCS § 12205 and FRCP 23.  The total

17   amount of attorneys' fees will be established according to proof at the trial of this matter.

18      WHEREFORE, Plaintiffs pray judgment as follows:

19      1.     That the Court certify plaintiffs as a class;

20      2.     That the Court declare the respective rights and duties of Plaintiffs and

21   Defendants as to ADA accommodation and reduction and/or relief from the driving requirement

22   for post Proposition K taxicab permit holders;

23

24

COMPLAINT                                                                    Page 19

1    3.    That the Court order a permanent injunction, all enjoining Defendants, and their

2    agents, servants, and employees, and all persons acting under, in concert with, or for them from

3    revoking, or suspending Plaintiffs' permits for failure to meet the driving requirement due to

4    ADA disabilities;

5    4.    That Plaintiffs be awarded their costs, expenses and attorneys fees incurred herein

6    pursuant to both 42 USCS § 12205 and FRCP 23; and

7    5.    For such other and further relief as the Court deems just and proper.

8

9    Respectfully submitted;

10

DATED: June 22, 2007                          BREALL & BREALL, LLP

11                                              NATIONAL CAB COMPANY, INC.

12

                                    By:    _____

13                                          Joseph M. Breall, Esq.
                                            Attorneys for Plaintiffs

14

15

16                                          MYLES LAW FIRM, INC.

17

18                                  By:    _____
                                            Elliott A. Myles, Esq.
19                                          Attorneys for Plaintiffs

20

21

22

23

24

COMPLAINT                                                                    Page 20