1  JOSEPH M. BREALL, Esq., State Bar # 124329
   BREALL & BREALL, LLP
2  1255 Post Street, Suite 800
   San Francisco, California 94109
3  Telephone: (415) 345-0545/Facsimile: (415) 345-0538
   e-mail: jmbreall@breallaw.com
4  ELLIOTT A. MYLES, Esq., State Bar # 127712
   MYLES LAW FIRM, INC.
5  P.O. Box 11094
   Oakland, CA 94611-0094
6  Telephone: (510) 986-0877/Facsimile: (510) 986-0843
   e-mail: elliott@myleslawfirm.com
7  Attorneys for Plaintiffs
   WILLIAM SLONE and MICHAEL MERRITHEW
8
   DENNIS J. HERRERA, State Bar #139669
9  City Attorney
   WAYNE SNODGRASS, State Bar #148137
   VINCE CHHABRIA, State Bar #208557
10 FRANCESCA GESSNER, State Bar #247553
   Deputy City Attorneys
11 City Hall, Room 234
   1 Dr. Carlton B. Goodlett Place
12 San Francisco, California 94102-5408
   Telephone: (415) 554-4674/Facsimile: (415) 554-4699
13 e-mail: vince.chhabria@sfgov.org

14 Attorneys for Defendants
   TAXI COMMISSION and
15 CITY AND COUNTY OF SAN FRANCISCO

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18 WILLIAM SLONE AND MICHAEL              Case No. C07-3335 JSW
   MERRITHEW,
19                                        **JOINT CASE**
              Plaintiffs,                 **MANAGEMENT**
20                                        **CONFERENCE**
        vs.                               **STATEMENT**
21 TAXI COMMISSION, CITY AND COUNTY OF    CMC Date: November 2, 2007
   SAN FRANCISCO, Executive Director Heidi Hearing Time: 1:30 p.m.
22 Machen; CITY AND COUNTY OF SAN
   FRANCISCO, a California public entity,
23
              Defendants.
24

Pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9, the parties submit their Joint Case Management Statement as follows:

**1. The basis for the Court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.**

The basis for the court's subject matter jurisdiction is 28 U.S.C. section 1331 and the Americans With Disabilities Act ("ADA"), 42 U.S.C. section 12101(b)(1). There are no issues regarding personal jurisdiction or venue. No parties remain to be served.

**2. A brief chronology of the facts and a statement of the principal factual issues in dispute.**

**Plaintiffs Allege:**

On June 6, 1978, San Francisco voters passed Proposition K ("Prop K") regulating the issuance of taxicab permits (also called "medallions") by Defendants. The fundamental nature of the Prop K medallion program is set forth in the first section of the proposition which declares that all San Francisco taxicab permits issued under Prop K are property of the people of San Francisco and cannot be sold, assigned or transferred; that the Police Chief shall establish regulations to assure prompt, courteous and honest service to the riding public; that the taxicab business shall operate under principles of free enterprise; and that the Police Commission shall issue sufficient permits to assure adequate service. In the pursuit of this fundamental nature, Prop K requires each applicant for a medallion requiring to declare under penalty of perjury "his or her intention actively and personally to engage as permittee driver under any permit issued to him or her for at least four hours during any 24 hour period on at least 75 percent of the business days during the calendar year." Once an applicant obtains a medallion, Prop K requires the medallion holder to "regularly and daily operate the taxicab or other motor vehicle for hire."

1    The provisions of Prop K were codified in Article 16 of the San Francisco Municipal Police

2    Code ("MPC"). Originally, the MPC followed Prop K by requiring applicants to make a full-driving

3    pledge and by requiring medallion holders to "regularly and daily operate or arrange for the operation

4    of their motor vehicle for hire." MPC §1096(a).

5    Plaintiffs qualified to hold Prop K medallions and were issued medallions by Defendants.

6    In 1990, Congress passed the ADA, which requires public entities to make reasonable

7    modifications in their policies, practices or procedures when the modification is necessary to avoid

8    disability discrimination unless the entity can show that the modification would fundamentally alter

9    the program.

