# EXHIBIT D

# DIVISION I
# PROVISIONS GOVERNING ALL VEHICLES

## SEC. 1075. DECLARATION OF POLICY.

The Board of Supervisors of the City and County of San Francisco hereby declare it shall be the policy of the City and County of San Francisco that:

(a)   All motor vehicle for hire permits issued by the City and County of San Francisco are the property of the people of the City and County of San Francisco and shall not be sold, assigned or transferred.

(b)   A sufficient number of permits for each type, kind, or class of motor vehicle for hire shall be issued to assure adequate service to the public, including residents, commuters, tourists and other visitors.

(c)   All taxicabs shall be operated with an effective 24-hour radio dispatch service to assure prompt, safe and adequate service for all residents of the City and County of San Francisco, including, without limitation, elderly and handicapped persons, in all locations throughout the City and County.

(d)   Taxicab operators may charge less than the maximum fare set by law, as set forth below.

(e)   All commercial operation of motor vehicles for hire in the City and County of San Francisco shall be subject to regulation under this Article, except to the extent that such regulation is preempted or precluded by state or federal law. It is the intent of the Board of Supervisors that this Article shall apply to all motor vehicles for hire, including those which may from time to time be deregulated by state or federal authority although now or in the future exempted from regulation hereunder by virtue of state or federal law.

(f)   The public will benefit from additional efforts to enforce the provisions of this Article, and a portion of the cost of enforcement should be funded through fees collected from holders of permits issued under this Article.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1076. DEFINITIONS.

For purposes of this Article the following words and phrases are defined and shall be construed as hereinafter set forth:

(a)   "Motor Vehicle for Hire" Defined. A "motor vehicle for hire" is hereby defined to mean and include every type, kind and class of privately owned motor-propelled passenger-carrying vehicle for hire over which the City and County of San Francisco may exercise jurisdiction.

(b)   "Taxicab" Defined. A "taxicab" is hereby defined to be a motor vehicle for hire of a distinctive color or colors and which is operated at rates per mile or upon a waiting-time basis, or both, and which is equipped with a taximeter and which is used for the transportation of passengers for hire over and along the public streets, not over a defined route but, as to the route and destination, in accordance with and under the direction of the passenger or person hiring such vehicle. A "taxicab" does not include motor vehicles for hire herein defined as "ramped taxis."

(c)   "Taximeter" Defined. A "taximeter" is hereby defined to be an instrument or device attached to a motor vehicle for hire by means of which instrument or device the charge authorized for hire of such vehicle is mechanically calculated either on a basis of distance traveled or for waiting time, or a combination thereof, which charges shall be indicated upon such taximeter by means of figures, in dollars and cents.

(d)   "Taxicab Dispatch Service" Defined. A "taxicab dispatch service" is hereby defined to be any person, business, firm, partnership, association or corporation which holds itself out to the public in general as a source of taxicab service by or through which taxicabs may be summoned or dispatched by radio.

(e)  "Taxicab Color Scheme" Defined. A "taxicab color scheme" is hereby defined to be any color scheme, design or dress for taxicabs that is distinguishable from the color scheme, design or dress customarily used for private automobiles.

(f)  "Jitney" Defined. A "jitney" or "jitney bus" is defined to be a motor vehicle for hire less than 20 feet in length traversing the public streets between certain definite points or termini and conveying no more than 15 passengers for a fixed charge, between such points or any intermediate points, and so held out, advertised or announced; provided, however, that the size and passenger limitations established herein shall not apply to any vehicle operated as of July 1, 1983. A jitney bus is hereby declared to be a common carrier and is subject to the regulations prescribed in the Municipal Code and in this Article.

(g)  "Motorized Rickshaw" Defined. A "motorized rickshaw" is hereby defined to be a passenger-carrying motor vehicle for hire having three or four wheels, convertible type, designed to carry not more than four passengers. The gross weight of a motorized rickshaw shall not exceed 4,700 pounds, unloaded, and shall have a wheelbase not to exceed 95 inches, and shall have an engine not to exceed four cylinders. A motorized rickshaw shall have a cloth hood over the rear seating area that shall resemble the hood of a traditional oriental rikisha or jinrikisha.

(h)  "Limousine" Defined. A "limousine" is hereby defined to be a passenger-carrying motor vehicle for hire, of private appearance (except as to license plates), not equipped with a taximeter, designed to accommodate seven or eight persons, inclusive of a driver, and used for the transportation of persons for hire over and along the public streets, not over a fixed and defined route but, as to route and destination, in accordance with and under the direction of the passenger or person hiring such limousine, the charges for use of which are based upon rates per mile, per trip, per hour, per day, per week or per month.

(i)  "Funeral Limousine" Defined. A "funeral limousine" is hereby defined to be any limousine used exclusively in the business of any undertaker or funeral director.

(j)  "Sightseeing Bus" Defined. A "sightseeing bus" is hereby defined to be a motor vehicle for hire used in the conveyance, for hire, of tourists and sightseers, over the public streets, for the purpose of a sightseeing trip or tour in the visiting and viewing of places of interest. A "sightseeing bus" is hereby defined to be a common carrier and subject to the regulations prescribed in the Municipal Code and this Article.

(k)  "Interurban Bus" Defined. An "interurban bus" is hereby defined to be a motor vehicle for hire, other than a jitney bus used for transporting passengers for hire over and along the public streets between certain definite points or termini, one within and the other without the limits of the City and County of San Francisco. An "interurban bus" is hereby declared to be a common carrier and subject to the regulations prescribed in the Municipal Code and this Article.

(l)  "Permittee" Defined. "Permittee" is hereby defined to mean any person, business, firm, partnership, association or corporation which holds any permit or license issued by or under the authority of the City and County of San Francisco to operate or drive any motor vehicle for hire. "Permit holder" means "permittee."

(m)  "Operator" Defined. "Operator" is hereby defined to mean any person, business, firm, partnership, association or corporation licensed by the City and County of San Francisco pursuant to the provisions of this Article and any agent of such permittee including, but not limited to, any manager or lessee of said permittee.

(n)  "Driver" Defined. "Driver" is hereby defined to mean any person engaged in the mechanical operation and having physical charge or custody of a motor vehicle for hire while said motor vehicle for hire is available for hire or is actually hired.

(o)  "Full-Time Driver" Defined. "Full-time driver" is hereby defined to mean any driver actually engaged in the mechanical operation and having physical charge or custody of a motor vehicle for hire which is available for hire or actually hired (i) for at least four hours during any 24-hour period on at least 75 percent of the business days during the calendar year or (ii) for at least 800 hours during the calendar year.

(p)  "Stand" Defined. "Stand" is hereby defined to be a place designated by the Department of Public Works for the use, while awaiting employment, of the particular motor-propelled passenger-carrying vehicles authorized to utilize the same.

(q) "Police Commission" Defined. "Police Commission" as used herein means the Police Commission of the City and County of San Francisco.

(r) "Police Department" Defined. "Police Department" as used herein means the Police Department of the City and County of San Francisco.

(s) "Chief of Police" Defined. "Chief of Police" as used herein means the Chief of Police of the Police Department of the City and County of San Francisco and his designated agents within the Police Department.

(t) "Tax Collector" Defined. "Tax Collector" as used herein means the Tax Collector of the City and County of San Francisco.

(u) "Controller" Defined. "Controller" as used herein means the Controller of the City and County of San Francisco.

(v) "Department of Public Works" Defined. "Department of Public Works" as used herein means the Department of Public Works of the City and County of San Francisco.

(w) "Employer's Bus" Defined. "Employer's bus" as used herein means a bus or other vehicle capable of transporting 12 or more persons, including the driver, which is regularly operated and maintained in order to transport employees to and from various business locations by a person or corporation which employs 100 or more persons at one location within the City and County of San Francisco.

(x) "Employer's Bus Stand" Defined. "Employer's bus stand" as used herein means that portion of the street which the Department of Public Works designates as reserved for the exclusive use of one or more employer's buses in order to load and unload passengers at a business location of the employer.

(y) "Ramped Taxi" Defined. A "ramped taxi" as used herein is a motor vehicle for hire of a distinctive color or colors operated at rates per mile or upon a waiting-time basis, or both, which is a minivan or similar vehicle specially adapted via ramp access for wheelchair users, which is also equipped with a taximeter, and which prioritizes requests for service from wheelchair users for purposes of transportation over and along the public streets. not over a defined route but, as to the route and destination, inaccordance with and under the direction of the passenger or person hiring such vehicle.

(Added by Ord. 562-88, App. 12/27/88; Ord. 64-97, App. 3/6/97; Ord. 111-04, File No. 040343, App. 7/1/2004)


# SEC. 1077. ADMINISTRATION OF THIS ARTICLE; AUTHORITY TO ISSUE REGULATIONS.

(a) Rules and Regulations. The Taxi Commission from time to time shall, after a noticed public hearing, adopt such rules and regulations to effect the purposes of this Article as are not in conflict therewith.

(b) Administration of Regulations. As set forth elsewhere in this Article, the Taxi Commission shall be charged with administering and enforcing the provisions of this Article, and any rules or regulations promulgated hereunder.

(c) Enforcement. In addition to the administrative penalties set forth in Section 1090 of this Article, violations of the Commission's Rules may be punished as infractions as set forth in Section 1185(d).

(Added by Ord. 562-88, App. 12/27/88; amended by Ord. 106-99, File No. 990006, App. 5/7/99)


# SEC. 1078. PERMIT REQUIRED FOR OPERATION OF MOTOR VEHICLES FOR HIRE; EXCLUSIONS.

(a) Permit Required. No person, business, firm, partnership, association or corporation shall drive or operate any motor vehicle for hire on the public streets of the City and County of San Francisco, nor shall any person, business, firm, partnership, association or corporation operate any taxicab radio-dispatch service or taxicab color scheme in the City and County of San Francisco, without a permit issued by the Taxi Commission authorizing such driving or operation in accordance with the provisions of this Article.

(b) Limitation on Types of Vehicles for Hire. No person, business, firm, partnership, association or corporation shall drive or operate, directly or indirectly, any motor vehicle for hire on the public streets of the City and County of San Francisco which is not specifically defined in this Article; provided, however, that the Taxi Commission

may declare, after a noticed public hearing, that the public convenience and necessity require the operation of a type, kind or class of motor vehicle for hire not hereindefined, and issue a permit or permits for such type, kind or class of motor vehicle for hire in accordance with the procedures and provisions set forth in Sections 1079 through 1081 of this Article.

(c)    Exclusions for Vehicles Licensed in Other Jurisdictions. This Article shall not apply to any motor vehicle for hire duly licensed by any city, county or other public entity which may enter the City and County of San Francisco for the purpose of delivering passengers who have hired said motor vehicle for hire within a jurisdiction in which said motor vehicle for hire is licensed to operate; provided, however, that no such motor vehicle for hire shall accept or be hired by any passenger while in the City and County of San Francisco.

(d)    Exclusion for Vehicles Licensed by California PUC. This Article shall not apply to the operation of motor vehicles engaged in the business of, or used for, transporting passengers for hire when such motor vehicles are operated under and by authority of certificates of public convenience and necessity issued by the Public Utilities Commission of the State of California; provided, however, that this clause shall be construed to create an exception only to the extent, character and type of operation expresslyprescribed and authorized by the certificate issued by said Public Utilities Commission and shall be limited by and entirely within the scope of said certificate as issued by said Public Utilities Commission. No limousine or other charter-party carrier of passengers, whether licensed by the California Public Utilities Commission or not, shall operate as a taxicab on the public streets of the City and County of San Francisco without a permit issued by the Taxi Commission authorizing such driving or operationin accordance with the provisions of this Article.

(e)    Partial Exclusion for Funeral Limousines. Any person engaged in the business of undertaker or funeral director desiring a permit for the operation of a limousine or limousines used solely in connection with said business shall not be required to qualify under Sections 1079 through 1081 or Sections 1091 through 1094 of this Article; provided, however, that the Taxi Commission shall have the power to grant permits exclusively for such funeral limousines after a noticed hearing on an application therefor. TheTaxi Commission may prescribe the form and content for such applications. All funeral limousine permittees shall be subject to the condition and rulemaking authority of the Taxi Commission and the Executive Director of the Taxi Commission as provided for in Section 1077 of this Article. Such permits shall be nonassignable and nontransferable.

(f)    Exclusion for Employer's Buses. No permit is required under this Article for the operation of an employer's bus as defined in Section 1076(w).

(g)    Exclusion for Private Ambulances. This Article shall not apply to private ambulances regulated under Part II, Chapter V of the Municipal Code (Health Code).

(h)    Exclusions for Rail Vehicles. This Article shall not apply to any vehicle operating on fixed tracks or rails.

(Added by Ord. 562-88, App. 12/27/88; amended by Ord. 15-06, File No. 051720, App. 1/20/2006)


# SEC. 1079. ISSUANCE OF PERMITS; APPLICATIONS; HEARINGS.

(a)    Scope of Section. To the extent the provisions of this Section and Sections 1080 through 1088 of this Article are inconsistent with the provisions of Sections 2.1 through 2.30 of Article I of the San Francisco Police Code, the provisions of this Article shall be applicable to all permits for the operation of motor vehicles for hire granted pursuant to this Article; provided, however, that certain alternative and additional provisions with respect to permits for the operation of taxicabs are set forth belowin Sections 1120 et seq. Provisions of this Section shall not apply to taxicab dispatch service, taxicab color scheme permits, or permits for the operation of a rental vehicle business under Division 8 of this Article.

