# EXHIBIT E

FILE NO.  040343

# <u>LEGISLATIVE DIGEST[1]</u>

[Full-time driving requirement for taxi and ramped taxi permit holders; requirements for taxi and ramped taxi permit applicants; administrative penalties and procedures for violations of taxi rules.]

**Ordinance amending the San Francisco Police Code by: amending Sections 1076 and 1081, to state a test, measured as 800 cumulative hours per year, for satisfying the driving requirement imposed on taxi and ramped taxi permit holders; amending Sections 1121 and 1148.1, to set requirements, including prior driving experience, for taxi and ramped taxi permit applicants; and, adding Sections 1186, 1187, and 1188, to establish administrative penalties and procedures for violations of the full-time driving requirement and for violations of the Taxi Commission's rules and regulations.**

## <u>Section 1:  Driving Requirement</u>

Under Proposition K, a 1978 initiative ordinance regulating the issuance of taxi permits, and the Police Code, taxi and ramped taxi permit holders (medallion holders) must drive "full-time."  The Taxi Commission has interpreted this requirement to mean 156 daily shifts—of at least four hours apiece—per year.  The Court of Appeal ruled in a recent case that the City was not limited to the 156-shift standard, but could choose a different standard that still producing driving that was "regular and continuous."

The proposal would require permit holders to drive 156 shifts per year during the first year after they received their permits, but after that, they could satisfy the full-time driving requirement by driving either the 156 shifts per year or 800 hours per year.

## <u>Section 2: Requirements for Applicants</u>

Under current law, applications for taxicab and ramped taxicab permits are considered in order of their receipt by the Taxi Commission.  However, an applicant who has driven full-time during the 12 months prior to the hearing on the application is given preference over any other applicant who has not been a full-time driver during that period.

The proposal would phase-in a more rigorous requirement that permit applicants have been full-time drivers before received a medallion, starting with a requirement of one year's experience for applications heard in 2004 and 2005 and increasing up to a requirement of five years' experience for applications heard in 2009 and thereafter.  The applicant would have the burden of showing that he or she had the necessary driving experience.  The proposal would

---

[1] As amended in committee, 06/09/2004

FILE NO.  040343

require the applicant and the color scheme (taxi company) to keep records of the applicant's driving.  The Taxi Commission could substitute an equivalent amount of prior full-time driving experience for the experience discussed above, where the applicant had been denied employment in the taxi industry in retaliation for engaging in legitimate political, expressive, or labor activity.  The applicant would have the burden of establishing such a claim, and any such determination would require a two-thirds' vote of the Commission.

The proposal would also add a number of additional requirements for persons seeking to be placed on the waiting list for a taxi or ramped taxi permit.  Applicants for a taxi permit would have to be, among other things, 21 years of age, able to read and write English, and in possession of a valid California driver's license.  (These are the same qualifications set for taxi drivers in Police Code Section 1089.)  The proposal would also require that permit applicants have held a valid A-card for two years prior to applying for a medallion, and that they satisfy any educational requirements imposed by the Taxi Commission.

### Section 3:  Administrative Penalties

The Police Code currently authorizes criminal penalties for violations of the full-time driving requirement and Taxi Commission regulations.  It also authorizes the Taxi Commission to suspend or revoke a permit.  But it does not include any provision for imposing administrative penalties.

The proposal would give the Taxi Commission authority to impose administrative penalties (fines) for violations of the full-time driving requirement and Commission rules.

The penalties for violations of the driving requirement could not exceed the amount of any lease fees collected by the medallion holder during the period that the medallion holder was in violation of the full-time driving requirement.  If the medallion holder did not collect lease fees, the penalties could not exceed $140 for each day or $30 for each hour the medallion holder failed to drive short of the applicable standard.

The penalties for violations of Commission rules would follow a schedule for "minor," "moderate," and "major" offenses, not to exceed $25-$75-$250, respectively, for a first offense, up to $150-$450-$500, respectively, for a third or subsequent violation of the rule within one year.  The Commission could reduce the penalties based on factors such as the permit holder's prior record or whether the permit holder attempted to conceal his or her violations.  ("Permit holder," in this context, would include both medallion holders and persons holding other permits under Police Code Article 16, such as driver's permits, color scheme permits, or dispatch service permits.)

The proposal would establish a procedure for imposition of the penalties.  The Taxi Commission's Executive Director would send a written notice to the permit holder identifying and describing the alleged violations and stating the amount of the penalty.  The permit holder could accept the penalty or request a fact-finding hearing.  The hearing officer could not be an employee of the Taxi Commission or the Police Department.  The hearing would be open to

FILE NO.  040343

the public and tape recorded.  Parties could be represented by counsel, present evidence and arguments, and cross-examine witnesses.  All testimony would be given under oath.

The hearing officer would present a proposed decision, including written findings and recommendations regarding penalties, to the Commission.  The Commission would also receive the recording of the hearing and any written materials submitted in connection with the hearing.  The Commission could adopt, reject, or modify the hearing officer's proposed decision, or remand the matter to the hearing officer for further proceedings, by a majority vote.  The Commission would act on the hearing officer's proposed decision and the record presented; it would not rehear the case.

If administrative penalties were imposed, the Executive Director of the Taxi Commission and the permit holder could agree to a reasonable payment schedule, but the Executive Director could not propose payments that exceeded the permit holder's monthly income.

Amendment of the Whole
June 9, 2004.

FILE NO. 040343                              ORDINANCE NO.  *111-04*

1   [Full-time driving requirement for taxi and ramped taxi permit holders; requirements for taxi
    and ramped taxi permit applicants; administrative penalties and procedures for violations of
2   taxi rules.]

