# EXHIBIT I

Westlaw.

Not Reported in Cal.Rptr.2d
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
**(Cite as: Not Reported in Cal.Rptr.2d)**

Page 1

San Francisco Taxi Permitholders and Drivers Ass'n v. City, County of San Francisco
Cal.App. 1 Dist.,2002.
Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

Court of Appeal, First District, Division 1, California.
SAN FRANCISCO TAXI PERMITHOLDERS AND DRIVERS ASSOCIATION et al., Plaintiffs and Appellants,
v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.
No. A095858.
(San Francisco County Super. Ct. No. 316993).

July 11, 2002.

Nonprofit corporation of taxicab permit holders and drivers, and two individual members of corporation, sought declaratory and injunctive relief against city, relating to city's requirement that holders of permits to operate taxicab businesses must be full-time taxicab drivers and must meet continued-driving requirement. The Superior Court, San Francisco County, No. 316993, sustained city's demurrer without leave to amend. Plaintiffs appealed. The Court of Appeal, Swager, J., held that: (1) full-time driver requirement could not be construed to contain "changed circumstances" exception; (2) plaintiffs could seek declaration regarding a possible changed circumstances exception to continued-driving requirement; (3) plaintiffs did not present actual controversy regarding extent and limits of city taxi commission's power to adopt and apply a standard for compliance with continued-driving requirement; and (4) city's administrative rules regarding full-time driving requirement were reasonable.

Affirmed in part, reversed in part.

West Headnotes

**[1] Automobiles 48A €⇌78**

48A Automobiles
   48AIII Public Service Vehicles
      48AIII(B) License and Registration
         48Ak78 k. Eligibility for and Vehicles Subject to License or Certificate. Most Cited Cases

**Automobiles 48A €⇌106**

48A Automobiles
   48AIII Public Service Vehicles
      48AIII(B) License and Registration
         48Ak106 k. Revocation, Forfeiture, or Suspension of License. Most Cited Cases
City ordinance requiring holders of permits to operate taxicab businesses to be full-time taxicab drivers was not flexible enough to allow an interpretation which would provide a "changed circumstances" exception excusing a permit holder from meeting full-time driving requirement, based on circumstances arising after issuance of permit, and thus, existence of changed circumstances did not affect city's power to admonish, discipline, or revoke a permit.

**[2] Automobiles 48A €⇌75**

48A Automobiles
   48AIII Public Service Vehicles
      48AIII(B) License and Registration
         48Ak75 k. Municipal Ordinances. Most Cited Cases

**Automobiles 48A €⇌106**

48A Automobiles
   48AIII Public Service Vehicles
      48AIII(B) License and Registration
         48Ak106 k. Revocation, Forfeiture, or Suspension of License. Most Cited Cases
Provision of city's police code, defining "good cause" for revocation of permit to operate a taxicab business as including a permit holder's failure to be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03335-JSW   Document 26-10   Filed 02/15/2008   Page 3 of 13   Page 2 of 12

Not Reported in Cal.Rptr.2d                                                                                      Page 2
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d)

a full-time taxicab driver, was within city's power to implement voter-initiated ordinance imposing full-time driver and continued-driving requirements for permits to operate taxicab businesses and authorizing police commission to revoke such permits upon good cause; city was using its legislative power to interpret the ordinance by enumerating considerations constituting good cause, and "good cause" definition's use of ordinance's full-time driver standard did not necessarily conflict with ordinance's more generally worded continued-driving standard, because continued-driving standard was not always or usually less stringent than full-time driving standard, so that city could reasonably interpret continued-driving standard as incorporating the full-time driving standard.

[3] Declaratory Judgment 118A €═392.1

118A Declaratory Judgment
   118AIII Proceedings
      118AIII(H) Appeal and Error
         118Ak392 Appeal and Error
            118Ak392.1 k. In General. Most Cited Cases
Trial court's technical or procedural error in failing to enter one of its rulings as a declaratory judgment did not require reversal in the declaratory judgment action; the appellate court could effectively cure the error by making the declaration of rights in the appellate opinion. West's Ann.Cal.C.C.P. § 1060.

[4] Declaratory Judgment 118A €═213.1

118A Declaratory Judgment
   118AII Subjects of Declaratory Relief
      118AII(K) Public Officers and Agencies
         118Ak213 Licenses and Taxes
            118Ak213.1 k. In General. Most Cited Cases
Questions regarding extent and limits of city taxi commission's power to adopt and apply a standard for compliance with city ordinance's continued-driving requirement for permit to operate a taxicab business did not present actual controversy that could be resolved by declaratory judgment; permit holders were improperly seeking an advisory opinion, and while such opinion on commission's power to adopt a driving standard might assist the commission in making future policy decisions, it would not resolve an existing controversy between permit holders and city. West's Ann.Cal.C.C.P. § 1060.

