# EXHIBIT J

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

LOUISE H. RENNE                                     THOMAS J. OWEN
City Attorney                                       Deputy City Attorney



DIRECT DIAL:  (415) 554-4652
E-MAIL:       thomas_owen@ci.sf.ca.us

# MEMORANDUM

TO:     Honorable Members
        San Francisco Taxi Commission

FROM:   Thomas J. Owen
        Deputy City Attorney

DATE:   August 5, 1999

RE:     Proposition K Driving Requirement

---

You have asked two questions regarding the driving requirement for taxicab permit holders.

1.  **"Could the Taxi Commission adopt a policy of allowing permit holders to fulfill the Proposition K driving requirement by driving a minimum of 800 hours a year, without regard to the formula contained in Proposition K and the Police Code?"**

    Proposition K, an initiative ordinance adopted in 1978, requires that all permit holders be "full time drivers." (See Prop. K, §§ 2(b), 3(d).) A full time driver is one who drives "at least four hours during any 24 hour period on at least 75 percent of the business days during the calendar year." (Prop. K, § 2(b).) Proposition K authorizes the Chief of Police to adopt regulations to implement the measure. (Prop. K, § 1(b); see also *Calif. Drive-In Restaurant Assn. v. Clark* (1943) 22 Cal.2d 287, 303 [administrative board has implied power to adopt rules necessary to efficient exercise of powers expressly granted].) Under the Charter, the rule-making power is now vested in the Taxi Commission. (Charter § 4.133.)

    The legislative body (in this case, the voters) may delegate authority to an administrative board to adopt and enforce reasonable rules for carrying into effect the expressed purpose of an ordinance. (*Aguirre v. Lee* (1993) 20 Cal.App.4th 1646, 1652.) But it may not delegate to the board the discretion to adopt regulations that abridge, enlarge, extend, or modify the enabling statute, or exceed the powers given to board by the statute. (*Ibid.*; see also *Calif. Drive-In Restaurant Assn. v. Clark, supra,* 22 Cal.2d at 302-03.) A delegation of authority to an administrative board is proper even if it confers

CITY HALL, ROOM 234 · 1 DR. CARLTON B. GOODLETT PLACE · SAN FRANCISCO, CALIFORNIA 94102-4682
RECEPTION: (415) 554-4700 · FACSIMILE: (415) 554-4747

c:\documents and settings\eloch\local settings\temp\notese1e134\drive1.doc

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

**Memorandum**

TO: Honorable Members
San Francisco Taxi Commission
DATE: August 5, 1999
PAGE: 2
RE: Proposition K Driving Requirement

---

some degree of discretion on the board to fill in the details of the statute. (*Aguirre v. Lee, supra*, 20 Cal.App.4th at 1652.) As long as the discretion is exercised within the scope of the controlling statute, the administrative regulation will not be disturbed on appeal. (*Ibid.*) However, an administrative regulation that conflicts with its enabling legislation is null and void. (*Ibid.*)

Thus, any policy or regulation the Taxi Commission adopts with respect to measuring compliance with the driving requirement must be consistent with the requirements of Proposition K. The Commission has discretion to fill in the gaps where Proposition K does not provide specific standards or guidance. For example, because the measure does not define "business day," the Commission may adopt a reasonable interpretation of that term, consistent with the probable intention of the voters in adopting the language.

Proposition K states that "full time" driving must take place 1) in blocks of 4 hours or more during a 24 hour period, and 2) on at least 75 percent of the business days during the calendar year. (Prop. K, § 2(b).) Whether the Commission ultimately adopts 185 shifts or 800 hours or any other standard for measuring compliance with the driving requirement, it must first determine, and be prepared to explain, how that standard satisfies the two conditions identified above.

In response to your specific question, the Commission may not adopt a policy providing that driving 800 hours during the calendar year satisfies the driving requirement, if driving 800 hours does not necessarily mean that the permit holder drove on at least 75 percent of the business days during the calendar year. If a permit holder could complete the 800 hours in less than 75 percent of the business days, the 800-hour policy would conflict with the provisions of Proposition K and be invalid.

It has been stated that a permit holder could satisfy the 800 hour requirement by driving only twice a week – two 10-hour shifts per week (or 20 hours per week), for 40 weeks per year (or 80 shifts per year), for a total of 800 hours. But assuming five business days per week, that permit holder would only be driving 40 percent of the business days during the year, rather than the 75 percent required by Proposition K. (This calculation does not include a reduction in the number of business days for vacations or legal holidays.)

