DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE SNODGRASS, State Bar #148137
VINCE CHHABRIA, State Bar #208557
FRANCESCA GESSNER, State Bar #247553
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-5408
Telephone:     (415) 554-4762
Facsimile:     (415) 554-4699
E-Mail:         francesca.gessner@sfgov.org

Attorneys for Defendants
TAXI COMMISSION and
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SLONE and MICHAEL MERRITHEW,<br><br>Plaintiffs,<br><br>vs.<br><br>TAXI COMMISSION, CITY AND COUNTY OF SAN FRANCISCO, Executive Director Heidi Machen; CITY AND COUNTY OF SAN FRANCISCO, a California public entity,<br><br>Defendants. | Case No. C07-3335 JSW<br><br>**DECLARATION OF HEIDI MACHEN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:   April 8, 2008<br>Time:           9:00 a.m.<br>Place:          Ctrm. 2, 17th Floor |

I, Heidi Machen, declare as follows:

1. I have personal knowledge of the matters stated herein, except for those matters set forth on information and belief, which I believe to be true, and if called to testify, I can and will testify competently as to all matters set forth herein.

2. I am presently employed as the Director of the San Francisco Taxi Commission ("Commission"). I have served the City and County of San Francisco in this capacity since August 1,

2005. As Executive Director, I am responsible for the implementation of policies established by the Taxi Commission and for overseeing Commission staff. One of my responsibilities is to oversee staff in the monitoring and enforcement of the driving requirement set forth in Police Code Section 1081(f). Under the Commission's policy for processing requests from medallion holders for ADA modifications of permit requirements, it is my responsibility to review the ADA Coordinator's recommendations and make the final decision as to whether to grant or deny an individual's accommodation request.

3. The driving requirement set forth in Proposition K and later codified in the Police Code requires that medallion holders drive their cabs "for at least four hours during any 24-hour period on at least 75 percent of the business days during the calendar year." S.F. Admin. Code, Appx. 6, § 2(b); S.F. Police Code § 1076(o). In practice, the Commission interprets this requirement to mean that medallion holders must drive a total of 156 four-hour shifts per year. As an alternative to the 156 four-hour shifts per year, medallion holders may also meet the driving requirement by driving 800 hours per year as set forth in the Police Code. *See* S.F. Police Code § 1076(o). I understand that the typical income a medallion holder can receive from leasing his or her medallion to a cab company is currently approximately $1,900 per month. It is my understanding that if a medallion holder is not driving his cab *at all*, he or she can make upwards of $3,000 per month from leasing payments.

4. As of today's date, the total number of medallions that have been issued by the City is 1,431. Of that total figure, 1,013 have been issued following the adoption of Proposition K, meaning that they are subject to the driving requirement. The number of persons on the waiting list to receive a medallion is currently 3,182 individuals. Presently, the wait time to receive a medallion from the waiting list is approximately thirteen to fourteen years.

5. In February 2006, the Commission adopted Resolution 2006-28. This resolution authorizes the Commission to grant two types of accommodations to the driving requirement: (1) a 120-day leave for up to three consecutive years and (2) a one year full exemption for a catastrophic, recoverable illness. In practice, the first category – the 120-day leave – amounts to a one-third reduction in the annual driving requirement (since 120 days equals one third of a year). This one-

1  third reduction means that the medallion holder must drive either 104 four-hour shifts per year (a one
2  third reduction of Proposition K's 156 four hour shifts) or 533 hours per year (a one third reduction of
3  the Police Code's required 800 hours). The second category for "catastrophic recoverable illness"
4  applies to medallion holders who have an illness that is both (1) catastrophic, such as a heart attack or
5  cancer, and (2) recoverable, meaning that it is reasonably expected that they will be able to return to
6  driving within one year.

7      6.    The Taxi Commission has received two requests for ADA modifications of the driving
8  requirement from plaintiff William Slone. Attached as Exhibit A is a true and correct copy from the
9  files of the Taxi Commission of the first request Slone submitted to the Commission in September
10 2003. In that request, Slone asked to have "the required number of shifts per year be reduced/and or
11 have this requirement removed." Exh. A. He stated that he had "difficulty breathing" and that his
12 medical condition was "perminate [sic]." Exh. A. The Commission did not receive a Health Care
13 Provider Certification until January 21, 2005. Attached as Exhibit B is a true and correct copy from
14 the files of the Taxi Commission of the Health Care Provider Certification, which stated only that
15 Slone had "chronic lung disease" and the condition was "permanent." Exh. B. Commission files
16 demonstrate that no action was taken on this request because his application was incomplete.
17 Attached as Exhibit C is a is a true and correct copy from the files of the Taxi Commission of a letter
18 sent to Slone informing him that his application was not complete.

19      7.    On November 20, 2007, the Commission received Slone's second request for
20 reasonable accommodation. Attached as Exhibit D is a true and correct copy from the Commission's
21 files of the following three documents that Slone submitted: (1) Request for Reasonable
22 Accommodation, (2) Medical Authorization and Release, and (3) Health Care Provider Certification.
23 His Request for Reasonable Accommodation asks for "removal or changed number of shifts and
24 hours required to work." The Health Care Provider Certification filled out by his physician describes
25 his medical condition as follows: "he has difficulty getting enough oxygen to his blood. This makes
26 physical activities difficult if not impossible at times." The physician listed the disability as *not*
27 temporary and stated that "the driving requirement needs to be waved [sic]." The Commission has
28 not taken action on this request pending the resolution of this lawsuit.

8.  In May 2006, the Commission received a request from Michael Merrithew for an accommodation of the driving requirement. Attached as Exhibit E is a true and correct copy from the files of the Taxi Commission of the following three forms submitted by Merrithew: (1) "Request for Reasonable Accommodation", (2) "Medical Authorization and Release" and (3) "Health Care Provider Certification." In his request, Merrithew asked to be excused from the driving requirement. *See* Exh. E. The accompanying form from his physician stated that Merrithew should be "excused from the driving requirement" because he is "essentially unable to meet the physical requirements at this time for driving a cab due to degenerative lumbar disk and repetitive overuse syndrome." Nowhere in his request did he state that he could drive a reduced amount or that his medical condition was catastrophic. Accordingly, he did not qualify for either of the accommodations allowed under the City's 2006 policy: (1) he was not eligible for the 120-day leave because he was unable to drive and (2) he was not eligible for the one-year waiver because he did not have a catastrophic, recoverable illness. For these reasons, on August 18, 2006, I denied his request for an accommodation. Attached as Exhibit F is a true and correct copy of the letter I sent to Mr. Merrithew informing him of the denial. In the denial letter, I explained that "[t]he requested accommodation would not be possible within the Commission's rules." I also informed Mr. Merrithew that he could appeal the decision to the Commission within 30 days. Mr. Merrithew appealed the denial of his accommodation and the Commission heard his appeal on January 7, 2007. At that time, the Commission voted to affirm the denial.

9.  Since the adoption of Resolution 2006-28, the Commission has received requests for accommodations to the driving requirement from approximately 75 medallion holders. Since the filing of this lawsuit, 34 additional medallion holders have submitted applications for ADA accommodations of the driving requirement for the very first time. Accordingly, were the City required to grant indefinite waivers of the driving requirement, it could affect over 100 of the Proposition K medallions issued by the City.

1  I declare under penalty of perjury under the laws of the State of California that the foregoing is true
2  and correct. Executed in San Francisco, California, on February 15, 2008.

*Heidi Machen*
Executive Director Taxi Commission