DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE SNODGRASS, State Bar #148137
VINCE CHHABRIA, State Bar #208557
FRANCESCA GESSNER, State Bar #247553
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-5408
Telephone:     (415) 554-4762
Facsimile:      (415) 554-4699
E-Mail:          francesca.gessner@sfgov.org

Attorneys for Defendants
TAXI COMMISSION and
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SLONE and MICHAEL MERRITHEW,<br><br>Plaintiffs,<br><br>vs.<br><br>TAXI COMMISSION, CITY AND COUNTY OF SAN FRANCISCO, Executive Director Heidi Machen; CITY AND COUNTY OF SAN FRANCISCO, a California public entity,<br><br>Defendants. | Case No. C07-3335 JSW<br><br>**DECLARATION OF PAUL GILLESPIE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:     April 8, 2008<br>Time:                  9:00 a.m.<br>Place:                 Ctrm. 2, 17th Floor |

I, Paul Gillespie, declare as follows:

1. I have personal knowledge of the matters stated herein, except for those matters set forth on information and belief, which I believe to be true, and if called to testify, I can and will testify competently as to all matters set forth herein.

2. I am currently the President of the San Francisco Taxi Commission ("Commission"). I was appointed by the Mayor to serve on the Commission in March 1999, shortly after the creation of

the Commission. I have served on the Commission continuously since that time, for almost nine years. I have served in the capacity of President since the summer of 2006. As President of the Commission, I am responsible for presiding over all public meetings of the Commission. Under the City Charter, the Commission is responsible for setting the policies of the City and County of San Francisco ("City") with regards to taxicabs and other motorvehicles for hire within the City's jurisdiction. *See* S.F. Charter §§ 4.102, 4.133. It is the responsibility of Commission staff to implement the policies set by the Commission.

3. I have been a taxi driver in San Francisco since 1986. I presently drive for Yellow Cab Company in San Francisco. I do not hold a taxi medallion and I am not on the City's waiting list to obtain a medallion.

4. Before San Francisco voters adopted the initiative ordinance known as Proposition K in 1978, holders of City-issued taxi medallions were not required to drive their own cabs; instead, they could be absentee medallion holders, meaning that they could merely lease their medallion out to a cab company and pick up a check every month without actually driving the cab. By contrast, under Proposition K, medallion holders must personally drive their cabs. This driving requirement is set forth in the text of Proposition K and in the Police Code. One of the purposes of the driving requirement is to promote experience in the workforce and stability in the industry because people who have to engage in day-to-day driving have more interest in the long-term health of the industry. Another purpose of the driving requirement is to promote greater cleanliness and safety of vehicles because a medallion holder who has to drive his cab frequently has a personal incentive to ensure that the vehicle is clean, comfortable and safe.

5. From 1978 until 1999, under the terms of Proposition K, the Police Commission had authority over regulation of the local taxi industry. *See* S.F. Admin. Code Appx. § 6. Because the Police Department's Taxi Detail had limited staff, the driving requirement was primarily enforced through a complaint-driven process. In November 1998, the voters adopted Proposition D, which transferred authority for the regulation of taxicabs from the Police Commission to a newly created Taxi Commission.

6. During approximately its first two years in existence, the Taxi Commission had no executive director or staff. As a result, the Police Taxi Detail continued to handle enforcement of the driving requirement. In late 2001, Naomi Little (now Naomi Kelly) was appointed Executive Director. Around that same time, medallion holders began raising the issue of modifying the driving requirement for medallion holders who have a medical condition that prevents them from driving. At that time, the only modification of the driving requirement that was available under City law was a 90-day hardship waiver provided in Proposition K and the Police Code. *See* S.F. Admin. Code Appx. 6 § 2(b); S.F. Police Code § 1096(c). Although the 90-day waiver allows medallion holders to "suspend operation" of their medallions, for many years, this provision has been administratively interpreted to authorize a 90-day waiver of the driving requirement for sickness or hardship.

7. From 2002 and to the present, the Taxi Commission has adopted three policies regarding disabled medallion holders: (1) Resolution 2002-14, (2) Resolution 2002-93 and (3) Resolution 2006-28. Resolution 2002-14, which the Taxi Commission adopted in February 2002, set forth procedures for "Processing A Request Under the Americans With Disabilities Act For Modification of a Permit Requirement." This policy did not specify the types of modifications that could be made; instead, it set forth procedures for processing and reviewing requests. This policy was intended to help medallion holders *fulfill* the driving requirement, for example, by providing for the use of special equipment in the vehicle or providing for an exemption from nighttime driving. It was not intended to allow modifications that would exempt medallion holders from the driving requirement.

8. In October 2002, the Commission passed Resolution 2002-93. The Resolution reiterated the City's position that the ability to drive was an essential eligibility requirement for being a medallion holder. The Commission did not adopt another policy regarding ADA requests until 2006, discussed below.

9. In November 2003, the voters of San Francisco rejected Proposition N, a ballot measure that would have eliminated the driving requirement for medallion holders who could not drive due to a disability. Based on my discussions with other persons who were members of the Taxi Commission at that time, it is apparent to me that the Commission understood the rejection of

Proposition N to be a strong message from the voters that the driving requirement was essential to the City's program and should not be waived for persons who could not drive due to a medical condition.

10. In February 2006, the Commission adopted Resolution 2006-28, which allows "disabled medallion holders who are otherwise qualified to hold taxicab permits" to request either (1) 120-days leave per year from the driving requirement for three consecutive years or (2) up to one year exemption for a catastrophic, recoverable illness every five years. This resolution was the first Commission policy allowing waivers of the driving requirement beyond the 90-day waiver provided in Proposition K and the Police Code. This Resolution constituted a liberalization of the pre-existing policy because it allowed disabled medallion holders to get more than just the 90-day waiver under Proposition K and the Police Code. This liberalization was authorized by the California Court of Appeal decision, which gave the City some leeway to offer a "limited allowance" from the driving requirement for disabled medallion holders. Prior to the Court of Appeal decision, the Commission had been operating under the belief that it would be a violation of Proposition K to grant any relief from the driving requirement beyond the 90-day waiver provided in the law.

11. The 2006 policy was not intended to cover medallion holders who had a disability that made them completely unable to drive for year after year. Instead, it was intended to help someone who has a medical condition that required treatment, such as surgery, and needed more than 90 days to recover and return to driving.

12. If the City were to adopt the position advocated by the Plaintiffs in this lawsuit, every current medallion holder could at some point come to the Commission stating they could no longer drive due to old age or infirmity and claim that they are entitled to a one-year waiver of the driving requirement year after year. Such waivers renewed on an annual basis would essentially allow medallion holders to keep the medallion until the day they die and lease their medallion to a broker or cab company in return for a monthly check for the work of another driver. Thus, the changes Plaintiffs seek would put drivers on the City's medallion waiting list in a position where they would be subsidizing the passive income of nondriving medallion holders. To have medallions in the hands of retired cab drivers who are no longer driving while thousands of people wait on the waiting list for

1 | their opportunity to become medallion holders, would fundamentally alter the nature of the City's taxi
2 | medallion program.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed in San Francisco, California, on February 15, 2008.

_____
PAUL GILLESPIE