Joseph M. Breall, Esq. (SBN 124329)
BREALL & BREALL, LLP
1255 Post Street, Suite 800
San Francisco, California 94109
Telephone: (415) 345-0545
Facsimile: (415) 345-0538
e-mail: jmbreall@breallaw.com

Elliott A. Myles, Esq. (SBN 127712)
MYLES LAW FIRM, INC.
P.O. Box 11094
Oakland, CA 94611
Tel: (510) 986-0877
Fax: (510) 986-0843
email: elliott@myleslawfirm.com

Attorneys for Plaintiffs
WILLIAM SLONE and MICHAEL MERRITHEW

THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM SLONE and MICHAEL MERRITHEW,<br><br>               Plaintiffs,<br><br>vs.<br><br>TAXI COMMISSION, CITY AND COUNTY OF SAN FRANCISCO, etc., et al.,<br><br>               Defendants. | CASE NO. C07-3335 JSW<br><br>PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE.<br><br>HEARING DATE: April 4, 2008<br>TIME: 9:00 a.m.<br>PLACE: Courtroom 2, 17th Floor |

COMES NOW Plaintiffs, William Slone and Michael Merrithew, by and through their undersigned counsel of record, and pursuant to Rule 201 of the Federal Rules of Evidence, requests that the Court take judicial notice of the contents of the following documents.

Exhibit A    Memorandum of Deputy City Attorney Thomas Owen to San Francisco Taxi Commission (April 25, 2000).

Exhibit B.   San Francisco Charter Sections 4.101, 4.104.

Exhibit C    1976 San Francisco Police Code, Section 1079.

Respectfully submitted,

DATED: February 29, 2008

BREALL & BREALL, LLP
THE MYLES LAW FIRM, INC.

By: _____
JOSEPH M. BREALL, ESQ.
ELLIOTT A. MYLES, ESQ.
Attorneys for Plaintiffs

# Exhibit A



CITY AND COUNTY OF SAN FRANCISCO | OFFICE OF THE CITY ATTORNEY

LOUISE H. RENNE
City Attorney

THOMAS J. OWEN
Deputy City Attorney

DIRECT DIAL: (415) 554-4652
E-MAIL: thomas_owen@ci.sf.ca.us

# MEMORANDUM

TO: Hon. Mariann Costello
President, Taxi Commission

FROM: Thomas J. Owen
Deputy City Attorney

DATE: April 25, 2000

RE: Advice Request

---

You have asked this office to respond to a series of questions submitted by industry members. Here are our answers to some of those questions; our responses to the remaining questions will follow:

"2. Disability and other kinds of leave for permit holders.

"a. Without amending Prop. K, could the city by modification of the Municipal Code allow a disabled permit holder exemption from the driving requirement for an extended period of time? If the permit holder was permanently disabled, could the exemption also be permanent?

"b. Without amending Prop. K, could the city by ordinance allow for a suspension of the permit for reasons of disability, or for any other reason (or no reason at all?)

"c. Should the Municipal Code be amended to reflect the requirements of the Americans with Disabilities Act (ADA)? If so, how should it be amended?"

Proposition K requires that a permit-holder "actively and personally . . . engage as permittee-driver under any permit issued to him or her for at least four hours during any 24 hour period on at least 75 percent of the business days during the calendar year." (Proposition K, § 2(b).) This provision is commonly referred to as the "full-time

CITY HALL, ROOM 234 · 1 DR. CARLTON B. GOODLETT PLACE · SAN FRANCISCO, CALIFORNIA 94102-4682
RECEPTION: (415) 554-4700 · FACSIMILE: (415) 554-4747

n:\govern\towen\taxi_com\rqst1.doc

D COUNTY OF SAN FRANCISCO                OFFICE OF THE CITY ATTORNEY

TO:     Hon. Mariann Costello
        President, Taxi Commission
DATE:   April 25, 2000
PAGE:   2
RE:     Advice Request

driving" requirement. Because Proposition K was adopted by the voters, it may only be amended by the voters. (Charter § 14.101.) Therefore, the Board of Supervisors may not amend the Municipal Code to allow permit-holders a temporary or long-term exemption from or suspension of the driving requirement, for reasons of disability or any other reason.

The City does have the separate and independent obligation to comply with the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*) and any other superseding state or federal statute. Compliance may mean disregarding or not enforcing all or part of a voter-approved initiative ordinance.

