1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  WAYNE SNODGRASS, State Bar #148137
   VINCE CHHABRIA, State Bar #208557
3  FRANCESCA GESSNER, State Bar #247553
   Deputy City Attorneys
4  City Hall, Room 234
   1 Dr. Carlton B. Goodlett Place
5  San Francisco, California 94102
   Telephone:    (415) 554-4762
6  Facsimile:    (415) 554-4699
   E-Mail:       francesca.gessner@sfgov.org
7

8  Attorneys for Defendants
   TAXI COMMISSION and
9  CITY AND COUNTY OF SAN FRANCISCO

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13

14  WILLIAM SLONE and MICHAEL         Case No. C07-3335 JSW
    MERRITHEW,
15                                    DEFENDANTS' OPPOSITION TO
            Plaintiffs,               CROSS MOTION FOR SUMMARY
16                                    JUDGMENT AND REPLY TO
         vs.                          OPPOSITION TO MOTION FOR
17                                    PARTIAL SUMMARY JUDGMENT
    TAXI COMMISSION, CITY AND         AND/OR SUMMARY JUDGMENT
18  COUNTY OF SAN FRANCISCO,
    Executive Director Heidi Machen; CITY   Hearing Date:    April 4, 2008
19  AND COUNTY OF SAN FRANCISCO, a   Time:            9:00 a.m.
    California public entity,         Place:           Ctrm. 2, 17th Floor
20
            Defendants.
21

22

23

24

25

26

27

28

Defendants' Opp. to Cross Motion/Reply                    n:\govlit\li2007\080144\00470786.doc
USDC NO. C07-3335 JSW

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

DISCUSSION ...................................................................................................... 4

I.    PROPOSITION K IMPOSES A DRIVING REQUIREMENT ON
      MEDALLION HOLDERS ...................................................................... 4

      A.    The Text of Proposition K Makes Clear The Voters' Intent To Require
            Medallion Holders To Personally Drive Their Cabs ....................... 5

            1.    Section 2(b) ........................................................................ 5

            2.    Section 3(d) ........................................................................ 7

            3.    Revocation For Good Cause Provision ............................. 10

            4.    Proposition K's Other Provisions Do Not Support Plaintiffs'
                  Position ............................................................................ 10

                  a.    Preamble and Section 1 ......................................... 10

                  b.    Section 4(a)'s Continuous Operation Requirement ............ 10

      B.    The Official Ballot Pamphlet Demonstrates The Voters' Intent That
            Medallion Holders Drive Their Taxicabs ....................................... 12

      C.    The City's Legislative And Administrative Construction of Proposition
            K Demonstrates That Proposition K Contains A Driving Requirement .... 13

            1.    Board of Supervisors' Codification of the Driving Requirement
                  In The Police Code in 1988 and 2004 ............................. 13

            2.    Taxi Commission's Regulations and Resolutions .......................... 16

                  a.    Taxi Commission Regulations ............................. 16

                  b.    Taxi Commission Resolution 2002-93 ................. 17

                  c.    Taxi Commission Resolution 2006-28 ................. 17

II.   EVEN IF PROPOSITION K DOES NOT EXPRESSLY CONTAIN A
      DRIVING REQUIREMENT, DRIVING IS REQUIRED UNDER THE
      POLICE CODE .................................................................................... 18

III.  BECAUSE DRIVING IS AN ESSENTIAL ELIGIBILITY REQUIREMENT,
      THE CITY IS ENTITLED TO SUMMARY JUDGMENT ..................... 21

      A.    Driving Is An Essential Eligibility Requirement ....................... 21

      B.    Waiver of the Driving Requirement Is Not A Reasonable
            Accommodation ....................................................................... 23

CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Federal Cases**

*Aughe v. Shalala*
  885 F. Supp. 1428 (W.D. Wash. 1995)......................................................................22

*Badillo v. City of Stockton*
  956 F.2d 884 (9th Cir. 1992) .................................................................................21

*Cole v. Doe*
  387 F.Supp.2d 1084 (N.D. Cal. 2005) ....................................................................9

*Cole v. Nat'l Collegiate Athletic Ass'n*
  120 F. Supp. 2d 1060 (N.D. Ga. 2000).............................................................3, 4, 22

*Easley v. Snider*
  36 F.3d 297 (3rd Cir. 1994) .............................................................................22, 24

*Employers Ins. of Wausau v. Granite State Ins. Co.*
  330 F.3d 1214 (9th Cir. 2003) ................................................................................9

*Martinez v. Bush*
  234 F.Supp.2d 1275 (S.D. Fla. 2002) ...................................................................21

*McSherry v. Block*
  880 F.2d 1049 (9th Cir. 1989) ................................................................................9

*Nunez by Nunez v. City of San Diego*
  114 F.3d 935 (9th Cir. 1997) ..................................................................................9

*Ortiz-Sandoval v. Gomez*
  81 F.3d 891 (9th Cir. 1996) ....................................................................................9

*Pottgen v. Missouri State High School Activities Ass'n*
  40 F.3d. 926 (8th Cir. 1994) .................................................................................22

*Tennessee v. Lane*
  541 U.S. 509 (2004)............................................................................................4, 24

**State Cases**

*AB Cellular LA, LLC v. City of Los Angeles*
  150 Cal. App. 4th 747 (Cal. App. 2d Dist. 2007) ................................................13

*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization*
  22 Cal.3d 208 (1978) ..........................................................................................12

*Armstrong v. County of San Mateo*
  146 Cal. App. 3d 597 (Cal. App. 1st Dist. 1983) ...............................................19

*Creighton v. City of Santa Monica*
   160 Cal. App. 3d 1011 (Cal. App. 2nd Dist. 1984)................12, 19, 20

*Dyna-Med, Inc. v. Fair Employment & Housing Comm'n*
   43 Cal.3d 1379 (1987) ................................................21

*Flavell v. City of Albany*
   19 Cal. App. 4th 1846 (Cal. App. 1st Dist. 1993) ..............18, 20

*Gay Law Students Assn. v. Pacific Tel. & Tel. Co.*
   24 Cal.3d 458, 491 (1979) ...........................................13

*Gibson v. Unemployment Ins. Appeals Bd.*
   9 Cal.3d 494 (1973) ..................................................10

*Hill v. Nat'l Collegiate Athletic Assn.*
   7 Cal.4th 1 (1994) ...................................................12

*Hughes v. Bd. of Architectural Exam'rs*
   17 Cal.4th 763 (1998) ................................................8

*Lungren v. Deukmejian*
   45 Cal.3d 727 (1988) .................................................6

*People v. Birkett*
   21 Cal.4th 226 (1999) ..............................................6, 7

*People v. Lopez*
   34 Cal.4th 1002 (2005) ...............................................4

*People v. Pieters*
   52 Cal.3d 894 (1991) .................................................4

*People v. Poslof*
   126 Cal. App. 4th 92 (Cal. App. 4th Dist. 2005) .....................7

*Rivera v. City of Fresno*
   6 Cal.3d 132 (1971) .................................................16

*San Francisco Taxi Permitholders and Drivers Ass'n. vs. San Francisco*
   2002 WL 1485354 (2002)................2, 9, 11, 16, 18, 20, 22

*Shoemaker v. Myers*
   52 Cal.3d 1 (1990) ...................................................6

*Welch v. Oakland Unified Sch. Dist.*
   91 Cal. App. 4th 1421 (Cal. App. 1st Dist. 2001) ....................6

*Whitman v. Superior Court*
   54 Cal.3d 1063 (1991) ...............................................12

**Federal Statutes**

28 C.F.R.

35.130(b)(7) ....................................................................................................24

**San Francisco Statutes, Codes & Ordinances**

Police Code

§ 1076(o) ..........................................................................................13, 14, 15
§ 1081(b) ........................................................................................................14
§ 1081(f) ..............................................................................2, 3, 14, 15, 20
§ 1090(a) ..................................................................................3, 14, 20

S.F. Admin. Code

§ 1.2 ................................................................................................................7
Appx. 6 at § 1 .............................................................................................10
Appx. 6 at § 1(c) ........................................................................................11
Appx. 6 at § 2 .........................................................................................7, 11
Appx. 6 at § 2(b) .................................................................................. passim
Appx. 6 at § 2(d) ...................................................................................7, 10
Appx. 6 at § 3 .............................................................................7, 8, 9, 11
Appx. 6 at § 3(a) ..........................................................................................8
Appx. 6 at § 3(b) ..........................................................................................8
Appx. 6 at § 3(c) ..........................................................................................8
Appx. 6 at § 3(d) ................................................................................. passim
Appx. 6 at § 4 ...............................................................................................11
Appx. 6 at § 4(a) ...........................................................................3, 10, 11, 23
Appx. 6 at § 5(b) ..........................................................................................11
Appx. 6 at § 7 ...............................................................................................11

S.F. Charter

§ 4.102 .........................................................................................................24
§ 4.133 ...................................................................................................16, 24
§ 16.115 ..........................................................................................................7

S.F. Taxi Rules and Regulations

§ 4(A)(10) ....................................................................................................16
§ 4(A)(11) ....................................................................................................16

**Rules**

California Rule of Court

8.1115 (previously Rule 977) ....................................................................9

Fed. R. Evid.

