Joseph M. Breall, Esq. (SBN 124329)
BREALL & BREALL, LLP
1255 Post Street, Suite 800
San Francisco, California 94109
Telephone: (415) 345-0545
Facsimile: (415) 345-0538
e-mail: jmbreall@breallaw.com

Elliott A. Myles, Esq. (SBN 127712)
MYLES LAW FIRM, INC.
P.O. Box 11094
Oakland, CA 94611
Tel: (510) 986-0877
Fax: (510) 986-0843
email: elliott@myleslawfirm.com

Attorneys for Plaintiffs
WILLIAM SLONE and MICHAEL MERRITHEW

THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM SLONE and MICHAEL MERRITHEW,<br><br>                     Plaintiffs,<br><br>vs.<br><br>TAXI COMMISSION, CITY AND COUNTY OF SAN FRANCISCO, etc., et al.,<br><br>                     Defendants. | CASE NO. C07-3335 JSW<br><br>PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.<br><br>HEARING DATE: April 4, 2008<br>TIME: 9:00 a.m.<br>PLACE: Courtroom 2, 17th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

I. OVERVIEW: DEFENDANT HAS NOT MET ITS BURDEN AND ITS
MOTION MUST BE DENIED. PLAINTIFFS HAVE MET THEIR BURDEN
AND THEIR MOTION MUST BE GRANTED..................................................1

II. LEGAL DISCUSSION...............................................................................4

    1. NEITHER PROP K NOR SUBSEQUENT LEGISLATION MAKE
       DRIVING AN ESSENTIAL ELIGIBILITY REQUIREMENT FOR
       PERMIT HOLDERS..............................................................................4

    2. THE S.F. TAXI PERMIT HOLDERS' DECISION DOES NOT
       SUPPORT DEFENDANTS POSITION................................................8

    3. SUBSEQUENT LEGISLATION CANNOT MAKE DRIVING AN
       ESSENTIAL ELIGIBILITY REQUIREMENT FOR PERMIT
       HOLDERS UNDER PROP K..............................................................9

           a. Ordinance 562-88.................................................................10

           b. Taxi Rules and Regulations...............................................11

           c. Opinions of the City Attorney............................................11

           d. S.F. Permitholders Case.....................................................12

           e. Resolution 2002-93.............................................................12

           f. Proposition N......................................................................13

           g. Ordinance 111-04................................................................15

           h. Resolution 2006-28.............................................................16

    4. THE POLICE CODE CANNOT RE-WRITE OR AMEND PROP K....................17

III. CONCLUSION........................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 861 (1st Cir. 1998)...................…..15, 16

*Brookside Assocs. v. Rifkin*, 49 F.3d 490, 492-493 (9th Cir. 1995)..................................1

*Franchise Tax Board v. Cory*, 80 Cal. App. 3d 772, 776 (Cal. App. 1978).......................9

*Fry v. Saenz*, 98 Cal. App. 4th 256, 264-265 [120 Cal. Rptr. 2d 30, 35-36]
 (Cal. App. 2002)...............................................................................................…....1

*Hanson v. Medical Board of California*, 279 F 3D 1167 (9th Cir 2002).............................5

*Krowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1995)..................................................1

*Panzadides v. Virginia Board of Education*, 946 F.2d 345, 349-350
(4th Cir. 1991)............................................................................................….1, 2

*Planned Parenthood Affiliates of California v. Swoap* , 173 Cal. App. 3d 1187
(Cal. App. 1985)..........................................................................................…...2

*San Francisco Taxi Permitholders and Drivers Association v.*
*San Francisco*, 2002 W.L. 1485354 (Cal.App. 2002)…...................…...8, 9, 10, 11, 12, 13, 17, 19

*Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 885 (9th Cir. 2005)................…..4, 7

*Wong v. Regents of U.C. California*, 192 F.3d 807, 817 (9th Cir. 1999)........................15, 17

**FEDERAL STATUTES**

28 C.F.R.
        § 35.130(b)(7)......................................................................................7, 10

CRC 8.1115....................................................................................................8

**SAN FRANCISCO STATUTES, CODES & ORDINANCES**

Admin. Code
        *App. 6, §4(a)*...........................................................................................4

Charter
        4.104(b).........................................................................................13

14.101.................................................................................................2, 9, 10, 11, 15

Police Code
    §1081.5(a)........................................................................................................16
    §1081(f).........................................................................................................5, 15
    §1090(a)............................................................................................................17
    §1090(a)(i)..........................................................................................................10
    §1124.................................................................................................................4

# I. OVERVIEW:
**DEFENDANT[1] HAS NOT MET ITS BURDEN AND ITS MOTION MUST BE DENIED. PLAINTIFFS HAVE MET THEIR BURDEN AND THEIR MOTION MUST BE GRANTED.**

As set out in Plaintiffs' Cross Motion (*Plaintiffs' Cross Motion*, p. 6), summary judgment is only proper when the pleadings, depositions and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If "no genuine issue as to any material fact" exists after construing all evidence and reasonable inferences in the light most favorable to the non-moving party, the moving party is entitled to summary judgment. *Brookside Assocs. v. Rifkin*, 49 F.3d 490, 492-493 (9th Cir. 1995).