10    The ADA created a tension in the Prop K program. Once an applicant satisfied the full-time

11    driving pledge, he or she could obtain a medallion. Prop K then required the medallion holder to

12    regularly and daily operate his or her taxi or to arrange for the regular and daily operation of his or

13    her taxi (usually by an approved lease under another provision of the MPC). If the medallion holder

14    became disabled and because of the disability could not regularly and daily operate his or her taxi, the

15    medallion holder could still satisfy the fundamental nature of the Prop K program by arranging for

16    the regular and daily operation of his or her taxi, even though he or she could not drive the taxi

17    personally.

18    To resolve this tension, in 2002, the Taxi Commission adopted a resolution stating that full-

19    time driving was more than just a pledge to be made by each applicant, but was an essential eligibility

20    requirement of the Prop K program and applied equally to medallion holders. *Taxi Commission*

21    *Resolution 2002-93*. As a result, the Taxi Commission adopted a policy that the full-time driving

22    requirement could not be waived or modified for disabled medallion holders, regardless of whether

23    they could still satisfy the continuous operation requirement of Prop K. This policy was truly

24

1    remarkable. In adopting it, the Taxi Commission reserved to itself the right to impose sanctions on

2    medallion holders who become disabled.

3        In 2003, the Taxi Commission's position that no modification or waiver of the full-time

4    driving requirement could be granted to disabled medallion holders was successfully challenged in an

5    appeal to the San Francisco Board of Appeals. As a result, the Taxi Commission adopted a policy was

6    substantially similar to a program administered by and in conjunction with the San Francisco Health

7    Department, and allowed a waiver or reduction of the full-time driving requirement depending on the

8    severity of an individual permit holder's disability. The Taxi Commission recognized that Prop K

9    "already allows the Taxi Commission to waive the driving requirement for a permit holder who

10   becomes partially or temporarily disabled." With respect to permanent disabilities, the Taxi

11   Commission adopted "an ADA accommodation program that is somewhat similar to the City's

12   catastrophic illness program for City employees." Under this program, a "disabled permit holder may

13   apply for a waiver or reduction of the driving requirement, and waiver or reduction, in appropriate

14   cases, maybe renewed on a yearly basis."

15       In 2004, the Defendant City's Board of Supervisors adopted MPC §1081(f), extending by

16   ordinance the full-time driving requirement to medallion holders. While Defendants may argue that

17   this legislation made full-time driving an essential eligibility requirement of the Prop K program, the

18   City Charter mandates otherwise: "No initiative or declaration of policy approved by the voters shall

19   be subject to veto, or to amendment or repeal except by the voters, unless such initiative or

20   declaration of policy shall otherwise provide." SF Charter, §14.101.

21       Despite MPC §1081(f), from July 2003 until January 2006, Defendants modified or waived

22   the full-time driving requirement for up to or over 150 medallion holders who became temporarily or

23   permanently disabled.

24

1    In January 2006, Defendants began to change their ADA policy. At first, instead of a review

2    by a qualified health care practitioner, the initial ADA application was reviewed by a layperson. Then

3    in February 2006, Defendants entirely reversed their ADA policy adopting Resolution 2006-28.

4        Under Resolution 2006-28, the Taxi Commission adopted the position that modifications or

5    waivers of the full-time driving requirement can only be made for disabilities of less than 120 days in

6    any one year period or for "catastrophic recoverable illnesses." Resolution 2006-28 does not address

7    disabilities of longer than 120 days duration or permanent disabilities. In effect, the Taxi Commission

8    stated that it was not bound by the ADA, but was free to supplant the ADA's definitions by its own.

9    In addition, the Taxi Commission intentionally discouraged use of the policy adopted in Resolution

10   2006-28, by refusing to rule on requests, to rule in a timely fashion and by placing unqualified non-

11   medical personnel as the decision maker on such requests. The Defendants' current policy violates

12   the ADA.

13       Plaintiffs applied under the ADA for a waiver or modification of the full-time driving

14   requirement based solely on their disabilities. The Commission denied Plaintiff Merrithew's after a

15   hearing at which the Commission admitted that he was disabled. Plaintiff Slone was told that any

16   application for waiver or modification of the full-time driving requirement under the ADA would be

17   denied.

18       From 2003 to 2006, Defendants recognized that the ADA required them to modify or waive

19   the full-time driving requirement as applied to medallion holders who became temporarily or

20   permanently disabled, as long as the medallion holders could still comply with the fundamental

21   nature – the continuous operation requirement – of Prop K. In 2006, Defendants reversed their

22   position, alleging that they can only modify or waive the requirement for disabilities of 120 days or

23

24

1   less a year or illnesses of up to one year in every five. Not only does this policy violate the ADA on

2   its face, it violates the ADA in its application.