(b)    Taxi Commission to Issue Permits. The Taxi Commission shall issue permits for the operation of motor vehicles for hire that are provided for in this Article as the public convenience and necessity shall require. The Taxi Commission shall not issue a permit for any motor vehicle for hire service not defined in Section 1076 hereof, except as provided for in Section 1078(b) of this Article.

(c)    Declaration of Public Convenience and Necessity. No permit shall be issued for the operation of any motor vehicle for hire unless and until the Taxi Commission shall by resolution declare that public convenience and necessity require the proposed service for which application for a permit is made and the applicant is found to be eligible under all the requirements of this Article.

(d)    Hearings to Determine Public Convenience and Necessity. The Taxi Commission shall hold hearings to

determine public convenience and necessity pursuant to all applications for the issuance of permits to operate motor vehicles for hire. Protests against the issuing of a permit may be filed with the Taxi Commission. The Taxi Commission shall consider all protests and in conducting its hearing shall have the right to call such additional witnesses as it desires. In all such hearings, the burden of proof shall be upon the individual applicant to establish by clear and convincing evidence that public convenience and necessity require the operation of the vehicle or vehicles for which permit application has been made, and that such application in all other respects should be granted. Subject to the provisions of Subsection (e) of this Section, hearings on applications for declaration of public convenience and necessity shall be held at least once each calendar year for each type, kind or class of permit for which one or more applications are pending.

(e)   Consolidation of Hearings Permitted. The Taxi Commission may consolidate for hearing and determination of public convenience and necessity all applications for a given type, kind or class of permit. Any declaration of public convenience and necessity made by the Taxi Commission pursuant to such a consolidated hearing shall be valid and binding as to the total number of permits authorized for a particular type, kind or class of permit and as to each application included for hearing in said consolidated hearing and shall have continuing force and effect until the next subsequent Taxi Commission hearing on public convenience and necessity as to that particular type, kind or class of permit. Any applicant whose application is called for hearing at a consolidated hearing may rely upon the testimony and evidence adduced before the Taxi Commission by other pending convenience and necessity, in the sole discretion and judgment of the individual applicant; provided, however, that the burden of proof in establishing public convenience and necessity shall remain on each applicant.

(f)   Role of Controller. Prior to increasing the total number of authorized permits, the Taxi Commission shall notify the Controller of the proposed increase and receive from the Controller, within 30 days of the Controller's receipt of the Taxi Commission notice, a report including the Controller's recommendation for an adjustment in the mean gate fee cap and/or in rates of fare for taxicabs, and/or the institution of temporary permit lease fee controls, necessary to maintain income of drivers and color schemepermitholders.

(g)   Notice of Commission's Determination. Written notice of a declaration of public convenience and necessity by the Taxi Commission shall be given to all subject applicants and all protestors whose names and addresses are known to said Commission. Such notice shall be given forthwith upon the adoption of such declaration. A declaration of public convenience and necessity made at or as a result of a consolidated hearing under Subsection (e) of this Section may be appealed to the Board of Appeals as set forth inSection 4.106 of the Charter of the City and County of San Francisco. Prior to increasing the total number of authorized permits beyond the currently authorized number if the Taxi Commission has not authorized an increase, or beyond any increase authorized by the Taxi Commission, the Board of Appeals shall notify the Controller of the Board of Appeals' proposed increase and receive from the Controller within 30 days of the Controller's receipt of the Board of Appeals notice, a report including the Controller's recommendation for an adjustment in the mean gate fee cap and/or in rates of fare for taxicabs, and/or the institution of permit lease fee controls, necessary to maintain income of drivers and color scheme permitholders.

(h)   If the Taxi Commission or the Board of Appeals authorizes the issuance of any additional number of taxicab permits above the 1381 permits authorized to be issued as of November 12, 2002, the Controller shall transmit to the Board of Supervisors a report including the Controller's recommendation for an adjustment in the mean gate fee cap and/or in rates of fare for taxicabs and/or the institution of temporary permit lease fee controls, necessary to maintain income of drivers and color scheme permitholders, and proposed legislation instituting such recommendations.

(i)   Separate Hearings for Individual Applicants. Notwithstanding any consolidated hearing on public convenience and necessity as provided for in Subsection (e) of this Section, every applicant for a permit to operate a motor vehicle for hire shall have a separate hearing to review and determine the applicant's individual eligibility and compliance with all applicable laws, rules and regulations before a permit is issued, notice of which shall be given in the same manner as set forth in Section 1080(a) of this Article. Each application shall be investigated and the results of the investigation shall be transmitted to the Taxi Commission at the time of the hearing on the applicant's individual qualifications. If public convenience and necessity is declared for the issuance of a permit and an applicant is found to be eligible therefor after consideration by the Taxi Commission of the factors set forth in Section 1081 of this Article, the Taxi Commission shall so notify the applicant. Within 60 days thereafter the applicant shall furnish to the Taxi Commission any and all additional information which may be required. If the Taxi Commission then finds that the applicant, in addition to complying with all other requirements, is the owner of the vehicle or vehicles for which a permit is sought, and that each such vehicle meets with all applicable statutes, ordinances, rules and regulations, it shall thereupon issue the permit. A finding made at or as a result of a hearing under this Section may be appealed to the Board ofAppeals as set

forth in Section 4.106 of the Charter of the City and County of San Francisco.

(j)   Conditions on Permits. The Taxi Commission may attach such conditions as it deems to be consistent with public convenience and necessity upon any new permit issued under this Article. From time to time, existing permits or those issued without conditions may be made subject to such conditions as the Taxi Commission may determine to be consistent with public convenience and necessity after a hearing of which notice is given to all affected permittees and the public in the manner prescribed for giving notice in Section 1080(a) of this Article.

(Added by Ord. 562-88, App. 12/27/88; amended by Ord. 228-02, File No. 020678, App. 12/5/2002)


# SEC. 1080. PERMIT APPLICATIONS.

(a)   Forms and Applications; Notice of Hearing. Application for a permit required by this Article shall be made to the Police Commission on a form to be furnished by the Police Commission. The form shall specify, and the application shall state, such information as the Police Commission reasonably shall require. Within 14 days of the filing of such an application with the Police Commission, it shall cause a notice to be published in a newspaper approved for the giving of official notices of the City and County of San Francisco, which notice shall state that an application has been filed for a permit pursuant to this Article (specifying the type, kind or class), the name of the applicant, the kind of equipment to be used, and such other information as may be necessary to identify the applicant and to specify the type, kind or class of permit or service. If the hearing on an individual application is held more than 45 days after the last such notice was published, that notice shall be republished, commencing at least 14 days prior to the hearing. The notices required by this Section shall be published for three successive days and shall state the date, time, and place set for the hearing thereon.

(b)   Fee for Application. Applicants for permits authorized by this Article shall pay to the City and County of San Francisco a sum set by ordinance to cover the costs of advertising, investigating, and processing the application for each permit. No application for a permit under this Article shall be deemed to be complete until and unless such sum is fully paid.

(c)   Applications Deemed Active. Every application for a motor vehicle for hire permit shall be deemed to remain active and shall be considered until the earliest of the following events:

   (1)   The applicant withdraws the application in writing;

   (2)   The applicant is deemed to be ineligible by a vote of the Police Commission; or

   (3)   The applicant receives a permit;

(d)   Notwithstanding the provisions of Subsection (c), the Chief of Police may adopt regulations requiring applicants periodically to reaffirm that their applications are active.

(Added by Ord. 562-88, App. 12/27/88; amended by Ord. 88-99, File No. 981443, App. 4/30/99)


# SEC. 1081. FACTORS CONSIDERED IN ISSUING PERMITS; DRIVING REQUIREMENTS.

(a)   General Factors. The Taxi Commission, in determining whether an individual applicant is eligible for the issuance of a motor vehicle for hire permit pursuant to Section 1079(i) may consider such facts as it deems pertinent, but must consider the following:

   (1)   Whether the applicant is financially responsible and will comply with all insurance requirements and will maintain proper financial records.

   (2)   Whether the applicant has complied with all applicable statutes, ordinances, rules and regulations.

   (3)   Whether the applicant holds or has ever held any other permits issued to operate a motor vehicle for hire either in the City and County of San Francisco or elsewhere and the record of such applicant with regard to any such other or former permits.

(b)   Full-Time Driving Pledge. No permit to operate a motor vehicle for hire shall be issued unless the person applying for the permit shall declare under penalty of perjury his or her intention actively and personally to engage as permittee-driver under any permit issued to him or her for at least four hours during any 24-hour period or at least 75 percent of the business days during the calendar year.

(c)  Driving Experience Required. No permit to operate a taxicab or ramped taxi shall be issued unless the applicant has the driving experience required by Section 1121 for a taxicab permit or Section 1148.1 for a ramped taxi permit.

(d)  Order of Consideration. Except as otherwise state in this Article, all applications for motor vehicle for hire permits shall be processed and considered in the order of their receipt by the Taxi Commission. The Commission retains discretion at any time, following a hearing, to deny an application for a motor vehicle for hire permit on the basis that the applicant has engaged in fraud, deceit, misrepresentation, or other misconduct in connection with the application process.

(e)  Applicability of Section. Notwithstanding any contrary provision in this Article, the requirements set forth in this Section shall not apply to any person holding a permit issued on or before July 1, 1978.

(f)  Full-Time Driving Required. Every permittee subject to the provisions of this Section shall be a full-time driver as defined in Section 1076(o), subject to the qualifications state in subparts (i)--(iii) below.

(i)  During the calendar year in which the permittee receives the permit, and during the first full calendar year following receipt of the permit, the permittee must qualify as a full-time driver by satisfying the definition of that term in Section 1076(o)(i). For the calendar year in which the permittee receives the permit, the number of business days shall be measured from the date of receipt of the permit.

(ii)  A permittee may be granted approval not to drive a certain number of days under certain circumstances pursuant to Section 1096(c). In such a case, for the permittee to qualify as a full-time driver as defined in Section 1076(o)(i), the number of business days for the calendar year shall be reduced in the same proportion as the ratio of the permittee's excused driving days to calendar days in the calendar year.

(g)  Promotion of the General Welfare. By adopting a program for the issuance of permits for motor vehicles for hire, the City and County of San Francisco is assuming an undertaking only to promote the general welfare. It is not assuming, nor is it imposing on its officers and employees, an obligation for breach of which it is liable in money damages to any person who claims that such breach proximately caused injury.

(Added by Ord. 562-88, App. 12/27/88; Ord. 111-04, File No. 040343, App. 7/1/2004)

## SEC. 1081.5. DRIVING REQUIREMENTS FOR DESIGNATED TAXI COMPANY KEY PERSONNEL.

(a)  Driving Requirement. Beginning January 1, 2007 and notwithstanding any other provision of this Code, include subdivision (f) of Section 1081, taxi permit-holders who are designated as "key personnel" pursuant to this Section may satisfy their annual driving requirement under Section 1081(f) by driving 120 hours per year and performing 1,500 hours of work per year as key personnel for the company.

(b)  Definitions. For purposes of this Section:

(i)  "Taxi company" shall mean a person or entity holding a valid color scheme permit under Section 1125.

(ii)  "Key personnel" shall mean a permit-holder who works in an administrative capacity or performs functions integral to the company. A permit-holder designated as key personnel must be a payroll employee of the taxi company and work on-site at the company's principal place of business.

(c)  Designation. Each taxi company seeking to designate one or more of its employees for a calendar year pursuant to this Section must file the designation, on a form to be provided by the Taxi Commission, by December 1st of the preceding year. The company may not change designations during the year. A permit-holder may only be designated by one company at a time, and may not be designated by more than one company during a calendar year.

The Taxi Commission will only recognize as designated personnel those permit-holders named in the designation form signed and filed by the color scheme permit-holder or its authorized representative as of December 1st.

(d)  Number of Designated Personnel At a Company.

A taxi company with 1 to 10 permits may not designate anyone under this Section.

A taxi company with 11 to 20 permits may designate one person.

A taxi company with 21 to 40 permits may designate two people.

A taxi company with 41 to 60 permits may designate three people.

A taxi company with 61 to 80 permits may designate four people.

A taxi company with 81 to 100 permits may designate five people.

A taxi company with 101 to 150 permits may designate six people.

A taxi company with 151 to 200 permits may designate seven people.

A taxi company with 201 to 300 permits may designate eight people.

A taxi company with 301 to 400 permits may designate nine people.

A taxi company with over 400 permits may designate nine people, plus one additional person for every 100 permits over 400.

The number of permits affiliated with a particular taxi company for the year shall be determined as of December 1st of the previous year, based on the records of the Taxi Commission. The number of designated personnel at a taxi company shall not be increased or decreased during the subsequent calendar year even if the number of permits at that company changes during the year.

(e)   Statement of Work Done. No later than February 1st of each year, each company that has designated one or more permit-holders pursuant to this Section must submit a written statement, under oath, of the number of hours each of its designated personnel worked in that capacity for the company during the previous year. The taxi company shall be responsible for the accuracy of the statement.

(f)   Partial Completion of Requirements. If a permit-holder performs at least 750 hours of work as designated personnel for the company during the year but less than 1,500 hours, the permit-holder shall be entitled to partial credit against the driving requirement on a pro rata basis. The credit shall correspond to the percentage of 1,500 hours that the designated permit-holder worked for the company in such capacity. If a permit-holder does not perform at least 750 hours of work as designated personnel for thecompany during the year, the permit-holder shall not be entitled to any credit against the driving requirement.