3

4   **Ordinance amending the San Francisco Police Code by: amending Sections 1076 and**

5   **1081, to state a test, measured as 800 cumulative hours per year, for satisfying the**

6   **driving requirement imposed on taxi and ramped taxi permit holders; amending**

7   **Sections 1121 and 1148.1, to set requirements, including prior driving experience, for**

8   **taxi and ramped taxi permit applicants; and, adding Sections 1186, 1187, and 1188, to**

9   **establish administrative penalties and procedures for violations of the full-time driving**

10  **requirement and for violations of the Taxi Commission's rules and regulations.**

11

12            Note:         Additions are *single-underline italics Times New Roman*;
                            deletions are ~~*strikethrough italics Times New Roman*~~.
13                          Board amendment additions are <u>double underlined</u>.
                            Board amendment deletions are ~~strikethrough normal~~.
14

15        Be it ordained by the People of the City and County of San Francisco:

16

17        Section 1.  The San Francisco Police Code is hereby amended by amending

18  Sections 1076 and 1081, to read as follows:

19  **SEC. 1076.  DEFINITIONS.**

20        For purposes of this Article the following words and phrases are defined and shall be

21  construed as hereinafter set forth:

22        (a)  **"Motor Vehicle for Hire" Defined.**  A "motor vehicle for hire" is hereby defined to

23  mean and include every type, kind and class of privately owned motor-propelled passenger-

24  /  /  /

25  /  /  /

Supervisors Daly, Ma, Gonzalez
**BOARD OF SUPERVISORS**                                          Page 1
                                                                06/09/2004

1  carrying vehicle for hire over which the City and County of San Francisco may exercise

2  jurisdiction.

3      (b) **"Taxicab" Defined.** A "taxicab" is hereby defined to be a motor vehicle for hire of

4  a distinctive color or colors and which is operated at rates per mile or upon a waiting-time

5  basis, or both, and which is equipped with a taximeter and which is used for the transportation

6  of passengers for hire over and along the public streets, not over a defined route but, as to the

7  route and destination, in accordance with and under the direction of the passenger or person

8  hiring such vehicle. A "taxicab" does not include motor vehicles for hire herein defined as

9  "ramped taxis."

10      (c) **"Taximeter" Defined.** A "taximeter" is hereby defined to be an instrument or

11  device attached to a motor vehicle for hire by means of which instrument or device the charge

12  authorized for hire of such vehicle is mechanically calculated either on a basis of distance

13  traveled or for waiting time, or a combination thereof, which charges shall be indicated upon

14  such taximeter by means of figures, in dollars and cents.

15      (d) **"Taxicab Dispatch Service" Defined.** A "taxicab dispatch service" is hereby

16  defined to be any person, business, firm, partnership, association or corporation which holds

17  itself out to the public in general as a source of taxicab service by or through which taxicabs

18  may be summoned or dispatched by radio.

19      (e) **"Taxicab Color Scheme" Defined.** A "taxicab color scheme" is hereby defined to

20  be any color scheme, design or dress for taxicabs that is distinguishable from the color

21  scheme, design or dress customarily used for private automobiles.

22      (f) **"Jitney" Defined.** A "jitney" or "jitney bus" is defined to be a motor vehicle for hire

23  less than 20 feet in length traversing the public streets between certain definite points or

24  termini and conveying no more than 15 passengers for a fixed charge, between such points or

25  any intermediate points, and so held out, advertised or announced; provided, however, that

1  the size and passenger limitations established herein shall not apply to any vehicle operated

2  as of July 1, 1983.  A jitney bus is hereby declared to be a common carrier and is subject to

3  the regulations prescribed in the Municipal Code and in this Article.

4      (g)  **"Motorized Rickshaw" Defined.**  A "motorized rickshaw" is hereby defined to be a

5  passenger- carrying motor vehicle for hire having three or four wheels, convertible type,

6  designed to carry not more than four passengers.  The gross weight of a motorized rickshaw

7  shall not exceed 4,700 pounds, unloaded, and shall have a wheelbase not to exceed 95

8  inches, and shall have an engine not to exceed four cylinders.  A motorized rickshaw shall

9  have a cloth hood over the rear seating area that shall resemble the hood of a traditional

10  oriental rikisha or jinrikisha.

11      (h)  **"Limousine" Defined.**  A "limousine" is hereby defined to be a passenger-carrying

12  motor vehicle for hire, of private appearance (except as to license plates), not equipped with a

13  taximeter, designed to accommodate seven or eight persons, inclusive of a driver, and used

14  for the transportation of persons for hire over and along the public streets, not over a fixed and

15  defined route but, as to route and destination, in accordance with and under the direction of

16  the passenger or person hiring such limousine, the charges for use of which are based upon

17  rates per mile, per trip, per hour, per day, per week or per month.

18      (i)  **"Funeral Limousine" Defined.**  A "funeral limousine" is hereby defined to be any

19  limousine used exclusively in the business of any undertaker or funeral director.

20      (j)  **"Sightseeing Bus" Defined.**  A "sightseeing bus" is hereby defined to be a motor

21  vehicle for hire used in the conveyance, for hire, of tourists and sightseers, over the public

22  streets, for the purpose of a sightseeing trip or tour in the visiting and viewing of places of

23  interest.  A "sightseeing bus" is hereby defined to be a common carrier and subject to the

24  regulations prescribed in the Municipal Code and this Article.

25

1        (k) **"Interurban Bus" Defined.** An "interurban bus" is hereby defined to be a motor

2    vehicle for hire, other than a jitney bus used for transporting passengers for hire over and

3    along the public streets between certain definite points or termini, one within and the other

4    without the limits of the City and County of San Francisco. An "interurban bus" is hereby

5    declared to be a common carrier and subject to the regulations prescribed in the Municipal

6    Code and this Article.

7        (l) **"Permittee" Defined.** "Permittee" is hereby defined to mean any person, business,

8    firm, partnership, association or corporation which holds any permit or license issued by or

9    under the authority of the City and County of San Francisco to operate or drive any motor

10   vehicle for hire. "Permit holder" means "permittee."

11       (m) **"Operator" Defined.** "Operator" is hereby defined to mean any person, business,

12   firm, partnership, association or corporation licensed by the City and County of San Francisco

13   pursuant to the provisions of this Article and any agent of such permittee including, but not

14   limited to, any manager or lessee of said permittee.