[5] Declaratory Judgment 118A €═213.1

118A Declaratory Judgment
   118AII Subjects of Declaratory Relief
      118AII(K) Public Officers and Agencies
         118Ak213 Licenses and Taxes
            118Ak213.1 k. In General. Most Cited Cases
Allegation of holders of permits to operate taxicab businesses, that city police department's notice of change in its continued-driving requirement for permit holders "failed to convey to individual permittees the fact that the [department] had changed its [internal] interpretation" of the requirement, did not present an actual controversy which could be resolved by declaratory judgment; holders' allegation, which was stated in very general terms, did not specify whether permit holders were presenting questions regarding administrative procedure, the actual notice received by permit holders, or prejudice to permit holders in context of particular administrative action, and court could not determine whether or how the notice issue might affect permit holders' interests in opposing alleged written admonishments issued by police. department. West's Ann.Cal.C.C.P. § 1060.

[6] Automobiles 48A €═78

48A Automobiles
   48AIII Public Service Vehicles
      48AIII(B) License and Registration
         48Ak78 k. Eligibility for and Vehicles Subject to License or Certificate. Most Cited Cases
City's administrative rule reasonably construed "business day" as meaning calendar day, for purposes of city ordinance imposing full-time driving requirement on holders of permits to operate taxicab businesses and requiring a permit applicant to declare an intent to drive for at least four hours during any 24-hour period on at least 75 percent of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03335-JSW   Document 26-10   Filed 02/15/2008   Page 4 of 13   Page 3 of 12

Not Reported in Cal.Rptr.2d  Page 3
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d)

business days during calendar year; a contrary interpretation allowing shifts of eight hours or more spanning two calendar days to be counted as two four-hour shifts would undermine full-time driver requirement by effectively cutting it in half and would introduce elements of uncertainty and complexity.

[7] Automobiles 48A ⇐78

48A Automobiles
   48AIII Public Service Vehicles
      48AIII(B) License and Registration
         48Ak78 k. Eligibility for and Vehicles Subject to License or Certificate. Most Cited Cases
City taxi commission's administrative rule disallowing a shift actually driven from being counted towards police code's requirement that holder of permit to operate taxicab business must be full-time taxicab driver, if permit holder's waybill was not accurate and complete, was reasonable and consistent with the police code's full-time driver requirement.

[8] Automobiles 48A ⇐78

48A Automobiles
   48AIII Public Service Vehicles
      48AIII(B) License and Registration
         48Ak78 k. Eligibility for and Vehicles Subject to License or Certificate. Most Cited Cases
City taxi commission's administrative rule requiring a holder of a permit to operate a taxicab business to drive a designated spare taxicab when holder's taxicab was out of service, in order for holder to receive credit toward police code's full-time driving requirement for holders, was reasonable and consistent with the police code's full-time driver requirement.

[9] Automobiles 48A ⇐78

48A Automobiles
   48AIII Public Service Vehicles
      48AIII(B) License and Registration
         48Ak78 k. Eligibility for and Vehicles Subject to License or Certificate. Most Cited Cases
City taxi commission's administrative rule requiring that, if a holder of permit to operate taxicab business drives eight-hour shift composed of two four-hour components driven before and after midnight in separate calendar days, holder must return to garage after first four-hour component to return one waybill and take out another for next four-hour component, was reasonable and consistent with the police code's full-time driver requirement for permit holders.

SWAGER, J.
*1 A nonprofit corporation, San Francisco Permitholders and Drivers Association, Inc. (Permitholders Association), and two individual members of the corporation, Hubert Fontaine and James Matheson, appeal a judgment dismissing a suit for declaratory judgment and injunctive relief against the City and County of San Francisco and the Taxi Commission of the City and County of San Francisco (hereafter collectively referred to as the City), which was entered on an order dismissing the City's demurrer without leave to amend. We reverse the order sustaining the demurrer to the first, second and fifth causes of action and otherwise affirm.

PROCEDURAL BACKGROUND

As alleged in the complaint, Hubert Fontaine worked as a taxicab driver and dispatcher in the city for almost 20 years before receiving a permit to operate a taxicab business in San Francisco in February 1997. Shortly after receiving the permit, he served as a member of the board of directors of the De Soto Cab Cooperative Company and then served as president of the company from March 1998 until September 1999. In March 2000, Fontaine was formally admonished by the San Francisco Police Department Taxicab Detail for failure to satisfy a permit requirement that he be a full-time driver. Specifically, he "was admonished for failure to drive 185 shifts during 1999 despite the fact that he drove 126 shifts of four hours or more while also working as a De Soto dispatcher and serving as president and a director of De Soto." The admonishment warned that his failure to satisfy the full-time

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03335-JSW   Document 26-10   Filed 02/15/2008   Page 5 of 13   Page 4 of 12

Not Reported in Cal.Rptr.2d                                                                                          Page 4
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d)

driver requirement "would constitute adverse evidence in any subsequent proceeding concerning his permit before the Taxi Commission...."