CITY AND COUNTY OF SAN FRANCISCO                                OFFICE OF THE CITY ATTORNEY

**Memorandum**

TO: Honorable Members
San Francisco Taxi Commission
DATE: August 5, 1999
PAGE: 3
RE: Proposition K Driving Requirement

---

The other alternative proposed has been the 185 shift standard used by the Police Department. A permit holder who drove 185 shifts per year would be driving on the average approximately 3.78 shifts (of at least 4 hours) per week (assuming 49 working weeks per year – two weeks vacation and an additional week's worth of legal holidays). Again assuming five working days per week, the permit holder would be driving approximately 75.6 percent of the business days during the calendar year.

We emphasize that the Taxi Commission is not limited to these two alternatives – a bare 800 hours or 185 shifts – but may consider other proposals, including 800 hours distributed over at least 75 percent of the business days during the calendar year.

2.  **"Would it violate Proposition K if the Board of Supervisors amended the Police Code to permanently dispense with the driving requirement for permit holders who cannot drive on account of a disability, or upon retirement?"**

As discussed above, Proposition K imposes a driving requirement on permit holders. As an initiative measure, Proposition K may only be amended or repealed by the voters. (Charter § 14.101; *see also Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1259-60 [statute adopted by legislature altered rather than clarified initiative statute by attempting to remove surety insurance from coverage under Prop. 103].)

"Amendment" has been defined for these purposes as a change in the scope or effect of an existing statute, by adding to or taking away from the provisions of the statute, whether by an act purporting to amend or repeal the statute or by an act independent and original in form. (*Franchise Tax Board v. Cory* (1978) 80 Cal.App.3d 772, 776.) It is not necessary that the amendment conflict with existing law. (*Ibid.*) The driving requirement is an express provision of Proposition K. An ordinance permanently dispensing with the driving requirement for certain drivers would almost certainly be seen by the courts as taking away from the driving requirement and effecting a significant change in the operation of the initiative.

CITY AND COUNTY OF SAN FRANCISCO                           OFFICE OF THE CITY ATTORNEY

**Memorandum**

TO:      Honorable Members
         San Francisco Taxi Commission
DATE:    August 5, 1999
PAGE:    4
RE:      Proposition K Driving Requirement

---

Furthermore, even if there were any ambiguity regarding the driving requirement, an initiative measure "is to be interpreted and applied in a manner consistent with the probable intent of the body enacting it: the voters. . ." (*Hill v. Nat'l Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 16.) "Thus, the intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1072 [internal quotes and citations omitted].) The driving requirement was important selling point for Proposition K. The official ballot argument in favor of the measure provides, in relevant part:

> Under this initiative, individuals who now permits with the sole purpose of reselling them for an enormous profit could not do so. When unused, the permits would return to the Police Commission where new permits would be issued to people who actually want to drive a taxicab.

There is no indication that the voters intended to dispense with the driving requirement for disabled permit holders or drivers who wished to retire (even though the voter might have adopted such a provision if it had been presented to them).

The voters did make specific provision in Proposition K for permit holders who get sick or injured. The measure authorizes the Chief of Police, with the approval of the Police Commission and after a thorough investigation, to waive the continuous operation requirement for up to 90 days in any one 12-month period in case of sickness, death, or other similar hardship. (Prop. K, § 4(a).) Suspension of operation would of necessity include suspension of driving. But having gone this far, the voters did not intend to go any farther in waiving the driving requirement.

For these reasons, we conclude that permanently dispensing with the driving requirement for permit holders who cannot drive on account of a disability or upon retirement would conflict with Proposition K and constitute an impermissible attempt to amend the initiative without voter approval. Therefore, Board of Supervisors could not adopt such an ordinance.

We emphasize that this advice is limited to the Board of Supervisors' authority to waive the driving requirement of Proposition K. This memorandum does not address the

CITY AND COUNTY OF SAN FRANCISCO                OFFICE OF THE CITY ATTORNEY

## Memorandum

TO: Honorable Members
San Francisco Taxi Commission
DATE: August 5, 1999
PAGE: 5
RE: Proposition K Driving Requirement

---

separate question of what accommodations the City must make under the Americans With Disabilities Act for disabled permit holders. That obligation may be subject to the same constraints.