The City, acting here through its Taxi Commission, is responsible for ensuring that qualified individuals with disabilities are not "excluded from participation in or . . . denied the benefits of the services, programs, or activities" provided or offered by the City. (42 U.S.C. § 12132.) The Commission should consider whether reasonable modifications of its rules, policies or practices would allow otherwise qualified individuals with disabilities to meet the "essential eligibility requirements" for participation in the program, if those modifications did not fundamentally alter the nature of those requirements or of the program. (42 U.S.C. § 12131.)

We emphasize that no determination has been made at this point that the enforcement of the driving requirement for permit-holders conflicts with the ADA. The Commission may decide that being a full-time driver is an essential eligibility requirement for permit-holders under Proposition K and that full or partial waiver of the requirement would fundamentally alter the program. Those determinations will have to be made as the Taxi Commission develops its ADA policies and identifies what modifications of the driving requirement, if any, would be a reasonable accommodation for particular disabled individuals.

/ / /

/ / /

/ / /

/ / /

| | |
|---|---|
| D COUNTY OF SAN FRANCISCO | OFFICE OF THE CITY ATTORNEY |

D: Hon. Mariann Costello
President, Taxi Commission
DATE: April 25, 2000
PAGE: 3
RE: Advice Request

---

"3. Requirements for permit applicants.

    "a. Without amending Prop. K, could the city increase the driving requirement for permit applicants, provided the increased requirements were phased in so as to allow current applicants to comply prior to the time they become eligible for a permit?

    "b. By amending Prop. K, could the city increase the driving requirement for permit applicants, with or without a phase-in to allow current applicants the opportunity to comply with the requirement?"

Proposition K provides that "[f]or two years from the effective date of [the measure], a preference in the issuance of any permit shall be given to any person who has driven a taxicab or other motor vehicle for hire in the City and County of San Francisco for at least one consecutive 12 month period during any of the three calendar years immediately prior to the filing of an application for issuance of such permit." (Prop. K, § 2(c).) This is the only reference to a driving "requirement" for permit applicants in Proposition K. The preference created in Proposition K expired by its own terms in 1980.

In 1988, the Board of Supervisors created a new preference for full-time drivers. (Police Code § 1121(c).) Persons on the waiting list who had been full-time drivers during the 12 months immediately preceding the hearings on their applications would receive permits ahead of other, non-driving applicants, even if the non-driving applicants had been on the list for a longer time.

The Board could now increase the amount of driving time needed to qualify for the preference, within reasonable limits. Because the preference for full-time drivers does not amend or conflict with any provisions of Proposition K, voter approval would not be required.

There is no requirement that the increase in driving time be phased in to accommodate persons currently on the waiting list. Absent special circumstances not present here, permit applicants do not acquire any vested right simply by filing their applications or being on a waiting list. (See *Hock Investment Company, Inc. v. City and County of San Francisco* (1989) 215 Cal.App.3d 438; *Leavenworth Properties v. City*

CITY AND COUNTY OF SAN FRANCISCO — OFFICE OF THE CITY ATTORNEY

TO: Hon. Mariann Costello
President, Taxi Commission
DATE: April 25, 2000
PAGE: 4
RE: Advice Request

---

and County of San Francisco (1987) 189 Cal.App.3d 986; see also O'Connor v. Superior Court (1979) 90 Cal.App.3d 107 [no contract or vested property right in the permit itself].) The City could simply abolish the waiting list and terminate the permit program at any time (although because of Proposition K it would need voter approval to do so).

While there is no legal requirement that the City phase in any changes in the drivers' preference, it may still wish to do so as a matter of policy. We note that when the Board of Supervisors reinstated the drivers' preference in 1988, it provided that the new criteria would not apply to persons already on the waiting list. Giving persons currently on the waiting list sufficient time to meet the new and higher driving requirement would be another way to accommodate prior applicants.