201(b)(2) .......................................................................................................21

Federal Rule Civil Procedure

30(b)(6) .........................................................................................................23

**INTRODUCTION**

There is no dispute about the meaning of the Americans with Disabilities Act ("ADA"). Plaintiffs recognize, as they must, that if driving is indeed an essential eligibility requirement of the City's medallion program, the ADA does not require the City to grant Plaintiffs' requested waiver of that requirement. Faced with this unavoidable reality, Plaintiffs singularly dedicate themselves to the notion that the medallion program contains no driving requirement at all, let alone a requirement that is "essential."

Accordingly, all that is required of this Court is a straightforward legal task of interpreting the City's laws. The Court must interpret these laws to determine: (1) whether the medallion program contains a driving requirement; and (2) whether that requirement is essential to the operation of the program. Because the answer to these two questions is clearly "yes," the City is entitled to summary judgment in this case.

Plaintiffs are asking this Court to uproot thirty years of City law and administrative practice. Key points in this history are briefly summarized as follows:

- In 1978, San Francisco voters adopted Proposition K to reform the City's taxi medallion program. As a key element of that reform, Proposition K required that taxi medallion holders personally drive their cabs a substantial amount of time each year. *See* S.F. Admin. Code Appx. 6 at §§ 2(b), 3(d).[1]

- In 1988, the Board of Supervisors adopted legislation placing Proposition K's driving requirement for medallion holders in the Police Code, and stating that failure to meet the requirement constituted good cause for revocation of the medallion. *See* Defendants' Second Request for Judicial Notice ("Second RJN") Exh. A (Ordinance No. 562-88).

- In 1999, the newly created Taxi Commission adopted regulations implementing the driving requirement for medallion holders. *See* Defendants' Second RJN Exh. B, C.

---

[1] Proposition K is codified in Appendix 6 of the City's Administrative Code which appears as Exhibit A of Defendants' Request for Judicial Notice ("RJN").

- In 2002, the California Court of Appeal affirmed in an unpublished decision that Proposition K contains a driving requirement and that the Police Code provisions adopted in 1988 were consistent with Proposition K. *See* Defendants' RJN Exh. I (*San Francisco Taxi Permitholders and Drivers Ass'n. vs. San Francisco*, 2002 WL 1485354 (2002)).

- In 2002, the Taxi Commission adopted a resolution confirming the driving requirement and characterizing it as an essential eligibility requirement of the taxi medallion program. *See* Defendants' RJN Exh. K (Resolution 2002-93).

- In 2003, the San Francisco voters rejected Proposition N, a ballot measure which would have eliminated the driving requirement for disabled medallion holders. *See* Defendants' RJN Exh. L.

- In 2004, the Board of Supervisors re-codified the driving requirement in the Police Code. *See* Defendants' RJN Exh. E at § 1081(f).

- In 2006, the Taxi Commission again adopted a resolution confirming the driving requirement. *See* Defendants' RJN Exh. N (Resolution 2006-28).

Now, thirty years after the voters' adoption of Proposition K, twenty years after the Board of Supervisors first placed Proposition K's driving requirement in the Police Code, and six years after the California Court of Appeal affirmed the existence and validity of the driving requirement, Plaintiffs ask the Court to declare that the City's issuance of a taxi medallion carries with it no obligation to actually drive. This is a stunning assertion. In effect, Plaintiffs seek to turn the clock back to the absentee medallion program that the voters rejected in 1978, and to convert a taxi medallion into a lifetime income entitlement that its holder may enjoy at the expense of working cab drivers and the public.

Although Plaintiffs acknowledge that Proposition K both (1) requires medallion applicants to make a sworn statement of their intent to drive a specific number of shifts every calendar year, and (2) requires the Taxi Commission, before issuing a medallion, to determine that they will in fact drive the specified number of shifts per year, they contend that medallion holders are not actually required to drive once they receive a medallion. *See* S.F. Admin. Code Appx. 6 §§ 2(b), 3(d). Instead, under Plaintiffs' theory, the only thing Proposition K requires of medallion holders is to "operate" their

1  taxicab business, which does not require driving but can be accomplished by simply leasing out the

2  medallion to drivers for a lucrative fee, or to a taxi company that in turn leases the medallion to

3  drivers.  Plaintiffs also contend that the driving requirement placed in the Police Code by the Board

4  of Supervisors in 1988 should be disregarded because the Board cannot "amend" Proposition K after

5  the fact.

6        These contentions fail as a matter of law.  Proposition K's plain language makes clear that the

7  measure requires medallion holders to personally drive their own cabs.  Plaintiffs' reading of this

8  language is untenable because it would lead to absurd results and render key portions of the voter

9  initiative meaningless.  It makes no sense to say that the City can screen out a person who cannot

10 drive from getting a medallion in the first place, but a medallion holder who becomes unable to drive

11 can hold onto his medallion for the rest of his life.  Moreover, even if the text of Proposition K were

12 ambiguous as to a driving requirement, Proposition K's legislative history as set forth in the official

13 ballot pamphlet makes clear the voters' intent to require medallion holders to personally drive their

14 cabs.  In addition, the City's consistent legislative and administrative interpretations of Proposition K

15 over decades, as noted above, reinforce the conclusion that Proposition K contains a driving

16 requirement.  The Court should reject Plaintiffs' invitation to gut a key feature of Proposition K and

17 upset decades of legislative and administrative interpretation.

18       Furthermore, Proposition K is not the only City law that requires medallion holders to drive.

19 The Police Code has clearly required driving since 1988 and has stated that a medallion holder's

20 failure to drive full-time is "good cause" for suspending or revoking his medallion.  *See* Defendants'

21 RJN Exh. D at §§ 1081(f), 1090(a).  The Board of Supervisors' adoption of these Police Code

22 provisions in 1988 and again in 2004 were proper exercises of their legislative authority to implement

23 Proposition K, which itself provides that medallions may be revoked for good cause.  *See* S.F.

24 Admin. Code Appx. 6 at §4(a).  Even if Proposition K contains no express driving requirement, the

25 Police Code has clearly required medallion holders to drive since 1988.

26       Not only has driving been a requirement under Proposition K since 1978 and under the Police

27 Code since 1988, it is an essential eligibility requirement because it is "reasonably necessary to

28 accomplish the purposes of [the City's taxi] … program."  *Cole v. Nat'l Collegiate Athletic Ass'n*, 120

F. Supp. 2d 1060, 1070-71 (N.D. Ga. 2000). One of the central purposes of the City's program is to make City-owned medallions readily accessible to working cab drivers. The driving requirement serves to ensure that medallions are held by working drivers, and not simply leased out for profit. And as Plaintiffs seem to recognize, if driving is an essential eligibility requirement of the program, Title II of the ADA does not require the City to waive this requirement as a matter of law. *See Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (the ADA "does not require States to compromise their essential eligibility criteria for public programs. It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided …"). Accordingly, the Court should grant summary judgment in favor of the City.