Although federal courts have adopted two standards of review for determining what is an essential eligibility requirement under the ADA (*Fry v. Saenz*, 98 Cal. App. 4th 256, 264-265 [120 Cal. Rptr. 2d 30, 35-36] (Cal. App. 2002)), the beginning of such a determination is the language of the statute in issue. *Krowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1995) (Hawaii animal quarantine statute). A program eligibility requirement which could discriminate against the disabled is essential only if the program's purposes could not be achieved without the requirement. *Alexander v. Choate*, 469 U.S. 287, 300-301 (1985); *Panzadides v. Virginia Board of Education*, 946 F.2d 345, 349-350 (4th Cir. 1991).

Defendant's motion did not address this standard. The statute at issue in this action is voter-passed initiative Proposition K ("Prop K"). However, in its motion, Defendant did not address the language of Prop K. Nor did Defendant produce evidence establishing that driving is an essential eligibility requirement for permit holders under Prop K. Instead, Defendant based its motion on an improper attempt to "merely mechanically invoke any set of requirements and pronounce the

---

[1] All San Francisco entities that are defendants in this matter are collectively referred to as "Defendant" throughout this brief.

1  handicapped applicant or prospective employee not otherwise qualified." *Panzadides*, *supra*, at 349.

2  For this reason, the Court has no choice but to deny Defendant's motion.

3      Defendant only directly addressed the language of Prop K in opposition to Plaintiffs' cross-

4  motion. In its Opposition, Defendant argues that "[i]f Section 2(b) and 3(d) are read together, there is

5  no basis to conclude that voters did not intend to impose a driving requirement once a medallion is

6  issued." *Defendants Opposition*, p. 9, lines 9-10. Double negatives aside, Defendant implicitly agrees

7  that "driving" is not found in Prop K, Section 4, which specifically applies to permit holders and to

8  maintenance of a permit. In quoting Section 4, Defendant also acknowledges that Prop K, Section 4

9  mentions "continuous operation," but does not mention "driving." *Defendant's Opposition*, p. 10, lines

10  20-23.

11      Defendant cannot argue that the definition of "operation" is limited to personal driving.

12  *Deposition of Paul Gillespie*, p. 75, line 25, p. 76, line 1. However, Defendant seeks to have the Court

13  impose such a limitation, in order to avoid "statutory schizophrenia." *Defendant's Opposition*, p. 9,

14  line 12.

15      The law is clear that the Court cannot amend Prop K to impose driving as an essential

16  eligibility requirement for permit holders. *Planned Parenthood Affiliates of California v. Swoap*, 173

17  Cal. App. 3d 1187 (Cal. App. 1985). The law is also clear that Defendant's later passed ordinances,

18  rules or regulations cannot amend a voter-passed initiative, unless approved by the voters. *CCSF*

19  *Charter*, Art. 14.101.

20      Finally, Plaintiffs acknowledged in their Cross-Motion that Defendant, through the Board of

21  Supervisors and the Taxi Commission, adopted legislation after 1978 that required permit holders

22  under Prop K to drive their taxicabs. As far as Plaintiffs are concerned in this action, outside of the

23  scope of the federal mandate contained in the ADA, driving **is** a requirement of Defendant's

24

1    interpretation of the post-Prop K permit program. However, once the ADA becomes involved, driving,

2    as an after-adopted interpretation of the Prop K program, can and must be modified or waived for

3    permit holders with *bona fide* disabilities.

4          For Plaintiffs, and equally for the Court, this is or should be the end of the argument. Driving –

5    whether "continuous driving"[2] or "full-time driving"[3] – is not essential to the program established by

6    voter-passed Prop K for the retention of a taxi permit.  The initiative imposes an essential eligibility

7    requirement of a good faith pledge of "full-time driving" on applicants (Prop K, Sections 2(b) and 3)

8    but only a requirement of "continuous operation" on permit holders (Prop K, Section 4). "Driving" is

9    used in one place in the initiative and omitted in another. Only the voters can amend the initiative to

10   include driving as an essential eligibility requirement for permit holders. Later-passed legislation may

11   impose a driving requirement on permit holders, but that requirement, as after-adopted legislation,

12   cannot rise to the level of an essential eligibility requirement under the ADA.

13         However, Defendant asks the Court to ignore the clear and unambiguous language of Prop K.

14   Instead, Defendants ask the Court (1) to hold that the Prop K driving requirement in Sections 2 and 3

15   should extend to permit holders under the voters' intent; and (2) "validate" the driving requirement in

16   light of Defendant's later ordinances and resolutions. As a last resort, Defendant asks the Court to find

17   that a driving requirement is part of the essential program of Prop K, even though the initiative does

18   not "expressly" contain a driving requirement, because such a requirement is found in the Police Code.

19         These arguments are not persuasive. Plaintiffs respectfully submit that the Court must find in

20   favor of Plaintiffs.

21

22

23

---

[2] Used by the Taxi Commission in Resolutions 2002-93 and 2006-28.

24   [3] Used in Prop K and the MPC.