3       **Defendants Allege:**

4       The City has taken an innovative approach to the operation of taxicabs in its jurisdiction. The

5   City's goals are to promote equity in the taxicab industry and to promote professionalism among

6   drivers, with the ultimate objective of providing quality service to the riding public.

7       This approach was first adopted in 1978 with the passage of Proposition K by the voters. *See*

8   San Francisco Admin. Code, Appx. 6. In enacting Proposition K, the voters required that any holder

9   of a taxicab permit (often referred to as a "medallion") be a full-time driver. This requirement has

10  since been codified and re-codified by the Board of Supervisors, *see* S.F. Police Code § 1081(f), and

11  implemented by the Taxi Commission through resolutions and regulations.

12      San Francisco's system stands in contrast to systems like New York City's, in which medallion

13  holders actually own their medallions (purchasing them for upwards of $400,000.00), and in which

14  most owners are not required to drive their cars. These owners can simply lease the cars to drivers,

15  and reap a portion of the profits of the drivers' work. In San Francisco, medallion holders do not

16  purchase or own the medallions; the medallion serves as a revocable permit granted by the City for

17  free. A person is not entitled to hold more than one permit. To keep their permits, the permitholders

18  may not be absentees; they must drive full-time, and may only lease their cars to other drivers during

19  the period when they are not driving.

20      Presently, 1,381 taxicab permits exist in San Francisco. This number is far lower than the

21  number of people who wish to have permits. As a result, there is a long waiting list for permits.

22  Although occasionally the Commission increases the overall number of permits, generally a person

23  on the waiting list must wait for an existing permitholder to stop driving to obtain a permit for

24

himself. However, because many permitholders have been holding on to their permits without complying with the full-time driving requirement, presently the wait to receive a permit is 12-15 years.

The full-time driving requirement seeks to improve the experience of taxicab riders by increasing the professionalism of drivers. If a medallion holder is actually required to drive his car full time, he has additional incentive to ensure that vehicles remain clean, comfortable and safe. The requirement also serves to ensure that drivers are experienced by promoting stability in the workforce. People who become taxicab drivers are likely to stay in the industry if they know they have a good chance to receive a medallion from the City within a reasonable time. If absentees are allowed to hold medallions – which are finite in number – there will be fewer opportunities for nonpermitholding drivers to obtain permits, and therefore less incentive to stay in the industry.

This full-time driving requirement promotes equity in the taxicab industry by avoiding the creation of separate classes of owners and workers. In San Francisco, unlike New York City, the persons doing the day-to-day work of driving receive the rewards of being a permitholder. And those drivers who are on the waiting list for a permit enjoy a degree of upward mobility that would not exist if absentees were allowed to hold on to the medallions issued by the City indefinitely.

For these reasons, the full-time driving requirement is an essential eligibility requirement of being a medallion holder. The Taxi Commission does allow temporary waivers of the requirement for persons who are temporarily disabled. As set forth in Taxi Commission Resolution No. 2006-28, which concerns "disabled medallion-holders who are otherwise qualified to hold taxicab permits," medallion-holders may seek a one-year exemption from the driving requirement for catastrophic illness, or they may seek 120 days of leave per year, for up to three consecutive years, from the full-time driving requirement. These temporary waivers are reasonable; indeed they are more than what is

1   required under the ADA. But to go even further – for example, to grant permanent or indefinite

2   waivers – would allow disabled persons to hold medallions in perpetuity without driving. This would

3   fundamentally alter the City's medallion program. It would essentially make these individuals owners

4   of the medallions, and the medallion program would be turned into a pension program. Meanwhile,

5   fewer working drivers would ever receive medallions, defeating the whole purpose of the full-time

6   driving requirement. The ADA does not require the City to make this fundamental alteration. In

7   making the difficult and unavoidable policy decision about how to allocate a finite number of

8   medallions, the City has made a reasonable choice that working drivers may hold medallions, while

9   non-working drivers may not.