(Ord. 181-06, File No. 060539, App. 7/14/2006)


## SEC. 1082. ONLY NATURAL PERSONS LICENSED; ONE PERMIT PER PERSON; INDIVIDUAL PERMITTEES ONLY; EXCEPTIONS.

(a)   Individual Permit Holders. No permit to operate a motor vehicle for hire shall be issued except to a natural person and in no case to any business, firm, partnership, association or corporation, except as provided for in Subsection (c) of this Section. No more than one taxicab permit shall be issued to any one person, except as provided in Subsection (c) of this Section.

(b)   Permits Issued Only to Single Permittees. Except for permits issued in the name of more than one person prior to the effective date of this Article, no permit to operate a motor vehicle for hire shall be issued to, or in the name of, more than one person.

(c)   Exceptions for Existing Permits. The provisions of Subsection (a) of this Section shall not apply to any permit issued on or before July 1, 1978 that has been renewed and maintained in effect continuously since that date. Such permits shall continue in effect.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1083. SALE OR TRANSFER OF CORPORATE PERMITTEE; CORPORATE RECORDS.

(a)   Permits Void in Event of Transfer or Sale of Permittee. Any permit to operate a motor vehicle for hire held by a permittee that is not a natural person and which permit would otherwise remain in effect pursuant to Section 1082(c) shall be deemed null and void and revoked in any of the following circumstances:

(i)  If the permittee is or was sold or transferred at any time after June 6, 1978; with a cumulative sale or transfer of (A) 10 percent or more of the stock or other ownership of the permittee, or (B) 10 percent of the permittee's assets since June 6, 1978 constituting a sale or transfer for purposes of this Section unless such sale or transfer has been approved by the Police Commission in conformance with the requirements of this Article and San Francisco Charter, Appendix F.

(ii)  If after the effective date of this Article the management or control of the permittee is transferred for consideration;

(iii)  If after the effective date of this Article the permittee's rights to receive income derived from the lease of a permit is assigned, transferred or sold.

(b)  Corporate Records. Any corporation holding a permit hereunder shall maintain a stock register at the principal office of the corporation in San Francisco and the stock register shall be available to the Police Department for inspection. Such corporation shall report to the Department in writing any of the following:

(i)  Issuance or transfer of any shares of stock.

(ii)  Change in any of the corporate officers which is required by Section 821 of the California Corporations Code.

(iii)  Change of any member of its board of directors.

(c)  Any report required pursuant to this Section shall be filed with the Police Department within 10 days of the change, sale or transfer to be reported.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1084. PERMITS A PRIVILEGE; NONTRANSFERABILITY OF PERMITS; NOTICE RE DEATH OF PERMITTEE; LEASE OF PERMIT PROHIBITED AFTER PERMITTEE'S DEATH.

(a)  Permits granted pursuant to this Article constitute a privilege and do not constitute property of the permittee. Except as provided in Sections 1131(b) (taxicab color scheme permits) and 1133(b) (taxicab dispatch service permits) of this Article, no permit issued under this Article shall be transferable or assignable, either expressly or by operation of law.

(b)  Within 14 days of the death of any living person holding a permit issued under this Article, the taxicab dispatch service with which that permit is affiliated, if it has knowledge of the permittee's death, and each lessee of the permittee's permit who has knowledge of the permittee's death, shall notify the Chief of Police in writing of the permittee's death.

(c)  It shall be unlawful to attempt to lease or lease, as lessor or lessee, any permit issued pursuant to this Article with knowledge that the person in whose name that permit is issued is deceased.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1085. PERMIT FEES.

(a)  Payment of Fees Required. It shall be unlawful for any person required to obtain a permit pursuant to the provisions of this Article to operate a motor vehicle for hire, a taxicab dispatch service or a taxicab color scheme, without first obtaining the required permit and paying the applicable fee therefor.

(b)  Permit Fee. The fees charged for permits issued pursuant to this Article shall be set annually by the Board of Supervisors in an amount adequate to cover the estimated actual costs of the enforcement of this Article, including personnel, pursuant to Section 2.2 of Article I of the San Francisco Police Code; provided, however, that after January 1, 1990 said fees shall not be increased by an amount greater than 10 percent of the fee set for the preceding year. A prorated fee shall be charged for any licenseissued pursuant to Subsection (a) hereof for a period of less than one full year.

(c)  Notification of Number of Permits. The Chief of Police shall notify the Controller and the Tax Collector of the number of motor vehicle for hire permits in effect, and the seating capacity of the vehicles for which the permits were granted; and, whenever additional permits are granted, or existing permits are modified or revoked during

the year, the Controller and the Tax Collector shall be notified of same immediately. These notifications shall be in writing and signed by the Chief of Police, and shall bemade on the following dates:

    (i)   Taxicabs and limousines--on the 30th day of June of each year;

    (ii)  All other motor vehicles for hire--on the 31st day of December of each year.

(Added by Ord. 562-88, App. 12/27/88)


# SEC. 1086. DURATION OF LICENSES, ETC.; EXISTING PERMITS.

(a)  Expiration Dates for Permits, Etc. All licenses and medallions issued under the provisions of this Section for the operation of taxicabs and limousines shall expire on the first day of July next following their issuance. All other permits issued pursuant to this Article shall expire the first day of January next following their issuance.

(b)  Permits for the operation of motor vehicles for hire in effect on the effective date of this Article shall remain in full force and effect subject to the other provisions of this Article.

(Added by Ord. 562-88, App. 12/27/88)


# SEC. 1087. ENFORCEMENT FUND.

All permit fees collected pursuant to this Article shall be held in trust by the Treasurer of the City and County of San Francisco and shall be distributed according to the fiscal and budgetary provisions of the San Francisco Charter subject only to the following conditions and limitations: the proceeds from permit fees collected pursuant to this Article, including earnings from investments thereof, may be used only to compensate and defray the capital and operating costs incurred by the City and County ofSan Francisco in enforcing the provisions of this Article, including, without limitation, the costs incurred by the Police Department and the Controller to comply with their obligations as set forth in this Article. The foregoing permit fee fund is necessary for the purpose of regulation and to provide for the necessary investigation, inspections and administration under, and enforcement of, the provisions of this Article.

(Added by Ord. 562-88, App. 12/27/88)


# SEC. 1088. MEDALLIONS.

(a)  Issuance and Display. The Police Department shall issue a metallic medallion of a design approved by the Police Commission for each motor vehicle for hire license issued pursuant to the provisions of Sections 1079 through 1081 hereof. During all hours of operation of a motor vehicle for hire, the medallion shall be placed in the lower right corner of the windshield in such a manner that the serial number shall be clearly visible from the exterior of the vehicle; provided, however, that the Chief of Police shall designate the manner of displaying the medallion on motorized rickshaws and limousines.

(b)  Medallion Fees. Every motor vehicle for hire permit holder shall pay to the Police Department for each metallic motor vehicle for hire medallion a sum set by ordinance to cover the costs of producing and processing each such metallic motor vehicle for hire medallion as may be issued to him or her pursuant to the provisions of this Section. Said fees shall be paid once each calendar year.

(Added by Ord. 562-88, App. 12/27/88; amended by Ord. 88-99, File No. 981443, App. 4/30/99)


# SEC. 1089. DRIVERS PERMITS.

(a)  Permit Required. It shall be unlawful for any person to act as a driver of any motor vehicle for hire licensed pursuant to this Article unless that person holds a driver's permit from the Police Department issued pursuant to this Section.

(b)  Application. Application for a permit to drive a motor vehicle for hire shall be made to the Chief of Police on a form provided by the Police Department and shall pay to the City and County of San Francisco a fee to cover the costs of investigating and processing the application, such fee to be determined periodically as deemed

appropriate by the Police Commission. No application for a driver's permit hereunder shall be deemed to be complete until and unless such sum is fully paid.

(c)   Examination for Permit. Every applicant for a driver's permit as required by this Article shall be required to take and pass an examination given by the Chief of Police. Said examination shall cover the provisions of this Article and all rules or regulations promulgated pursuant thereto, the California Vehicle Code, the traffic regulations of the City and County of San Francisco.

(d)   Requisites for Driver's Permit. Each applicant for a driver's permit from the Chief of Police must:

(1)   Be a resident of the United States, of good moral character;

(2)   Be of the age of 21 years or over;

(3)   Be of sound physique, with good eyesight and not subject to any disease, condition, infirmity, or addiction to the use of alcohol or any controlled substance, which might render the applicant unfit for the safe operation of a taxicab or other motor vehicle for hire;

(4)   Be able to read and write the English language;

(5)   Be clean in dress and person;

(6)   Hold a valid California driver's license of a class sufficient for the lawful operation of the motor vehicle to be driven.

(e)   Photographs of Applicant. Each applicant for a driver's permit under this Section must file with his or her application to recent photographs of himself or herself of a size that may be easily attached to a motor vehicle for hire driver's license. One copy of said photograph shall be attached to the license when issued, and carried by such licensed driver at all times when driving a taxicab or other motor vehicle for hire. The photograph shall be so attached to the license that it cannot be removed and another photograph substituted without detection. Each licensed driver shall, upon demand by any police officer or passenger, exhibit his license and photograph for inspection. The other copy of the photo shall be filed with the application to the Police Department.

(f)   Issuance of Permit. After approving the application, the Chief of Police shall forward notice of that approval to the Tax Collector, who shall issue the permit upon payment by the applicant of the applicable fee.

(g)   Badge for Drivers. In addition to the permits required by this Section, there shall be furnished to each licensed driver of a taxicab, or other motor vehicle for hire, upon the presentation of a driver's annual permit granted by the Chief of Police, a badge of such form and style as the Tax Collector may prescribe, with the license number of such driver thereon, which must, under penalty of revocation of the license, be constantly and conspicuously displayed on the outside of the driver's clothing when engaged in his or her employment, and shall only be worn by the person to whom the badge is issued.

In addition thereto, the Tax Collector shall issue annually, to the person named in such permit, a driver's annual identification card which identification card shall be of such design and lettering as the Tax Collector shall determine. Separate fees shall be charged for the identification card and the driver's badge to cover the cost of issuance.

(h)   Renewal of Driver's Permits. Driver's licenses and permits shall be issued as of the first day of January of each year and shall be valid unless revoked or suspended, up to and including the 31st day of December, next succeeding. The Chief of Police may cause the renewal of the driver's license from year to year upon the filing with the Tax Collector of a statement by the driver providing his or her current address and current employer and the payment of the annual license fee. All driver's licenses and permits which are valid on the effective date of this Article shall remain in effect and may be renewed under this Section.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1090. REVOCATION OF PERMITS.

(a)   Revocation for Cause. Any permit issued under this Article may be suspended or revoked by the Police Commission for good cause after a noticed hearing. "Good cause" hereunder shall include, but shall not be limited to, the following:

(i)   The permittee ceased to be a full-time driver.

(ii)   The permittee failed to pay a permit fee after notice of nonpayment.

(iii)   The permittee or the lessee of the permittee's permit operated without the insurance required by this Article.

(iv)   The permittee or an agent of the permittee knowingly made false statements to or concealed information from the Police Commission, the Chief of Police or the Police Department.

(v)   The permittee has been convicted of any crime involving moral turpitude.

(vi)   The permittee has failed to satisfy any judgment for damages arising from unlawful or negligent operation under any permit issued under this Article.

(vii)   The permittee has been convicted of a misdemeanor under Section 1185 of this Article.

(viii)   The permittee violated the Traffic Code of the City and County of San Francisco or the Vehicle Code or related laws of the State of California.

(ix)   The permittee violated any applicable statute, ordinance, rule or regulation pertaining to the operation or licensing of the vehicles and services regulated by this Article, including any rules and regulations enacted by the Chief of Police pursuant to this Article.

Upon a showing of good cause, the Police Commission shall have discretion to suspend or revoke a permit as set forth above, except that a suspension and/or revocation shall be mandatory in the circumstances described in Subparts (i) through (vi) above.

(b)   Revocation of More Than One Permit. Where a person violating this Article holds more than one permit to operate a motor vehicle for hire in the City and County of San Francisco, the Police Commission may revoke or suspend all such permits.

(c)   Suspension by Chief of Police. The Chief of Police may suspend summarily any permit issued under this Article pending a disciplinary hearing before the Police Commission when in the opinion of said Chief of Police the public health or safety requires such summary suspension. Any affected permittee shall be given notice of such summary suspension in writing delivered to said permittee in person or by registered letter.

(Added by Ord. 562-88, App. 12/27/88)


# SEC. 1091. INSURANCE REQUIRED.

Unless otherwise provided by ordinance, no person, firm or corporation, shall operate any motor vehicle for hire unless and until such person, firm or corporation shall comply with the provisions of either Section 1092 or 1094 of this Article.

(Added by Ord. 562-88, App. 12/27/88)


# SEC. 1092. FILING INSURANCE POLICIES OR BOND WITH POLICE COMMISSION.

(a)   Each person, firm or corporation holding a permit to operate a motor vehicle for hire pursuant to this Article shall file with the Police Commission and thereafter keep in full force and effect a policy of insurance in such form as the Police Commission may deem proper and executed by an insurer approved by the said Commission insuring the public against any loss or damage that may result to any person or property from the operation of such vehicle or vehicles. Except as provided in Subsections (b) through(d) of this Section, the minimum amount of recovery in such policy of insurance shall be not less than the following sums:

(i)   Personal injury to or death of any one person, $100,000 and subject to the limit of $100,000 for each person injured or killed, $450,000 for such injury to, or the death of two or more persons in any one accident;

(ii)   Damage to property, $25,000 for any one occurrence;

(iii)   In lieu of the requirements in (i) and (ii) above, combined single limit coverage of $500,000.