15       (n) **"Driver" Defined.** "Driver" is hereby defined to mean any person engaged in the

16   mechanical operation and having physical charge or custody of a motor vehicle for hire while

17   said motor vehicle for hire is available for hire or is actually hired.

18       (o) **"Full-Time Driver" Defined.** "Full-time driver" is hereby defined to mean any

19   driver actually engaged in the mechanical operation and having physical charge or custody of

20   a motor vehicle for hire which is available for hire or actually hired _(i)_ for at least four hours

21   during any 24-hour period on at least 75 percent of the business days during the calendar

22   year _or (ii) for at least 800 hours during the calendar year_.

23       (p) **"Stand" Defined.** "Stand" is hereby defined to be a place designated by the

24   Department of Public Works for the use, while awaiting employment, of the particular motor-

25   propelled passenger-carrying vehicles authorized to utilize the same.

1    (q) **"Police Commission" Defined.** "Police Commission" as used herein means the

2    Police Commission of the City and County of San Francisco.

3    (r) **"Police Department" Defined.** "Police Department" as used herein means the

4    Police Department of the City and County of San Francisco.

5    (s) **"Chief of Police" Defined.** "Chief of Police" as used herein means the Chief of

6    Police of the Police Department of the City and County of San Francisco and his designated

7    agents within the Police Department.

8    (t) **"Tax Collector" Defined.** "Tax Collector" as used herein means the Tax Collector

9    of the City and County of San Francisco.

10   (u) **"Controller" Defined.** "Controller" as used herein means the Controller of the City

11   and County of San Francisco.

12   (v) **"Department of Public Works" Defined.** "Department of Public Works" as used

13   herein means the Department of Public Works of the City and County of San Francisco.

14   (w) **"Employer's Bus" Defined.** "Employer's bus" as used herein means a bus or

15   other vehicle capable of transporting 12 or more persons, including the driver, which is

16   regularly operated and maintained in order to transport employees to and from various

17   business locations by a person or corporation which employs 100 or more persons at one

18   location within the City and County of San Francisco.

19   (x) **"Employer's Bus Stand" Defined.** "Employer's bus stand" as used herein means

20   that portion of the street which the Department of Public Works designates as reserved for the

21   exclusive use of one or more employer's buses in order to load and unload passengers at a

22   business location of the employer.

23   (y) **"Ramped Taxi" Defined.** A "ramped taxi" as used herein is a motor vehicle for

24   hire of a distinctive color or colors operated at rates per mile or upon a waiting-time basis, or

25   both, which is a minivan or similar vehicle specially adapted via ramp access for wheelchair

1  users, which is also equipped with a taximeter, and which prioritizes requests for service from

2  wheelchair users for purposes of transportation over and along the public streets. not over a

3  defined route but, as to the route and destination, in accordance with and under the direction

4  of the passenger or person hiring such vehicle.

5

6  **SEC. 1081. FACTORS CONSIDERED IN ISSUING PERMITS; _DRIVING REQUIREMENTS_.**

7  (a) **General Factors.** The ~~Police~~ _Taxi_ Commission, in determining whether an

8  individual applicant is eligible for the issuance of a motor vehicle for hire permit pursuant to

9  Section 1079~~(g)(i)~~ ~~of this Article~~, may consider such facts as it deems pertinent, but must

10  consider the following:

11  (1)  Whether the applicant is financially responsible and will comply with all insurance

12  requirements and will maintain proper financial records.

13  (2)  Whether the applicant has complied with all applicable statutes, ordinances, rules

14  and regulations.

15  (3)  Whether the applicant holds or has ever held any other permits issued to operate a

16  motor vehicle for hire either in the City and County of San Francisco or elsewhere and the

17  record of such applicant with regard to any such other or former permits.

18  (b) _**Full-Time Driving Pledge.**_  No permit to operate a motor vehicle for hire shall be

19  issued unless the person applying for the permit shall declare under penalty of perjury his or

20  her intention actively and personally to engage as permittee-driver under any permit issued to

21  him or her for at least four hours during any 24-hour period on at least 75 percent of the

22  business days during the calendar year. ~~Notwithstanding any contrary provision in this Article,~~

23  ~~the requirements set forth above shall not apply to any person holding a permit issued on or before July~~

24  ~~1, 1978. Every permittee subject to the provisions of this Section shall drive his or her taxicab for at~~

25

1   ~~least the amount of time set forth herein unless permission not to do so has been granted pursuant to~~

2   ~~the provisions of Section 1096(e) of this Article.~~

3   _(c) Driving Experience Required._  _No permit to operate a taxicab or ramped taxi shall be_

4   _issued unless the applicant has the driving experience required by Section 1121 for a taxicab permit or_

5   _Section 1148.1 for a ramped taxi permit._

6   _(d)_ ~~(e)~~ **Order of Consideration.**  ~~Subject to any preference created by~~ _Except as otherwise_

7   _stated in_ this Article, all applications for motor vehicle for hire permits shall be processed and

8   considered in the order of their receipt by the ~~Police~~ _Taxi_ Commission.  _The Commission retains_

9   _discretion at any time, following a hearing, to deny an application for a motor vehicle for hire permit_

10  _on the basis that the applicant has engaged in fraud, deceit, misrepresentation, or other misconduct in_

11  _connection with the application process._

12  _(e) Applicability of Section._  _Notwithstanding any contrary provision in this Article, the_

13  _requirements set forth in this Section shall not apply to any person holding a permit issued on or before_

14  _July 1, 1978._

15  _(f) Full-Time Driving Required._  _Every permittee subject to the provisions of this Section shall_

16  _be a full-time driver as defined in Section 1076(o), subject to the qualifications stated in subparts (i)-_

17  _(iii) below._

18  _(i) During the calendar year in which the permittee receives the permit, and during the_

19  _first full calendar year following receipt of the permit, the permittee must qualify as a full-time_

20  _driver by satisfying the definition of that term in Section 1076(o)(i).  For the calendar year in_

21  _which the permittee receives the permit, the number of business days shall be measured from_