James Matheson, age 72 years, worked as a taxicab driver in San Francisco for 26 years before receiving a permit to operate a taxicab business in 1990. As a result of emphysema, Matheson could drive only "about 70 shifts during 1999, and only about 40 shifts during the year 2000."The complaint alleges that, in March 2000, he also was admonished by the San Francisco Police Department Taxicab Detail "and threatened with revocation of his permit to operate a taxicab business due to his alleged failure to satisfy the purported 'driving requirement.' " The admonishment similarly stated that his failure to satisfy the driving requirement would be used "as adverse evidence in any subsequent proceeding concerning his permit before the Taxi Commission."

Both Fontaine and Matheson are members of the Permitholders Association. In a complaint filed November 28, 2000, they joined with the Permitholders Association in challenging the existence and application of a requirement that permit holders be full-time drivers. The complaint alleges six causes of action for declaratory and injunctive relief that may be divided into three groups: (1) the first and fifth causes of action (the Proposition K causes of action) challenge the City's interpretation of Proposition K, an initiative ordinance enacted in 1978, as imposing a "driving requirement" on holders of taxicab permits, (2) the sixth cause of action (the Police Code cause of action) challenges the City's reliance on section 1090, subdivision (a)(i), and section 1076, subdivision (o), of the Police Code of the City and County of San Francisco, and (3) the second, third and fourth causes of action (the administrative enforcement causes of action) challenge specific administrative interpretations and enforcement actions relating to the full-time driver requirement.

*2 The City filed a demurrer to the complaint asserting that each cause of action failed to state facts sufficient to constitute a cause of action. The trial court sustained the demurrer without leave to amend with respect to all six causes of action and on July 12, 2001, filed a judgment dismissing the complaint. Appellants filed a timely notice of appeal.

DISCUSSION

A. Standard of Review

We review the judgment according to well settled principles. "We treat the demurrer as admitting all material facts properly pleaded.... Facts that may be implied or inferred from those expressly alleged are also taken as true."(*Dunn-Edwards Corp. v. South Coast Air Quality Management Dist.* (1993) 19 Cal.App.4th 536, 542, 24 Cal.Rptr.2d 99.)"When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm."(*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.)

Our review also requires us to interpret the meaning of the relevant provisions of Proposition K and the regulations promulgated there under. In doing so we apply a fundamental rule of statutory construction: "[A] statute 'must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity.'[Citations.]" (*Wise v. Pacific Gas & Electric Co.* (1999) 77 Cal.App.4th 287, 299, 91 Cal.Rptr.2d 479.)

B. Proposition K Causes of Action

1. Legislative Background

In 1978, the San Francisco Board of Super-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03335-JSW   Document 26-10   Filed 02/15/2008   Page 6 of 13   Page 5 of 12

Not Reported in Cal.Rptr.2d
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d)

Page 5

visors placed on the ballot two competing measures to address the perceived evil of profiteering by taxicab companies and favored individuals in the sale of taxicab permits. The voters adopted Proposition K, the more far-reaching of the two measures. The voter pamphlet [FN1] described the measure as follows: "Shall taxicab permits be issued only to individual cab operators and shall the private sale of rights in taxicab permits be prohibited?"[FN2] The "Analysis" of the measure explained that it would require existing permit holders to exchange their permits within 60 days for re-issued permits that could not "be bought or sold privately." (S.F. Voter Information Pamp., *supra,* analysis of Prop. K by ballot simplification committee, p. 36.) After this 60-day period, "new permits would only be issued to individuals, not to companies."(*Ibid.*) In issuing these new permits, the City would give preference "to anyone who has been a taxicab driver for one straight year within the past three years."Summing up this explanation, the pamphlet stated: "If you vote yes, you do not want taxicab permits to be sold on the open market and you want to phase out ownership by companies."(*Ibid.*)

> FN1. San Francisco Voter Information Pamphlet, Primary Election (June 6, 1978) text of Proposition K, pages 53 and 54.

> FN2. San Francisco Voter Information Pamphlet, Primary Election, *supra,* page 36.

*3 The argument in favor of Proposition K described it as consumer legislation that would give "the voter ... a chance to say whether the cab business should be opened up to stop favored taxicab companies and individuals from buying and selling cab permits for profit and practicing unfair competition."(S.F. Voter Information Pamp., *supra,* argument in favor of Prop. K, p. 37.) The argument concluded: "STOP THE PROFITEERING-VOTE 'YES' ON PROPOSITION 'K.' " (*Ibid.*)

The present litigation arises from the requirement that new permits be issued in the future to individuals actively engaged in the taxicab business.

We do not need to discuss other aspects of the measure, such as the 60-day period for re-issuance of existing permits or the prohibition on private sale of permits.

Section 1, subdivision (b) of the San Francisco Administrative Code vests in the Chief of Police the "responsibility of establishing regulations to assure prompt, courteous and honest service to the riding public."Subdivision (d) thereof requires the Police Commission to "issue a sufficient number of permits to assure adequate taxicab service throughout the City and County of San Francisco."