# Exhibit B

CITY AND COUNTY
OF SAN FRANCISCO
1996 CHARTER

Codified through
Ord. No. 12-08, File No. 071136,
approved Jan. 31, 2008.
(Supplement No. 13)

**Preliminaries**

CITY AND COUNTY OF
SAN FRANCISCO
MUNICIPAL CODE

1996 CHARTER

GRAPHIC LINK:Click here

Published by Municipal Code Corporation

Tallahassee, Florida  2006

CITY AND COUNTY OF SAN FRANCISCO

MUNICIPAL CODE

Charter
Administrative Code
Building and Related Technical Codes
Business and Tax Regulations Code
Campaign and Governmental Conduct Code
Environment Code
Fire Code
Health Code
Municipal Elections Code
Park Code
Planning Code
Police Code
Port Code

Public Works Code

Subdivision Code

Traffic Code

Zoning Maps

PREFACE TO THE

1996 CHARTER

The Charter of the City and County of San Francisco was adopted on November 7, 1995, and became effective July 1, 1996. This volume contains charter provisions enacted through the election of November 2006.

The San Francisco Municipal Code contains ordinances enacted through Ordinance 12-08, File Number 071136, Approved January 31, 2008. A legislative history, containing ordinance number and approval date, is located at the conclusion of most sections. The legislative history of ordinances approved after March 1999 also contain Board of Supervisors file numbers.

**ARTICLE IV: EXECUTIVE BRANCH--BOARDS, COMMISSIONS AND DEPARTMENTS**

Sec. 4.100. General.
Sec. 4.101. Boards and Commissions--Composition.
Sec. 4.101.5. Hold-Over Service by Board and Commission Members.
Sec. 4.102. Boards and Commissions--Powers and Duties.
Sec. 4.103. Boards and Commissions--Annual Report.
Sec. 4.104. Boards and Commissions--Rules and Regulations.
Sec. 4.105. Planning Commission.
Sec. 4.106. Board of Appeals.
Sec. 4.107. Human Rights Commission.
Sec. 4.108. Fire Commission.
Sec. 4.109. Police Commission.
Sec. 4.110. Health Commission.
Sec. 4.111. Human Services Commission.
Sec. 4.112. Public Utilities Commission.
Sec. 4.113. Recreation and Park Commission.
Sec. 4.114. Port Commission.
Sec. 4.115. Airport Commission.
Sec. 4.116. Parking and Traffic Commission.
Sec. 4.117. Entertainment Commission.
Sec. 4.118. Commission on the Environment.
Sec. 4.119. Commission on the Status of Women.
Sec. 4.120. Commission on Aging.
Sec. 4.121. Building Inspection Commission.
Sec. 4.122. Youth Commission.
Sec. 4.123. Youth Commission Membership; Appointment; Terms; Meetings; Compensation; Director.
Sec. 4.124. Youth Commission--Purpose and Duties.
Sec. 4.125. Jurisdiction.
Sec. 4.126. Departments--General Provisions.
Sec. 4.127. Police Department.
Sec. 4.128. Fire Department.
Sec. 4.129. Department of Administrative Services.
Sec. 4.130. Department of Public Works.
Sec. 4.131. County Clerk.
Sec. 4.132. Executive Branch Reorganization.
Sec. 4.133. Taxi Commission.
Sec. 4.134. Small Business Commission.

## SEC. 4.100. GENERAL.

In addition to the office of the Mayor, the executive branch of the City and County shall be composed of departments, appointive boards, commissions and other units of government. To the extent law permits, each appointive board, commission, or other unit of government of the City and County established by state or federal law shall be subject to the provisions of this Article and this Charter.

## SEC. 4.101. BOARDS AND COMMISSIONS--COMPOSITION.

Unless otherwise provided in this Charter, the composition of each appointive board, commission or advisory body of any kind established by this Charter or legislative act of the United States of America, the State of California or the Board of Supervisors shall:

> 1. Be broadly representative of the communities of interest, neighborhoods, and the diversity in ethnicity, race, age, and sexual orientation of the City and County and have representation of both sexes; and
>
> 2. Consist of electors of the City and County at all times during the term of their respective offices, unless otherwise specifically provided in this Charter; or in the case of

boards, commissions or advisory bodies established by legislative act the position is (a) designated by ordinance for a person under legal voting age, or (b) unless specifically exempt from the provisions, or waived by the appointing officer or entity upon a finding that an elector with specific experience, skills or qualifications willing to serve could not be located within the City and County.

Vacancies on appointive boards, commissions or other units of government shall be filled for the balance of the unexpired term in the manner prescribed by this Charter or ordinance for initial appointments.

Terms of office shall continue as they existed on the effective date of this Charter.