## DISCUSSION

## I. PROPOSITION K IMPOSES A DRIVING REQUIREMENT ON MEDALLION HOLDERS

Plaintiffs claim that Proposition K does not actually impose a driving requirement on medallion holders. Plaintiffs contend that although the text of Proposition K requires medallion applicants to make a sworn statement of their *intent* to be full-time drivers, and requires the Taxi Commission to determine that they *will be* full-time drivers before issuing them a permit, they need not actually drive once they receive a medallion from the City. This tortured reading of Proposition K defies common sense and is untenable as a matter of law.

The California Supreme Court has set forth the standards to be applied to the interpretation of voter initiatives:

> In interpreting a voter initiative, we apply the same principles that govern our construction of a statute. We turn first to the statutory language, giving the words their ordinary meaning. If the statutory language is not ambiguous, then the plain meaning of the language governs. If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the analyses and arguments contained in the official ballot pamphlet, and the ostensible objects to be achieved.

*People v. Lopez*, 34 Cal.4th 1002, 1006 (2005) (internal citations omitted). "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law." *People v. Pieters*, 52 Cal.3d 894, 898 (1991).

Here, the lawmakers – the voters of San Francisco – intended that all persons who hold medallions issued under Proposition K would personally drive their cabs a substantial period of time

each year.  Although this intent is made clear in the text of Proposition K, the measure's legislative history and the City's consistent legislative and administrative interpretations of the measure eliminate any perceived ambiguities as to the measure's meaning.  Because the contrary interpretation of Proposition K urged by Plaintiffs would run directly counter to the voters' intent, the Court should reject that construction.

### A.  The Text of Proposition K Makes Clear The Voters' Intent To Require Medallion Holders To Personally Drive Their Cabs

The text of Proposition K makes clear that the voters of San Francisco placed central importance on medallion holders actually driving their cabs a substantial period of time each year. Read together, Sections 2(b) and 3(d) compel the conclusion that persons issued a medallion under Proposition K must personally drive their taxis a substantial period of time each year.

#### 1.  Section 2(b)

Section 2(b) of Proposition K states in relevant part:

> No [taxi] permit shall be issued unless the person applying for the permit shall *declare under penalty of perjury* his or her intention *actively and personally to engage as permittee driver* under any permit issued to him or her for at least four hours during any 24 hour period on at least 75 percent of the business days during the calendar year.

S.F. Admin. Code Appx. 6 § 2(b) (emphasis added).

By requiring each applicant for a medallion to swear that he or she intends to drive full-time, Section 2(b) necessarily excludes from the applicant pool any person who, like Plaintiffs Slone and Merrithew, is unwilling or unable to drive the taxi.  Thus, an applicant's willingness and capacity to drive are threshold eligibility requirements for the program.  And by submitting the sworn statement of intent, an applicant acknowledges that he or she is aware of the City's driving requirement and has made a legal commitment to honor it.  By screening out people who cannot or will not drive and preventing them from obtaining medallions in the first place, Section 2(b) thus makes clear that the City's program requires medallion holders to be drivers, not mere absentees.

The voters' intent to require driving is further evidenced by the specificity with which Section 2(b) defines "full-time driving."  Its detailed definition of driving – "four hours during any 24 hour period on at least 75 percent of the business days during the calendar year" – is designed to allow the City to monitor each medallion holder's actual driving on an annual basis.  The quantitative

1    specification of the definition makes clear that Section 2(b)'s purpose is to set a legally enforceable

2    standard that the City can use to determine, on an annual basis, whether a medallion holder has driven

3    the required amount.

4         Relying on the "plain language" rule of statutory construction, Plaintiffs argue that Section

5    2(b) requires medallion applicants to make nothing more than an empty pledge at the time of

6    application.  They contend that even though applicants must declare under penalty of perjury that

7    they *will drive* the set number of shifts per year, Proposition K does not require them to *actually drive*

8    once they have been awarded a medallion.  Pl. Opp. Br. at 10:18-19.  Thus, while Plaintiffs

9    acknowledge that a disabled person cannot *obtain* a medallion in the first place if he is not able to

10   drive, they claim that a medallion holder who becomes unable to drive is entitled to *keep* a medallion

11   – even though that very same person would not be eligible to receive one in the first place.  Pl. Opp.

12   Br. at 13.

13        This strained hyper-literal reading of Section 2(b) is untenable.  The plain meaning rule "does

14   not prohibit a court from determining whether the literal meaning of a statute comports with its

15   purpose."  *Lungren v. Deukmejian*, 45 Cal.3d 727, 735 (1988).  "[T]he provision must be given a

16   reasonable and common sense interpretation consistent with the apparent purpose and intention of the

17   lawmakers, practical rather than technical in nature, which upon application will result in wise policy

18   rather than mischief or absurdity."  *Welch v. Oakland Unified Sch. Dist.*, 91 Cal. App. 4th 1421, 1428

19   (Cal. App. 1st Dist. 2001) (internal quotations marks omitted).

20        Plaintiffs' reading of Section 2(b) "would lead to absurd results the Legislature could not have

21   intended."  *People v. Birkett*, 21 Cal.4th 226, 231 (1999).  It defies common sense to suggest that the

22   voters would have defined full-time driving with such specificity and threatened applicants with

23   perjury for misstating their intent to drive full-time, but did not intend to require medallion holders to

24   actually fulfill their pledge once they got a medallion.  Section 2(b)'s pledge requirement would be

25   rendered meaningless if medallion holders were not expected to actually abide by their sworn

26   statements.  Plaintiffs' blindly literal reading of Section 2(b) thus not only leads to absurd results but

27   also violates the principle that courts shall not construe statutory provisions "so as to render them

28   superfluous."  *Shoemaker v. Myers*, 52 Cal.3d 1, 22 (1990).

Furthermore, as Plaintiffs acknowledge, Proposition K screens out disabled persons and others who cannot or will not drive from getting a medallion in the first place. It makes no sense to say that driving is not a central requirement of the City's program when the City's application process is deliberately designed to screen out persons who cannot drive at the outset. Under Plaintiffs' interpretation, a person who becomes unable to drive a day *before* the Taxi Commission hearing on his application may not be issued a medallion; but a person who becomes unable to drive the day *after* he is awarded a medallion may keep that medallion for the rest of his life. Such a reading of Section 2(b) leads "to absurd results the [voters] could not have intended." *Birkett*, 21 Cal.4th at 231.

Finally, Plaintiffs' structural argument that Section 2 addresses only the process of applying for a taxi medallion, but not a medallion holder's conduct after receipt of a medallion, also fails. Many of Section 2's provisions – though phrased in terms of medallion issuance – in fact define key elements of Proposition K's regulatory scheme. For example, Section 2(d) states that only natural persons, not corporations, may hold permits issued under the measure. Section 2(b) also provides that medallions may not be held by more than one individual. The fact that the driving requirement is stated, in the first instance, in Section 2, is therefore unrevealing.[2]

In sum, Plaintiffs' reading would render Section 2(b) "nonsensical, subvert the purpose of the statute, and make surplusage of the [pledge] … contained in that provision." *People v. Poslof*, 126 Cal. App. 4th 92, 103 (Cal. App. 4th Dist. 2005). For these reasons, the Court should reject Plaintiffs' attempt to twist Section 2(b) – which highlights the *importance* the voters placed on medallion holders driving – into an argument against the driving requirement.

### 2. Section 3(d)

Section 3(d) further compels the conclusion that Proposition K imposes a driving requirement on medallion holders. Section 3 states that the Commission, "in determining whether or not public

---

[2] Plaintiffs also wrongly rely on the wording of the heading of Section 2 in support of their argument that it only applies to applicants, not medallion holders. Pl. Opp. Br. at 10. Both the Charter, to which Proposition K was initially appended, and the City's Administrative Code, to which Proposition K is now appended, state that section headings have no substantive import in construing the provisions to which they refer. *See* Defendants' Second RJN Exh. D (S.F. Charter § 16.115), Exh. E (S.F. Admin. Code § 1.2).

convenience and necessity exist for the issuance of a permit, may consider such facts as it deems pertinent, but *must* consider whether … (d) "[t]he applicant *will be* a fulltime driver, within the meaning of Section 2(b)." S.F. Admin. Code Appx. 6 § 3(d) (emphasis added). This is one of only four determinations that Proposition K requires the Commission to make when deciding whether to issue a medallion. *See id.* § 3(a)-(d).[3]

Section 3 makes clear that the sworn statement required by Section 2(b) is not an empty pledge. Rather, it is a promise that the City expects to be fulfilled through medallion holders' actual future conduct. Plaintiffs contend that Section 3(d) merely requires the Taxi Commission "to consider the validity of the applicant's full-time driving pledge." Pl. Opp. Br. at 11:7. But Section 3(d) is phrased in terms of how the applicant *will actually perform*, if granted the medallion. In construing Section 3(d), the verb tense employed in that section is significant. *Hughes v. Bd. of Architectural Exam'rs*, 17 Cal.4th 763, 776 (1998). Had the voters meant to limit the Commission's inquiry to an assessment of the applicant's state of mind at the time of application, they would not have phrased Section 3(d) in terms of whether the applicant actually "*will be*" a full-time driver. Section 3(d)'s future verb tense shows that the voters intended to require full-time driving, not merely a statement of intent on an application form.