---

## II. LEGAL DISCUSSION

1.    **Neither Prop K nor Subsequent Legislation Make Driving
An Essential Eligibility Requirement for Permit Holders**

In its citing the language of Prop K, Section 4, Defendant indirectly acknowledges in its brief that there is no driving requirement for permit holders in Prop K. *Defendant's Opposition*, p. 10, lines 20-23. Prop K, Section 4 requires permit holders to "regularly and daily operate continuously their taxicab … during each day of the year to the extent reasonably necessary to meet the public demand for such taxicab …" *SF Admin. C, App. 6, §4(a)*. Section 4 does not use the words "drive," "driver," "driving," etc. It only creates an essential eligibility requirement for permit holders of "continuous operation." The language of Section 4 is clear and unambiguous. For persons who have received a permit under Prop K, the fundamental nature of the program is "continuous operation."

In contrast, Prop K, Sections 2(b) and 3(d) use the word "drive." Under the well accepted principle "*inclusio unius est exclusio alterius,*" the use of "operation" and the omission of "drive" in Prop K, Section 4 should be understood as excluding driving as an essential eligibility requirement for permit holders under Section 4. *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 885 (9th Cir. 2005) (en banc). In other words, driving is an essential element of Sections 2 and 3, and operation is an essential element of Section 4. Any other interpretation would rewrite the Proposition.

Under the clear and unambiguous language of Prop K, Section 4, a permit holder who because of a disability cannot personally drive his or her taxi, can theoretically continue to operate continuously or arrange for the continuous operation of his or her permit through a legal lease under MPC §1124. The only obstacle to the permit holder continuing to operate the permit is the "continuous driving" requirement adopted by Defendant in Resolution 2002-93, 24 years after Prop K was passed; Resolution 2006-28, 28 years after Prop K was passed; and the "full-time driving" requirement

adopted by Defendant in 2004 in MPC §1081(f). Although the driving requirement may apply to other permit holders, the ADA requires its modification or waiver for permit holders with *bona fide* disabilities.

Unable to combat the proper analysis under federal law, Defendant deliberately misstates Plaintiffs' argument and the clear language of Prop. K in an attempt to confuse the Court:

> "Plaintiffs argue that Section 2(b) requires medallion applicants to make nothing more than an empty pledge at the time of application."

*Defendant's Opposition*, p. 6, lines 4-6.

> "Plaintiffs' interpretation, a medallion holder would not violate Proposition K if he accepted a job offer across the country a month after receiving his medallion, depart San Francisco never to return, and yet held onto the medallion until the end of his life."

*Defendant's Opposition*, p. 8, lines 20-22.[4]

These statements are untrue, and not only an intentional misinterpretation of Plaintiffs analysis of Prop K, but also of federal law as it relates to the ADA.

Plaintiffs do not dispute that the "full time driver" pledge contained in Prop K, Section 2(b) is an essential eligibility requirement for obtaining a permit. Under Section 2, only an individual can apply for a permit; an individual can only apply for one permit; and an individual must pledge under penalty of perjury his or her intent to be a "full time driver." All of these are essential eligibility requirements for applicants for permits under Prop K.

The language of Prop K itself demonstrates that this is not an "empty pledge." An applicant who makes a false pledge is subject to all applicable sanctions for perjury, including but not limited to revocation of his permit.

---

[4] Defendant also argues that Plaintiffs' interpretation would lead to inequity because a disabled permit holder would obtain an accommodation, but a disabled applicant would not. *Defendant's Opposition*, p. 7, lines 1-8. Although Defendant raises potential problems with the application process that may violate federal law (see *Hanson v. Medical Board of California*, 279 F 3D 1167 (9th Cir 2002), application of the ADA to applicants is beyond the scope of the present case and the issues to be addressed by the Court.

1       Moreover, Prop K emphasizes the applicant's pledge over whether the applicant is an actual

2   driver. Although Prop K, Section 2(c) gave current drivers a preference for permits, the preference

3   expired two years after the passing of the initiative. Thus, from 1980 on, the fact that an applicant did

4   or did not drive a taxicab prior to applying for the permit did not give the applicant any advantage

5   under Prop K. Defendant's argument that a central purpose of Prop K was "to make City-owned

6   medallions readily accessible to working cab drivers" (*Defendant's Opposition*, p. 4, lines 1-2) is

7   defeated by Prop K's own sunset provision.[5]

8       The plain language of Prop K, Section 2 demonstrates that the critical driving requirement is

9   the applicant's pledge.

10      The "full time driver" pledge is also one of four factors the Taxi Commission must consider in

11  deciding to issue a permit under Prop K, Section 3. Under this section, before issuing a permit, the

12  Taxi Commission must assess the applicant's ability and commitment to be a full time driver.

13  Therefore, Defendant, through the Taxi Commission, is specifically empowered to determine the

14  validity of each applicant's pledge.

15      Therefore, the Taxi Commission must determine if the applicant's pledge is empty or not. If it

16  is empty, the Taxi Commission should not issue the applicant a permit.

17      Moreover, Plaintiffs' interpretation of Prop K only applies to people with *bona fide* disabilities

18  under the ADA. A permit holder who accepted a job offer across the country a month after receiving

19  his medallion and departed San Francisco never to return, could not, under Plaintiffs' interpretation,

20  hold onto the medallion until the end of his life.