10          The City does not believe there exists any disputed issue of material fact with respect to the

11  question whether the ADA requires the City to grant waivers to medallion holders beyond what is

12  already allowed by Resolution No. 2006-28. There may be disputed issues of fact about whether the

13  named plaintiffs are qualified individuals with disabilities, and about whether they properly requested

14  a modification of the City's policy before filing suit. The allegations in the Complaint are too vague

15  and indefinite to make that determination at present – it will require, at a minimum, examination of

16  the medical records of the plaintiffs, depositions of the plaintiffs, and potentially depositions of any

17  physicians who contend the plaintiffs are disabled. However, because as a matter of law the ADA

18  does not require the City to fundamentally alter its medallion program in the manner sought by the

19  plaintiffs – that is, the ADA does not require the City to provide greater relief from the full-time

20  driving requirement than is already granted under Taxi Commission Resolution No. 2006-28 – the

21  Court need not resolve these potential factual disputes to dispose of the case.

22          **3. A brief statement, without extended legal argument, of the disputed points of law,
    including reference to specific statutes and decisions.**

23

24          The parties agree that the principal disputed points of law are:

1   (1) Is the full-time driving requirement an essential eligibility requirement of the taxi

2 medallion program?

3   (2) Would allowing waivers or modifications of the full-time driving requirement for

4 medallion holders with disabilities beyond those already contemplated by Taxi Commission

5 Resolution No. 2006-28 constitute a fundamental alteration of the medallion program?

6   *See, e.g., Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (the ADA "does not require States to

7 compromise their essential eligibility criteria for public programs. It requires only 'reasonable

8 modifications' that would not fundamentally alter the nature of the service provided . . .").[1]

9

10  _____

[1] The full text of Resolution No. 2006-28 is as follows:

11

12      RESOLUTION NO. 2006-28
        **Clarifying limitations to variations from the 1978 Proposition K driving requirements**

13      **Whereas** in Proposition K in 1978 San Francisco voters established a medallion holder's driving
        requirement, as one of a package of taxi industry reforms, and

14      **Whereas** in 2003 the voters rejected Proposition N, an initiative ordinance that would have waived the
        driving requirement for disabled permit holders, and

15      **Whereas** the driving requirement is codified in the San Francisco Police Code §1081(f) and the San
        Francisco Administrative Code, Appx. 6, and

16      **Whereas**, in Resolution # 2002-93, adopted 8 October 2002, the Taxi Commission declared that "continuous
        driving is an essential eligibility requirement of the City's programs for the permitting of motor vehicles for
17      hire, and that exempting a permit holder from that requirement would fundamentally alter the nature of those
        programs…", and

18      **Whereas** the Americans with Disabilities Act allows some variation in permitting requirements as
        accommodation to the disabled insofar as those variations do not compromise the essential eligibility
19      requirements and character of the program, and

20      **Whereas**, the Commission presently allows some variation from the 90-day medical leave prescribed in
        Proposition K, but without clear guidelines, in instances where a medallion holder experiences a medically
21      verified disability or catastrophic illness which limits her/his ability to meet the annual driving requirement,
        and

22      **Whereas**, the present resolution does not preclude or limit future discussion or resolutions related to permit
        transferability, health care, or retirement issues.

23      (Continued on next page)

24

1    **Plaintiffs contend** that these points of law are not the only points of law relevant to the case.

2    Among the other points of law that are relevant are (i) legal issues related to the certification of the

3    class, (ii) whether waiver or estoppel operates out of the ADA-compliant policy adopted by Executive

4    Director Naomi Little, (iii) whether Defendants actions violate the ADA under an as applied analysis,

5    and (iv) whether any alternative policy adopted by Defendants is ADA-compliant. If Defendants'

6    motion as described is denied, the Court must still approve any policy adopted by Defendants as

7    compliant with the ADA.

8    **The City contends** that if the Court rules that the ADA *does not* require the City to grant

9    waivers of the full-time driving requirement for longer periods than allowed by Resolution 2006-28,

10   that would be the end of the case. There would be no basis for challenging the City's policy on an "as-

11   applied" basis. The City submits that if the Court rules that the ADA *does* require waivers for longer

12   periods than allowed by Resolution 2006-28, the City must immediately cease to enforce that policy

13   as to all medallion holders, and adopt a policy consistent with the Court's ruling. If that happens, there

14   will be nothing left to litigate in this case.

15   **4. All prior and pending motions, their current status, and any anticipated motions.**

16   There are no prior or pending motions.

17   **Plaintiffs contend** that the issues set out in Section 3, depending in part on the court's order,

18   are not dispositive of all potential issues in this action, but that there may be remaining issues to be

19   settled.