(b)   For vehicles having a seating capacity of more than 10 persons the limit of liability for personal injury to, or death of any one person shall be $50,000 and subject to the limit of $50,000 for each person injured or killed, $100,000 for such injury to, or death of two or more persons in any one accident; damages to property, $25,000

for any one occurrence.

(c)  A person, firm or corporation holding a permit to operate a motor vehicle fore hire pursuant to this Article, may, in lieu of the aforesaid policy of liability insurance, file with said Commission a bond in such form as the Commission may deem proper executed by a surety company duly authorized to do business within the State of California. The bond shall be conditioned for the payment of the amounts set forth hereinabove and shall provide for the entry of judgment on motion of the State in favor of any holder of a final judgment on account of damages to property or injury to any person caused by the operation of such person's, firm's or corporation's motor vehicle.

If such person, firm or corporation owns or offers for hire one or more such motor vehicles, bonds shall be in the sum as follows:

    (i)   If only one, $100,000 any one occurrence.

    (ii)  If more than one but less than six, $200,000 for any one occurrence.

    (iii) If more than five but less than 21, $450,000 for any one occurrence.

    (iv) If more than 20 but less than 61, $600,000 for any one occurrence.

    (v)  If more than 60 but less than 101, $1,000,000 for any one occurrence.

    (vi) If more than 100, $3,000,000 any one occurrence.

Subject to the limits shown for any one occurrence, the bond shall be conditioned to pay $100,000 for injury to any one person and $25,000 for damage of property of any one person.

(d)  For vehicles having a seating capacity of more than 10 persons, said bond shall be in an amount for any one occurrence which shall be twice the corresponding amounts as set forth in Subsections (c)(i) through (c)(vi) of this Section.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1093. NEW POLICY TO BE FURNISHED.

If, at any time, the policy or certificate of insurance referred to in Sections 1091 and 1092 is cancelled by the issuing company, the insured-permittee shall report that fact to the Chief of Police within three days after the insured-permittee received notice of cancellation. The permittee shall replace said policy or certificate with another policy or certificate prior to the termination of the existing policy or certificate prior to the termination of the existing policy or certificate and provide immediate verification of that replacement policy or certificate to the Chief of Police. The Chief of Police shall thereafter review the replacement policy or certificate to verify that the insurer issuing the replacement policy or certificate satisfies the provisions of Section 1092.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1094. PROVISIONS FOR SELF-INSURERS.

Any person, firm, corporation, association or organization of owners of vehicles for hire who have a certificate of self-insurance from the State of California pursuant to Sections 16500 and 16056 of the Vehicle Code may file said certificate together with a policy of insurance providing excess insurance over self-insurance retention for single limit of not less than $1,000,000 applying to bodily injuries or property damage or a combination thereof, with the Police Commission, and shall thereupon be deemedin compliance with the provisions of Section 1092 of this Article.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1095. INFORMATION TO BE FILED WITH CHIEF OF POLICE.

(a)  Information Re Other Permits. No person, firm or corporation shall operate or cause to be operated any motor vehicle for hire, unless and until such person, firm or corporation shall file with the Police Commission a sworn statement setting forth the permits and/or certificates held, or proposed to be acquired, by applicant from

other governmental bodies relating to the proposed operation, and annually thereafter, and not later than the first week in May of each year, and as often as said Commission shall direct, file a sworn statement setting forth the permits and/or certificates then held by applicant from other governmental bodies relating to said operation, together with a sworn statement showing full compliance with all provisions of the Municipal Code and/or State or federal laws applicable to said operations. Failure to file such statement or statements shall constitute a violation of this Article and shall be deemed a cause for cancellation of any and all permits to so operate.

Excepting, however, every person, firm or corporation having heretofore filed such statement with the Board of Supervisors, shall file such annual statement as provided herein.

(b) Financial Information. The Controller of the City and County of San Francisco shall establish rules and regulations for the keeping and filing of financial statements, and accounting books and records, by permittees under this Article. The purpose of such rules and regulations shall be to provide information to the Board of Supervisors with respect to maximum rates to be authorized for motor vehicles for hire and to the Police Commission for the performance of its duties under the law.

(Added by Ord. 562-88, App. 12/27/88)

# SEC. 1096. CONTINUOUS OPERATION REQUIRED.

(a) Requirement. All permittees under this Article shall regularly and daily operate or arrange for the operation of their motor vehicle for hire during each day of the year to the extent reasonably necessary to meet the public demand for such motor vehicle for hire service.

(b) Revocation Upon Abandonment. Upon abandonment of such business for a period of 10 consecutive days by a permittee or operator, the Police Commission shall, after five days' written notice to the permittee or operator, revoke the permit or permits of such permittee or operator; except as provided in Subsection (c) of this Section.

(c) Suspension of Operations. The Police Commission may, on written application and following an investigation, grant to the holder of any permit hereunder permission to suspend operation pursuant to such permit for a period not to exceed 90 calendar days in any one 12-month period in case of sickness, death, or other similar hardship. Nothing in this Subsection shall be in conflict with or limit the provisions of Section 1153 of this Article pertaining to a suspension of operation by a jitney bus permittee.

(d) Motorized Rickshaws. Notwithstanding any contrary provisions of this Section, the Police Commission is authorized to allow any motorized rickshaw permittee to suspend operation during those times when in the judgment of the Police Commission, public convenience and necessity would not suffer as a result of the suspension of such operation. In making such determination, the Police Commission may consider the average weather conditions during such period of suspended operations and the availability of tourists wishing to use the services offered by a motorized rickshaw.

(Added by Ord. 562-88, App. 12/27/88)

# SEC. 1097. SAFE, CLEAN OPERATION REQUIRED.

No vehicle licensed as a motor vehicle for hire shall operate unless it is in a safe operating condition and has body and seating facilities which are clean and in good repair.

(Added by Ord. 562-88, App. 12/27/88)

# SEC. 1098. SMOKING BY DRIVERS PROHIBITED.

It shall be unlawful for any driver of a motor vehicle for hire in the City and County of San Francisco to smoke any cigar, pipe or cigarette, or to burn tobacco while passengers are occupying any of the seats in such vehicle.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1099. SANITARY CONDITION.

Every person owning or operating, or causing to be operated, any motor vehicle for hire under this Article shall thoroughly wash each such vehicle, when so operated, at least once a week, and shall also carefully sweep and clean each vehicle other than a taxicab daily. Whenever required in writing by the Board of Health of the City and County of San Francisco, every person owning or operating, or causing to be operated, any such vehicle within the limits of said City and County shall fully disinfect each vehicle so operated by spraying the vehicle with an efficient disinfectant.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1100. BRAKE INSPECTION.

Before taking any descending grade of five percent or over, the speed of any motor vehicle for hire licensed pursuant to this Article other than a taxicab or motorized rickshaw shall be reduced so as to test the working of the brakes thereof. The brakes on all motor vehicles for hire other than taxicabs and motorized rickshaws licensed pursuant to this Article shall be inspected and tested daily by competent inspectors employed by the person or persons owning or operating, or causing to be operated such vehicles.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1101. DRIVING RECKLESSLY OR UNDER INFLUENCE OF INTOXICANTS PROHIBITED.

It shall be unlawful for any person who operates a motor vehicle for hire licensed under this Article to do so (a) while under the influence of liquor, or (b) in a reckless and dangerous manner.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1102. LOADING REGULATED.

It shall be unlawful for any person operating a motor vehicle for hire licensed pursuant to this Article to permit that vehicle to remain standing upon the street for the purpose of loading or unloading passengers unless the vehicle is within two feet from the curb.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1103. POSTING SCHEDULE OF RATES.

Every taxicab, jitney and sightseeing bus shall have permanently affixed to the interior thereof, in a place readily to be seen by passengers, a frame covered with glass or plastic, enclosing a card upon which shall be printed in plain, legible letters the schedule of rates authorized for carriage in such vehicle and such other provisions of this Article as the Chief of Police shall prescribe. The said frame and enclosed card must be approved by the Chief of Police.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1105. SOLICITATION PROHIBITED.

(a)  It shall be unlawful for any driver of a motor vehicle for hire, or any person acting in concert with or on behalf of the driver, to solicit passengers for the vehicle where the solicitation is made from any public street, sidewalk, or other public place.

(b)  For purposes of this Section, "motor vehicle for hire" shall include any taxicab, limousine, or other privately owned motor-propelled passenger-carrying vehicle for hire, regardless of whether the City and County has or could issue a permit for that vehicle.

(c)  This Section shall not prohibit solicitation of passengers otherwise authorized in connection with cab pooling pursuant to Section 1147.9.

(Added by Ord. 72-00, File No. 000416, App. 4/28/2000)

## SEC. 1107. REPORTS OF LOST PROPERTY.

Drivers and operators of motor vehicles for hire shall promptly report to the Bureau of Inspectors of the Police Department within 24 hours all property of value fund in their vehicles by such drivers or operators or delivered to them by any person who has found such property.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1108. PUBLIC STANDS.

The following are hereby designated as public stands for licensed taxicabs, limousines and sightseeing buses:

(a) At or near the entrance to docks and wharves of passenger-carrying ships and other vessels;

(b) Railroad depots;

(c) Around such public squares, except Union Square, as may be designated to the Department of Public Works from time to time, but not on the streets, crosswalks or within double lines;

(d) Bus depots;

(e) At or near the entrance to rapid transit stations; provided, however, that no sightseeing bus shall be permitted to occupy said stands;

(f) All stands heretofore designated by the Department of Public Works pursuant to the provisions of former Section 1117 of this Code; provided, however, that the Board of Supervisors may, by resolution, designate the type, or types, of vehicles which shall be permitted to use any such stand, and may, by resolution, rescind the designation of any such stand;

(g) The Board of Supervisors, after notice has been duly given to the owner of the property fronting the space where such stand is to be located, and after public hearing has been held thereon, may, by resolution, designate such additional public stands as it finds necessary for the convenience of the public, and in its absolute discretion, may, by resolution, designate the type, or types of vehicles, including "jitney buses," which shall be permitted to use any such stand or to rescind the designation of any such public stand.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1109. REGULATING STANDING.

No driver of any taxicab or limousine while awaiting employment by passengers, shall do any of the following:

(a) Stand on any public street or place other than or upon a stand designated or established in accordance with the provisions of Section 1108 of this Article; or

(b) Seek employment by repeatedly and persistently driving his vehicle to and fro for a short space in front of any theater, hall, hotel, public resort, railroad or ferry station or other place of public gathering; or

(c) Interfere with the proper and orderly access to or egress from any theater, hall, hotel, public resort, railroad or ferry station or other place of public gathering.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1110. FALSE STATEMENTS PROHIBITED.

It shall be unlawful knowingly to make any false or misleading representation, or knowingly to conceal information where this Article requires that information be disclosed, in connection with the application for, renewal of, or

possible revocation of a permit issued under this Article.

(Added by Ord. 562-88, App. 12/27/88)

**DIVISION II**
**TAXICABS**


**Permits**


## SEC. 1120. TAXICAB PERMITS.

It shall be unlawful to own or operate a taxicab in the City and County of San Francisco unless a taxicab permit has been issued by the Police Commission for the operation of that vehicle. Taxicab permits shall be applied for and issued pursuant to Sections 1079 through 1081 and this Division of this Article.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1121. PERMIT APPLICATIONS; PREFERENCES; DRIVING EXPERIENCE REQUIRED.

(a)  Submission of Applications; Taxicab Waiting List. Applications for taxicab permits shall be accepted by the Taxi Commission and shall be recorded by the date and time at which each application is received. The Commission shall maintain a list in the order of receipt ("taxicab waiting list") of all taxicab permit applications that have not been acted upon, in excess of the number of such permits authorized pursuant to Section 1079. When a taxicab permit becomes available for issue and an applicant on the taxicab waiting list is eligible for a hearing before the Commission, the Commission shall so notify the applicant.

Each applicant for a taxicab permit must, at the time of filing the application:

> (1)  Be a resident of the United States, of good moral character;

> (2)  Be 21 years or older;

> (3)  Be free of any disease, condition, infirmity, or addiction to the use of alcohol or any controlled substance, which might render the applicant unfit for the safe operation of a taxicab or any other motor vehicle for hire;

> (4)  Be able to read and write the English language;

> (5)  Be clean in dress and person;

> (6)  Hold a valid California driver's license of a class sufficient for the lawful operation of the motor vehicle driven; and

> (7)  Have held a driver's permit pursuant to Section 1089 of this Article for two years immediately preceding the date of application for a taxicab permit.

(b)  Driving Experience Required. To qualify for issuance of a taxicab permit, an otherwise qualified applicant must have the driving experience specified in subparts (i)--(vi) below, subject to the modification stated in subsection (c). The required driving may be satisfied only by driving a taxicab and/or ramped taxi for which a permit has been issued by the Taxi Commission. For the purposes of this subsection (b), the phrase "application heard by the Commission during calendar year" includes an application publicly scheduled to be heard in the calendar year, but continued in that calendar year to the next calendar year by the Commission.

> (i)  For an application heard by the Commission during calendar year 2004: The applicant must have been a full-time driver during the 12 months immediately preceding the Commission's hearing on the application. For the purposes of this subpart (i), "full-time driver" shall be defined in accordance with Section 1076(o), except that the time frame applicable to the definition is the 12 months immediately preceding the hearing on the application rather than 12 months constituting a calendar year.