22  _the date of receipt of the permit._

23  _(ii) A permittee may be granted approval not to drive a certain number of days under_

24  _certain circumstances pursuant to Section 1096(c).  In such a case, for the permittee to qualify_

25  _as a full-time driver as defined in Section 1076(o)(i), the number of business days for the_

1    *calendar year shall be reduced in the same proportion as the ratio of the permittee's excused*

2    *driving days to calendar days in the calendar year.*

3        (iii)  A permittee who, because of disability as defined under State law, is unable

4    to qualify as a full-time driver as defined in Section 1076(o)(ii), may be granted

5    approval to drive the full number of hours during the calendar year that his or her

6    disability will allow, provided that that number of hours is set as part of a reasonable

7    modification of the eligibility requirement under Title II, § 202 of the Americans with

8    Disabilities Act (42 U.S.C. § 12132).  The permittee shall be deemed a full-time driver if

9    he or she drives the full number of approved hours.

10        *(g)  Promotion of the General Welfare.  By adopting a program for the issuance of permits for*

11    *motor vehicles for hire, the City and County of San Francisco is assuming an undertaking only to*

12    *promote the general welfare.  It is not assuming, nor is it imposing on its officers and employees, an*

13    *obligation for breach of which it is liable in money damages to any person who claims that such breach*

14    *proximately caused injury.*

15

16        Section 2.  The San Francisco Police Code is hereby amended by amending

17    Sections 1121 and 1148.1, to read as follows:

18    **SEC. 1121.  PERMIT APPLICATIONS;** ~~*PREFERENCES*~~ *DRIVING EXPERIENCE*

19    *REQUIRED.*

20        (a)  **Submission of Applications;** ~~*Existing*~~  *Taxicab* **Waiting List.**  ~~*Applications for*~~

21    ~~*taxicab permits on file with the Police Commission on the effective date of this Article ("existing*~~

22    ~~*waiting list") shall have priority over all other applications for taxicab permits. Applications for*~~

23    ~~*taxicab permits on file prior to the effective date of this Article shall be processed and considered in the*~~

24    ~~*order of their receipt by the Police Commission.*~~

25        ~~*(b)  New Applications; New Waiting List.*~~  Applications for taxicab permits ~~*received after the*~~

1 ~~effective date of this Article~~ shall be accepted by the ~~Police~~ _Taxi_ Commission and shall be

2 recorded by the date and time at which each application is received. The ~~Police~~ Commission

3 shall maintain a list in the order of receipt ("~~new~~ _taxicab_ waiting list") of all taxicab permit

4 applications _that have not been acted upon,_ in excess of the number of _such_ permits authorized

5 pursuant to Section 1079. ~~of this Article. In the absence of any preference provided for in this~~

6 ~~Article, applicants for taxicab permits shall be processed and considered by the Police Commission in~~

7 ~~the order of receipt according to the existing and new waiting lists. All applications on the existing~~

8 ~~waiting list shall be processed and considered prior to applications on the new waiting list.~~ When a

9 _taxicab_ permit becomes available for issue and an applicant on the _taxicab_ waiting list is

10 eligible for a hearing before the ~~Police~~ Commission, the ~~Chief of Police~~ _Commission_ shall so

11 notify the applicant.

12 　　　_Each applicant for a taxicab permit must, at the time of filing the application:_

13 　　　_(1)  Be a resident of the United States, of good moral character;_

14 　　　_(2)  Be 21 years or older;_

15 　　　_(3)  Be free of any disease, condition, infirmity, or addiction to the use of alcohol or any_

16 　　　　　_controlled substance, which might render the applicant unfit for the safe operation of a_

17 　　　　　_taxicab or any other motor vehicle for hire;_

18 　　　_(4)  Be able to read and write the English language;_

19 　　　_(5)  Be clean in dress and person;_

20 　　　_(6)  Hold a valid California driver's license of a class sufficient for the lawful operation of the_

21 　　　　　_motor vehicle driven; and_

22 　　　_(7)  Have held a driver's permit pursuant to Section 1089 of this Article for two years_

23 　　　　　_immediately preceding the date of application for a taxicab permit._

24 　　　~~(e)  Preference for Full-Time Drivers.  Among the applicants whose names appear on the new~~

25 ~~waiting list, the Police Commission shall give preference to any applicant who has been a full-time~~

1  driver as defined in Section 1076(o) of this Article during the 12 months immediately preceding the

2  Police Commission's hearing on that applicant's application, granting permits to all otherwise eligible

3  full-time drivers on the new waiting list before granting permits to others on the new waiting list. Any

4  applicant seeking a preference pursuant to this Subsection shall, at least 21 days prior to the hearing at

5  which the applicant seeks to be considered, so notify the Chief of Police in writing and submit evidence

6  to prove that the applicant was a full-time driver in the preceding 12 months.

7       (d) Determination of Full-Time Driver Status.  Each applicant seeking a preference as a full-

8  time driver shall have the burden of proof of showing, by a preponderance of the evidence, that he or

9  she was a full-time driver in the 12 months immediately preceding the Police Commission hearing on

10  his or her application.

11       (b) Driving Experience Required.  To qualify for issuance of a taxicab permit, an otherwise

12  qualified applicant must have the driving experience specified in subparts (i)-(vi) below, subject to the

13  modification stated in subsection (c).  The required driving may be satisfied only by driving a taxicab

14  and/or ramped taxi for which a permit has been issued by the Taxi Commission.  For purposes of this

15  subsection (b), the phrase "application heard by the Commission during calendar year" includes an

16  application publicly scheduled to be heard in the calendar year, but continued in that calendar year to

17  the next calendar year by the Commission.

18       (i)  For an application heard by the Commission during calendar year 2004:  The

19  applicant must have been a full-time driver during the 12 months immediately preceding the

20  Commission's hearing on the application.  For purposes of this subpart (i), "full-time driver"

21  shall be defined in accordance with Section 1076(o), except that the time frame applicable to

22  the definition is the 12 months immediately preceding the hearing on the application rather than

23  12 months constituting a calendar year.