The provisions of Proposition K that are pertinent to the resolution of the issues before us are found in sections 2, 3, and 4. (S.F. Voter Information Pamphlet, Primary Election, *supra,* pp. 53-54.)Section 2 regulates applications for new permits and provides in subdivision (b): "No permit shall be issued unless the person applying for the permit shall declare under penalty of perjury his or her intention actively and personally to engage as permittee-driver under any permit issued to him or her for at least four (4) hours during any twenty-four (24) hour period on at least seventy-five (75%) of the business days during the calendar year. No more than one permit shall be issued to any one person."(S.F. Voter Information Pamphlet, Primary Election, *supra,* p. 53.)Section 3 sets forth several criteria for issuance of new permits; the last of these criteria incorporates by reference section 2, subdivision (b): "(d) The applicant will be a full-time driver, within the meaning of Section 2(b) of this Ordinance, of the taxicab or other motor vehicle for hire."(S.F. Voter Information Pamphlet, Primary Election, *supra,* pp. 53-54.)

Proposition K, section 4 imposes a requirement that permit holders actively operate a taxicab under their permit. Subdivision (a) provides in pertinent part: "All permittees ... shall regularly and daily operate their taxicab or other motor vehicle for hire business during each day of the year to the extent reasonably necessary to meet the public demand for such taxicab or motor vehicle for hire service. [¶] Upon abandonment of such business for a period of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.2d
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d)

10 consecutive days by a permittee or operator, the Police Commission shall, after five days' written notice to the permittee or operator, revoke the permit or permits of such permittee or operator; provided, however, that the Chief of Police ... may on written application grant to the holder of any permit hereunder permission to suspend operation pursuant to such permit for a period not to exceed 90 calendar days in any one 12 month period in case of sickness, death, or other similar hardship."Subdivision (a) also provides that "All such permits and all rights granted under them may be rescinded and ordered revoked by the Police Commission for good cause."(S.F. Voter Information Pamphlet, Primary Election, *supra,* p. 54.)

2. The First and Fifth Causes of Action

*4 [1] The first cause of action alleges that an actual controversy has arisen between the City and appellants regarding a "driving requirement" imposed by Proposition K on taxi permit holders. It is alleged that the City contends "that Proposition K requires that each permittee actively and personally drive a taxicab operated by the permitted business for at least 4 hours per day on 75 percent of the business days in each calendar year that the permit is held."The City allegedly regards this specific quantitative "driving requirement" as remaining in effect throughout the lifetime of the permittee without regard for any changed circumstances that may prevent the permittee from meeting it and claims the right to revoke a taxicab permit for failure to satisfy the requirement, even though the permittee "maintains the permitted taxicab business in continuous operation as required by Section 4 of Proposition K."

The cause of action effectively asks for two declarations: first, that Proposition K should not be interpreted, or applied, to impose a " 'driving requirement' for the life of the permittee regardless of changed circumstances;" and, secondly, that the City may not revoke, or threaten to revoke, a taxicab permit for failure "to satisfy the Driving Requirement due to changed circumstances so long as the permittee maintains the permitted taxicab business in continuous operation ... as provided by Section 4 of Proposition K." We see these requests as presenting distinct issues. The first calls for a determination of whether Proposition K imposes a full-time driving requirement even if the permit holder's ability to drive full time changes. The second calls for a determination of the scope and extent of the full-time driving requirement.

The trial court's order sustaining the City's demurrer states that this cause of action cannot give appellants a right to declaratory or injunctive relief "because the full-time driving requirement imposed by Proposition K ... is not subject to any exception for taxi permit holders who, due to 'changed circumstances,' have become unable to continue to drive full-time," and, accordingly, the existence of changed circumstances does not affect the City's power to admonish, discipline, or revoke the permit of a permit holder. In effect, the order denies the first requested declaration regarding changed circumstances but does not address the second requested declaration relating to interpretation of section 4 of Proposition K.

"The interpretation of ordinances and statutes are proper matters for declaratory relief."(*Walker v. County of Los Angeles* (1961) 55 Cal.2d 626, 637, 12 Cal.Rptr. 671, 361 P.2d 247.)"It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties ... and requests that the rights and duties be adjudged. (Code Civ. Proc., § 1060.) If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration."(*Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 549-550, 305 P.2d 20; see also *City of Tiburon v. Northwestern Pac. R.R. Co.* (1970) 4 Cal.App.3d 160, 170; , 84 Cal.Rptr. 469 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading § 831, p. 288.) There can be no question that the first cause of action alleged an actual controversy and requested an adjudication of rights and duties on a proper subject for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03335-JSW   Document 26-10   Filed 02/15/2008   Page 8 of 13   Page 7 of 12

Not Reported in Cal.Rptr.2d                                                          Page 7
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d)

declaratory relief.