## SEC. 4.101.5. HOLD-OVER SERVICE BY BOARD AND COMMISSION MEMBERS.

(a) Application of this Section. Unless otherwise provided in this Charter or required by law, the requirements of this Section shall apply to the members of each appointive board, commission, or other unit of government of the executive branch of the City and County or otherwise created in the Charter ("Charter Commission"). Citizen advisory committees created in the Charter shall not be considered Charter Commissions for purposes of this Section. The provisions of this Section shall not apply to boards or commissions created in Article V (Executive Branch--Arts and Culture) or Article XII (Employee Retirement and Health Service Systems) of this Charter.

(b) Limitations on Hold-Over-Service. Except as otherwise provided in this Charter, the tenure of a member of any Charter Commission shall terminate no later than 60 days after the expiration of the member's term, unless the member is re-appointed. A member may not serve as a hold-over member of a Charter Commission for more than 60 days after the expiration of his or her term. The tenure of any person sitting as a hold-over member on the effective date of this amendment shall terminate no later than 60 days after the effective date of this amendment.

(Added by Proposition B, Approved 11/6/2007)

## SEC. 4.102. BOARDS AND COMMISSIONS--POWERS AND DUTIES.

Unless otherwise provided in this Charter, each appointive board, commission or other unit of government of the executive branch of the City and County shall:

1. Formulate, evaluate and approve goals, objectives, plans and programs and set policies consistent with the overall objectives of the City and County, as established by the Mayor and the Board of Supervisors through the adoption of City legislation;

2. Develop and keep current an Annual Statement of Purpose outlining its areas of jurisdiction, authorities, purpose and goals, subject to review and approval by the Mayor and the Board of Supervisors;

3. After public hearing, approve applicable departmental budgets or any budget modifications or fund transfers requiring the approval of the Board of Supervisors, subject to the Mayor's final authority to initiate, prepare and submit the annual proposed budget on behalf of the executive branch and the Board of Supervisors' authority under Section 9.103;

4. Recommend to the Mayor for submission to the Board of Supervisors rates, fees and similar charges with respect to appropriate items coming within their respective jurisdictions;

5. Unless otherwise specifically provided, submit to the Mayor at least three qualified applicants, and if rejected, to make additional nominations in the same manner, for the position of department head, subject to appointment by the Mayor;

6. Remove a department head; the Mayor may recommend removal of a department head to the commission, and it shall be the commission's duty to act on the Mayor's recommendation by removing or retaining the department head within 30 days; failure to act on the Mayor's recommendation shall constitute official misconduct;

7. Conduct investigations into any aspect of governmental operations within its jurisdiction through the power of inquiry, and make recommendations to the Mayor or the Board of Supervisors;

8. Exercise such other powers and duties as shall be prescribed by the Board of Supervisors; and

9. Appoint an executive secretary to manage the affairs and operations of the board or commission.

In furtherance of the discharge of its responsibilities, an appointive board, commission or other unit of government may:

10. Hold hearings and take testimony; and

11. Retain temporary counsel for specific purposes, subject to the consent of the Mayor and the City Attorney.

Each board or commission, relative to the affairs of its own department, shall deal with administrative matters solely through the department head or his or her designees, and any dictation, suggestion or interference herein prohibited on the part of any member of a board or commission shall constitute official misconduct; provided, however, that nothing herein contained shall restrict the board or commission's powers of hearing and inquiry as provided in this Charter.

### SEC. 4.103. BOARDS AND COMMISSIONS--ANNUAL REPORT.

As of the operative date of this Charter and until this requirement is changed by the Board of Supervisors, each board and commission of the City and County shall be required by ordinance to prepare an annual report describing its activeties, and shall file such report with the Mayor and the Clerk of the Board of Supervisors. The Annual Report can be included in the Annual Statement of Purpose as provided for in Section 4.102(2).

### SEC. 4.104. BOARDS AND COMMISSIONS--RULES AND REGULATIONS.

(a) Unless otherwise provided in this Charter, each appointive board, commission or other unit of government of the executive branch of the City and County shall:

1. Adopt rules and regulations consistent with this Charter and ordinances of the City and County. No rule or regulation shall be adopted, amended or repealed, without a public hearing. At least ten days' public notice shall be given for such public hearing. All such rules and regulations shall be filed with the Clerk of the Board of Supervisors.

2. Hold meetings open to the public and encourage the participation of interested persons. Except for the actions taken at closed sessions, any action taken at other than a public meeting shall be void. Closed sessions may be held in accordance with applicable state statutes and ordinances of the Board of Supervisors.