Plaintiffs do not and cannot offer any coherent reason why the voters would have placed such emphasis on the Commission's assessment of whether an applicant would be a full-time driver if granted a medallion, yet simultaneously allow that individual to cease all driving after receiving his medallion. Under Plaintiffs' interpretation, a medallion holder would not violate Proposition K if he accepted a job offer across the country a month after receiving his medallion, depart San Francisco never to return, and yet held onto the medallion until the end of his life. The consequences of Plaintiffs' construction for the City's taxi program would thus reach far beyond the context of the ADA; it would entitle any and all medallion holders to cease driving and be absentees.

---

[3] The three other determinations that are mandatory preconditions for issuance of a medallion are: (a) whether the "applicant is financially responsible and will maintain proper financial records," (b) whether the "public will not be adequately or properly served unless the application is granted," and (c) whether the "applicant has complied with all provisions of the Municipal Code, including the pertinent motor vehicle laws." S.F. Admin. Code Appx. 6 §3(a)-(c).

Nor do Plaintiffs address the fact that the Commission's consideration of whether the applicant will be a full-time driver is required as part of its inquiry in to "whether or not public convenience and necessity exist for issuance of a permit." S.F. Admin. Code Appx. 6 § 3. Proposition K thus expressly links full-time driving by the medallion holder to the public interest. The voters who enacted Proposition K did not require medallion holders to be drivers for no reason. Rather, they concluded that the public interest is served if medallion holders drive their taxis, rather than function as absentees who sign a contract leasing out their medallion to the XYZ taxi company and have nothing to do with the taxi industry thereafter other than receive a monthly check from the company.

If Sections 2(b) and 3(d) are read together, there is no basis to conclude that voters did not intend to impose a driving requirement once a medallion is issued. To treat driving as so imperative, yet not require medallion holders to actually drive, would be to impart to Proposition K and the voters a degree of statutory schizophrenia that is not plausible.

In fact, in *San Francisco Taxi Permitholders and Drivers Ass'n. vs. San Francisco*, 2002 WL 1485354 (Cal. App. 1st Dist. July 11, 2002) (unpublished), medallion holders alleged that Proposition K did not contain a driving requirement and that the Board of Supervisors' 1988 legislation applying such a requirement were invalid. *See* Defendants' RJN Exh. I at *1. The California Court of Appeal rejected those arguments, holding that Proposition K imposes a driving requirement for medallion holders and that the City may make only "limited allowances" in that driving requirement. *See* Defendants' RJN Exh. I at *5-*7.[4]

---

[4] Although this Court is not bound by unpublished decisions of intermediate state courts, unpublished state court opinions may be treated as persuasive authority. *See McSherry v. Block*, 880 F.2d 1049, 1053 n.2 (9th Cir. 1989) (Court may not disregard a state court's construction of a statute "merely on the basis that its construction was rendered in an unpublished opinion"); *see also Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value."); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997) ("[W]e are not precluded from considering unpublished state court opinions."); *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 895 (9th Cir. 1996) (taking note of unpublished California state court opinion "[a]lthough pursuant to California Rule of Court 977(a) we do not cite this case as decisional law"). Indeed, the Northern District of California has stated that California Rule of Court 8.1115 (previously Rule 977), which prohibits citation of an unpublished California Court of Appeal decision "is not binding in the federal courts." *Cole v. Doe*, 387 F. Supp. 2d 1084, 1104 n.7 (N.D. Cal. 2005). Obviously, an unpublished state court decision is particularly relevant where, as here, it is construing the very same statute that is at issue in the case. Moreover, the Court of Appeal decision in *Taxi Permitholders Assn.* and the (continued on next page)

### 3. Revocation For Good Cause Provision

Finally, Proposition K's text also explicitly provides for revocation of medallions based on "good cause." S.F. Admin. Code Appx. 6 § 4(a). This is by nature a broad term and "must be so interpreted that the fundamental purpose of the legislation shall not be destroyed …. [T]he concept of 'good cause' cannot be arbitrarily limited[.]" *Gibson v. Unemployment Ins. Appeals Bd.*, 9 Cal.3d 494, 499 n.8 (1973). Given the voters' intent that medallion holders be full-time drivers, there would be no basis to conclude that failure to drive is not "good cause" for medallion revocation.

### 4. Proposition K's Other Provisions Do Not Support Plaintiffs' Position

Plaintiffs attempt to bolster their position by relying on additional provisions in Proposition K that they claim are relevant to the driving requirement. None of their claims withstands scrutiny.

#### a. Preamble and Section 1

First, Plaintiffs claim that Proposition K does not require driving because neither the Preamble nor Section 1 mentions the driving requirement. Pl. Opp. Br. at 9. But these sections are not an exhaustive recitation of either Proposition K's legislative intent or content. Section 1 is wholly silent with regards to many of Proposition K's key principles, including, for example, that the measure does not allow corporations to hold taxi medallions (Section 2(d)) and does not allow one person to hold more than one medallion (Section 2(b)).

#### b. Section 4(a)'s Continuous Operation Requirement

Second, Plaintiffs argue that Section 4(a)'s "continuous operation" requirement is the only requirement that is actually binding on medallion holders once they are awarded a medallion. *See* Pl. Opp. Br. at 4, 13. Section 4(a) states in relevant part that all medallion holders "shall regularly and daily operate their taxicab or other motor vehicle for hire business during each day of the year to the extent reasonably necessary to meet the public demand for such taxicab or motor vehicle for hire service." S.F. Admin. Code Appx. 6 § 4(a).

---

(footnote continued from previous page)
City's adherence to it cannot be separated from the history of the City's application of Proposition K and the Police Code provisions. Accordingly, Plaintiffs' objection to the City's citation to this case is without merit.

1    Plaintiffs argue that Section 4(a) does not require a medallion holder to actually drive so long

2  as he can "arrange for the continuous operation" of his medallion by leasing out the medallion.  Pl.

3  Opp. Br. at 13.  Accordingly, under Plaintiffs' theory, notwithstanding the importance Proposition K

4  places on driving by medallion holders, a disabled medallion holder, or any other medallion holder

5  who cannot or will not drive, can still comply with Section 4(a), and therefore with Proposition K's

6  only binding requirement on medallion holders.

7    In its unpublished decision construing Proposition K, however, the California Court of Appeal

8  squarely rejected this interpretation and held that Section 4(a)'s operation requirement included a

9  driving requirement for medallion holders.  The Court of Appeal found that Proposition K's driving

10  requirement is premised not only on Sections 2 and 3, which emphasize the importance to the City of

11  medallion holders driving, but also on Section 4(a).[5]  *See* Defendants' RJN Exh. I at *5-*7 (*Taxi*

12  *Permitholders Assn*.).  Although the Court of Appeal read Section 4(a) to include a driving

13  requirement, it held that this requirement need not "mirror in all cases the quantitative driving

14  standard of sections 2 and 3."  *Id*. at *5.  Rather, the Court opined that the City could "make some

15  limited allowance" in the full-time driving standard as defined in sections 2 and 3 in order to

16  accommodate a medallion holder's leadership position in a taxicab company or physical disability.

17  *Id*.

18    Further, Plaintiffs' argument that Section 4 is the only part of Proposition K that imposes a

19  binding requirement on medallion holders after they have received a medallion is simply wrong.