21      Defendant's argument that Sections 2 and 3, when read together, extend a driving requirement

22  to permit holders is also without merit. The use of "drive" in Prop K, Sections 2 and 3 and the use of

23  [5] It is ironic that even though defendant has never successfully revoked a medallion of a qualified disabled permit

24  holder, it now asks the Court to uphold its right to do so to advance the "rights" of applicants to which the voters
    gave no preference under Prop. K.

"operation" in Prop K, Section 4, establishes that Section 4 excludes driving as an essential eligibility requirement for permit holders. *Silvers, supra*. This initiative's choice of language makes sense. Prop K, Sections 2 and 3 apply to new applicants for permits. However, Prop K, Section 4 applies to all permit holders, pre- and post-Prop K.

The scope of Prop K, Section 4 is made clear from Prop K, Sections 4(b) and 2(f), which required all pre-Prop K permit holders to exchange their permits, but exempted them from having to qualify as new applicants under Section 2. In other words, the pre-Prop K permit holders were not limited by the requirements to be an individual, have only one permit, make a full time driving pledge, etc. Neither Section 4(b) nor Section 2(f) exempts pre-Prop K permit holders from Section 4(a). Therefore, both pre- and post-Prop K permit holders must continuously operate their taxicabs and must comply with the pre-Prop K 90-day suspension rule.

This interpretation is not "twisted" or a "strained hyper-literal reading" of Prop K, and does not lead to absurd results. If personal driving is not an essential eligibility requirement for permit holders under Prop K, the ADA would require Defendant to waiver or modify the driving requirement for a permit holder who becomes disabled. 28 C.F.R. § 35.130(b)(7). The disabled permit holder would still be required to comply with all other requirements of Prop K and the Police Code. A permit holder who is not disabled is not entitled to such an accommodation. Under this interpretation, the plain clear language of both the ADA and of Prop K work harmoniously.

In essence, Defendant is asking the Court to insert the word "drive" into Prop K, Section 4 and thus "re-write" Prop. K. Unfortunately for Defendant, the voters of San Francisco in 1978 did not include a driving requirement in Prop K, Section 4. If Defendant wants this change to the language of Prop K, it is required to make this request to the voters, not to this Court.

1    Equally importantly, however, the Court should not read driving into Prop K, Section 4 as an

2    essential eligibility requirement. Clearly, the voters of San Francisco in 1978 never thought about the

3    ADA – legal protections for the disabled under the ADA were adopted in 1990, twelve years later, by

4    the federal government. The voters of San Francisco had no say in the adoption of these protections.

5    **2.    The S.F. Taxi Permitholders' Decision**
          **Does Not Support Defendant's Position**

6

7    Defendant argues that the Court should follow the California Court of Appeal decision in the

8    unpublished case of *San Francisco Taxi Permitholders and Drivers Association v. San Francisco*,

9    2002 W.L. 1485354 (Cal.App. 2002).    Although this opinion has no binding effect or value as

10   precedent on this Court (CRC 8.1115), it also does not support Defendant's interpretation of Prop K,

11   that driving is an essential eligibility requirement for permit holders. Instead, the Court of Appeal

12   specifically held that **"appellants may seek a declaration that the general standard in section 4**

13   **does not necessarily mirror in all cases the quantitative driving standard of sections 2 and 3."**

14   *S.F. Taxi Permitholders*, *supra*, at p. 9.

15   The Court of Appeal clearly held that the standards in Prop K, Sections 2 and 4 were distinct

16   and not identical:

17       "We have concluded that section 4, subdivision (a), establishes a **distinct** standard from
         that applying to the declaration and assessment of the applicant's intent in Section 2,
18       subdivision (b) and section 3, subdivision (d), but it is not necessarily a less stringent
         one." (emphasis added)

19

20   *S.F. Taxi Permitholders*, *supra*, at p. 10.

21   Moreover, the Court of Appeal in *S.F. Taxi Permitholders* did not address the ADA. Even

22   without the ADA analysis, however, the Court of Appeal found that there could be exemptions from the

23   standard of continuous "operation" for disability:

24

1    "More specifically, they may request a declaration that the standard from continuous
operation in Section 4 would allow the enactment of local legislation or regulations, or
2    the exercise of discretion under existing legislation and regulations, so as to make some
limited allowance, consistent with the strong policy of Proposition K favoring full-time
3    operation of taxicabs by permit holders, for a permit holder's . . . physical disability."

4    *S.F. Taxi Permitholders, supra.* at p. 9.

5    Therefore, if any weight should be given to *S.F. Taxi Permitholders*, it can only stand for the

6    Plaintiffs' position that driving is not an essential eligibility requirement for permit holders under Prop

7    K. The Court of Appeal specifically recognized that the standards under Sections 2 and 4 were distinct.

8    The Court also held that the Defendant could enact legislation or use its discretion under existing powers

9    to accommodate disabled permit holders. The opinion does not support Defendant's position that driving

10   is an essential eligibility requirement for permit holders and cannot be modified or waived.