20   **Therefore it be resolved**, that the Taxi Commission establishes the following policies for disabled
     medallion-holders who are otherwise qualified to hold taxicab permits:

21   A 120-day maximum leave per year from the driving requirement with a three consecutive year cap (annual
     renewal upon review and approval)

22   Up to a full year exemption from the driving requirement once per five years for treatment for catastrophic
     recoverable illness

23   The applicant shall submit medical documentation and be available for review by the San Francisco
     Department of Public Health upon application and renewal.

24

**Defendant contends**, as discussed above, that no matter how the Court rules on the question whether the ADA requires the City to provide waivers of the full-time driving requirement beyond what is already allowed by Resolution No. 2006-28, that ruling will resolve the case.

**5.     The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.**

The parties currently do not expect to add or dismiss any parties, claims or defenses.

**6. Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.**

Counsel for the parties have instructed their clients, in writing, to preserve all documents and electronic materials conceivably relevant to the litigation.

**7. Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.**

Defendants served their initial disclosures on Friday, October 12, 2007. Plaintiffs expect to serve their initial disclosures on Monday, October 29, 2007.

**8. Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).**

No discovery has been taken to date.

The parties believe discovery can and should be phased so as to obtain a prompt resolution of this case.

Defendants contend that the first question to be answered in this case is whether the ADA requires the City to provide waivers or modifications of the full-time driving requirement to medallion holders with disabilities beyond what is already contemplated by Resolution No. 2006-28. Both Defendants and Plaintiffs believe resolution of this question will likely lead to early resolution of the case.

1    Accordingly, the parties propose that the first phase of discovery be limited to this issue. Upon

2    completion of this phase of discovery, Defendants intend to file a motion for partial summary

3    judgment. On resolution of the motion, a further case management conference should be scheduled.

4    Plaintiffs contend that the effect of Defendants' motion in resolving the case as a whole

5    cannot be determined until the content of the motion is known and the court files its order. Plaintiffs

6    believe that even if Defendants are successful, issues in the case will remain including, among others,

7    class certification for purposes of appeal, the application of the contested resolution to class members,

8    and whether the contested resolution repealed or simply modified the pre-existing ADA compliant

9    policy.

10    **Plaintiffs propose the following discovery plan for the first phase of discovery**:

11    Defendants have not provided in their initial disclosures the names of medallion holders who received

12    accommodations or the nature of those accommodations, whether granted prior to Resolution 2006-

13    28 or after Resolution 2006-28 was adopted, and as a result, Plaintiffs anticipate an initial 120 day

14    discovery period to cover three rounds of written discovery and any related motion practice, as well

15    as anticipated depositions (based upon identifications provided in Defendants' responses to

16    discovery), of the individuals identified in Defendants' initial disclosures as well as the deposition of

17    former Commission Executive Director Naomi Little and medallion holders who were granted

18    consistent or inconsistent accommodation under the ADA. The individuals named in Defendants

19    disclosures as having knowledge of, presumably, the compliance of Resolutions 2006-28 with the

20    ADA are Taxi Commission President Paul Gillespie, Executive Director Heidi Machen, Outreach

21    Coordinator Tamara Odisho, and Deputy Director Joanna Thigpen. Also identified in Defendants

22    initial Disclosures are Deputy City Attorney Thomas Owen who advised the Taxi Commission as

23    early as 1999 that it could adopt a policy that the full driving requirement was an essential eligibility

24

1   requirement of the medallion program and Tristan Bettencourt who in 2005 and 2006 advised the

2   Taxi Commission or its staff on ADA accommodations, despite not being medically or legally

3   qualified. Each of these individuals will have to be deposed. The discovery will relate to (1) the

4   City's position that the facial challenge motion for partial summary judgment is dispositive of all

5   issues in this case, and (2) the Plaintiff's contention that Resolution 2006-28 also violates the ADA

6   on the as applied provision.

7       Plaintiffs anticipate an initial set of document demands. Part of Plaintiffs' time line is based

8   on seeking judicial intervention to obtain the names of medallion holders with accommodations and

9   the nature of their accommodations. Depending on the nature of the redactions, Plaintiffs will either

10   seek a protective order from the Court, a second round of discovery against Defendants, or third-party

11   discovery from medallion holders who can be identified. Plaintiffs also anticipate at least one set of

12   requests for admissions and one set of requests for admissions of genuineness of documents.