> (ii)  For an application heard by the Commission during calendar year 2005: The applicant must have been a full-time driver, as defined in Section 1076(o), during calendar year 2004 or the 12 months

immediately preceding the hearing on the application.

(iii)   For an application heard by the Commission during calendar year 2006: The applicant must have been a full-time driver, as defined in Section 1076(o), during any two calendar years from 2004 to 2006, inclusive.

(iv)   For an application heard by the Commission during calendar year 2007: The applicant must have been a full-time driver, as defined in Section 1076(o), during any three calendar years from 2004 to 2007, inclusive.

(v)   For an application heard by the Commission during calendar year 2008: The applicant must have been a full-time driver, as defined in Section 1076(o), during any four calendar years from 2004 to 2008, inclusive.

(vi)   For an application heard by the Commission in calendar year 2009 and subsequent calendar years: The applicant must have been a full-time driver, as defined in Section 1076(o), for five years, as specified in Alternative 1 or Alternate 2 below.

Alternative 1: The applicant was a full-time driver during the calendar year immediately preceding the hearing, and during four of the five calendar years immediately preceding that calendar year.

Alternative 2: The applicant was a full-time driver during the calendar year in which the application is heard, and during four of the five calendar years immediately preceding that calendar year.

(vii)   The Commission may substitute an equivalent amount of prior full-time driving experience for the experience required under subsections (b)(i)--(vi) above, where the Commission determines after a public hearing that the applicant has been unjustly and systematically denied employment in the taxi industry in retaliation for engaging in legitimate political, expressive, or labor activity. The applicant shall have the burden of establishing such a claim, and any such determination shall require a two-thirds' vote of the Commission.

(c)   Modification of Required Driving Experience. If no applicant has the driving experience required pursuant to subsections (b)(ii)--(vi), but public convenience and necessity as determined pursuant to Section 1079 warrants issuance of a taxicab permit, the Taxi Commission may issue the permit to an otherwise qualified applicant who has been a full-time driver during the 12 months immediately preceding the Commission's hearing on the application. For purposes of this first paragraph of subsection (c), "full-time driver" shall be defined in accordance with Section 1076(o), except that the time frame applicable to the definition is the 12 months immediately preceding the hearing on the application rather than 12 months constituting a calendar year.

The Commission may be regulation establish additional driving experience required for the issuance of a taxicab permit under the circumstances described in this subsection (c), provided that the regulation shall require neither greater driving experience than is required pursuant to subsections (b)(ii)--(vi) nor driving experience for any calendar year greater than the driving experience encompassed in the definition of "full-time driver in Section 1076(o).

(d)   Educational Requirements. In addition to meeting the driving requirements in subsection (b) and (c), applicants must also meet any educational or training requirements imposed by the Taxi Commission.

(e)   Burden of Proof on Applicant; Recordkeeping by Applicant. The taxicab permit applicant shall have the burden of showing that he or she has the driving experience required to qualify for the taxicab permit. The applicant shall keep records sufficient to document his or her driving for the calendar year or years necessary to satisfy the driving requirement.

(f)   Recordkeeping by Color Scheme Permitholders. Holders of color scheme permits shall maintain and retain records that will document driving performed by drivers of taxicabs and ramped taxis affiliated with the color scheme. Within 60 days of the effective date of this subsection (e), the Taxi Commission shall adopt a regulation requiring holders of color scheme permits to maintain and retain such records for a period of time sufficient to aid the Commission in determining whether applicants have met the specific driving requirements mandated by subsection (b). Failure of the Commission to adopt such a regulation, or failure of the color scheme permitholder to comply with the regulation, shall not excuse the permit applicant from the driving requirement or relieve the applicant from the burden of proving that he or she has satisfied the requirement.

(g)   Notice of Required Driving. Notice of the driving experience required of taxicab permit applicants pursuant to subsections (b) and (c) and of the applicant's burden of proving the requisite driving experience and maintaining adequate records pursuant to subsection (d), shall be given by the City and color scheme permitholders pursuant to subparts (i)--(iii) below. In accord with Section 1148.1(e), the notice shall also include

information pertaining to ramped taxi permit applicants. Failure to give the notice required by subparts (i), (ii), or (iii) shall not excuse the taxicab permit applicant from the driving requirement or relieve the applicant from the burden of proving that he or she has satisfied the requirement. The Taxi Commission may provide additional notice beyond that required by subparts (i)--(iii).

(i)   Within 30 days of the effective date of this subsection (f), the Commission shall give written notice of the requirements of subsections (b), (c), and (d) to each applicant on the taxicab waiting list. Thereafter, the Commission shall give written notice to each new applicant on the taxicab permit waiting list on or before the filing of the application.

(ii)   Beginning no later than 30 days after the effective date of this subsection (f), the Office of Treasurer and Tax Collector, in consultation with the Commission, shall give written notice of the requirements of subsections (b), (c), and (d) to each person who is obtaining or renewing the driver of public passenger vehicle permit. Said notice shall additionally inform the person of the existence of the taxicab waiting list and the process for getting on the list.

(iii)   Within 20 days of the effective date of this subsection (f), the Commission shall adopt a regulation requiring each holder of a color scheme permit to post written notice of the requirements of subsections (b), (c), and (d) at a location at the color scheme's place of business that is ordinarily within the view of working taxi drivers affiliated with the color scheme.

(Added by Ord. 562-88, App. 12/27/88; amended by Ord. 111-04, File No. 040343, App. 7/1/2004)


# SEC. 1122. ELIGIBILITY FOR TAXICAB PERMITS.

Before issuing a taxicab permit, the Police Commission shall consider the criteria set forth in Section 1081 of this Article. In addition, before issuing a taxicab permit, the Police Commission must determine that:

(a)   The applicant will be a full-time driver;

(b)   The applicant will operate said permit under or in association with a licensed taxicab dispatch service with radio-dispatch capability as defined in Section 1076(d) of this Article; and

(c)   The applicant holds a driver's permit pursuant to Section 1089 of this Article.

(Added by Ord. 562-88, App. 12/27/88)


# SEC. 1123. RADIO DISPATCH CAPABILITY.

(a)   Radio Required. Commencing 60 days after the effective date of this Article, it shall be unlawful for any taxicab licensed pursuant to this Article to be operated without a radio permitting two-way communication with a taxicab dispatch service licensed pursuant to this Article.

(b)   Affiliation with Taxicab Dispatch Service Required. Prior to the issuance of a taxicab permit, every applicant for such a permit shall file with the Police Commission a statement, giving the name, address, and phone number of the taxicab dispatch service through which taxicab service is to be made available to the public pursuant to the permit for which application has been made. Within 60 days of the effective date of this Article, such a statement shall be filed for each permit outstanding on the effective date of this Article. No permit shall be registered to more than one radio-dispatch service. Notice of any change of taxicab dispatch service affiliation must be given to the Police Commission in writing by the taxicab permittee within 10 days of the effective date thereof.

(Added by Ord. 562-88, App. 12/27/88)


# SEC. 1124. LEASE OF TAXICAB PERMIT.

Provided that a taxicab permit is operated in compliance with all other applicable statutes, laws, rules and regulations, a taxicab permittee may operate his or her permit by authorizing another to drive or operate pursuant to said permit under any otherwise lawful lease, employment, or other agreement. A true and correct copy of such lease, employment, or other agreement shall be filed by the permit holder with the Chief of Police within 10 days of the

execution of that agreement. Nothing in this Section shall be deemed to modify, limit or excuse the obligations of any permittee pursuant to the provisions of Section 1123 of this Article.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1124.5. EMPLOYEE STATUS FOR DRIVERS.

(a)  Notwithstanding the provisions of Section 1124, no person shall drive a taxicab who is not either the permit-holder for that taxicab, an employee of the permit-holder, or an employee of the color scheme permit-holder for that taxicab. No taxicab permit-holder or color scheme permit-holder shall cause or permit any person to drive a taxicab pursuant to that taxicab permit who is not either the permit-holder for that taxicab, an employee of the permit-holder, or an employee of the color scheme permit-holder for that taxicab. For purposes of this Section, "taxicab" shall include a ramped taxicab.

(b)  The provisions of Subsection (a) shall not take effect unless and until the Board of Supervisors accepts the petition provided for in Subsection (c).

(c)  Any person may submit to the Board of Supervisors a petition signed by more than 50 percent of all full-time and regular part-time licensed taxicab drivers in the City, other than taxicab permit-holders, stating that the signer wishes to drive as an employee pursuant to Subdivision (a) of this section. The following rules and procedures shall apply to any such petition:

(1)  The total number of full-time and regular part-time drivers shall be computed on the basis of 2.5 eligible drivers for each full-time taxicab permit issued. A "regular part-time driver" shall be defined as a driver who drives less than five full shifts but at least two full shifts per week.

(2)  No signature on any such petition shall be valid if signed more than six months prior to submission of the petition to the Board of Supervisors. All signatures collected shall be submitted to the Taxi Commission for verification at the same time.

(3)  Each signature shall include the driver's badge number. Upon submission of the petition, the Police Department shall provide the Board of Supervisors with the names and badge numbers of qualified drivers for the six-month period during which the signatures were collected.

(d)  The Board of Supervisors, or a committee designated by the President of the Board, shall by motion accept the petition if it determines that the petition has been circulated and signatures obtained in a fair and reliable manner and that the petition represents an accurate and reliable measure of the wishes of the majority of the taxicab drivers. The provisions of Subsection (a) shall take effect 30 days after the Board accepts the petition pursuant to this subsection.

(e)  No person shall interfere with, restrain, coerce or retaliate against any other individual for engaging in the solicitation of signatures or other related activities pursuant to this Section. Violation of any provision of this Section may constitute good cause to suspend or revoke a permit pursuant to Section 1090 of this Article.

(Added by Ord. 366-98, App. 12/18/98)

## SEC. 1125. TAXICAB COLOR SCHEMES; ADOPTION; PERMITS; CHANGES.

(a)  Color Scheme Required. Upon the issuance of a taxicab permit, every taxicab permittee shall adopt a distinguishing taxicab color scheme that has been approved by the Taxi Commission pursuant to Subsection (b) of this Section. The taxicab permittee's choice of color scheme shall be subject to the approval of the Taxi Commission, which approval shall be given except when it clearly would not be in the public interest to do so.

(b)  Color Scheme Permits. Any holder of a taxicab permit or a taxicab dispatch service permit under this Article may apply to the Taxi Commission for taxicab color scheme permit pursuant to Section 1080 of this Article. That permit shall entitle the holder to the exclusive rights to the use of that taxicab color scheme for taxicabs licensed pursuant to this Article; provided, however, that the permittee under this Subsection may authorize taxicab permit holders to adopt the licensed taxicab color scheme, as setforth in Subsection (a). Notwithstanding the provisions of Section 1083 of this Article (nontransferability of permits), the permits issued pursuant to this Section are transferable, subject to the approval of the Taxi Commission, who shall determine that the proposed transferee meets the criteria set forth in Section 1081 of this Article. The permittee shall give notice to the Taxi

Commission of any intended transfer at least 14 days prior to any such transfer. Applicants for permits authorized by this Section, as well as for color scheme changes and renewal of permits, shall pay to the City and County of San Francisco a sum set by ordinance to cover the costs of advertising, investigating, and processing the application for each permit.

(c)  Existing Color Scheme. All persons and entities who, prior to the effective date of Ordinance 562-88, have obtained permission from the Chief of Police to use a taxicab color scheme are hereby deemed to be permittees under this Section; provided, however, that such persons or entities shall hereafter pay to the Chief of Police the taxicab color scheme permit fee as established by the Chief of Police.

(d)  Change of Color Scheme. It shall be unlawful for any taxicab permittee or operator to make or cause to be made any change whatsoever in the distinguishing color scheme of any taxicab without the prior written approval of the Taxi Commission, which approval shall be given except when it clearly would not be in the public interest to do so. No change in distinguishing taxicab color scheme shall be allowed if such change will result in the discontinuance, interruption or reduction of radio-dispatched taxicab service, and the Taxi Commission shall consider the impact of a proposed change of distinguishing taxicab color scheme upon the quantity and quality of radio-dispatched taxicab service or paratransit service available to the public before allowing any such change.

(Added by Ord. 562-88, App. 12/27/88; amended by Ord. 88-99, File No. 981443, App. 4/30/99; Ord. 100-04, File No. 040301, App. 6/4/2004)


# SEC. 1126. NAME ON VEHICLE.

Every taxicab licensed pursuant to this Article shall have the name under which the owner operates painted in letters at least two inches in height on the side doors of each side of the vehicle.

(Added by Ord. 562-88, App. 12/27/88)


# SEC. 1127. TAXICAB DISPATCH SERVICE PERMITS.

(a)  Permit Required. It shall be unlawful to own or operate a taxicab dispatch service in the City and County of San Francisco unless a permit has been issued by the Police Commission for the operation of that service pursuant to the provisions of this Article. Applications for such permits shall be made pursuant to the provisions of Section 1080 of this Article.

(b)  Permits Transferable. Notwithstanding the provisions of Section 1083 of this Article, the permits issued pursuant to this Section are transferable, subject to the approval of the Chief of Police, who shall determine that the proposed transferee meets the criteria set forth in Section 1081 of this Article. The permittee shall give notice to the Chief of Police of any intended transfer at least 30 days prior to any such transfer.