24

25

1    *(ii)  For an application heard by the Commission during calendar year 2005:  The*

2 *applicant must have been a full-time driver, as defined in Section 1076(o), during calendar year*

3 *2004 or the 12 months immediately preceding the hearing on the application.*

4    *(iii)  For an application heard by the Commission during calendar year 2006:  The*

5 *applicant must have been a full-time driver, as defined in Section 1076(o), during any two*

6 *calendar years from 2004 to 2006, inclusive.*

7    *(iv)  For an application heard by the Commission during calendar year 2007:  The*

8 *applicant must have been a full-time driver, as defined in Section 1076(o), during any three*

9 *calendar years from 2004 to 2007, inclusive.*

10    *(v)  For an application heard by the Commission during calendar year 2008:  The*

11 *applicant must have been a full-time driver, as defined in Section 1076(o), during any four*

12 *calendar years from 2004 to 2008, inclusive.*

13    *(vi)  For an application heard by the Commission in 2009 and subsequent calendar*

14 *years:  The applicant must have been a full-time driver, as defined in Section 1076(o), for five*

15 *years, as specified in Alternative 1 or Alternative 2 below.*

16     *Alternative 1:  The applicant was a full-time driver during the calendar year*

17  *immediately preceding the hearing, and during four of the five calendar years*

18  *immediately preceding that calendar year.*

19     *Alternative 2:  The applicant was a full-time driver during the calendar year in*

20  *which the application is heard, and during four of the five calendar years immediately*

21  *preceding that calendar year.*

22    *(vii)  The Commission may substitute an equivalent amount of prior full-time driving*

23 *experience for the experience required under subsections (b)(i)-(vi) above, where the*

24 *Commission determines after a public hearing that the applicant has been unjustly and*

25 *systematically denied employment in the taxi industry in retaliation for engaging in legitimate*

1    *political, expressive, or labor activity. The applicant shall have the burden of establishing such*

2    *a claim, and any such determination shall require a two-thirds' vote of the Commission.*

3    *(c) Modification of Required Driving Experience. If no applicant has the driving experience*

4    *required pursuant to subsections (b)(ii)-(vi), but public convenience and necessity as determined*

5    *pursuant to Section 1079 warrants issuance of a taxicab permit, the Taxi Commission may issue the*

6    *permit to an otherwise qualified applicant who has been a full-time driver during the 12 months*

7    *immediately preceding the Commission's hearing on the application. For purposes of this first*

8    *paragraph of subsection (c), "full-time driver" shall be defined in accordance with Section 1076(o),*

9    *except that the time frame applicable to the definition is the 12 months immediately preceding the*

10   *hearing on the application rather than 12 months constituting a calendar year.*

11   *The Commission may by regulation establish additional driving experience required for the*

12   *issuance of a taxicab permit under the circumstances described in this subsection (c), provided that the*

13   *regulation shall require neither greater driving experience than is required pursuant to subsections*

14   *(b)(ii)-(vi) nor driving experience for any calendar year greater than the driving experience*

15   *encompassed in the definition of "full-time driver" in Section 1076(o).*

16   *(d) Educational Requirements. In addition to meeting the driving requirements in subsections*

17   *(b) and (c), applicants must also meet any educational or training requirements imposed by the Taxi*

18   *Commission.*

19   *(e) Burden of Proof on Applicant; Recordkeeping by Applicant. The taxicab permit applicant*

20   *shall have the burden of showing that he or she has the driving experience required to qualify for the*

21   *taxicab permit. The applicant shall keep records sufficient to document his or her driving for the*

22   *calendar year or years necessary to satisfy the driving requirement.*

23   *(f) Recordkeeping By Color Scheme Permitholders. Holders of color scheme permits shall*

24   *maintain and retain records that will document driving performed by drivers of taxicabs and ramped*

25   *taxis affiliated with the color scheme. Within 60 days of the effective date of this subsection (e), the*

1  *Taxi Commission shall adopt a regulation requiring holders of color scheme permits to maintain and*

2  *retain such records for a period of time sufficient to aid the Commission in determining whether*

3  *applicants have met the specific driving requirements mandated by subsection (b). Failure of the*

4  *Commission to adopt such a regulation, or failure of the color scheme permitholder to comply with the*

5  *regulation, shall not excuse the permit applicant from the driving requirement or relieve the applicant*

6  *from the burden of proving that he or she has satisfied the requirement.*

7  *(g) Notice of Required Driving. Notice of the driving experience required of taxicab permit*

8  *applicants pursuant to subsections (b) and (c) and of the applicant's burden of proving the requisite*

9  *driving experience and maintaining adequate records pursuant to subsection (d), shall be given by the*

10  *City and color scheme permitholders pursuant to subparts (i)-(iii) below. In accord with Section*

11  *1148.1(e), the notice shall also include information pertaining to ramped taxi permit applicants.*

12  *Failure to give the notice required by subparts (i), (ii), or (iii) shall not excuse the taxicab permit*

13  *applicant from the driving requirement or relieve the applicant from the burden of proving that he or*

14  *she has satisfied the requirement. The Taxi Commission may provide additional notice beyond that*

15  *required by subparts (i)-(iii).*

16  *(i) Within 30 days of the effective date of this subsection (f), the Commission shall give*

17  *written notice of the requirements of subsections (b), (c), and (d) to each applicant on the*

18  *taxicab waiting list. Thereafter, the Commission shall give written notice to each new applicant*

19  *on the taxicab waiting list on or before the filing of the application.*

20  *(ii) Beginning no later than 30 days after the effective date of this subsection (f), the*

21  *Office of Treasurer and Tax Collector, in consultation with the Commission, shall give written*

22  *notice of the requirements of subsections (b), (c), and (d) to each person who is obtaining or*

23  *renewing the driver of public passenger vehicle permit. Said notice shall additionally inform*

24  *the person of the existence of the taxicab waiting list and the process for getting on the list.*

25

1    *(iii)  Within 60 days of the effective date of this subsection (f), the Commission shall*