*5 As appellants argue, the relevant provisions in sections 2 and 3 relate only to the intent of the applicant at the time of making the application. Subdivision (b) of section 2 calls for a declaration under oath of an intent to meet a very specific and stringent standard of full-time operation of the taxicab. (S.F. Voter Information Pamphlet, Primary Election, *supra,* p. 53.)Subdivision (d) of section 3 requires a finding on the basis of application documents that the applicant will comply with his or her declared intent. Though it relates to probable future conduct, the finding is made in connection with the initial issuance of the permit and relates only to this administrative action. (*Id.,* at pp. 53-54, 84 Cal.Rptr. 469.)

The requirement of continuous operation of a taxicab under a permit is found in section 4, subdivision (a). Unlike section 3, subdivision (d), the language of section 4, subdivision (a), contains no cross-reference to the standard of section 2, subdivision (b), but instead requires in general terms that the permit holders "shall regularly and daily operate their taxicab ... during each day of the year to the extent reasonably necessary to meet the public demand for such taxicab...." (S.F. Voter Information Pamphlet, Primary Election, *supra,* p. 54.)

Appellants argue that this requirement of continuous operation of a taxicab is tangential to the central objectives of Proposition K; it does not directly relate to the evil of profiteering or the private sale of permits but serves only to regulate an alternate scheme of licensing individual taxicab drivers that Proposition K proposed to encourage. In light of the secondary importance of these provisions to the legislative objective, appellants urge adoption of a flexible interpretation of the continued-driving requirement of Proposition K. Such an interpretation would allow consideration of a permit holder's leadership position in a taxicab cooperative and would not preclude some accommodation for a physical disability.

The actual language of section 4, subdivision (a), however, militates against the policy of flexibility that appellants urge. The section authorizes revocation of a permit upon abandonment of the taxicab business for no more than 10 consecutive days. In the event of sickness or other hardship, it authorizes the police department to grant permission for a permit holder to suspend operation for only 90 calendar days and only upon written application and following a thorough investigation. These provisions reflect a consistent theme in Proposition K to meet the public demand for taxi service by assuring "prompt, courteous and honest service to the riding public...." (S.F.Admin.Code, appen .6, § 1, subd. (b), p. 23.)

We see no error in the trial court's ruling to the extent that it rejected the first requested declaration, i.e., the declaration regarding changed circumstances, but the second requested declaration relating to interpretation of section 4 of Proposition K presents distinct issues. As discussed later in this opinion, we consider that the standard for continuous operation under the permit in section 4 is consistent with local legislation, regulations, and administrative interpretations that reflect the quantitative driving standard of section 2, subdivision (b). Nevertheless, appellants may seek a declaration that the general standard in section 4 does not necessarily mirror in all cases the quantitative driving standard of sections 2 and 3. More specifically, they may request a declaration that the standard for continuous operation in section 4 would allow the enactment of local legislation or regulations, or the exercise of discretion under existing legislation and regulations, so as to make some limited allowance, consistent with the strong policy of Proposition K favoring full-time operation of taxicabs by permit holders, for a permit holder's leadership position in a taxicab cooperative or physical disability.

*6 We therefore conclude that the trial court erred in denying, without leave to amend, the second requested declaration in the first cause of action. Our analysis of the first cause of action is also dispositive of the fifth cause of action.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03335-JSW    Document 26-10    Filed 02/15/2008    Page 9 of 13    Page 8 of 12

Not Reported in Cal.Rptr.2d
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d)

Page 8

C. The Police Code Cause of Action

[2] The sixth cause of action seeks a declaration that section 1090, subdivision (a), of the San Francisco Police Code is unlawful and void because it conflicts with Proposition K. The provision, enacted in 1988, gives the Police Commission discretionary authority to revoke a taxicab permit "for good cause after a noticed hearing."Good cause is defined to include a series of considerations, the first of which is that "[t]he permittee ceased to be a full-time driver."The term "full-time driver" is in turn defined by section 1076, subdivision (o), to incorporate the standard of section 2, subdivision (b) of Proposition K. Subdivision (o) provides: " 'Full-time driver' is hereby defined to mean any driver actually engaged in the mechanical operation and having physical charge or custody of a motor vehicle for hire which is available for hire or actually hired for at least four hours during any 24-hour period on at least 75 percent of the business days during the calendar year."

Sections 1090 and 1076 are clearly within the City's legislative power to implement the provisions of Proposition K. The last sentence of section 4, subdivision (a), of the proposition authorizes the Police Commission to revoke taxicab permits "for good cause." The City retains legislative power to interpret the proposition by enumerating considerations constituting good cause. (*Creighton v. City of Santa Monica* (1984) 160 Cal.App.3d 1011, 1021, 207 Cal.Rptr. 78;*Armstrong v. County of San Mateo* (1983) 146 Cal.App.3d 597, 622, 194 Cal.Rptr. 294.)