3. Keep a record of the proceedings of each regular or special meeting. Such record shall indicate how each member voted on each question. These records, except as may be limited by state law or ordinance, shall be available for public inspection.

(b) The presence of a majority of the members of an appointive board, commission or other

unit of government shall constitute a quorum for the transaction of business by such body. The term "presence" shall include participation by teleconferencing or other electronic means as authorized by Government Code Section 54953(b) or any successor legislation after the Board of Supervisors has adopted an ordinance pursuant to subsection (c) allowing such participation when the member is physically unable to attend in person, as certified by a health care provider, due to the member's pregnancy, childbirth, or related condition. The Board of Supervisors may also, as part of a parental leave policy adopted pursuant to subsection (c), authorize a member of a board or commission to participate in meetings by teleconferencing or other electronic means when the member is absent to care for his or her child after birth of the child, or after placement of the child with the member or the member's immediate family for adoption or foster care. Unless otherwise required by this Charter, the affirmative vote of a majority of the members shall be required for the approval of any matter, except that the rules and regulations of the body may provide that, with respect to matters of procedure the body may act by the affirmative vote of a majority of the members present, so long as the members present constitute a quorum. All appointive boards, commissions or other units of government shall act by a majority, two-thirds, three-fourths or other vote of all members. Each member present at a regular or special meeting shall vote "yes" or "no" when a question is put, unless excused from voting by a motion adopted by a majority of the members present.

(c) Notwithstanding the provisions of Charter Section 10.101, the Board of Supervisors shall provide by ordinance for parental leave policies for members of appointive boards, commissions or other units of government, including, but not limited to, authorization to participate in meetings by teleconferencing or other electronic means pursuant to subsection (b) and subject to the restrictions listed in that subsection.

(Amended by Proposition B, Approved 11/7/2006)

## SEC. 4.105. PLANNING COMMISSION.

GENERAL. The Planning Commission shall consist of seven members nominated and appointed pursuant to this section. Four of the members shall be nominated by the Mayor, and three of the members shall be nominated by the President of the Board of Supervisors. Charter Section 4.101 shall apply to these appointments, with particular emphasis on the geographic diversity of City neighborhoods. Vacancies shall be filled by the appointing officer.

Each nomination of the Mayor and the President of the Board of Supervisors is subject to approval by the Board of Supervisors, and shall be the subject of a public hearing and vote within 60 days. If the Board fails to act on the nomination within 60 days of the date the nomination is transmitted to the Clerk of the Board of Supervisors, the nominee shall be deemed approved. The appointment shall become effective on the date the Board adopts a motion approving the nomination or after 60 days of the date the nomination is transmitted to the Clerk of the Board of Supervisors.

Members may be removed by the appointing officer only pursuant to Section 15.105.

In order to stagger the terms, three members shall initially serve two-year terms, and four members shall initially service four-year terms. The initial two and four-year terms of office shall be instituted as follows:

> 1. The respective terms of office of members of the Planning Commission who hold office on the first day of July, 2002, shall expire at 12 o'clock noon on that date, and the four members appointed by the Mayor and the three members appointed by the President of the Board of Supervisors shall succeed to said offices at that time.
>
> 2. The Clerk of the Board of Supervisors shall determine by lot which two of the four Mayoral appointees shall serve an initial two-year term, and which one of the three appointees of the President of the Board of Supervisors shall serve an initial two-year term. The remaining appointees shall serve four-year terms. All subsequent terms shall

# Exhibit C

CITY AND COUNTY OF

# San Francisco

# POLICE CODE

## 1976 EDITION



Part II, Chapter VIII
of the
San Francisco Municipal Code



Published By BUILDING NEWS, INC.

NORTHERN CALIFORNIA OFFICE:
55 New Montgomery Street, San Francisco, California 94105

SOUTHERN CALIFORNIA OFFICE and Headquarters:
3055 Overland Avenue, Los Angeles, California 90034 • (213) 870-9871

the operation of the vehicle for which license or permit is requested, it shall forthwith notify the applicant of said finding.