20  Many of Proposition K's rules governing medallion holders' conduct once they have received a

21  medallion are not in Section 4 but are located elsewhere in the measure.  For example, Section 5(b)

22  and Section 6 require medallion holders to file various reports with the City.  Section 1(c) and Section

23  7 allow medallion holders to charge rates lower than the legal maximum.  These requirements clearly

24  apply to persons who have received a medallion even though they are not located in Section 4.

25  Section 4 is not the sole repository of requirements for medallion holders.

26  _____

27    [5]  The City maintains that Sections 2(b) and 3(d) provide sufficient textual basis on their own
that Proposition K requires medallion holders to drive during the course of their possession of a
medallion, even if Section 4 did not also support that requirement.

28

**B.     The Official Ballot Pamphlet Demonstrates The Voters' Intent That Medallion Holders Drive Their Taxicabs**

Even if there were any ambiguity in the text of Proposition K, an initiative measure "is to be interpreted and applied in a manner consistent with the probable intent of the body enacting it: the voters. . ." *Hill v. Nat'l Collegiate Athletic Assn*., 7 Cal.4th 1, 16 (1994). "Thus, the intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." *Whitman v. Superior Court*, 54 Cal.3d 1063, 1072 (1991) (internal quotes and citations omitted).  "To ascertain the intent of the electorate it is, of course, proper to consider the official statements made to the voters in connection with propositions of law they are requested to approve or reject." *Creighton v. City of Santa Monica*, 160 Cal. App. 3d 1011, 1018 (Cal. App. 2nd Dist. 1984); *see also Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization*, 22 Cal.3d 208, 246 (1978) (ballot arguments "may be helpful in determining the probable meaning of uncertain language").

The driving requirement was an important selling point for Proposition K.  The official ballot argument in favor of Proposition K stated that the taxicab system "must be reformed" to "prevent[] a favored few from making big profits on taxi permits" and curb abuses by "favored taxicab companies and individuals."  Defendants' RJN at Exh. C at 37.  Specifically, the argument *twice* refers to medallions going to those who will personally drive their own cabs.  First, the official ballot argument in favor provides, in relevant part:

> Under this initiative, individuals … who obtain permits with the sole purpose of reselling them for an enormous profit could not do so.  When unused, the permits would return to the Police Commission where new permits would be issued to *people who actually want to drive a taxicab*.

Defendants' RJN Exh. C at 37 (emphasis added).  Second, the ballot argument identifies the "individual *taxicab driver* who wants to obtain a permit and be allowed to engage in the taxicab business himself" as someone who "gets hurt by the present system."  *Id*.  (emphasis added).  In addition, the argument states that Proposition K "will provide an equitable arrangement for the public and for *cab drivers* who want to serve all San Franciscans."  *Id*. (emphasis added).  These multiple references to drivers and driving in the ballot argument make clear that Proposition K did not contemplate issuing medallions to absentees who would not function as taxi drivers.

The official ballot argument against Proposition K also demonstrates the voters' intent to require driving by medallion holders. That argument warns that "Proposition K would limit cabs to operation by *driver* owner*s* who would furnish service when and where they wanted to with no consideration for the public need." Defendants' RJN Exh.C at 37 (emphasis added). By describing those persons who would receive medallions under Proposition K as "*driver* owners," the measure's opponents warned voters that nondrivers would not be allowed to hold medallions. The fact that the voters adopted the measure in the face of that argument indicates that they intended to do just that. The ballot arguments thus indicate that there was a common understanding that persons receiving medallions under Proposition K would actually drive their taxis.

### C. The City's Legislative And Administrative Construction of Proposition K Demonstrates That Proposition K Contains A Driving Requirement

"Consistent administrative construction of a statute over many years, particularly when it originated with those charged with putting the statutory machinery into effect, is entitled to great weight ...." *Gay Law Students Assn. v. Pacific Tel. & Tel. Co.,* 24 Cal.3d 458, 491 (1979). *see also AB Cellular LA, LLC v. City of Los Angeles*, 150 Cal. App. 4th 747, 759 (Cal. App. 2d Dist. 2007). Both the legislative body (the Board of Supervisors) and the administrative agency (the Taxi Commission) that are responsible for implementing Proposition K have consistently understood the measure to impose a driving requirement on medallion holders after they receive a medallion.

### 1. Board of Supervisors' Codification of the Driving Requirement In The Police Code in 1988 and 2004

In 1988, the Board of Supervisors adopted legislation that thoroughly fleshed out the medallion permitting system instituted by Proposition K. *See* Defendants' Second RJN Exh. A (Ordinance No. 562-88). With regards to the driving requirement in particular, the Board codified Proposition K's driving requirement in three separate parts of the Police Code:

- First, Section 1076(o) defined the phrase "full-time driver" as a "driver actually engaged in the mechanical operation and having physical charge or custody of a motor vehicle for hire" for the set number of shifts per calendar year required by Section 2(b) of Proposition K.

- Second, Section 1081(b) required applicants to make the same full-time driving pledge under penalty of perjury as required by Section 3(d) of Proposition K.
- Third, Section 1081(b) required that every post-Proposition K medallion holder "drive his or her taxicab for at least the amount of time set forth herein …."  Accordingly, the Board's 1988 codification expressly required medallion holders to actually drive their cabs as set forth in the pledge.
- Finally, Section 1090(a)(i) defined "good cause" for the suspension or revocation of a permit to include that "[t]he permittee ceased to be a full-time driver."

*See* Defendants' Second RJN Exh. A at §§ 1076(o), 1081(b), 1090(a).

In 2004, the Board refined some of the provisions of the Police Code pertaining to the driving requirement.  *See* Defendants' RJN Exh. E (Ordinance No. 111-04).  The 2004 amendments made the following changes:

- Revised the definition of full-time driver in Section 1076(o) to allow 800 hours per year as an alternative means of meeting the driving requirement.  *See* Defendants' RJN Exh. E at 4 (Ordinance No. 040343).
- Relocated the full-time driving requirement from Section 1081(b) to a new Section 1081(f).  *See* Defendants' RJN Exh. E at 6-7 (Ordinance No. 040343).[6]

Plaintiffs misconstrue the 2004 legislation in two ways.  First they claim that the legislation demonstrates that driving was not an essential eligibility requirement as of 2004 or else the legislation would have been unnecessary.  Pl. Opp. Br. at 18: 19-21.  But as explained *supra*, the driving requirement has been in the Police Code since 1988, and had been in Proposition K since 1978.  Indeed, the legislative digest for the 2004 legislation expressly states that both Proposition K and the Police Code already contained a driving requirement: "Under Proposition K, a 1978 initiative ordinance regulating the issuance of taxi permits, and the Police Code, taxi and ramped taxi permit

---

[6]  The deletion of the driving requirement that had previously appeared in Section 1081(b) under the 1988 amendments appears in italics strikethrough at page 6, line 24 and page 7, lines 1-2 of the ordinance in Exhibit E of Defendants' Request for Judicial Notice.  As part of the 2004 amendments, the driving requirement was moved to a newly created Section 1081(f) which appears on page 7 of Exhibit E of Defendants' Request for Judicial Notice.

holders (medallion holders) must drive 'full-time.'"  Defendants' RJN Exh. E at 1.  Accordingly,

Plaintiffs' attempt to paint the 2004 legislation as an after-the-fact imposition of a driving requirement

is wrong.

Second, Plaintiffs claim that the driving requirement set forth in Section 1081(f) in the 2004

legislation is only a "two-year requirement" that does not extend "to the full term of the permit."  Pl.

Opp. Br. at 1-2.  Again, their claim is simply wrong. Section 1081(f) reads as follows:

> (f) Full-Time Driving Required. Every permittee subject to the provisions of
> this Section shall be a full-time driver as *defined in Section 1076(o)*, subject to
> the qualifications state in subparts (i)– (iii) below.
>
> (i) During the calendar year in which the permittee receives the permit, and
> during the first full calendar year following receipt of the permit, the permittee
> must qualify as a full-time driver *by satisfying the definition of that term in
> Section 1076(o)(i)*. For the calendar year in which the permittee receives the
> permit, the number of business days shall be measured from the date of receipt
> of the permit.