11       3.    **Subsequent Legislation Cannot Make Driving an Essential**
               **Eligibility Requirement for Permit Holders under Prop K**
12

13   Section 14.101 of the Charter of the City and County of San Francisco states that "[n]o

14   initiative or declaration of policy approved by the voters shall be subject to veto, or to amendment or

15   repeal except by the voters, unless such initiative or declaration of policy shall otherwise provide."[6]

16   "Amendment" includes any change in the scope or effect of an initiative either by addition or

17   subtraction, whether the change conflicts with existing law or not. *Franchise Tax Board v. Cory*, 80

18   Cal. App. 3d 772, 776 (Cal. App. 1978).

19   Remarkably, in its Opposition, Defendant simply ignores this critical Charter provision! The

20   Charter, however, is clear: if an initiative does not contain certain language, Defendant cannot amend

21   the initiative to include that language without the consent of the voters.

22   Prop K has not been vetoed, amended or repealed by the voters. As established above, Prop K

23   does not enact continuous driving as an essential eligibility requirement for permit holders under the

24   [6] Plaintiffs' Request for Judicial Notice, Exhibit B.

1    initiative. Under the Charter, subsequent ordinances and resolutions not approved by the voters cannot

2    amend Prop K by adding driving to the permit holder program as an essential eligibility requirement.

3    Accordingly, a driving requirement, whether continuous driving under the Taxi Commission's

4    resolutions or full time driving under the Police Code, cannot be an essential eligibility requirement

5    for permit holders under Prop K. Such a requirement can and must be modified or waived under the

6    ADA with respect to permit holders with *bona fide* disabilities. 28 C.F.R. § 35.130(b)(7).

7        Since the plain language of Prop K does not impose driving as an essential eligibility

8    requirement for permit holders, Defendant argues that subsequent legislation and ordinances somehow

9    amend Prop K to make driving an essential eligibility requirement. Addressing each of these

10   subsequent measures affirmatively demonstrates that they did not have and could not have had this

11   result.

12            a.    **Ordinance 562-88.**

13       Defendant cites first in order to Ordinance 562-88, offering the text of the ordinance as

14   evidence. Ordinance 562-88 required the Police Department to revoke permits of permit holders who

15   cease to be full time drivers. MPC §1090(a)(i).

16       However, Ordinance 562-88 **does not** make driving an essential eligibility requirement for

17   permit holders under Prop K.  First, if Ordinance 562-88 amended Prop K, it violated Defendant's

18   Charter, since it was not passed by the voters. *CCSF Charter,* Art. 14.101. Second, Ordinance 562-88

19   did not make the standards under Prop K, Sections 2(b) and 4 identical. Fourteen years later, the

20   California Court of Appeal held that these standards were distinct. *SF Taxi Permitholders*, *supra.* at p.

21   9. Finally, because the Ordinance was passed two years before the ADA, the Board of Supervisors

22   could not have been motivated by the ADA in its passage.

23

24

In fact, based on Defendant's evidence, why the Board of Supervisors passed Ordinance 562-88 is in 1988 is unclear. Prop K, Section 2 initially included a preference for awarding permits to actual drivers, which expired in 1980. Since Ordinance 562-88 adopted a similar preference without the sunset provision, perhaps this was one of the reasons for adopting the Ordinance.

### b.    Taxi Rules and Regulations.

On April 13, 1999, the Commission adopted a "rule and regulation" that permit holders must comply with the full time driving requirement of Prop K, Section 2(b). *Defendant's Opposition*, p. 16. However, the same "Rules and Regulations" state that:

> "The Taxicab Commission or designee may suspend or exempt any or all enforcement of these rules and regulations when implementing special studies and or projects to service needs relating to the Public Convenience and Necessity."

*Defendant's Second Request for Judicial Notice*, Ex. C, Preamble. This section may have been implied by the California Court of Appeal when it referred to the Taxi Commission's "exercise of discretion." *S.F. Taxi Permitholders*, *supra*, p. 9.

It cannot be disputed that Congress determined that the eradication of discrimination against the disabled is a matter relating to "the Public Convenience and Necessity." Therefore, even if the Rules and Regulations could amend Prop K, which would violate Article 14.101 of the Charter, the Taxi Commission would be able to suspend or exempt the driving requirement under the Rules and Regulations for disabled permit holders.

### c.    Opinions of the City Attorney.

August 5, 1999, the City Attorney stated that "Proposition K … requires that all permit holders be 'full time drivers' …" citing only to Prop K, Sections 2(b) and 3(d). *Defendant's First Request for Judicial Notice*, Ex. J, p. 1. On April 25, 2000, the City Attorney made the same statement by quoting Section 2(b) and omitting the pledge language. *Plaintiffs' Request for Judicial Notice*, Ex. A, p. 1.

1    However, the City Attorney clearly and unambiguously understood that driving was not an essential

2    eligibility requirement for permit holders under Prop K:

> 3    "We emphasize that no determination has been made at this point that the enforcement of
> the driving requirement for permit-holders conflicts with the ADA. The Commission may
> 4    decide that being a full-time driver is an essential eligibility requirement for permit-
> holders under Proposition K and that full or partial waiver of the requirement would
> 5    fundamentally alter the program."

6    *Plaintiffs' Request for Judicial Notice*, Ex. A, p. 2.