13       **Defendant proposes the following plan for the first phase of discovery**: The City does not

14   understand why such a long discovery period is needed on the straight legal question whether the

15   ADA requires the City to grant longer waivers of the full-time driving requirement than allowed by

16   Resolution No. 2006-28. Nor does the City understand why three rounds of document requests are

17   necessary. Plaintiffs have not articulated why such burdensome discovery is necessary for resolution

18   of this threshold legal question. Plaintiffs have not explained why the depositions proposed above

19   would be relevant to the threshold legal question. In particular, the City does not believe Plaintiffs

20   should be entitled to depose all disabled medallion holders who were granted ADA accommodations.

21   (Incidentally, the City has not provided the names of disabled medallion holders in its initial

22   disclosures because it is not required to do so under Rule 26.)

23

24

1   The City suggests that for the first phase of discovery, Plaintiffs be limited to one set of

2   requests for production of documents, one set of requests for admission, and two depositions. Should

3   the parties deem further discovery is necessary during the first phase, they should seek permission

4   from the Court. And as discussed in Section 17 below, the City proposes that the Court set a cutoff

5   date for the first phase of discovery at December 28, 2007.

6   **9. If a class action, a proposal for how and when the class will be certified.**

7   The parties agree that the partial summary judgment motion on the issues in Section 3 may be

8   adjudicated before a motion to certify the class, and have set out the proposed discovery schedules

9   accordingly.

10   **Plaintiffs contend:**

11   A class certification is necessary, and would be ready for hearing prior to the filing of the

12   Defendants' motion for partial summary judgment. However, Plaintiffs agree to postpone the timing

13   of filing their motion provided Defendants' Board of Supervisors acknowledge that a ruling on the

14   motion will collaterally estopp Defendants with respect to the entire class. *See Katz v. Carte Blanche*

15   *Corp.*, 496 F.2d 747 (3rd Cir. 1973); *Helene Curtis, Inc. v. Assessment Appeals Board of Los Angeles*

16   *County*, 76 Cal. App. 4th 124 (2nd App, 1999).

17   **Defendant contends:**

18   Class treatment is not necessary. This lawsuit challenges the ability of the City to limit the

19   length of the period during which medallion holders may be relieved from the full-time driving

20   requirement, and seeks declaratory and injunctive relief on the grounds that the City is presently in

21   violation of the ADA. If this Court rules that the ADA requires the City to provide medallion holders

22   with greater relief than that allowed by Resolution No. 2006-28, that is the end of the matter. The

23   City will no longer be permitted to enforce its current policy against any medallion holder, and will

24

1   be required to adopt a new policy consistent with the Court's ruling. That new policy will, of course,

2   apply to all medallion holders. Under these circumstances, class treatment is unnecessary. *See, e.g.,*

3   *James v. Ball*, 613 F.2d 180, 186 (9th Cir. 1979) (rev'd on other grounds 451 U.S. 355 (1981))

4   (affirming district court's denial of class certification where "the relief sought will, as a practical

5   matter, produce the same result as formal class-wide relief"); *Spry v. Thompson*, 2004 WL 1146543,

6   *5 (D. Or.) (Denying class certification where "the relief sought by individual plaintiffs will produce

7   the same result as formal class-wide relief . . . "); *Sokol v. New United Motor Manufacturing, Inc.*,

8   1999 U.S. Dist. LEXIS 20215, *18 (N.D. Cal.) (Denying class certification because "all putative class

9   members would benefit from an injunction issued on behalf of a single plaintiff").

10      The City does not understand Plaintiffs' assertion that the Board of Supervisors must take

11  some sort of action in order for the City to be bound by a ruling from this Court enjoining it from

12  enforcing the limitations of Resolution 2006-28. The City is aware of no authority for that

13  proposition. Plaintiffs cite *Katz* (without a pin cite), but *Katz* only confirms that class treatment is

14  unnecessary here, because a ruling against the City would preclude it from enforcing its policy

15  against anyone. 496 F.2d at 758-59. The *Helene Curtis* case (also cited by Plaintiffs without a pin

16  cite) is irrelevant to class certification, and in any event it is a California case, not a federal one.

17      It is in the interest of all involved, including all current and prospective medallion holders, to

18  obtain as prompt a resolution to the controlling legal question as possible, to ensure the City's policy

19  with respect to disabled medallion holders is in compliance with the law. The City therefore believes

20  this question should be resolved on summary judgment at the outset, rather than delaying matters

21  with an unnecessary class certification motion or any other unnecessary proceedings.