(Added by Ord. 562-88, App. 12/27/88)


## Regulations Governing Operations


# SEC. 1135. RATES FOR TAXICABS.

(a)  The rates of fare for taxicabs shall be as follows: $2.85 for the first fifth of a mile or "flag"; $0.45 for each additional fifth of a mile or fraction thereof; $0.45 for each one minute of waiting or traffic delay time. The aforementioned rates of fare for taxicabs shall become operative on January 1, 2003 or, if the effective date of the Ordinance creating the higher cap on gate fees provided for in Section 1135.1(b) of this Article occurs thereafter, on the effective date of that Ordinance. For out-of-town trips exceeding 15 miles beyond City limits, the fare will be 150 percent of the metered rate; for trips exceeding 15 miles from San Francisco International Airport and not terminating within the City limits of San Francisco, the fare will be 150 percent of the metered rate except for those trips from San Francisco International Airport traversing through San Francisco going to Marin County or to the East Bay the 15-mile limit will apply from the City limits of San Francisco as set forth

, above. For taxicab trips originating at San Francisco International Airport that incur an airport trip fee, the taxicab driver may collect $2.00 of that trip fee from the passenger upon receipt of cab fare from the passenger.

(b)   The driver of a public passenger vehicle may transport two or more passengers who voluntarily agree to share the vehicle from the same boarding point to one destination point. Each passenger shall pay a fare at the destination point in an amount equal to the total fare divided by the number of passengers sharing the ride.

(c)   A passenger who first engages a public passenger vehicle has the exclusive right to conveyance therein to his or her destination. The driver shall not solicit or accept any additional passenger without the prior consent of any passenger who has previously engaged the vehicle.

(d)   It shall be unlawful for any taxicab operator or taxicab dispatch service to levy an administrative fee, service charge, processing fee, or other surcharge on drivers of taxicabs for trips paid with scrip, credit cards or other non-cash tender.

(Added by Ord. 562-88, App. 12/27/88; amended by Ord. 245-91, App. 6/26/91; Ord. 114-96, App. 3/13/96; Ord. 213-97, App. 6/6/97; Ord. 188-98, App. 6/12/98; Ord. 136-00, File No. 000391, App. 6/16/2000; Ord. 84-02, File No. 011716, App. 5/31/2002; Ord. 228-02, File No. 020678, App. 12/5/2002)


## SEC. 1135.1. GATE FEES.

(a)   Cap on Gate Fees. The mean gate fee charged drivers by a taxicab company may not exceed $85.00 for a shift of 10 hours or longer. The cap shall be prorated at $8.50 per hour for shifts shorter than 10 hours. The mean gate fee shall be determined by adding together the gate fees charged by the company for all available shifts during one week and dividing that total by the number of available shifts during the week. The aforementioned cap on gate fees and the higher cap on gate fees provided for in subsection(b) shall become operative on January 1, 2003 or, if the effective date of the Ordinance creating the higher cap on gate fees occurs thereafter, on the effective date of that Ordinance.

(b)   Higher Cap on Gate Fees. Notwithstanding the provisions of subsection (a), the mean gate fee charged drivers by a taxicab company may not exceed $91.50 for a shift of 10 hours or longer and the cap shall be prorated at $9.15 per hour for shifts shorter than 10 hours, provided that the following conditions are met once they take effect:

(i)   The taxicab company is in compliance with the rules and regulations established by the Controller of the City and County of San Francisco pursuant to Section 1095(b) of this Article. This condition shall take effect on January 1, 2003 or, if the effective date of the Ordinance creating the higher cap on gate fees occurs thereafter, on the effective date of that Ordinance. "Compliance" shall mean that by no later than January 1, 2003 or, if the effective date of the Ordinance creating the higher cup on gatefees occurs thereafter, by no later than the effective date of that Ordinance, the taxicab company has submitted the information required by the Controller's rules and regulations for the most recent year the information is required, and by no later than April 1, 2003 the taxicab company has submitted the information required by the Controller's rules and regulations for the three most recent years the information is required. The condition that the taxicab company be in compliance with the Controller's rules and regulations is ongoing; hence, the right to charge the higher mean gate fee authorized by this subsection is dependent on continued fulfillment of this condition.

(ii)   All taxicabs operating under the taxicab company's color scheme are covered by workers' compensation insurance. This condition shall take effect on May 1, 2003. The taxicab company shall not be deemed to fulfill this condition until the taxicab company has submitted to the Taxi Commission proof that the condition is fulfilled. This condition is an ongoing condition, and the aforementioned requirement for proving that the condition is fulfilled is an ongoing requirement; hence, the right to charge the highermean gate fee authorized by this subsection is dependent on continued fulfillment of the condition and continued compliance with the proof requirement.

(c)   "Gate Fee" Defined. For the purposes of this Section, "gate fee" shall mean any monetary fee or other charge or consideration, or any combination thereof, required of a driver other than a permit-holder for the privilege of driving a taxicab during a particular shift, or for any period of time, including receipt of all services provided in connection with such privilege, whether said fee is set by contract, lease or other agreement, orally or in writing, and whether said fee is paid by the driver as a flatrate, as a commission on receipts from fares, or as a specified fee for any other purpose.

(d)  Regulations; Penalties. The Taxi Commission may, from time to time and after a noticed public hearing, adopt regulations to carry out the purposes of this Section. Violation of any provision of this Section, or of any regulation adopted pursuant to this Section, may be cause for revocation or suspension of any permit granted to the violator by the City and County related to the operation of taxicabs or other motor vehicles for hire, or for the imposition of any other penalties authorized under this Article.

(e)  Evaluation By Taxi Commission. The Taxi Commission shall evaluate the impact of this ordinance and any lease fee cap and report back to the Board of Supervisors within nine months of the final adoption of this ordinance.

(f)  Operative Date. This Section shall only become operative on the date that the fare increases authorized in Ordinance No. 188-98 become operative.

(g)  Sunset Provisions Pertaining to Higher Cap on Gate Fees. Subsection (b) shall expire by operation of law under either of the circumstances described below:

(i)  By no later than May 1, 2003, the Controller shall submit a recommendation to the Board of Supervisors for a specific long-term lease fee cap covering all long-term lease drivers. If within 90 days of the Controller's submission of a recommendation, or, if the Controller fails to meet the deadline for submitting a recommendation, by no later than March 1, 2004, the City fails to enact into law an ordinance prescribing a specific long-term lease fee cap covering all long-term lease drivers, subsection (b) shall expire.

(ii)  By no later than October 1, 2003, the Controller shall submit a recommendation to the Board of Supervisors for enactment of a program that would make a substantial and reasonable degree of health insurance or health benefits available to all taxi drivers. The Controller's recommendation shall be based on his study of the health insurance/health benefits issue, which shall include consultation with City departments having expertise in one or more dimensions of the issue. If, within 90 days of the Controller's submission of a recommendation, or, if the Controller fails to meet the deadline for submitting a recommendation, by no later than January 1, 2004, the City fails to enact into law an ordinance that establishes a program that makes a substantial and reasonable degree of health insurance or health benefits available to all taxi drivers, subsection (b) shall expire, unless the Controller certifies that it is not feasible for the City to establish such a program.

(iii)  The Board of Supervisors may be resolution extend the date by which the City must enact the ordinances described in subparts (i) and (ii) to prevent the expiration of subsection (b), provided that the Board finds that further time is needed to resolve issues relating to the ordinances and that progress is being made on developing the ordinances for the Board's consideration.

(Added by Ord. 362-98, App. 12/18/98; amended by Ord. 228-02, File No. 020678, App. 12/5/2002; Ord. 204-03, File No. 030998, App. 8/8/2003; Ord. 256-03, File No. 031608, App. 11/7/2003)


## SEC. 1135.2. LEASE FEES.

(a)  Cap on Lease Fees. The monthly lease fee for the use of a taxicab permit may not exceed $1,800. The cap shall be prorated for leases longer or shorter than one month.

(b)  "Lease Fee" Defined. For the purposes of this Section, "lease fee" shall mean any monetary fee or other charge or consideration, or any combination thereof, charged by or paid to a permit-holder for the privilege of operating under the permit-holder's permit during a particular shift, or for any period of time, whether said fee is set by contract, lease or other agreement, orally or in writing, whether said fee is set as a flat rate, as a commission on receipts from fares, or as a specified fee for any other purpose, and whether said fee is paid by the driver or a third party.

(c)  Chief's Regulations; Penalties. The Chief of Police may, from time to time and after a noticed public hearing, adopt regulations to carry out the purposes of this Section. Violation of any provision of this Section, or of any regulation adopted pursuant to this Section, may be cause for revocation or suspension of any permit granted to the violator by the City and County related to the operation of taxicabs or other motor vehicles for hire, or for the imposition of any other penalties authorized under this Article.

(d)  Evaluation By Taxi Commission. The Taxi Commission shall evaluate the impact of this ordinance and any gate fee cap and report back to the Board of Supervisors within nine months of the final adoption of this

ordinance.

(e)  Operative Date. This Section shall only become operative on the date that the fare increases authorized in Ordinance No. 188-98 become operative.

(f)  Sunset Provision. The provisions of this Section shall expire twenty-four months after the effective date of the Section.

(Added by Ord. 364-98, App. 12/18/98)

## SEC. 1136. RATES FOR BAGGAGE.

The driver of any taxicab shall be entitled to charge an additional amount not to exceed $1 for each trunk and for luggage that cannot be conveyed either in the passenger compartment of the vehicle or in the vehicle's trunk with the trunk-lid closed. Each passenger shall be entitled to have conveyed without charge such valise or small package as can be conveniently carried within the vehicle. Other than the charges authorized by this Section, no charge shall be made by the driver for loading or unloading baggage.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1137. REVIEW OF RATES OF FARE AND CAP ON GATE FEES.

The rates provided in Sections 1135 and 1136 of this Article and the cap on gate fees provided in Section 1135.1 of this Article shall be reviewed by the Controller in even-numbered years, beginning with 2004. Not later than August 1st of each even-numbered year, the Controller shall transmit to the Board of Supervisors a determination as to increases or decreases in the rates of fare for taxicabs and an increase or decrease in the cap on gate fees based upon changes in the Consumer Price Index since the prior determination, and related information submitted to the Controller pursuant to Section 1095(b) of this Article. The Controller's August 1, 2004 determination as to increases or decreases in the rates of fare for taxicabs and an increase or decrease in the cap on gate fees shall be based upon changes in the Consumer Price Index since January 1, 2003, and related information submitted to the Controller pursuant to Section 1095(b) of this Article. In addition, the Controller's August 1, 2004 determinationboth as to increases or decreases in the rates of fare for taxicabs and as to an increase or decrease in the cap on gate fees shall include appropriate adjustments to ensure, in accordance with the procedure provided for in Section 1137.5 of this Article, that appropriate sums are collected to offset the increased monthly cost of paratransit scrip incurred by the paratransit program, except if the voters of the City and County of San Francisco have reauthorized a new sales tax to fund transportation.

The Controller's determination as to increases or decreases in the rates of fare for taxicabs and an increase or decrease in the cap on gate fees shall take effect on November 1 of the even-numbered year in which the Controller makes the determination, and shall remain in effect through October 31 of the next even-numbered year, unless the following events occur: (i) By September 1 of the even-numbered year in which the Controller makes the determination the Board of Supervisors by resolution determines that the Board, or a committee thereof, should hold a hearing on the Controller's determination; (ii) By October 1 of that year a hearing is held in accordance with the aforementioned resolution; and (iii) by October 31 of that year the Board adopts a resolution disapproving or modifying the Controller's determination. Any resolution modifying the Controller's determination shall be based upon changes in the Consumer Price Index, costs recently incurred and expected to be incurred by drivers and color scheme permitholders, projected income of drivers and projected revenues of color scheme permitholders, and local economic conditions. If all three events occur, the Controller's determination shall not go into effect on November 1 of that year.

The Controller's determination as to increases or decreases in the rates of fare for taxicabs and an increase or decrease in the cap on gate fees shall, beginning January 1, 2006, treat the higher mean gate fee cap of $91.50, provided for in Section 1135.1(b), as if it were $90.00 when instituted, and treat the higher meter rate of $2.85 for the first fifth of a mile or "flag," as provided for in Section 1135(a), as if it were $2.75 when instituted. In addition, the Controller's determination as to increases or decreases in the rates of fare for taxicabs and an increase or decrease in the cap on gate fees shall, beginning January 1, 2006, make a similar accounting for any adjustments made in the Controller's August 1, 2004 determination designed to offset increased costs to the paratransit program arising from further increases in meter rates.

In cases where the holder of more than one permit to operate a sedan, limousine or taxicab fails to render a financial report within the time prescribed and in such form as the Controller may request, for the purpose of reviewing the rates of fare for taxicabs and the cap on gate fees and making a determination as to increases or decreases in the

rates of fare for taxicabs and an increase or decrease in the cap on gate fees, such failure shall be a basis for cancellation of such permits by the Taxi Commission, provided such cancellation is approved by the Board of Supervisors.

(Added by Ord. 562-88, App. 12/27/88; amended by Ord. 188-98, App. 6/12/98; Ord. 228-02, File No. 020678, App. 12/5/2002)


## SEC. 1137.5. INCREASED COST OF PARATRANSIT PROGRAM.

From January 1, 2003 through June 30, 2006, MUNI shall calculate on a monthly basis the increased cost of paratransit scrip incurred by the paratransit program as a result of the increase in rates of fare for taxicabs provided for in this Ordinance or any increase in rates of fare for taxicabs resulting from the Controller's determination or any modification thereof as provided for in Section 1137. The increased monthly cost of paratransit scrip shall be divided equally among all taxicab permits in operation, to achieve an average increased cost per taxicab permit for each month. From January 1, 2003 through June 30, 2006, that cost shall be allocated to color scheme permitholders on a monthly pro rata basis, dependent on the number of taxicab permits affiliated with each color scheme. By January 15, 2003, the Taxi Commission shall adopt procedures for calculating and collecting appropriate sums from color scheme permitholders to offset the increased monthly cost of paratransit scrip incurred by the paratransit program. If the voters of the City and County of San Francisco reauthorize a new sales tax to fund transportation, the Board of Supervisors shall convene a hearing to consider whether it is necessary to continue the program designed to offset MUNI's increased paratransit costs pursuant to this Section.