2    *adopt a regulation requiring each holder of a color scheme permit to post written notice of the*

3    *requirements of subsections (b), (c), and (d) at a location at the color scheme's place of*

4    *business that is ordinarily within the view of working taxi drivers affiliated with the color*

5    *scheme.*

6

7    **SEC. 1148.1.  PERMIT APPLICATIONS; ~~PREFERENCES~~.**

8         (a)  **Submission of Applications.**  Applications for permits for ramped taxis shall be

9    made to the Taxi Commission on a form to be furnished by the Commission.  *An applicant for a*

10   *ramped taxi permit must, at the time of filing the application, meet the same requirements as set forth in*

11   *Section 1121(a) for an applicant for a taxi permit.*  Applications for permits for ramped taxis shall

12   be accepted by the Commission and shall be recorded by the date and time at which each

13   application is received.  Except as otherwise provided herein, the Commission shall maintain

14   a list in the order of receipt ("ramped taxi list").  In the absence of any preference provided for

15   in this Division, applicants for permits for ramped taxis shall be processed and considered by

16   the Commission in accordance with the order of application as set forth on the ramped taxi

17   list.  When a permit becomes available for issuance and an applicant on the waiting list is

18   eligible for a hearing before the Taxi Commission, the Commission shall so notify the

19   applicant.

20        As of the effective date of *Ordinance No. 562-88,* ~~this ordinance~~ all persons whose

21   application is already on "the taxicab waiting list" as provided for in Section 1121 of this Article

22   will be placed on the ramped taxi list.  Their place on the ramped taxi list shall be determined

23   as of the date and time on which his or her application for the taxicab waiting list was received

24   by the Commission.  Those individuals so placed will remain on the taxicab waiting list until

25   they are removed in accordance with Section 1080(c)(1) of this Article.

1     (b) **Limitation on Acceptance of Other Permits.** All persons accepting a ramped

2    taxi permit shall be precluded from accepting any other motor vehicle for hire permit regulated

3    by this Article for a minimum of five years after receipt of a ramped taxi permit or, in the

4    alternative, for a minimum of three years after receipt of the ramped taxi permit so long as six

5    months have elapsed since the permittee gave notice of his or her intent to leave the ramped

6    taxi program in accordance with the provisions of Subsection (c). If the permittee becomes

7    eligible for a permit from another motor vehicle for hire waiting list at a time when the

8    permittee is precluded from accepting the permit, the permittee's application will be kept

9    active until a permit becomes available when the permittee is no longer precluded from

10   accepting one.

11     (c) **Notice of Intent to Leave the Ramped Taxi Program.** Upon completion of a

12   minimum of 30 months as a ramped taxi permittee, the permittee may opt to leave the ramped

13   taxi program by filing with the Taxi Commission a written notice of intent to leave the program.

14   The date the Commission receives the notice of intent to leave the ramped taxi program shall

15   be deemed the date the permittee filed the notice. Upon receipt of the notice, the

16   Commission shall promptly inform a reasonable number of persons at the head of the ramped

17   taxi list of the permittee's intent to leave the ramped taxi program.

18     In accordance with Subsection (b), the permittee's decision to leave the ramped taxi

19   program shall become effective six months after his or her filing of the notice of intent to leave

20   the program. Subject to qualifications (i) and (ii) below, upon completion of the six-month

21   notice period, the permittee shall be required to leave the ramped taxi program, and shall no

22   longer be precluded from accepting another motor vehicle for hire permit regulated by this

23   Article.

24     (i) If, at the completion of the six-month period, the permittee is not yet eligible

25   for a permit from another motor vehicle for hire list, or no such permit is available, the

1    permittee, at his or her option, may remain in the ramped taxi program for any period of

2    time until the permittee becomes eligible for a permit from another motor vehicle for

3    hire list and such permit becomes available.

4        (ii)  The permittee's decision to leave the ramped taxi program shall become

5    inoperative if, within the first three months of the required six-month notice period, the

6    permittee informs the Commission in writing of his or her decision to rescind the notice

7    of intent to leave the program.  The permittee shall be required to file a subsequent

8    notice of intent to leave the program if he or she subsequently decides to leave the

9    program.  The same requirements governing the permittee's initial notice of intent to

10    leave the program, including the full six-month notice period, shall govern any

11    subsequent notice of intent to leave the program.

12    (d)  Notwithstanding any other provision of this Section, the Taxi Commission may

13    require that a taxicab permit to be issued to a ramped taxi permittee exiting the ramped taxi

14    program be issued (i) three months after the Commission hearing on the application for the

15    taxicab permit or (ii) when a new permittee has qualified for the ramped taxi permit and has

16    acquired a suitable vehicle which has passed inspection, whichever event occurs first.  Before

17    the taxicab permit is issued, the ramped taxi permittee who is exiting the ramped taxi program

18    shall retain the ramped taxi permit and continue to operate the ramped taxi permit.  Under no

19    circumstances may an individual simultaneously hold a ramped taxi permit and a taxicab

20    permit.  Under no circumstances may two individuals hold the same ramped taxi permit or

21    taxicab permit.

22    *(e)  Driving Experience Required.  In order to qualify for a ramped taxi permit, an applicant*

23    *must meet the same driving requirement stated in Section 1121(b) that an applicant for a taxicab*

24    *permit must meet.  In accordance with Section 1121(c), if no ramped taxi permit applicant has the*

25    *requisite driving experience, but public convenience and necessity as determined by the Taxi*

1  *Commission pursuant to Section 1079 warrants issuance of a ramped taxi permit, the Commission may*

2  *issue the permit to an otherwise qualified applicant who has been a full-time driver during the 12*

3  *months immediately preceding the Commission's hearing on the application.  In accordance with*

4  *Section 1121(d), a ramped taxi permit applicant has the burden of showing that he or she has the*

5  *driving experience required to qualify for the permit, and shall keep records sufficient to document his*

6  *or her driving for the calendar year or years necessary to satisfy the driving requirement.  Failure of*

7  *the Taxi Commission to adopt the regulation specified in Section 1121(e) requiring recordkeeping by*