We see no conflict between the language of section 1090 and Proposition K. In light of the importance given to the full-time driving standard of section 2, subdivision (b), it is reasonable to regard the failure to meet this standard as providing grounds for the discretionary revocation of a taxicab permit. We note that Proposition K not only requires an applicant to state under oath an intent to comply with this standard but also requires the Police Commission to make a finding, as a condition for issuing a permit, that the applicant will in fact comply with the standard. The use of this specific standard of section 2, subdivision (b) as good cause for revocation of a permit does not necessarily conflict with the more generally worded continued-driving standard of section 4. As discussed above, although section 4, subdivision (a), does not incorporate the exact language of section 2, subdivision (b), our analysis does not indicate that the standard set forth in section 4, subdivision (a) is always or usually less stringent than the standard of section 2, subdivision (b). The City may reasonably construe section 4 as incorporating the identical standard as section 2, subdivision (b), in a broad range of cases.

*7 [3] In sustaining the demurrer to the sixth cause of action, the trial court appropriately ruled: "plaintiffs' sixth cause of action cannot state any cause of action against defendants because Section 1090 of the San Francisco Police Code is lawful and valid, and does not conflict with Proposition K on its face or as applied."We regard the trial court's failure to enter this ruling as a declaratory judgment as a technical procedural irregularity that is effectively cured by our opinion here. As stated in *Newby v. Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 304, 131 Cal.Rptr. 547,disapproved on other grounds in *Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 740-741, footnote 9, 180 Cal.Rptr. 496, 640 P.2d 115,"[e]ven though the failure to declare appellant's rights was erroneous, reversal would be an idle act. [Citations.] The appellate opinion is, in effect, a declaration of the rights of the parties."(See 5 Witkin, Cal. Procedure, *supra,* § 832, p. 290.) Accordingly, we affirm the order sustaining the demurrer to the sixth cause of action.

D. The Enforcement Causes of Action

1. The Second Cause of Action

[4][5] The second cause of action recites a history of administrative interpretations of the continued-driving requirement by the city attorney and the Taxicab Detail of the San Francisco Police Department, including an 800-hour-per-year driving rule that was allegedly the subject of successive and inconsistent opinions of the city attorney to the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03335-JSW   Document 26-10   Filed 02/15/2008   Page 10 of 13   Page 9 of 12

Not Reported in Cal.Rptr.2d   Page 9
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: **Not Reported** in **Cal.Rptr.2d**)

Mayor's Taxi Task Force and the Taxi Commission. It further alleges that an interpretation announced by the police department on January 1, 1998, requiring a permit holder to drive at least 185 separate shifts of at least four hours per day each calendar year was inadequately communicated to permit holders. The cause of action seeks two distinct declarations. First, it requests a declaration "setting forth the extent and limits of the Taxi Commission's power to adopt and apply a standard for compliance with any driving requirement that may exist," and, more specifically, the Commission's power to adopt an 800-hour-per-year driving requirement. Secondly, it seeks a declaration that the City "failed to give adequate notice of their interpretation of the driving requirement during 1998 and 1999."

The trial court sustained the demurrer to this cause of action on the ground that it failed to allege a proper subject for declaratory relief and that the issue of notice of the driving requirement in 1998 and 1999 was barred by the doctrine of exhaustion of administrative remedies. We reach separate conclusions with respect to the two requested declarations. With respect to the first requested declaration, we hold that the court properly ruled that the cause of action did not state a proper subject for declaratory relief. With respect to the second requested declaration, we conclude that the cause of action did not allege an actual controversy but that the trial court erred in denying leave to amend.

"Section 1060 of the Code of Civil Procedure provides that 'Any person ... who desires a declaration of his rights or duties with respect to another, or in respect to ... property ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his rights and duties in the premises.'The 'actual controversy' referred to in this statute is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular and hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do."(*Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 117, 109 Cal.Rptr. 799, 514 P.2d 111; see also *Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1722, 45 Cal.Rptr.2d 752;*BKHN, Inc. v. Department of Health Services* (1992) 3 Cal.App.4th 301, 308, 4 Cal.Rptr.2d 188;*Newland v. Kizer* (1989) 209 Cal.App.3d 647, 657, 257 Cal.Rptr. 450.)

**\*8** Under this definition of an actual controversy, we consider that the trial court properly sustained the demurrer without leave to amend insofar as it related to the first requested declaration. A declaration interpreting the Taxi Commission's power to adopt a driving requirement represents a classic form of advisory opinion of the sort that should be given by legal counsel rather than the courts. Such an opinion on the Commission's power to adopt a driving standard might assist the Commission in making future policy decisions but it would not resolve an existing controversy between appellants and the City. The related request for a declaration regarding an 800-hour-per-year driving requirement might once have resolved an actual controversy, but, since the City is not relying on such a standard, a declaration on the validity of the standard would not adjudicate any existing dispute.