SEC. 1078.1. AIRPORT SERVICE — SPECIAL PERMIT. (a) Notwithstanding the provisions of Sections 1075 to 1078, inclusive, of this Article, the Police Commission shall, at the request of the Public Utilities Commission, issue a special, non-transferable permit to transfer passengers for hire from any point within the City and County of San Francisco to the San Francisco International Airport, as the sole and only destination, to any person, firm or corporation holding a contract, either directly or by subcontract, with the City and County of San Francisco, to provide ground transportation by taxicab at the San Francisco International Airport. Any such permit shall expire when the permittee's contract right to provide ground transportation by taxicab at said Airport is terminated, from whatever cause; provided, however, any such permit and all rights herein granted may be rescinded and ordered revoked by the Police Commission for cause.

(b) It is the intent of this section that any person, firm or corporation to whom such permit shall issue, and its officers, agents and employees, shall be subject to the same regulatory and licensing requirements, as though such person, firm or corporation were authorized to conduct a general taxicab business within the City and County of San Francisco and to that end, any person, firm or corporation to whom such a permit is issued, and its officers, agents and employees, are hereby declared subject to Sections 1080 to 1081, inclusive, and to Sections 1115 to 1159, inclusive, of this Article, to Sections 128 and 129 of Article 2, Part III of the Municipal Code, and to all other ordinances of the City and County of San Francisco governing the operation of taxicabs; provided, however, that that portion of Section 1138 of this Article, relating to the carriage on demand of any person to his announced destination within the City and County of San Francisco, does not apply to any permittee under this section.

(c) The transportation of a passenger or passengers for hire pursuant to a permit granted by virtue of this section from any point within the City and County of San Francisco to any other destination than the San Francisco International Airport shall constitute a cause for revocation of such permit.

(d) Any person who transports a passenger or passengers for hire pursuant to a permit granted by virtue of this section from any point within the City and County of San Francisco to any destination other than the San Francisco International Airport shall be guilty of a misdemeanor.

SEC. 1079. OPERATION OF MOTOR VEHICLES FOR HIRE, TRANSFER OF PERMITS AND LICENSES THERETO. No person, firm or corporation to whom a permit or license to operate a motor vehicle for hire is issued pursuant to this article shall knowingly lease, rent, cause or permit a person other

than the permittee or a person standing in an employer-employee relationship to said permittee to operate said motor vehicle for hire nor shall any person lease, rent, or operate a motor vehicle for hire under a permit or license issued pursuant to this Article other than the permittee or a person standing in an employer-employee relationship to said permittee.

All persons, firms or corporations within the purview of Section 1075 to 1081, inclusive, of this Article shall regularly and daily operate his or its licensed motor vehicle for hire business during each day of the license year to the extent reasonably necessary to meet the public demand for such motor vehicle for hire service.

Upon abandonment of such business for a period of 10 consecutive days by an owner or operator, the Police Commission shall, after five days' written notice to the said owner or operator, direct the Police Department of the City and County of San Francisco to revoke said owner's or operator's licenses or permits, and said licenses or permits shall forthwith be revoked; provided, however, that the Chief of Police shall on written application grant to the holder of the permit permission to suspend operation of the permit for a period not to exceed 90 days in any one year, in case of sickness, death or other hardship, if in the judgment of the Chief of Police investigation discloses that the statements contained in said written application warrant such permission.

All such permits and licenses granted hereunder shall be transferable upon the consent of the Police Commission after written application shall first have been made to said Commission and upon payment of the fee required pursuant to Section 128.1 or Section 128.3, Part III, of the San Francisco Municipal Code. Any and all such certificates of public convenience and necessity, permits and licenses, and all rights herein granted may be rescinded and ordered revoked by the Police Commission for cause.
(Amended Ord. 71-70; (App. 3/19/70)

SEC. 1080. REQUISITES FOR OPERATION. Unless otherwise provided by ordinance, no person, firm or corporation, after the 24th day of February, 1932, shall operate any motor vehicle for hire unless and until such person, firm or corporation shall comply with the provisions of either Section 1080.1 or 1080.2 of this Article.

SEC. 1080.1. FILING INSURANCE POLICIES OR BOND WITH POLICE COMMISSION. Such person, firm or corporation, shall file with the Police Commission and thereafter keep in full force and effect a policy of insurance in such form as the Commission may deem proper and executed by a Company approved by the said Commission insuring the public against any loss or damage that may result to any person or property from the operation of such vehicle or vehicles, provided the minimum amount of recovery in such policy of insurance shall be not less than the following sums:

Personal injury to or death of any one person, $15,000; and