Defendants' RJN Exh. E at § 1081(f) (emphasis added).  Section 1081(f) mandates that every

medallion holder "shall be a full-time driver as defined in Section 1076(o)."  There is no two-year

limit – or any other temporal limit – to this mandate.  Full-time driving in Section 1076(o) is defined

in two ways: either (i) driving for at least four hours during any 24 hour period on at least 75 percent

of the business days during the calendar year (Section 1076(o)(i)), or (ii) for at least 800 hours during

the calendar year (Section 1076(o)(ii)).  Section 1081(f)(i) states that during the first two years of

holding a medallion, a medallion holder must drive the amount set forth in Section 1076(o)(i) – in

other words, he must drive the quantitative formula that was originally set forth in Proposition K, four

hours during any 24 hour period on at least 75 percent of the business days during the calendar year,

which the Commission has interpreted to mean 156 four-hour shifts.  *See* Declaration of Heidi

Machen in Support of Defendants' Motion for Summary Judgment ("Machen Decl.") at ¶ 3.

Thereafter, the medallion holder is still required to drive per Section 1081(f)'s mandate, but he may

use the 800-hour definition in Section 1076(o)(ii) to comply with the driving requirement.  The

legislative digest for the 2004 legislation also makes this clear:

> The proposal would require permit holders to drive 156 shifts per year during
> the first year after they received their permits, but after that, they could satisfy
> the full-time driving requirement by driving either the 156 shifts per year or
> 800 hours per year.

1   Defendants' RJN Exh. E at 1.  Thus, the 2004 legislation, just like the enactments before it, requires

2   medallion holders to meet the driving requirement for the entire time they hold the medallion.

3                   **2.      Taxi Commission's Regulations and Resolutions**

4           The administrative construction of a statute by an administrative agency charged with its

5   enforcement and interpretation is also entitled to great weight.  *See Rivera v. City of Fresno*, 6 Cal.3d

6   132, 140 (1971).  The Taxi Commission is the agency charged with the enforcement and

7   interpretation of Proposition K and the provisions regulating taxicabs in Article 16 of the Police

8   Code.  *See* Defendants' RJN Exh. F (Charter § 4.133).  In regulations first adopted in 1999 when the

9   Taxi Commission was formed, and resolutions adopted in 2002 and 2006, the Taxi Commission has

10  consistently recognized that driving is a requirement of Proposition K.

11                  **a.      Taxi Commission Regulations**

12          In April 1999, shortly after its formation, the newly created Taxi Commission adopted  "Rules

13  and Regulations for Taxicabs."  *See* Defendants' Second RJN Exh. B (Resolution No. 9-99).  These

14  regulations included the following provision implementing Section 2(b)'s driving requirement: "[A]ll

15  Medallion Holders must drive their own medallion number taxicab when complying with the full-

16  time driving requirement provision of Appendix F, Sec. 2(B) of the San Francisco Charter."[7]

17  Defendants' Second RJN Exh. C at Section 4(A)(10) (S.F.Taxi Rules and Regulations).  An

18  amendment to the regulations in November 1999 added the requirement that "every 'Post K'

19  Medallion Holder must submit a written notification to the Taxi Detail if they will not be driving for a

20  period of thirty (30) consecutive days or more."  *Id*. at Section 4(A)(11).  Indeed, in the California

21  Court of Appeal decision affirming the validity of the driving requirement, the Court also upheld a

22  variety of the City's administrative rules and procedures designed to implement the driving

23  requirement.  *See* Defendants' RJN Exh. I at *7-*11 (*Taxi Permitholders Assn*.).

24

25

26

27          [7]  Proposition K was originally part of the City Charter.  It was later relocated to Appendix 6
    of the City's Administrative Code, its present location.  *See* Defendants' RJN Exh. A.

28

b.     **Taxi Commission Resolution 2002-93**

In 2002, the Taxi Commission adopted Resolution 2002-93, which, among other things, expressly noted Proposition K's driving requirement:

> WHEREAS, the text of Proposition K indicates the importance that measure places on permitholders driving on a continuous basis, by
>
> - requiring every applicant for a motor vehicle for hire permit to declare under penalty of perjury that he or she intends actively and personally to engage full-time as permittee-driver under any permit issued to him or her;
> - defining full-time driving with considerable specificity; and
> - requiring the Taxi Commission, in determining whether or not public convenience and necessity exist for the issuance of a permit, to find that the applicant will be a full-time driver; and
>
> WHEREAS, this Commission has recognized that a basic principle central to Proposition K is that permitholders be full-time drivers rather than absentees and the California Court of Appeals has likewise recognized that Proposition K embraces a strong policy favoring full-time, or continuous, driving by permitholders;
>
> WHEREAS, Proposition K had as a main purpose to shift the City's taxi permitting process from a system that allowed corporations and nondrivers to hold permits, to a system in which only bona fide drivers would hold permits; and this central purpose will be compromised if nondrivers are allowed to hold permits, because in every such case, the nondriver would hold the permit at the expense of an actual driver who otherwise would be issued the permit;

Defendants' RJN Exh. K.  The Resolution thus reflects the Commission's understanding that Proposition K has always contained a driving requirement.  Plaintiffs' claim that "[t]his Resolution recognizes that a driving requirement was not an essential eligibility requirement of Proposition K" is nonsensical.  Pl. Opp. Br. at 17.  To the contrary, the Resolution recognized that "a basic principle to Proposition K is that permitholders be full-time drivers rather than absentees."  Defendants' RJN Exh. K.

c.     **Taxi Commission Resolution 2006-28**

Finally, in Resolution 2006-28, the Taxi Commission recognized that "in Proposition K in 1978 San Francisco voters established a medallion holder's driving requirement, as one of a package of taxi industry reforms."  Defendants' RJN Exh. N.

In sum, the plain language of Proposition K makes clear that medallion holders are required to personally drive a substantial amount each year.  The 2002 California Court of Appeal decision in *Taxi Permitholders Assn*. confirms this mandate.  The legislative history of the measure, and its

consistent interpretation by the Board of Supervisors and the Taxi Commission over decades, further demonstrate that medallion holders are required to drive under Proposition K, and that this has been an essential requirement since 1978.[8]  For these reasons, Plaintiffs' statutory interpretation of Proposition K fails as a matter of law.

## II.    EVEN IF PROPOSITION K DOES NOT EXPRESSLY CONTAIN A DRIVING REQUIREMENT, DRIVING IS REQUIRED UNDER THE POLICE CODE

Even if the Court were to ignore the holding of the California Court of Appeal in the 2002 *Permitholders Assn*. decision, and conclude that driving is not a central requirement of Proposition K, Article 16 of the Police Code has contained an express driving requirement since 1988.  Plaintiffs recognize that the Police Code provisions are enforceable – at least with regards to non-disabled medallion holders – but claim that the Board of Supervisors' adoption of these provisions "do not and cannot amend Prop K to make 'driving' or continuous driving' an essential eligibility requirement for permit holders."[9]  Pl. Opp. Br. at 19-20.  This argument is unavailing.  The Board of Supervisors' placement of the driving requirement in the Police Code in 1988 was a valid exercise of its legislative powers and is entirely consistent with Proposition K.  Thus, irrespective of Proposition K, the Police Code provides an independent basis for the Court to conclude that City law requires medallion holders to personally drive their cabs and that this requirement is essential to the City's taxi medallion program.

Resolution of the question whether a Board ordinance "amends" an initiative turns on the proper construction of the initiative.[10]  *Flavell v. City of Albany*, 19 Cal. App. 4th 1846 (Cal. App. 1st Dist. 1993).  California courts have established that where the voters have amended city law "by

---

[8] It is also worth noting that, as Plaintiffs acknowledge, the City Attorney's Office stated in public written opinions in 1999 and 2000 that the driving requirement is an express provision of Proposition K.  *See* Defendants' RJN Exh. J at 3 (1999 Memorandum); Plaintiffs' RJN Exh. A (2000 Memorandum).  Opinions of a City Attorney are entitled to consideration in construing the meaning of an initiative.  *See McGraw v. Huntington Beach*, 882 F.2d 384, 388 (9th Cir. 1989) (citation omitted).

[9] Under City Charter Section 14.101, an initiative ordinance may only be "amended" by the voters.  *See* Plaintiffs' RJN Exh. B (S.F. Charter § 14.101).