7         The City Attorney's combined opinions are unambiguous: as of April 2002, driving was not an

8    essential eligibility requirement for permit holders under Prop K.

9              **d.    SF Permitholders Case.**

10         As discussed above, in July 2002, the California Court of Appeal held that the standards in

11    Prop K, Section 2(b) and Section 4 were distinct. *S.F. Permitholders*, *supra*, at p. 9. However, the

12    Court specifically did not address the ADA in its opinion. Nor did the Court go through the strict

13    review analysis required in determining whether continuous driving was an essential element of the

14    Prop K program for permit holders. The 2002 Court of Appeals decision simply does not stand for the

15    proposition that driving was an essential eligibility requirement for permit holders in Prop K.

16              **e.    Resolution 2002-93.**

17         In October 2002, the Taxi Commission passed a resolution stating that "continuous driving" is

18    an essential eligibility requirement of Prop K (*Defendant's First Request for Judicial Notice,* Ex. K),

19    despite the City Attorney's admission two years earlier that full time driving was not an essential

20    eligibility requirement for permit holders under Prop K. *Plaintiffs' Request for Judicial Notice*, Ex. A,

21    p. 2. As a resolution of a commission, Resolution 2002-93 could not amend Prop K.

22         Interestingly, the language used by the Taxi Commission in Resolution 2002-93 ("…strong

23    policy favoring full-time, or continuous, driving by permitholders", *Defendant's First Request for*

24

---

1    *Judicial Notice,* Ex. K, p. 1) parallels the language of the California Court of Appeals ("... strong

2    policy of Proposition K favoring full-time operation of taxicabs by permit holders," *S.F. Taxi*

3    *Permitholders, supra,* at p. 9), with one critical and misleading difference: the substitution of "driving"

4    by the Taxi Commission for "operation" as used by the Court of Appeal and Prop K. This indicates

5    that in 2002, the Taxi Commission began taking steps to avoid the application of the ADA to permit

6    holders. Defendant's argument that Plaintiffs' are asking the Court to upset thirty years of accepted

7    law is simply wrong. *See Defendant's Opposition,* p. 2, lines 15-22. Plaintiffs are trying to restore the

8    law, and upset six years of Defendant's attempts to avoid it.

9    　　　　Additionally, Defendant alleges the Resolution was meant to implement the ADA. *Defendant's*

10   *Motion,* p. 9. This contention lacks credibility given the Taxi Commission's reservation of the right to

11   sanction the disabled in the same Resolution.

12   　　　　Finally, Resolution 2002-93 adopts "continuous driving" as an essential eligibility requirement

13   for permit holders under Prop K, without clearly defining "continuous driving." Without such a

14   definition, it cannot be determined if "continuous driving" is the same as Prop K's "full-time driving."

15   It clearly is outside the contemplation and language of Prop K.

16   　　　　　　　　**f.**　　**Proposition N.**

17   　　　　Defendant places much weight on the voters' rejection of Prop N. Although, in 2003, the

18   voters rejected Prop N, this has no bearing on the present case. The voters of San Francisco have no

19   power to amend the ADA, a federal mandate. The ADA applies despite local law.

20   　　　　Equally, the Taxi Commission adopted no position following the rejection of Prop N.

21   *Deposition of Paul Gillespie,* p. 154, line 10-25. The Charter requires all "appointive boards,

22   commissions or other units of government" to act by a "majority, two-thirds, three-fourths or other

23   vote of all members" when a quorum of the members are present. *CCSF Charter,* 4.104(b). Since the

24

1    Taxi Commission did not act by a majority or other vote of all members, it could not have adopted any

2    policy based on the voter's rejection of Prop N.

3          Finally, prior to this ligation, Defendant's position was clear that the rejection of Prop N could

4    not affect Defendant's obligations under the ADA. In 2003, the Taxi Commission's Executive

5    Director was working with Defendant's Director of Health, Dr. Mitchell Katz, to adopt an ADA

6    accommodation program that would modify or waive on a case by case basis the driving requirement

7    for permit holders. *See Plaintiffs' Cross-Motion*, pp. 22-23. At a Taxi Commission hearing, Dr. Katz,

8    was asked about the effect of a no vote on Prop. N on the proposed ADA program. The Executive

9    Director, Ms. Naomi Kelly, testified that Dr. Katz specifically informed the Commission that the City

10   Attorney acknowledged that the voters could not vote to override federal law and that an ADA

11   program would be needed regardless of the outcome of Prop N, and that the Commission had to come

12   up with an ADA program regardless of the outcome of Prop N:

         (Deponent's review of DVD of Taxi Commission Hearing of 9-23-03 to refresh
13       deponent's recollection)
14
         "COMMISSIONER GILLESPIE: What would happen if, for instance, if this measure
15       failed in November, where the voters actually make a clear statement that -- or if it
         passed? I mean, because this is really -- it's the crux of what we're talking about tonight
16       is disability and meeting the driving requirement."