22      **10. Any related cases or proceedings pending before another judge of this court, or
before another court or administrative body.**

23

24      None.

**11. All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.**

Plaintiffs seek declaratory and injunctive relief only. Defendants have filed no counterclaim.

**12. Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.**

Prior to resolution of the City's anticipated motion for partial summary judgment, the case is

not amenable to ADR. An ADR phone conference has been set for October 30, 2007 at 2:00 p.m.

**13. Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.**

Plaintiffs do not consent to a Magistrate Judge for all purposes.

**14. Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.**

The parties agree that the case is not suitable for reference to binding arbitration, a special

master or the Judicial Panel on Multidistrict Litigation.

**15. Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.**

See above, Section 3.

**16. Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.**

See above, Section 3.

**17. Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.**

The parties propose that a trial date be set only if necessary following the Court's ruling on the

partial summary judgment motion to be filed by the City. The parties disagree as to the timing of the

motion.

1    **Plaintiffs propose** that the discovery cut-off on matters relating to whether the ADA requires

2    the City to provide waivers of the full-time driving requirement beyond what is contemplated by Taxi

3    Commission Resolution No. 2006-28 be no earlier than **February 28, 2008**. This is necessary to

4    provide time to obtain written discovery from the Defendants and from third parties identified in the

5    Defendants' documents, and to take depositions of at least three non-parties, including Defendant's

6    former Executive Director. Plaintiffs propose that the filing deadline for the above-referenced motion

7    for partial summary judgment be set for **March 15, 2008**, and that a hearing on that motion be set for

8    **May 15, 2008**.

9    **Defendant proposes:** There is no need for such a long period of discovery on the threshold

10   legal question presented. (See discussion in Section 8 above.) The following schedule is more than

11   sufficient to complete any discovery in the first phase.

12   -- Discovery cutoff for first phase of discovery: December 28, 2007.

13   -- Last day to file motion for summary judgment: January 18, 2008.

14   -- Last day to file opposition to motion for summary judgment: February 15, 2008.

15   -- Last day to file reply in support of motion for summary judgment: March 7, 2008

16   -- Hearing on motion for summary judgment: March 21, 2008.

17   The parties both request that a further case management conference be set within 30-60 days

18   following a ruling on the City's motion for partial summary judgment.

19   **18. Whether the case will be tried to a jury or to the Court and the expected length of the**

     **trial.**

20

21   Although the parties believe the Court's ruling on the City's motion for partial summary

22   judgment may resolve or lead to resolution of the case, in the event a trial were to occur, it would be a

23   bench trial, and the parties anticipate it would last no more than **seven days**.

24

1    **19. Whether each party has filed the "Certification of Interested Entities or Persons"**
**required by Civil Local Rule 3-16. In addition, each party must restate in the case management**
2    **statement the contents of its certification by identifying any persons, firms, partnerships,**
**corporations (including parent corporations) or other entities known by the party to have**
3    **either: (i) a financial interest in the subject matter in controversy or in a party to the**
**proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome**
4    **of the proceeding.**

5    The Plaintiffs have filed their Certification of Interested Entities or Persons. Financially

6    interested persons include all Prop K medallion holders who are or may become disabled. There are

7    no other known persons with interests that could be substantially affected.

8    **20. Such other matters as may facilitate the just, speedy and inexpensive disposition of**
**this matter.**

9
None.

10
The parties shall submit competing proposed orders separately.

11

12    Dated:  October 26, 2007                              BREALL & BREALL, LLP

13
                                                    By:  _____/S/_____
14                                                       Joseph M. Breall, Esq.
                                                         Attorneys for Plaintiffs
15

16    Dated:  October 26, 2007                              MYLES LAW FIRM, INC.

17
                                                    By:  _____/S/_____
18                                                       Elliott A. Myles, Esq.
                                                         Attorneys for Plaintiffs
19

20    Dated:  October 26, 2007                              DENNIS J. HERRERA
                                                         City Attorney
21

22                                                  By:  _____/S/_____
                                                         Vince Chhabria, Esq.
23                                                       Attorneys for Defendants TAXI COMMISSION
                                                         and CITY AND COUNTY OF SAN
24                                                       FRANCISCO