(Added by Ord. 228-02, File No. 020678, App. 12/5/2002; Ord. 118-06, File No. 060708, App. 6/14/2006)


## SEC. 1138. WAYBILL.

Drivers of taxicabs and motorized rickshaws shall keep an accurate and legible waybill, which waybill shall set forth the following information:

    (a)   Date of waybill;

    (b)   Driver's name;

    (c)   Vehicle number and vehicle license number;

    (d)   Number of medallion issued by the Police Department;

    (e)   Time driver began for period covered by waybill;

    (f)   Starting mileage of the taxicab for period covered by waybill;

    (g)   Starting meter units for the period covered by the waybill;

    (h)   Ending time for the period covered by the waybill;

    (i)   Ending mileage of the taxicab for the period covered by the waybill;

    (j)   Ending meter units for the period covered by the waybill;

    (k)   Number of passengers for each trip;

    (l)   The origin and destination of each trip;

    (m)   The charges authorized and made for each trip;

    (n)   The time of hire and discharge for each trip.

The waybill shall be retained for a period of one year at the business address of the owner of the permit. Said waybills shall be available for inspection by any police officer during normal business hours.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1139. EMERGENCY RATES FOR TAXICABS.

During any period of emergency, strike or other impairment or lack of municipal railway transportation, declared by the Mayor and affecting the entire City or any part thereof, taxicab operators shall accept passengers traveling in the same general direction, though each passenger or passengers may have differing points of pickup or discharge. At each stop for the pickup or discharge of a passenger or passengers, the taxicab operator shall collect, or tabulate for later collection at the passenger's point of discharge, the pro-rata share of the amount due as indicated by the meter, and said meter shall then be reset. The rates shall be those set forth in Section 1135.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1140. TAXIMETERS.

(a) Use of Inaccurate Taximeters Prohibited. The use of any inaccurate taximeter or other measuring instrument for the purpose of gauging or indicating distance traveled, or waiting time, or for the purpose of fixing rates to be collected from the public, is hereby prohibited, and it shall be the duty of the owner or lessee in possession of any motor vehicle for hire to which there is attached any taximeter or other measuring instrument, to at all times keep said taximeter or other measuring instrument accurate.

(b) Inspection of Taximeters. Every taximeter or other measuring instrument used for the purpose of gauging or indicating distance traveled or waiting time or for the purpose of computing fares to be collected from the public shall be subject to inspection at all times by the Chief of Police or his authorized representative. The Chief of Police may at any time detail police officers to inspect any or all taximeters or other measuring instruments so used when in his opinion such instruments are inaccurate. Any police officer is directed, upon complaint of any person that the fare charged is more than the legal fare, to investigate and report such complaint immediately to the Chief of Police who shall cause the taximeter or other measuring instrument upon the motor vehicle complained of to be at once inspected. Any person, firm or corporation who, with knowledge of such fact maintains any taximeter or other measuring instrument which registers charges in excess of the legal fare and collects such fare, is subject to revocation of license.

(c) Illuminating Devices. Each motor vehicle to which there is attached a taximeter, while in use in the City and County of San Francisco, for the transportation of passengers for hire, shall be equipped with an efficient illuminating device, either flexible or fixed, so arranged as to enable the passenger or passengers to conveniently observe the meter and the amount of fare registered thereon.

(d) Operation Without Approved Taximeters Prohibited. It shall be unlawful for any driver or operator of any motor vehicle for hire in soliciting trade from the public to represent his vehicle as a taxicab or sedan unless it is equipped with a taximeter in working order, duly inspected and approved as in this Section provided, and unless such vehicle conforms in other respects to the definition of taxicab and sedan in this Article contained.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1141. DISAGREEMENT AS TO FARE; RECEIPT.

(a) Decision of Officer. In any case of disagreement between the driver and passenger of a motor vehicle for hire relative to the legal fare to be paid, the driver shall convey the passenger to the nearest police station, where the officer in charge shall immediately decide the case, and if the decision is in favor of the passenger, the driver shall convey the passenger from the police station to his original destination without additional charge; if the passenger is about to leave the City by railroad, steamboat or otherwise, the police officer on duty at the depot or wharf shall decide the case.

(b) Receipts for Fare to be Delivered to Passenger. All drivers or operators of motor vehicles for hire, upon the demand of any passenger, shall give a receipt for fare paid, such receipt to be in a form satisfactory to the Chief of Police.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1142. REFUSAL TO CONVEY; EXCESSIVE CHARGES.

(a) Refusal to Convey. It shall be unlawful for the owner, lessee or driver of any taxicab operating under permit

issued by the police authority of the City and County of San Francisco, to fail or refuse, or to permit the failure or refusal, when in service and not otherwise engaged for hire, to transport to his announced destination within the City and County of San Francisco at rates authorized in this Article, any person who presents himself for carriage in a sober and orderly manner and for a lawful purpose.

(b) Excessive Charges. Any charge made, or sought to be made, any patron of a motor vehicle for hire in excess of the charges authorized by this Article for the particular type of service rendered or sought, when shown either by confession of the party, or competent testimony, or any failure on the part of any driver or operator of any motor vehicle for hire to make proper returns to his employer, shall result in immediate suspension of the license of such driver or operator until such times as, after due process, such license is either reinstated or revoked. Either the person, or the employer of a person, responsible for any overcharge shall be required to make restitution to any defrauded patron, for the amount of such overcharge.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1143. REFUSAL TO CONVEY; REFUSAL TO OBEY POSTED "NO SMOKING" SIGN.

Notwithstanding the provisions of Section 1141 of this Article, a taxicab driver who has posted a "no smoking" sign or symbol in the vehicle in accordance with Section 53 of this Police code may refuse to convey any person who refuses to obey the "no smoking" sign; provided, however, that the taxicab driver brings the "no smoking" sign or symbol to the attention of said person before he or she enters the taxicab.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1144. TAXIMETER OPERATION.

(a) Operating a Taxi with Taximeter in Recording Position Prohibited. It shall be unlawful for any driver or operator of any motor vehicle equipped with a taximeter to set the taximeter in operation when such vehicle is not actually employed.

(b) Driver Required to Set Taximeter in a Nonrecording Position. It shall be unlawful for any driver or operator of any motor vehicle equipped with a taximeter to fail to set the taximeter to a nonrecording position at the termination of each and every service and to call the attention of the passenger to the amount registered.

(c) Requiring Taximeter to be Actuated. Except as provided in Section 1135(b) of this Code, it shall be unlawful for any driver or operator of any motor vehicle equipped with a taximeter, while carrying passengers or under employment, to fail to activate the taximeter, or activate the taximeter in such position as to denote that he or she is employed at a rate of fare different from that authorized under the provisions of this Article.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1145. PENALTY FOR REFUSAL TO PAY FARE.

Except where credit is extended, any person who shall fail or refuse to pay, at the end of the trip, or the termination or discharge of service, the legal fare for a motor vehicle for hire, that he has hired, shall be guilty of a misdemeanor, and upon conviction thereof, in addition to the penalty provided for the violation of Section 1185 of this Article, shall be compelled to pay to the driver of said vehicle an amount equal to the legal fare, and in case any bail required is forfeited, the amount of the legal fare shall be paid to the driver from such amount forfeited, and the Court or Judge, before whom the case is heard, shall order the same to be paid from the treasury of the City and County.

(Added by Ord. 562-88, App. 12/27/88)


## SEC. 1146. DEDUCTION FOR TIME WHILE DISABLED.

In the event that a taxicab, while conveying for hire any passenger or passengers, becomes disabled, or breaks down, the time of stoppage shall be deducted from the time charged for.

(Added by Ord. 562-88, App. 12/27/88)

## SEC. 1147. PURPOSE.

It is the purpose of Sections 1147 through 1147.6 of this Article to require all persons, firms or corporations holding taxicab permits pursuant to Section 1120 of this Article, and all persons applying for driver's permits pursuant to Section 1089 of this Article, to take steps to improve taxicab services to the public and to protect the public health and safety when providing such services.

(Added by Ord. 76-94, App. 2/18/94)

## SEC. 1147.1. DRIVER EDUCATION.

All new applicants for permits to drive taxicabs pursuant to Section 1089 of this Article shall certify that they have successfully completed a driver training course. The course may be offered by the San Francisco Police Department, City College of San Francisco, or by any other such educational entity that the Chief of Police may approve. The required course length is 16 hours of classes. The course shall consist of classes on the following subjects: crime prevention; vehicular safety; the geography of the City and County of San Francisco; taxicab rules and regulations; the California Motor Vehicle Code; pedestrian safety; and any other subject that the Chief of Police may determine is relevant to the public health and safety in the operation of taxicabs. Within 60 days of the effective date of this ordinance, the Chief of Police shall adopt regulations setting forth the required course length and content. After adoption of such regulations, the Chief of Police shall approve or disapprove, within 30 days ofsubmission, any entity's proposal to offer the required driver training course. The requirement that new applicants certify completion of a driver training course will take effect 60 days after the date upon which a course approved by the Chief of Police is first offered. The Chief of Police also may require all taxicab permit holders to furnish to all persons authorized by Section 1124 of this Article to drive under their permits any information on taxicab crime that the Chief of Police deems advisable for the purpose of crime prevention and public safety.

(Added by Ord. 76-94, App. 2/18/94)

## SEC. 1147.2. SAFETY EQUIPMENT.

(a)  Within 180 days of the effective date of this ordinance, all vehicles newly placed into service as a taxicab must be equipped with automatic door locks that can be controlled by the driver. Also within 180 days of the effective date of this ordinance, all taxicab radios permitting two-way communication with a licensed dispatch service as required by Section 1123 of this Article must also allow for direct voice access to the taxicab dispatch service in an emergency. In addition, within 180 days of the effective date of this ordinance, except for taxicabs that are solely operated by the permit holder and those operated as ramped taxis, all taxicab color schemes shall ensure that a minimum of 50% of their taxicabs are equipped with a retractable safety partition that is controlled by the driver and that forms a complete barrier between the front and rear seats. A retractable safety partition shall be made available to any driver who requests one in his or her taxicab, and no retaliation or discriminatory actionshall be taken against any driver who requests a retractable safety partition. No taxicab driver operating a taxicab with a safety shield may refuse to transport a disabled person in the front seat.

(b)  The Chief of Police shall have the authority to promulgate as he or she deems necessary standards for safety partitions, standards and procedures for taxicab drivers and dispatchers to follow in an emergency, and standards for automatic door locks.

(c)  In addition to the specific authority granted to the Chief of Police by this Section, the Chief of Police is authorized to issue any other regulations concerning taxicab equipment or operation that he or she determines will promote the prevention of taxicab crime and the protection of the public.

(Added by Ord. 76-94, App. 2/18/94)

## SEC. 1147.3. REVIEW.

(a)  The Police Commission shall hold an annual hearing to review: (1) the compliance of taxicab permit holders

with this Article and any regulations adopted pursuant to this Article; (2) the effectiveness of safety equipment and safety measures currently in effect; and (3) the need for further measures to reduce taxicab crime and to protect the public safety. The Police Commission may appoint the Chief of Police or his or her designee as a hearing officer to conduct the hearings and to gather relevant evidence.At the conclusion of the hearing conducted by the hearing officer, the hearing officer shall make a written report to the Police Commission. The Chief of Police, if he or she deems it necessary on the basis of that report, shall adopt further regulations to implement this Article.

(b)   The Chief of Police shall direct the appropriate Police Department personnel to compile and maintain statistics on taxicab crime, which shall be submitted to the Police Commission and to the Chief of Police or his or her designee in conjunction with the annual hearings mandated by this Section.

(Added by Ord. 76-94, App. 2/18/94)

## SEC. 1147.4. COMPLIANCE WITH WORKERS' COMPENSATION REQUIREMENTS.

All persons, firms or corporations holding taxicab color scheme permits pursuant to Section 1125(b) of this Article shall comply with all applicable state statutes concerning Workers' Compensation and any applicable regulations adopted pursuant to those statutes. Taxicab color scheme permit holders must include a sworn statement attesting to compliance with such applicable statutes and regulations as part of the annual filing required by Section 1095 of this Article.

(Added by Ord. 76-94, App. 2/18/94)

## SEC. 1147.5. LIMITATION OF LIABILITY.

By adopting this ordinance, the City and County of San Francisco is assuming an undertaking only to promote the general welfare. It is not assuming, nor is it imposing on its officers and employees, an obligation for breach of which it is liable in money damages to any person who claims that such breach proximately caused injury.

(Added by Ord. 76-94, App. 2/18/94)

## SEC. 1147.6. PENALTIES.

Every person, firm or corporation holding a taxicab permit pursuant to Section 1120 of this Article who violates or causes to be violated any of the provisions of this ordinance or any regulations adopted pursuant to this ordinance shall be subject to disciplinary action pursuant to Section 1090(a)(ix) of this Article.