8  *color scheme permitholders, or failure of a color scheme permitholder to follow the regulation, shall*

9  *not excuse a ramped taxi permit applicant from the driving requirement or relieve the applicant of the*

10  *burden of proving that he or she has satisfied the requirement.*

11      *The notices required by Section 1121(g) shall indicate that the driving experience required by*

12  *Section 1121(b) covers applicants for a ramped taxi permit as well as applicants for a taxicab permit.*

13  *The notices required to Sections 1121(g)(i) and 1121(g)(ii) shall be given to applicants on the ramped*

14  *taxi list as well as applicants on the taxicab waiting list, but if an applicant is on both lists, these*

15  *notices need not be given twice to the same person.  Failure to give the notices required pursuant to*

16  *Sections 1121(g)(i), 1121(g)(ii), or 1121(g)(iii) and this subsection (d) shall not excuse the ramped taxi*

17  *applicant from the driving requirement or relieve the applicant from the burden of proving that he or*

18  *she has satisfied the requirement.*

19      *(f)* ~~(e)~~ **Preference for Full-Time Drivers of Ramped Taxis.** Among the applicants

20  whose names appear on the ramped taxi list, the Taxi Commission shall give preference to

21  any applicant who has been a full-time driver of a ramped taxi during the 6 months

22  immediately preceding the Commission's hearing on that applicant's application, granting

23  permits to all otherwise eligible full-time drivers of ramped taxis on the list before granting

24  permits to others on the ramped taxi list.  Any applicant seeking a preference pursuant to this

25  Subsection shall, at least 21 days prior to the hearing at which the applicant seeks to be

1   considered, so notify the Commission in writing and submit evidence to prove that the

2   applicant was a full-time driver of a ramped taxi in the preceding 6 months.  For purposes of

3   this section, "full-time driver of a ramped taxi" shall mean a permitted driver who is actually

4   engaged in the mechanical operation and having physical charge or custody of a ramped taxi

5   as defined in this Article which is available for hire or actually hired *(i)* for at least four hours

6   during any 24-hour period on at least 75 percent of the business days during the ~~calendar year~~

7   *6 months immediately preceding the Commission's hearing on that applicant's application, or (ii) for*

8   *at least 400 hours during the 6 months immediately preceding the Commission's hearing on the*

9   *application.*

10

11       Section 3.  The San Francisco Police Code is hereby amended by adding

12   Sections 1186, 1187, and 1188, to read as follows:

13   *SEC. 1186.  FULL-TIME DRIVING REQUIREMENT; VIOLATIONS; ADMINISTRATIVE*

14   *PENALTIES.*

15       *(a)  Full-Time Driving Requirement.  The holder of a taxicab permit shall be a full-time driver*

16   *as provided in Section 1081.*

17       *(b)  Administrative Penalties.  The Taxi Commission (the Commission) may impose*

18   *administrative penalties for violations of the full-time driving requirement, in accordance with the*

19   *procedures established in Section 1188.*

20       *(c)  Amount of Penalty.  The administrative penalties assessed against the permit holder by the*

21   *Commission shall not exceed the amount of any lease fees collected by the permit holder during the*

22   *period that the permit holder was in violation of the full-time driving requirement.  Where the permit*

23   *holder does not collect lease fees, the Commission may impose administrative penalties not to exceed*

24   *$140 for each day or $30 for each hour the permit holder fails to drive short of the applicable standard*

25   *for compliance.*

*In determining the amount of the penalty in an individual case, the Commission shall take into account:*

*(i)  Whether the permit holder has in the past violated the full-time driving requirement, other provisions of Article 16, the Taxi Commission's rules and regulations, or state law relevant to the operation of a taxicab permit;*

*(ii)  Whether the permit holder concealed or attempted to conceal his or her non-compliance with the full-time driving requirement; and,*

*(iii)  Such additional factors as the Commission may determine are appropriate.*

*SEC. 1187.  COMMISSION RULES AND REGULATIONS; VIOLATIONS; ADMINISTRATIVE PENALTIES.*

*(a)  Administrative Penalties.  The Taxi Commission (the Commission) may impose administrative penalties for violations of the Commission's rules and regulations, in accordance with the procedures established in Section 1188.*

*(b)  Amount of Penalty.  For regulations classified as Minor under the Commission's Rules, there shall be a penalty not to exceed $25 for the first violation, $50 for a second violation of the regulation within one year of the first violation, and $150 for a third or additional violation of the regulation within one year of the first violation.*

*For regulations classified as Moderate under the Commission's Rules, there shall be a penalty not to exceed $75 for the first violation, $150 for a second violation of the regulation within one year of the first violation, and $450 for a third or additional violation of the regulation within one year of the first violation.*

*For regulations classified as Major under the Commission's Rules, there shall be a penalty not to exceed $250 for the first violation, $400 for a second violation of the regulation within one year of*

1   *the first violation, and $500 for a third or additional violation of the regulation within one year of the*

2   *first violation.*

3       *In determining the amount of the penalty in an individual case, the Commission shall take into*

4   *account:*

5       *(i)  Whether the permit holder has in the past violated the full-time driving requirement, other*

6   *provisions of Article 16, the Taxi Commission's rules and regulations, or state law relevant to the*

7   *operation of a taxicab permit;*

8       *(ii)  Whether the permit holder concealed or attempted to conceal his or her non-compliance*

9   *with the Commission's rules and regulations; and,*

10      *(iii)  Such additional factors as the Commission may determine are appropriate.*

11

12  *SEC. 1188.  PROCEDURES FOR ADMINISTRATIVE PENALTIES.*

13      *(a)  Director's Notice.  Upon a determination that a permit holder has violated the full-time*

14  *driving requirement or the Commission's rules and regulations, the Executive Director of the Taxi*

15  *Commission (the Director) shall send a written notice, by first class mail or hand-delivery, to the*

16  *permit holder, at the address listed in the Taxi Commission's records, identifying and describing the*

17  *alleged violations and stating the amount of the administrative penalty to be imposed.  The notice shall*