The alleged inadequate notice given by the police department regarding a 1998 change in its "driving requirement" is stated in very general terms that again fail to allege an actual controversy between the City and appellants. The significance of a defect in notice may involve questions of administrative procedure, actual notice received by the plaintiffs, and prejudice to the plaintiffs in the context of a particular administrative action. The cause of action alleges only that the notice "failed to convey to individual permittees the fact that the Taxi Detail had changed its [internal] interpretation of the purported Driving Requirement."On this allegation, we cannot determine whether, or how, the issue of notice may affect the appellants' interests in opposing the alleged written admonishments issued by the police department. In short, we do not know the precise nature of an actual controversy, if any, that may exist between appellants and the City pertaining to the adequacy of the notice.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03335-JSW   Document 26-10   Filed 02/15/2008   Page 11 of 13   Page 10 of 12

Not Reported in Cal.Rptr.2d    Page 10
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d)

Nevertheless, an order sustaining a demurrer without leave to amend " 'ordinarily constitutes an abuse of discretion, if there is a reasonable possibility that the defect can be cured by amendment.'[Citation.]" (*Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1304, 243 Cal.Rptr. 390;*MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 542, 343 P.2d 36;*Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1830, 25 Cal.Rptr.2d 716.)We find nothing on the face of the complaint that precludes the possibility that appellants may be able to amend the complaint to state an actual controversy. Therefore, we conclude that the trial court erred in denying leave to amend.

2. The Third Cause of Action

[6] The third cause of action addresses an administrative practice based on an interpretation of Proposition K, section 2, subdivision (b). As noted earlier, the subdivision requires the permit applicant to declare an intent to engage in driving "for at least four (4) hours during any twenty-four (24) hour period on at least seventy-five (75%) percent of the business days during the calendar year."As the City construes this language, a permit holder must drive four hours on a particular calendar day to get credit for driving a shift on one business day; he or she does not receive additional credit by driving a shift of eight or more hours on the calendar day. Nevertheless, a shift of eight or more hours that spans two calendar days, with at least four hours driven before midnight and four hours after midnight, does qualify as a shift on two business days. For their part, appellants advance an alternative interpretation: "driving for eight or more consecutive hours, centered within any 48-hour period, constitutes two separate 4-hour shifts during two separate 24-hour periods for purposes of satisfying the purported driving requirement."

*9 The trial court sustained the City's demurrer to the cause of action on the ground that "the 'calendar day' rule challenged therein is a reasonable and valid regulation implementing and/or allowing enforcement of Proposition K." The rule is alleged, however, to be no more than an administrative interpretation on which the City customarily bases its enforcement practices. The interpretation may be sustained only if it is consistent with the language of Proposition K.

We see no merit in appellant's alternative interpretation. By allowing permit holders to manipulate the calculation of a 24-hour period to produce the maximum number of business days driven during a calendar year, the rule would tend to introduce an element of uncertainty and complexity that is unlikely to be consistent with the legislative intent of Proposition K. More fundamentally, the alternative interpretation would undermine the "full-time driver" requirement of section 2, subdivision (b), section 3, subdivision (d), and section 4, subdivision (a). We have concluded that section 4, subdivision (a), establishes a distinct standard from that applying to the declaration and assessment of the applicant's intent in section 2, subdivision (b) and section 3, subdivision (d), but it is not necessarily a less stringent one. Police Code section 1090 properly implements Proposition K by treating a failure to comply with the standard of sections 2 and 3 as good cause for revocation of a permit under section 4. Appellant's alternative interpretation would effectively cut in half the definition of full-time driver in sections 2 and 3 by allowing every eight-hour shift to count as two shifts, thereby undermining the legislative intent to limit the issuance of permits to those drivers who "regularly and daily" operate a taxicab.

In our view, the City has adopted a reasonable interpretation of the somewhat awkwardly worded phrase in Proposition K. Under a familiar canon of statutory construction, "[w]ords used in a statute or constitutional provision should be given the meaning they bear in ordinary use."(*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299.)Though the meaning of the term "business day" may vary with business practices, it clearly refers to a calendar day in ordinary usage. The reference to "any 24-hour period *on* at least 75 percent of the *business days* during the calendar year" [emphasis added] refers to 24-hour periods

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03335-JSW   Document 26-10   Filed 02/15/2008   Page 12 of 13   Page 11 of 12

Not Reported in Cal.Rptr.2d
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d)

Page 11

"on" or within business days. Since business days are always calendar days, the statutory language may most reasonably be construed as referring to 24-hour periods within calendar days. We therefore hold that, in sustaining the demurrer to the third cause of action, the trial court properly ruled that the "calendar day" rule was "a reasonable and valid regulation implementating [sic ] and/or allowing enforcement of Proposition K." Though appellants were entitled to a declaration to that effect, we affirm the order on the ground that this opinion will serve as the required declaration.