[10] The question of whether the Board of Supervisors' adoption of the Police Code provisions constitutes an improper "amendment" of Proposition K is an issue of law that a court may resolve on summary judgment.  *Knight v. Superior Court*, 128 Cal. App. 4th 14, 22 (Cal. App. 3d Dist. 2005).

initiative measure, but the terms of the amendment are ambiguous when read with existing law, the legislative body may interpret the initiative in order to harmonize it with existing law." *Creighton,* 160 Cal. App. 3d at 1021; *see also Armstrong v. County of San Mateo,* 146 Cal. App. 3d 597, 625 (Cal. App. 1st Dist. 1983) (holding that ambiguous language in voter initiative was properly subject to legislative interpretation by the enactment of statutes addressing issues raised by the provision).

In *Creighton*, the court found that it was proper for the City of Santa Monica to pass ordinances implementing basic policy regarding rent control that had been adopted by a voter initiative charter amendment. The initiative measure at issue established a rent control board and set forth its duties. The court found that the challenged city ordinances, which provided for city officials to administer and supervise the Rent Board's affairs, were not improper amendments to the voter initiative but were proper as implementations of the voters' intent and clarifications of ambiguous areas in the initiative. As the court explained:

> By adopting the Charter amendment, the Santa Monica electorate enacted basic policies as to how the system of rent control within the City should be administered. The City Council, by the passage of various implementing ordinances, sought to effect the intent of the voters and clarify any existing ambiguities. In so doing, the Council carefully integrated the administration of the rent control laws into the structure of city government. The choice of the people and the Council in this regard cannot be said clearly and unequivocally to violate the mandate of the City Charter.

*Creighton*, 160 Cal. App. 3d at 1021-22.

Here, as in *Creighton*, the Board of Supervisors' 1988 and 2004 legislation enacting a driving requirement in the Police Code were consistent with Proposition K's "basic policies" and "sought to effect the intent of the voters and clarify any existing ambiguities." 160 Cal. App. 3d at 1021-22. As explained *supra*, Proposition K placed great emphasis on medallion holders personally driving their own cabs. Section 2(b) – requiring medallion applicants to swear under penalty of perjury their intent to drive "full-time" – is the *only* provision in all of Proposition K that requires medallion applicants to make a pledge under penalty of perjury. S.F. Admin. Code Appx. 6 § 2(b). And whether a medallion applicant will in fact fulfill this driving pledge is one of only four determinations that the Taxi Commission is required to make in deciding whether to issue a permit under Proposition K. S.F. Admin. Code Appx. 6 § 3(d). Even if these provisions are ambiguous as to whether medallion

holders must drive once they receive a medallion – and they are not – the provisions make clear Proposition K's "basic polic[y]" in favor of driving. *Creighton*, 160 Cal. App. 3d at 1021.

In the face of Proposition K's strong policy favoring driving by medallion holders, the Board of Supervisors' enactment of an express driving requirement in the Police Code clearly was a proper exercise of its legislative power to implement and administer Proposition K's provisions. *Creighton*, 160 Cal. App. 3d at 1022. By making explicit that medallion holders must comply with their sworn statements to drive full-time, and must act in conformity with the Taxi Commission's finding upon issuing the medallion that the application "will be" a full-time driver, the Board's legislation properly effectuated the intent of the voters who adopted Proposition K and clarified any ambiguities as to the meaning of Proposition K's requirements. *See Flavell*, 19 Cal. App. 4th at 1852 (holding that legislation adopted by city council was "in accordance with the voters' mandate").

In *Taxi Permitholders Assn.*, *supra*, the California Court of Appeal squarely faced this issue and ruled that the Board of Supervisors' 1988 amendments to the Police Code did not conflict with Proposition K. Specifically, the Court held that Section 1090(a)'s provision which allows for revocation of a medallion if the holder ceases to be a full-time driver was "clearly within the City's legislative power to implement the provisions of Proposition K." *See* RJN Exh. I at *6. The Court observed, "In light of the importance given to the full-time driving standard of section 2, subdivision (b), it is reasonable to regard the failure to meet this standard as providing grounds for the discretionary revocation of a taxicab permit." *Id*. This Court may treat the Court of Appeal decision as persuasive authority. *See supra* note 4.

For these reasons, there is no reasonable argument that the Police Code provisions requiring medallion holders to drive are invalid. Accordingly, even if the Court were to conclude that Proposition K did not contain a driving requirement, the Police Code is a separate part of City law that has expressly required medallion holders to drive their cabs since 1988. *See* Defendants' RJN Exh. D at § 1081(f). The Police Code's twenty-year old driving requirement thus provides an independent statutory basis for the Court to conclude not only that driving is a legal requirement of the City's taxi medallion program, but also that it is an essential eligibility requirement of that program.

1

### III. BECAUSE DRIVING IS AN ESSENTIAL ELIGIBILITY REQUIREMENT, THE CITY IS ENTITLED TO SUMMARY JUDGMENT

2

Because driving is a requirement of City law – both of Proposition K and the Police Code –

3

the only remaining question is whether the requirement is "essential" to the City's taxi medallion

4

program.  If the requirement is an essential eligibility requirement, then summary judgment should be

5

granted in favor of the City.

6

#### A.     Driving Is An Essential Eligibility Requirement

7

Since 1978, Proposition K has required that medallion holders personally drive their cabs a set

8

amount each year.  Since 1988, driving has also been an express requirement of the City's taxi

9

medallion program as set forth in the Police Code.  The essential nature of this requirement to the

10

City's taxi program is reflected in the legislative history of Proposition K, the Board of Supervisors'

11

codification of the requirement in the Police Code, the Taxi Commission's regulations and

12

resolutions, and the voters' resounding rejection of Proposition N in 2003, a measure which, if

13

adopted, would have eliminated the driving requirement for disabled medallion holders.  *See*

14

Defendants' RJN Exh. L (2003 Voter Information Pamphlet at 189).[11]  The driving requirement

15

serves to ensure that medallions are held by working drivers, and not simply leased out for profit.  As

16

the Commission has recognized, the requirement also serves to increase the professionalism of

17

drivers and the quality of taxi services, promote stability in the workforce, and promote equity in the

18

cab industry by avoiding the creation of separate classes of owners and workers.  *See* Defendants'

19

RJN Exh. K (Resolution 2002-93).  In sum, the voters, the Board of Supervisors, and the Taxi

20

---

21

[11] Plaintiffs' objections to Defendants' Request for Judicial Notice of Proposition N in the 2003 Voter Information Pamphlet (Exhibit L) and the 2003 municipal election results (Exhibit M) are without merit.  Official ballot pamphlets and election results are appropriate subjects of judicial notice under Federal Rule of Evidence 201.  *See, e.g., Badillo v. City of Stockton,* 956 F.2d 884, 887 n.1 (9th Cir. 1992); *Martinez v. Bush,* 234 F. Supp. 2d 1275, 1307 n.36 (S.D. Fla. 2002) (taking judicial notice, pursuant to Fed. R. Evid. 201(b)(2), of election results).  The City cited the voters' defeat of Proposition N as a historical fact.  As the City explained in its opening brief, the relevance of this historical fact is twofold.  First, the voters' defeat of Proposition N influenced the Taxi Commission's subsequent actions regarding the driving requirement.  *See* Def. Op. Br. at 9-10.  Second, the voters' defeat of Proposition N provides evidence that San Francisco voters consider the driving requirement an essential aspect of the City's taxi medallion program.  *See* Def. Op. Br. at 18.  Although California courts have recognized that "[u]npassed bills, as evidences of legislative intent, have little value," the City does not cite Proposition N as evidence of legislative intent.  *Dyna-Med, Inc. v. Fair Employment & Housing Comm'n*, 43 Cal.3d 1379, 1396 (1987).

22

23

24

25

26

27

28

1  Commission have all determined that the driving requirement "is an essential dimension without

2  which the objectives of the program cannot be realized." *Easley v. Snider*, 36 F.3d 297, 303 (3rd Cir.