17       "DR. KATZ: San Francisco voters can't overrule ADA, right? So it's not before the
         voters. Will not be do you or do you not believe in ADA? So if it fails -- if I understand
18       correctly, the way it's worded – and you'll be back in this position – you would have the
         same questions in the absence of legal statement that this – taxicab drivers are or are not
19       eligible to be considered ADA, you can go forward as a commission or not, as you decide
         appropriately."
20
              (The playing of the DVD was concluded.)
21
         "THE REPORTER: Question: "Do you recall discussion by Dr. Katz and yourself with
22       the commission that even if Proposition N is defeated, you still need a disability program
         because of the ADA?
23
         "Answer: I don't recall.
24

"Question:  You don't recall if that was discussed or not discussed?"

"THE WITNESS:  Yes.  Now, my -- we did discuss that.

"MR. BREALL:  Q.  Okay.  And isn't it correct that you and the commission came to the conclusion that even if Prop N didn't pass, you would still need to have an ADA-compliant program?

"THE WITNESS:  I can't tell you what the commission concluded because we didn't watch the end of that whole –

"MR. BREALL:  Q.  I'm asking, wasn't it your understanding?

"A:     We needed to come up with an ADA program.

"Q:     Regardless of whether Prop N passed or didn't pass?

"A.     Correct."

(*Deposition of Naomi Kelly*, pp. 118-120, attached to Breall Declaration as Exhibit A.)

Accordingly, Prop N is simply irrelevant.

g.     **Ordinance 111-04.**

In 2004, the Board of Supervisors clearly extended full time driving to permit holders by adopting MPC § 1081(f).  *Defendant's Opposition,* p. 14, lines 10-16.  Prior amendments to the Police Code made the failure to remain a full time driver grounds for revocation of the permit.  MPC §1090(a)(i).

However, the act of the Board of Supervisors in 2004 cannot amend the act of the voters in 1978. *CCSF Charter*, Art. 14.101.  While the 2004 legislation could make full time driving a requirement for permit holders, it could not make it an essential eligibility requirement of Prop K.  To do so would be to permit Defendant to disguise truly discriminatory requirements as a legislative decision. *Wong v. Regents of U.C. California*, 192 F.3d 807, 817 (9th Cir. 1999).  This would fly in the face of the ADA, a remedial statute which should be construed broadly. *Arnold v. United Parcel Serv.,*

1  *Inc.*, 136 F.3d 854, 861 (1st Cir. 1998). This would also allow a public entity to retroactively legislate

2  services out of the ambit of the ADA by inference.

3  **h.    Resolution 2006-28.**

4  Finally, in 2006, the Taxi Commission adopted a second resolution stating that driving was an

5  essential eligibility requirement for Prop K permit holders. *Defendant's First Request for Judicial*

6  *Notice,* Ex. N. In Resolution 2006-28, the Taxi Commission adopted two "accommodations" for

7  permit holders. Disabled permit holders could receive either a 120-day maximum leave per year with a

8  three year consecutive cap or up to a full year exemption once in every five years for a catastrophic

9  recoverable illness.

10  First, these accommodations are not based on any known rational foundation. *Deposition of*

11  *Paul Gillespie*, p. 97, lines 22-25; p. 98, lines 1-10. No reason is given for the Taxi Commission's

12  choice of 120 days, instead of say, 182 days, or one year in five, instead of say one year in seven. The

13  120-day standard appears to be related to a similar exemption for key employees under MPC

14  §1081.5(a).[7] However, the key employee exemption is not limited and applies annually as long as the

15  permit holder remains a key employee.[8] There is no explanation of why a key employee permit holder,

16  who is not subject to federal protection, is treated more favorably than a disabled permit holder, who is

17  entitled to federal protection.

18  Second, these accommodations do not comply with Defendant's "duty to make itself aware of

19  the nature of the [permit holder's] disability; to explore alternatives for accommodating the [permit

20  holder]; and to exercise professional judgment in deciding whether the modifications under

21  consideration would give the [permit holder] the opportunity to complete the program without

22  [7] Section 1081.5 actually specifies a reduction to 120 hours for healthy permit holders who are deemed "key
employees." Yet defendant refuses to grant such continuing accommodations to qualified disabled permit
23  holders.
[8] It is ironic that this yearly reduction or waiver is similar to the type of accommodation sought by plaintiffs under
24  the ADA and denied by defendants.

1    fundamentally or substantially modifying … standards." *Wong*, *supra*, at 818 (applying the standard to

2    students in an academic program). What if a disabled permit holder's disability required greater than a

3    120-day leave? The ADA requires public entities to accommodate individual's disabilities, not to set

4    artificial standards with no rational basis.

5        Additionally, if Defendant's argument that driving is an essential eligibility requirement for

6    permit holders is correct, then neither of these accommodations, irrational and inadequate as they are,

7    could be granted.

8        **4.**    **The Police Code Cannot Re-Write or Amend Prop K.**

9        Defendant also argues that the Police Code imposes personal driving as an essential eligibility

10    requirement on permit holders. Defendant specifically relies on the 1988 and 2004 Ordinances

11    amending the Police Code and the *S.F. Taxi Permitholders* opinion. These precedents do not support

12    Defendant's argument.

13        As stated above, Ordinance 562-88 was passed when the concept of "essential eligibility

14    requirement" did not exist, and as legislation of the Board of Supervisors, it could not legally amend

15    Prop K. However, as recognized by Defendant in both the Rules and Regulations adopted in 1999 and

16    the opinion of the City Attorney in 2000, Ordinance 562-88 did not impose driving as an essential

17    eligibility requirement on permit holders under Prop K. Therefore, MPC §1090(a), passed in 1988,

18    could be modified or waived if required by the ADA.