(Added by Ord. 76-94, App. 2/18/94)

## SEC. 1147.7. BAN ON TOBACCO ADVERTISING.

(a)   Notwithstanding the provisions of Police Code Section 674(d), no taxicab shall bear in any manner any advertising or promotion of cigarettes or tobacco products. No taxicab company shall place or maintain, or cause or allow to be placed or maintained, any advertising or promotion of cigarettes or tobacco products on any of its taxicabs.

(b)   For the purposes of this Section, "tobacco product" shall mean any substance containing tobacco leaf, including but not limited to, cigarettes, cigars, pipes, tobacco, snuff, chewing tobacco and dipping tobacco. For the purposes of this Section, "promote" or "promotion" shall include a display of any logo, brand name, character, graphics, colors, scenes, or designs that are trademarks of a particular brand of tobacco product.

(c)   This Section shall become operative September 1, 1999.

(Added by Ord. 363-98, App. 12/18/98)

## SEC. 1147.8. PARTICIPATION IN PARATRANSIT PROGRAM.

(a)   Beginning January 1, 2000, each holder of a taxicab color scheme permit, as defined in Section 1125 of this Article, must participate in the City's paratransit program. The color scheme permit-holder must be under contract to and approved for participation by the Paratransit Broker who operates the Paratransit Program of the Public Transportation Commission.

(b)   Thereafter, each color scheme permit-holder shall operate at all times subject to the rules and regulations of the City's Paratransit Program, including, but not limited to, the paratransit scrip program, the debit card program including hardware and software capabilities, fare discount and reimbursement procedures, and training in safe and courteous paratransit operations. Each taxicab permit-holder who enters into an agreement or contract with a color scheme permit-holder to use that color scheme, and each taxicab driver who operates under a taxicab permit affiliated with the color scheme, shall at all times operate subject to the rules and regulations of the City's Paratransit Program.

(c)   The Chief of Police, in consultation with a Paratransit Program, may issue appropriate rules and regulations to ensure compliance with this Section.

(Added by Ord. 301-98, App. 10/9/98)


## SEC. 1147.9. CAB POOLING.

The Chief of Police is authorized to establish a six-month trial program for voluntary "cab pooling" along one or more designated routes. The Chief of Police shall consult with the Departments of Parking and Traffic and Public Transportation on the selection of routes.

Taxicabs may charge a flat fare for passengers riding between points along the designated route, and may solicit more than one fare along the route. The Chief of Police may adopt reasonable rules and regulations to carry out this trial program. At the end of six months, the Chief shall report back to the Board of Supervisors on the feasibility of a permanent program.

(Added by Ord. 365-98, App. 12/18/98)

**DIVISION X
PENALTIES**

## SEC. 1185. PENALTIES.

(a)   Violations Chargeable as Misdemeanors or Infractions; Assisting or Inducing Violation. Unless otherwise specified in this Article, any person violating any Section of this Article shall be deemed guilty of a misdemeanor or an infraction. It shall be a violation of this Article to knowingly assist or knowingly induce another to violate a provision of this Article.

(b)   Misdemeanor Penalties. Upon conviction of a violation charged as a misdemeanor, the person so convicted shall be subject to a fine of not more than $500 or imprisonment in the County Jail for period of not more than six months, or by both such fine and imprisonment; provided, however, that any person or entity violating Sections 1078 (requiring permits), 1084(b) or (c) (notification of death of permittee; lease of permit of deceased permittee), 1089 (requiring drivers permits), 1091 through 1093 (requiringinsurance), or 1110 (false statements) of this Article shall, upon conviction thereof, be subject to a fine of not more than $1,000 or imprisonment in the County Jail for period of not more than six months, or by both such fine and imprisonment.

(c)   Infraction Penalties. Upon conviction of a violation charged as an infraction, the person so convicted shall be punished for the first offense by a fine of not less than $10 nor more than $50, and for a second and any additional violation of the same provision within one year by a fine of not less than $20 and not more than $100; provided, however, that for violations of Section 1078 (requiring permits) and Section 1165 (inspection of limousine waybills) charged as an infraction, the person so convicted shall be punished for the first offense by a fine not to exceed one hundred dollars ($100), for a second violation of the same provision within one year by a fine not to exceed two hundred dollars ($200), and for a third and any additional violation of the same provision within one year by a fine not to exceed five hundred dollars ($500).

(d)   Violations of Taxi Commission's Rules. Upon conviction of a violation of the Taxi Commission's Rules, the person so convicted may be punished by a fine as follows:

(1)   For regulations classified as Minor under the Commission's Rules, a fine of $25 for the first violation, $50 for a second violation of the regulation within one year of the first violation, and $150 for a third or additional violation of the regulation within one year of the first violation.

(2)   For regulations classified as Moderate under the Commission's Rules, a fine of $75 for the first violation, $150 for a second violation of the regulation within one year of the first violation, and $450 for a third or additional violation of the regulation within one year of the first violation.

(3)   For regulations classified as Major under the Commission's Rules, a fine of $250 for the first violation, $400 for a second violation of the regulation within one year of the first violation, and $500 for a third or additional violation of the regulation within one year of the first violation.

(Added by Ord. 562-88, App. 12/27/88; amended by Ord. 106-99, File No. 990006, App. 5/7/99; Ord. 15-06, File No. 051720, App. 1/20/2006)

## SEC. 1186. FULL-TIME DRIVING REQUIREMENT; VIOLATIONS; ADMINISTRATIVE PENALTIES.

(a)   Full-Time Driving Requirement. The holder of a taxicab permit shall be a full-time driver as provided in Section 1081.

(b)   Administrative Penalties. The Taxi Commission (the Commission) may impose administrative penalties for violations of the full-time driving requirement, in accordance with the procedures established in Section 1188.

(c)   Amount of Penalty. The administrative penalties assessed against the permit holder by the Commission shall not exceed the amount of any lease fees collected by the permit holder during the period that the permit holder was in violation of the full-time driving requirement. Where the permit holder does not collect lease fees, the Commission may impose administrative penalties not to exceed $140 for each day or $30 for each hour the permit holder fails to drive short of the applicable standard for compliance.

In determining the amount of the penalty in an individual case, the Commission shall take into account:

(i)  Whether the permit holder has in the past violated the full-time driving requirement, other provisions of Article 16, the Taxi Commission's rules and regulations, or state law relevant to the operation of a taxicab permit;

(ii)  Whether the permit holder concealed or attempted to conceal his or her non-compliance with the full-time driving requirement; and

(iii)  Such additional factors as the Commission may determine are appropriate.

(Added by Ord. 111-04, File No. 040343, App. 7/1/2004)


# SEC. 1187. COMMISSION RULES AND REGULATIONS; VIOLATIONS; ADMINISTRATIVE PENALTIES.

(a)  Administrative Penalties. The Taxi Commission (the Commission) may impose administrative penalties for violations of the Commission's rules and regulations, in accordance with the procedures established in Section 1188.

(b)  Amount of Penalty. For regulations classified as Minor under the Commission's Rules, there shall be a penalty not to exceed $25 for the first violation, $50 for a second violation of the regulation within one year of the first violation, and $150 for a third or additional violation of the regulation within one year of the first violation.

For regulations classified as Moderate under the Commission's Rules, there shall be a penalty not to exceed $75 for the first violation, $150 for a second violation of the regulation within one year of the first violation, and $450 for a third or additional violation of the regulation within one year of the first violation.

For regulations classified as Major under the Commission's Rules, there shall be a penalty not to exceed $250 for the first violation, $400 for a second violation of the regulation within one year of the first violation, and $500 for a third or additional violation of the regulation within one year of the first violation.

In determining the amount of the penalty in an individual case, the Commission shall take into account:

(i)  Whether the permit holder has in the past violated the full-time driving requirement, other provisions of Article 16, the Taxi Commission's rules and regulations, or state law relevant to the operation of a taxicab permit;

(ii)  Whether the permit holder concealed or attempted to conceal his or her non-compliance with the Commission's rules and regulations; and,

(iii)  Such additional factors as the Commission may determine are appropriate.

(Added by Ord. 111-04, File No. 040343, App. 7/1/2004)


# SEC. 1187.1. OPERATING WITHOUT A PERMIT; VIOLATIONS; ADMINISTRATIVE PENALTIES.

(a)  Permit Required. Any person operating a motor vehicle as a taxicab or other motor vehicle for hire licensed under this Article must have a permit as required in Section 1078.

(b)  Administrative Penalties. The Taxi Commission (the Commission) may impose administrative penalties for violations of the permit requirement, in accordance with the procedures established in Section 1188. The penalties may be assessed against the driver or against the vehicle's owner if it is proven that the driver operated the vehicle as a taxicab with the owner's knowledge. These penalties are in addition to any other penalties or methods of enforcement authorized by law.

For purposes of Section 1188, the violator shall be referred to as "the permit holder." If any penalties are not paid to the Taxi Commission within 30 days of the notice, the Commission shall refer the unpaid penalties to the Bureau of Delinquent Revenue.

(c)  Amount of Penalty. The administrative penalties assessed against the violator by the Commission shall not exceed two thousand five hundred dollars ($2,500) for a first violation or five thousand dollars ($5,000) for a subsequent violation.

In determining the amount of the penalty in an individual case, the Commission shall take into account:

(i)  Whether the violator has in the past violated the permit requirement, other provisions of Article 16, the Taxi Commission's rules and regulations, or state law relevant to the operation of a taxicab permit;

(ii)  Whether the violator concealed or attempted to conceal his or her non-compliance with the permit requirement; and

(iii)  Such additional factors as the Commission may determine are appropriate.

(Added by Ord. 15-06, File No. 051720, App. 1/20/2006)

# SEC. 1188. PROCEDURES FOR ADMINISTRATIVE PENALTIES.

(a)  Director's Notice. Upon a determination that a permit holder has violated the full-time driving requirement or the Commission's rules and regulations, the Executive Director of the Taxi Commission (the Director) shall send a written notice, by first class mail or hand-delivery, to the permit holder, at the address listed in the Taxi Commission's records, identifying and describing the alleged violations and stating the amount of the administrative penalty to be imposed. The notice shall also inform the permit holder that he or she has the right to request a fact-finding hearing on the alleged violations and the proposed penalty by filing such a request within 15 business days of the date of the notice. The Director and the permit holder may modify the Director's proposed decision by mutual consent. If the permit holder does not request a fact-finding hearing within the 15 days, the decision of the Director shall be final.

(b)  Scheduling of Fact-finding Hearing. Whenever a fact-finding hearing is requested under subsection (a) above, the Director within 10 business days of receiving the request shall notify the permit holder of the date, time, and place of the hearing by first-class mail or hand delivery. Such hearing shall be held no sooner than 20 business days and no later than 40 business days after the Director receives the request for a hearing, unless the time is extended by mutual agreement of the permit holder and the Director. Notice of hearings shall be posted on the Commission's web site at least 72 hours in advance of the hearings.

(c)  Hearing Officers. The Director shall appoint a hearing officer for the fact-finding hearing from a list approved by the Commission. The hearing officer shall not be an employee of the Taxi Commission or the Police Department.

(d)  Submittals for the Hearing. At least 5 business days prior to the hearing, the parties to the hearing shall submit written information to the hearing officer including, but not limited to, the following: a statement of the issues to be determined by the hearing officer, a statement of the evidence to be offered at the hearing and the identity of any witnesses to appear at the hearing. The written information shall not exceed 10 double-spaced pages, excluding exhibits.

(e)  Conduct of the Hearing. The hearing shall be open to the public and tape recorded. Any party to the hearing may, at his or her own expense, cause the hearing to be recorded by a certified court reporter. During the hearing, evidence and testimony may be presented to the hearing officer. Parties may be represented by counsel and have the right to cross-examine witnesses. All testimony shall be given under oath.

The hearing need not be conducted according to formal rules of procedure and evidence, but no decision shall be based solely on hearsay evidence. The hearing officer may make reasonable rulings to ensure a fair and efficient hearing.

(f)  Proposed Decision. The hearing officer shall, within ten business days after the conclusion of the hearing, present a proposed decision including written findings and recommendations regarding penalties to the Commission. The hearing officer shall at that time transmit his or her decision to the permit holder by certified mail directed to the most recent address on file with the Commission for the permit holder. The Commission shall post at its office a notice that a copy of the proposed decision is available for public inspection during normal business hours.

(g)  Commission Action. The Executive Director shall place the hearing officer's proposed decision on the Commission's consent calendar for the next scheduled meeting occurring not less than ten calendar days after entry of the Director's decision. The Director shall also submit the recording of the hearing and any written materials submitted in connection with the hearing. The proposed decision shall be a recommendation to the Commission, and the Commission may adopt, modify, or deny such recommendation, or may remand the matter

to the hearing officer for further proceedings. The Commission may act on the hearing officer's proposed decision and the record presented; it may not rehear the case. The Commission shall serve its final decision upon the parties to the hearing and post the decision in the same manner as provided for herein with respect to the hearing officer's proposed decision.

(h)  Collection. If the Commission finds against the permit holder and imposes administrative penalties, the Commission's decision shall state the amount of the penalties and declare that they are due and payable to the City and County of San Francisco within 30 days of the date of the decision, provided that the Executive Director may agree to a reasonable payment schedule not to exceed the permit holder's income on a monthly basis. If the penalties are not paid to the Taxi Commission within 30 days of the notice, the Commission may move to suspend or revoke the permit.

(i)  Other Penalties. The penalties and methods of enforcement set forth in this Section and in Sections 1186 and 1187 are in addition to those set forth in Sections 1090 and 1185 of this Code and in addition to any other penalties or methods of enforcement authorized by law.

(Added by Ord. 111-04, File No. 040343, App. 7/1/2004)