18  *also inform the permit holder that he or she has the right to request a fact-finding hearing on the*

19  *alleged violations and the proposed penalty by filing such a request within 15 business days of the date*

20  *of the notice.  The Director and the permit holder may modify the Director's proposed decision by*

21  *mutual consent.  If the permit holder does not request a fact-finding hearing within the 15 days, the*

22  *decision of the Director shall be final.*

23      *(b)  Scheduling of Fact-finding Hearing.  Whenever a fact-finding hearing is requested under*

24  *subsection (a) above, the Director within 10 business days of receiving the request shall notify the*

25  *permit holder of the date, time, and place of the hearing by first-class mail or hand delivery.  Such*

*hearing shall be held no sooner than 20 business days and no later than 40 business days after the*

*Director receives the request for a hearing, unless the time is extended by mutual agreement of the*

*permit holder and the Director. Notice of hearings shall be posted on the Commission's web site at*

*least 72 hours in advance of the hearing.*

*(b) Hearing Officers. The Director shall appoint a hearing officer for the fact-finding hearing*

*from a list approved by the Commission. The hearing officer shall not be an employee of the Taxi*

*Commission or the Police Department.*

*(c) Submittals for the Hearing. At least 5 business days prior to the hearing, the parties to the*

*hearing shall submit written information to the hearing officer including, but not limited to, the*

*following: a statement of the issues to be determined by the hearing officer, a statement of the evidence*

*to be offered at the hearing and the identity of any witnesses to appear at the hearing. The written*

*information shall not exceed 10 double-spaced pages, excluding exhibits.*

*(d) Conduct of the Hearing. The hearing shall be open to the public and tape recorded. Any*

*party to the hearing may, at his or her own expense, cause the hearing to be recorded by a certified*

*court reporter. During the hearing, evidence and testimony may be presented to the hearing officer.*

*Parties may be represented by counsel and have the right to cross-examine witnesses. All testimony*

*shall be given under oath.*

*The hearing need not be conducted according to formal rules of procedure and evidence, but no*

*decision shall be based solely on hearsay evidence. The hearing officer may make reasonable rulings*

*to ensure a fair and efficient hearing.*

*(e) Proposed Decision. The hearing officer shall, within ten business days after the conclusion*

*of the hearing, present a proposed decision including written findings and recommendations regarding*

*penalties to the Commission. The hearing officer shall at that time transmit his or her decision to the*

*permit holder by certified mail directed to the most recent address on file with the Commission for the*

1    *permit holder.  The Commission shall post at its office a notice that a copy of the proposed decision is*

2    *available for public inspection during normal business hours.*

3        *(f) Commission Action.  The Executive Director shall place the hearing officer's proposed*

4    *decision on the Commission's consent calendar for the next scheduled meeting occurring not less than*

5    *ten calendar days after entry of the Director's decision.  The Director shall also submit the recording*

6    *of the hearing and any written materials submitted in connection with the hearing.  The proposed*

7    *decision shall be a recommendation to the Commission, and the Commission may adopt, modify, or*

8    *deny such recommendation, or may remand the matter to the hearing officer for further proceedings.*

9    *The Commission may act on the hearing officer's proposed decision and the record presented; it may*

10   *not rehear the case.  The Commission shall serve its final decision upon the parties to the hearing and*

11   *post the decision in the same manner as provided for herein with respect to the hearing officer's*

12   *proposed decision.*

13       *(g) Collection.  If the Commission finds against the permit holder and imposes administrative*

14   *penalties, the Commission's decision shall state the amount of the penalties and declare that they are*

15   *due and payable to the City and County of San Francisco within 30 days of the date of the decision,*

16   *provided that the Executive Director may agree to a reasonable payment schedule not to exceed the*

17   *permit holder's income on a monthly basis.  If the penalties are not paid to the Taxi Commission within*

18   *30 days of the notice, the Commission may move to suspend or revoke the permit.*

19   /   /   /

20   /   /   /

21   /   /   /

22   /   /   /

23   /   /   /

24   /   /   /

25   /   /   /

1     *(h) Other Penalties. The penalties and methods of enforcement set forth in this Section and in*

2     *Sections 1186 and 1187 are in addition to those set forth in Sections 1090 and 1185 of this Code and in*

3     *addition to any other penalties or methods of enforcement authorized by law.*

4

5

6     APPROVED AS TO FORM:
       DENNIS J. HERRERA, City Attorney

7

8     By: _____

9            THOMAS J. OWEN
            Deputy City Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



## City and County of San Francisco

### Tails

### Ordinance

City Hall
1 Dr. Carlton B. Goodlett Place
San Francisco, CA 94102-4689

**File Number:**    040343                    **Date Passed:**

Ordinance amending the San Francisco Police Code by: amending Sections 1076 and 1081, to state a test, measured as 800 cumulative hours per year, for satisfying the driving requirement imposed on taxi and ramped taxi permit holders; amending Sections 1121 and 1148.1, to set requirements, including prior driving experience, for taxi and ramped taxi permit applicants; and, adding Sections 1186, 1187, and 1188, to establish administrative penalties and procedures for violations of the full-time driving requirement and for violations of the Taxi Commission's rules and regulations.

June 15, 2004   Board of Supervisors — PASSED ON FIRST READING

Ayes: 11 - Alioto-Pier, Ammiano, Daly, Dufty, Gonzalez, Hall, Ma, Maxwell, McGoldrick, Peskin, Sandoval

June 22, 2004   Board of Supervisors — FINALLY PASSED

Ayes: 10 - Alioto-Pier, Ammiano, Daly, Dufty, Gonzalez, Hall, Maxwell, McGoldrick, Peskin, Sandoval
Excused: 1 - Ma

File No. 040343

I hereby certify that the foregoing Ordinance was FINALLY PASSED on June 22, 2004 by the Board of Supervisors of the City and County of San Francisco.

JUL 0 1 2004

Gloria L. Young
Clerk of the Board

_____
**Date Approved**

Mayor Gavin Newsom

File No. 040343