3. The Fourth Cause of Action

*10 [7] In the fourth cause of action, appellants challenge three administrative rules reflected in provisions of the San Francisco Police Code and San Francisco Taxicab/Ramped Taxi Rules and Regulations (hereafter Commission regulations) issued there under. First, they object to "the disallowance of shifts actually driven in determining compliance with the purported 'driving requirement,' solely due to errors or incompleteness in a permittee-driver's waybill, notwithstanding that the permittee actually drove such shifts."Section 1138 of the Police Code requires taxicab drivers to "keep an accurate and legible waybill" that sets forth 14 specific items of information. Section 6, subdivision (C)(8), of the Commission regulations similarly provides: "Every Taxicab Driver shall use the waybill format as prescribed by the Taxicab Commission or the Commission's designee. The waybills shall be completed in indelible ink, and shall include the driver's signature at the commencement of the shift as well as the 'A' card number and total number of hours worked."

[8] Secondly, appellants object to the rule that a permit holder must drive a designated spare taxi when his or her taxi is out of service to receive credit toward the full-time driving requirement. Section 4, subdivision (A)(10), of the Commission regulations provides that, when complying with the full-time driving requirement, all permit holders must drive their own medallion number taxi unless it is out of service. Section 5 pertains to the use of a spare taxi when the assigned taxi is out of service; subdivision (D)(1) provides that "[a] taxicab vehicle operating as a spare may operate with a taxicab medallion borrowed from an out-of-service vehicle," and subdivision (D)(2) provides that "[a]ll taxicab vehicles operating as a spare must be registered and insured under the color scheme. [¶] a. Spare vehicles shall only be used to replace temporarily disabled regular [sic ] assigned vehicles."

[9] Thirdly, appellants attack the requirement that, where permit holders drive an eight-hour shift composed of 2 four-hour components driven before and after midnight in separate calendar days, they must return to the garage after the first four-hour component to return one waybill and take out another for the next four-hour component. The requirement arises from the general requirement that all shifts must begin and end at the taxicab company to count toward fulfillment of the full-time driving requirement. Section 4, subdivision (A)(9) of the Commission regulations provides in pertinent part: "Medallion Holders shall ensure that the taxicab operating under the medallion issued to them begins and ends all shifts at their color scheme's place of business.... Medallion Holders shall ensure that all waybills, reports and found property are turned in at the taxi company premises at the conclusion of each shift."Section 6, subdivision (C)(4), similarly provides: "Every Taxicab Driver is to start and end the shift at the color scheme's principal place of business...."

*11 The regulations at issue were promulgated by the Taxi Commission under the authority of San Francisco Police Code section 1077, which confers on the agency authority to "adopt such rules and regulations to effect the purposes of this Article as are not in conflict therewith."The Police Code article referenced in section 1077 includes the provisions creating a full-time driver requirement for permit holders discussed earlier, i.e., section 1076, subdivision (o), and section 1090, subdivision (a).

"The scope of our review of an administrative agency's regulations is limited: we consider wheth-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.2d
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d)

Page 12

er the challenged provisions are consistent and not in conflict with the enabling statute and reasonably necessary to effectuate its purpose. [Citation.] As a general proposition, administrative regulations are said to be 'shielded by a presumption of regularity' [citation] and presumed to be *'reasonable and lawful.'* [Citation.] The party challenging such regulations has the burden of proving otherwise."(*Fox v. San Francisco Residential Rent etc. Bd.* (1985) 169 Cal.App.3d 651, 655, 215 Cal.Rptr. 565.)"An agency's interpretation of its own regulations is given great weight, and will be overturned (in the absence of any evidentiary dispute) only if arbitrary and capricious."(*Memorial Hospital-Ceres v. Belshé* (1998) 67 Cal.App.4th 233, 238, 78 Cal.Rptr.2d 824.)

Appellants contend that these rules are not authorized by Proposition K and are unreasonable, arbitrary and capricious. As discussed earlier, we consider that Police Code sections 1090, subdivision (a), and 1076, subdivision (o), are consistent with section 4, subdivision (a), of Proposition K. The Taxi Commission is explicitly authorized by section 1077 of the Police Code to issue regulations to clarify and implement other provisions of the Police Code. Moreover, each of the rules at issue resolves practical dilemmas in enforcement of the Police Code in an entirely reasonable manner. We find nothing on the face of the complaint that might reasonably support a declaration that the rules are unreasonable or arbitrary, and we see no reasonable possibility that the complaint could be amended to state a basis for such a declaration. Accordingly, we affirm the order sustaining the demurrer to the fourth cause of action with the proviso that this opinion will serve as the requested declaration.

We reverse the judgment dismissing the complaint on the ground that the trial court erred in sustaining the demurrer to the first, second and fifth causes of action. In all other respects the judgment is affirmed and the matter is remanded for further proceedings consistent with this opinion.

Each party shall bear their own costs on appeal.

We concur: MARCHIANO, P.J., MARGULIES, J.
Cal.App. 1 Dist.,2002.
San Francisco Taxi Permitholders and Drivers Ass'n v. City, County of San Francisco
Not Reported in Cal.Rptr.2d, 2002 WL 1485354 (Cal.App. 1 Dist.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.