3  1994).  The voters' and legislators' policy choice must be respected.  *See, e.g., Aughe v. Shalala,* 885

4  F. Supp. 1428, 1433 (W.D. Wash. 1995).

5        Plaintiffs attempt to argue that driving is not an essential eligibility requirement of the City's

6  program because it allegedly was not until the Commission adopted Resolution 2002-93 that the City

7  "attempted for the first time to implement formally a continuous driving requirement as an essential

8  eligibility requirement for permit holders."  Pl. Opp. Br. at 17.  The fact that Resolution 2002-93 was

9  the first time that the City used the precise phrase "essential eligibility requirement" with reference to

10 the driving requirement is immaterial to the question of whether driving is in fact an essential

11 requirement of the program within the meaning of the ADA.  In determining whether an eligibility

12 requirement is "essential," courts look to "the importance of the requirement to the … program."

13 *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d. 926, 930 (8th Cir. 1994).  Courts ask

14 whether the requirement is "reasonably necessary to accomplish the purposes of a particular

15 program."  *Cole*, 120 F. Supp. 2d at 1070-71.  Courts do not look to whether a public entity has

16 labeled the requirement an "essential eligibility requirement."

17        Moreover, there is no mystery why the Commission did not use the ADA phrase "essential

18 eligibility requirement" with regards to the driving requirement until 2002.  The issue of waiving the

19 driving requirement for disabled medallion holders did not arise at the Commission until around 2000

20 or 2001.  Declaration of Paul Gillespie in Support of Defendants' Motion for Summary Judgment

21 ("Gillespie Decl.") at ¶6.  Up until that time, the Commission had had no need to address the specific

22 question of whether driving was an "essential eligibility requirement" under the ADA.  Around that

23 same time, medallion holders sued the City in state court over the existence of and application of

24 Proposition K's driving requirement.  *See* Defendants' RJN Exh. I (*Taxi Permitholders Assn.*).  In

25 June 2002, the California Court of Appeal held in *Taxi Permitholders Assn.* that Proposition K

26 contains a driving requirement, to which the City may only make "some limited allowance" for

27 disabled persons.  *Id.*  As the Commission states in Resolution 2002-93, its adoption of the resolution

28 was in direct response to that court decision:

1
2
3

WHEREAS, the California Court of Appeal has stated that the City, in defining continuous driving, need not strictly adhere to the specific quantitative formula in Proposition K for measuring full-time driving, but may make some limited allowance for disabled permitholders by employing an alternative definition, provided that the alternative definition complies with Proposition K's mandate that permitholders drive on a continuous basis; now, therefore,

4
5

BE IT RESOLVED, That continuous driving is an essential eligibility requirement of the City's programs for the permitting of motor vehicles for hire, and that exempting a permitholder from that requirement would fundamentally alter the nature of those programs; and

6
7
8
9

BE IT FURTHER RESOLVED, That this resolution is not intended to restrict the Commission's discretion in devising alternative definitions of continuous driving to accommodate disabled permitholders whose disability precludes them from complying with the specific quantitative formula in Proposition K for measuring full-time driving, provided that any alternative definition for measuring full-time driving, satisfies the continuous driving requirement mandated by Proposition K; []

10

Defendants' RJN Exh. K. Accordingly, Resolution 2002-93 did not constitute the Taxi Commission

11

"creat[ing] an essential eligibility requirement where none existed before." [12] Pl. Opp. Br. at 18:4-5.

12

To the contrary, driving has been an essential eligibility requirement of the City's program for

13

decades. And the essential nature of this requirement has been re-affirmed time and again by the

14

Board of Supervisors, the Taxi Commission and the voters.

15

### B.    Waiver of the Driving Requirement Is Not A Reasonable Accommodation

16

Plaintiffs appear to recognize, as they must, that if driving is in fact an essential eligibility

17

requirement of the City's taxi program, their requested waiver of that requirement is not a "reasonable

18

modification" required by the ADA. They make two attempts, however, to argue that their requested

19

accommodation is "reasonable." Both are unavailing.

20

First, Plaintiffs argue that their requested waiver of the driving requirement "is not a

21

retirement plan" because it would not excuse a medallion holder from complying with Section 4(a)'s

22

continuous operation requirement and other provisions of the Police Code. Pl. Opp. Br. at 20, 21.

23

24
25
26
27
28

---

[12] Plaintiffs cite to testimony from Naomi Kelly stating that the purpose of Resolution 2002-93 "was to determine again the essential eligibility requirement and consider the continuous driving requirement as an essential eligibility requirement." Pl. Opp. Br. at 18. It is not clear why Plaintiffs think this statement supports their contention that driving is not an essential eligibility requirement. Her statement plainly indicates the opposite. Regardless, Ms. Kelly was not designated to testify on behalf of the City under Federal Rule Civil Procedure 30(b)(6) and therefore her testimony cannot be taken as evidence of the City's policy with regards to Resolution 2002-93.

They contend that in order to comply with Section 4(a)' "continuous operation" requirement, they need not drive they must still comply with a range of other requirements in the Police Code such as paying an annual permit fee, providing insurance for the taxi, and maintaining financial records.  *See* Pl. Opp. Br. at 21.  But a medallion holder can comply with all these requirements from the comfort of a condominium in Hawaii.  Specifically, a medallion holder can enter into a contractual agreement with a cab company to "operate" his medallion for him and then receive a monthly check in the mail of upwards of $3,000 per month in leasing fees.  Machen Decl. at ¶3.  Although such a scenario may not constitute "retirement" in the literal sense because the medallion holder would still be subject to some legal obligations, it certainly qualifies as "de facto retirement" from driving a cab, and allows the medallion holder to be precisely the kind of absentee owner Proposition K was designed to avoid.  Whether described as a de facto "retirement plan," a "disability pension," or an "income entitlement," such a scenario clearly is not the program that was intended by the San Francisco voters who adopted Proposition K in 1978 and rejected Proposition N in 2003.  *See Easley*, 36 F.3d at 305.  To the contrary, such a regime would constitute a fundamental alteration of the City's program that is not required by the ADA.  *See* 28 C.F.R.  35.130(b)(7); *Lane*, 541 U.S. at 532.

Second, Plaintiffs suggest that their request for a waiver of the driving requirement is "reasonable" because it is similar to a "policy" that the Taxi Commission's then-Executive Director, Naomi Kelly, proposed in 2003.  Pl. Opp. Br. at 22.  Plaintiffs' reference to the Executive Director's unadopted plan as a "policy" is erroneous and misleading.  Under the City Charter, the only City entity that is authorized to set "policy" with regards to the regulation of taxis in the City is the Taxi Commission.  *See* Defendants' RJN Exh. F (Charter § 4.133); Defendants' Second RJN Exh. F (Charter § 4.102).  The Executive Director has no authority to set policy; her authority under the Charter is limited to the *administration* of policies that are adopted by the Commission.  *See* Defendants' Second RJN Exh. D (Charter § 4.102).  As Plaintiffs concede, it is undisputed that the Executive Director's proposal was never adopted by the Commission as a policy.  *See* Pl. Opp. Br. at 23:11 (citing Deposition of N. Kelly, p. 64, lines 4-5).  To the contrary, the only policies that the Commission has ever adopted with regards to ADA accommodations and the driving requirement are Resolutions 2002-14, 2002-93, and 2006-28.  Gillespie Decl. at ¶7.  These policies consistently

demonstrate that the driving requirement is an essential eligibility requirement, waiver of which would fundamentally alter the program.

In sum, driving is an essential eligibility requirement of the City's program.  Because they simply cannot drive, there is no "modification" short of complete waiver of the driving requirement that would allow Plaintiffs to "satisfy" the essential eligibility requirement.  Abolition of a requirement cannot be a "modification" of that requirement – much less a "reasonable modification" thereof.   Accordingly, Plaintiffs are not "qualified individuals" under the ADA and cannot succeed on their claim as a matter of law.

## CONCLUSION

For the foregoing reasons, the City's cross motion for summary judgment should be granted and Plaintiffs' cross motion for summary judgment denied.

Dated:  March 7, 2008

DENNIS J. HERRERA
City Attorney
WAYNE SNODGRASS
VINCE CHHABRIA
FRANCESCA GESSNER
Deputy City Attorneys


By:_____/s/_____
FRANCESCA GESSNER

Attorneys for Defendants
TAXI COMMISSION and
CITY AND COUNTY OF SAN FRANCISCO