19        Second, in 2002, the California Court of Appeals did not address the ADA. Instead the Court

20    recognized that the standards in Prop K, Sections 2(b) and 4 were distinct, but could in some cases be

21    construed as identical. The Court was silent on the question of the construction of the two standards

22    under the ADA.

23

24

1    Third, under the Charter, Ordinance 111-04, not being voter-passed, cannot retroactively make

2    driving an essential eligibility requirement for permit holders under Prop K. To permit such retroactive

3    amendment would also give Defendants a *carte blanche* right to enact legislation exempting every

4    City service or license from operation of the ADA. While the voters may have this right under the

5    Charter, the Board of Supervisors does not.

6                                    **III.     CONCLUSION**

7         Defendant's Motion initially ignored the clear and unambiguous language of Prop K in arguing

8    that driving was an essential eligibility requirement for permit holders under Prop K. On that ground

9    alone, its motion should be denied.

10        Plaintiffs' Cross-Motion clearly establishes that the plain and simple language of Prop K

11   imposes "full-time driving" on applicants for permits and "continuous operation" on permit holders as

12   essential eligibility requirements of the Prop K permit program. Plaintiffs do not dispute that

13   Defendant adopted a driving requirement adopted by subsequent legislation for permit holders.

14   However, because Prop K does not make driving an essential eligibility requirement for permit

15   holders, the driving requirement can and must be modified or waived for disabled permit holders

16   under the ADA.

17        Defendant's Opposition tries to avoid the unavoidable. Despite implicitly recognizing that

18   driving is not an essential eligibility requirement for permit holders under Prop K, Defendants insist it

19   must be an essential eligibility requirement by ignoring the language of Prop K, Section 4; by ignoring

20   common rules of statutory interpretation; and by asking the Court to extend the distinct and separate

21   standard of Prop K, Section 2(b) to Section 4(a).

22        In sum, Defendant wants to rewrite Prop K to avoid the federal mandate of the ADA. As

23   recognized by the City Attorney and the California Court of Appeal, it did not do this in 1988. It tried

24

---

1    to do this in 2002 by a resolution deliberately misquoting Prop K and the Court of Appeals decision in

2    *S.F. Taxi Permitholders*. It again tried to do this in 2004 by legislation and in 2006 by resolution.

3    Defendant cannot legally rewrite Prop K to avoid the ADA without the consent of the voters.

4        Equally importantly, because the ADA and Prop K can work harmoniously together,

5    Defendant should not be able to rewrite Prop K to avoid the federal mandate.

6

7        Respectfully submitted,

8    DATED:  March 21, 2008                          BREALL & BREALL, LLP
9                                                    THE MYLES LAW FIRM, INC.

10

11                                  By: _____
12                                       JOSEPH M. BREALL, ESQ.
                                         ELLIOTT A. MYLES, ESQ.
13                                       Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

**PROOF OF SERVICE**

C.C.P. § 1985(b)(e)

I, the undersigned, declare that I am over the age of eighteen years and am not a party to the within-entitled action; I am employed in the County of San Francisco, California; my business address is 1255 Post Street, Suite 800, San Francisco, CA 94109.

On the below date I served the attached document(s) entitled
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT. DECLARATION OF JOSEPH M. BREALL IN SUPPORT OF REPLY BRIEF TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.
on all interested parties in said cause addressed as follows:

Francesca Gessner
Wayne Kessler Snodgrass
Vince Chhabria
San Francisco City Attorney's Office
City Hall, Room 324
1 Dr. Carlton B. Goodlett Place
San Francisco CA 94102

[X]     **(BY MAIL)** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the ordinary course of business for collection and mailing that same day at 1255 Post Street, suite 800, San Francisco, CA 94109.  I declare that I am readily familiar with the business practice of Breall & Breall for collection and processing correspondence fro mailing with the United Sates Postal Service and that the correspondence would be deposited with the United Postal Service that same day in the ordinary course of business.

[ ]     **(BY FEDERAL EXPRESS)** by placing a true copy thereof enclosed in a sealed envelope for delivery via Federal Express to the addressee(s) noted above.

[ ]     **(BY FACSIMILE)** I served the foregoing documents on the interested party/parties in this action by facsimile transmission and the transmission was reported as completed without error to the office(s) with the following fax number: N/A .  I attached to this proof of service the transmission report that was properly issued by the transmitting facsimile machine maintained by, Breall & Breall, 1255 Post Street, Suite 800, San Francisco, CA 94109.

[ ]     **(BY HAND DELIVERY)** by placing a true copy thereof enclosed in a sealed envelope for delivery via hand delivery by calling such service as used in the ordinary course of business and instructing said business to deliver the above on this day to the address above.

**Executed on March 21, 2007, at San Francisco, California.**

[x]     **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Marisa Phillips

-1-