IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SLONE and MICHAEL MERRITHEW,<br><br>Plaintiff,<br><br>v.<br><br>TAXI COMMISSION, CITY AND COUNTY OF SAN FRANCISCO, ET AL.,<br><br>Defendants. | No. C 07-03335 JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT** |

Now before the Court is the motion for summary judgment filed by Defendants City and County of San Francisco and the Taxi Commission and the cross-motion for summary judgment filed by Plaintiffs William Slone and Michael Merrithew. Having carefully considered the parties' papers and the relevant legal authority, the Court hereby GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion for summary judgment.

**BACKGROUND**

In 1978, the voters of San Francisco approved Proposition K, an initiative ordinance ("Ordinance" or "Proposition") that provided that taxi permits ("medallions") are public property owned by the City and County of San Francisco and licensed to individuals. The Ordinance provides that no permit will be issued unless the applicant declare his or her intention personally to engage as the taxi driver at least four hours during any 24 hour period or

at least 75 percent of the business days during the calendar year. S.F. Admin. Code Appx. 6 § 2(b).[1]

The Ordinance further provides that "the applicant will be a fulltime driver, within the meaning of Section 2(b) of this Ordinance, of the taxicab or other motor vehicle for hire." *Id.* at § 3(d). Further, the Ordinance states that all permittees "shall regularly and daily operate their taxicab or other motor vehicle for hire business during each day of the year to the extent reasonably necessary to meet the public demand for such taxicab or motor vehicle for hire service." *Id.* at § 4(a).

From the passage of Proposition K in 1978 until 1999, the Police Commission's Taxi Detail was responsible for monitoring compliance with the driving requirement. (*See* Declaration of Paul Gillespie ("Gillespie Decl.") at ¶ 5.) In November 1998, the San Francisco voters passed a ballot measure transferring authority for taxi regulation from the Police Commission to the Taxi Commission. *See id.* The Proposition was later codified by the Board of Supervisors in several provisions of the San Francisco Police Code. At the time of its passage, the only authority for modification of the Proposition's driving requirement was the 90-day hardship waiver provided in the text of the Proposition and codified in the Police Code. S.F. Admin. Code Appx. 6 § 4(a); S.F. Police Code § 1096(c); Gillespie Decl. at ¶ 6. A permit holder who abandons his business for 10 consecutive days may have his permit revoked, but can get permission to "suspend operation pursuant to such permit" for up to 90 days each calendar year "in case of sickness, death, or similar hardship." *Id.* After the passage of the Americans With Disabilities Act, 42 U.S.C. § 12132 ("ADA"), further short-term exemptions were enacted including the modification of the driving requirement for up to 120 days in one year and suspension of the requirement for up to one year in five for individuals with catastrophic recoverable illnesses. (Defendants' Request, Ex. N, Resolution No. 2008-28.)

Title II of the ADA requires the City to provide "reasonable modifications" to make its medallion program accessible to disabled individuals, unless such modifications would "fundamentally alter" the nature of the program. *See* 28 C.F.R. § 35.130(b)(7); *see also*

---

[1] The Ordinance is attached to Defendants' Request for Judicial Notice ("Request") in support of their motion for summary judgment. The Court GRANTS the Defendants' Request pursuant to Federal Rule of Evidence 201(b).

2

1  *Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004) (holding that the duty to provide reasonable
2  accommodation does not extend to waiving or compromising an essential eligibility
3  requirement of the program).

4      Plaintiff William Slone is disabled due to wasting lung disease that requires him to be
5  constantly connected to oxygen and therefore unable to operate his taxicab vehicle personally.
6  (Complaint at ¶ 7.) According to his submissions before the Taxi Commission, Mr. Slone's
7  condition is permanent. (Declaration of Heidi Machen ("Machen Decl."), Ex. A at 2, Ex. B
8  at1.) Plaintiff Michael Merrithew is physically disabled and unable to operate his taxicab
9  personally. (Complaint at ¶ 8.) According to his submissions, Mr. Merrithew represented that
10  his disability was expected to last one year. (Machen Decl., Ex. E at 2.)

11      Plaintiffs seek to represent a class of over one hundred and fifty individuals who have
12  made applications for ADA accommodation before Defendants to modify or waive the
13  enforcement of San Francisco Police Code Section 1081(f) "Full-Time Driving Requirement"
14  and Section 1090(a)(i) "revocation of Permit" based solely upon each Plaintiff's disability and
15  only during the period of each Plaintiff's disability, subject to annual review, while
16  concurrently requiring each Plaintiff to comply with all other sections of the Police Code,
17  including the "continuous operation" requirement of arranging for the daily operation of a
18  taxicab under Police Code Section 1096(a). (Complaint at ¶¶ 9, 11.) Plaintiffs contend the
19  lawsuit is necessary to "obtain a legal determination requiring Defendants to comply with the
20  ADA by providing an accommodation to class members, relieving them of the 'full-time driver'
21  provisions of the Police Code requiring them to continue to comply with the continuous
22  operations requirement of the Police Code during such time as they are disabled and until their
23  disability have medically resolved." (*Id*. at ¶ 16.) Plaintiffs contends that the City should
24  "modify or waive" the driving requirement for disabled drivers, "subject to annual review,"
25  "until their disabilities have medically resolved." (*Id.* at ¶¶ 11, 16, 87, 88.)

26      On February 15, 2008, Defendants moved for summary judgment on the ground that the
27  ADA does not require the City to exempt disabled individuals from its statutory, voter-
28  mandated requirement that taxi medallion holders personally drive their taxicabs in order to

3

1 hold a medallion. On February 29, 2008, Plaintiffs opposed the City's motion and cross-moved
2 for summary judgment on the grounds that a permit holder who becomes disabled after receipt
3 of the permit, can still satisfy the fundamental nature of the Ordinance by arranging for the
4 regular and daily operation of his or her taxicab, even though he or she cannot drive the taxi
5 personally.

6 The Court will address additional specific facts as required in the analysis.

## ANALYSIS

### A. Legal Standard on Motion for Summary Judgment.

A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ. P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify

4

with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Principles of Interpretation.**

Proposition K was a voter-approved ordinance initiative passed in 1978. Federal courts analyzing local ballot initiatives construe the provisions using rules of construction employed by state courts. *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 285 F.3d 1236, 1243 (9th Cir. 2002). The Supreme Court of California has held that "ordinary principles of interpretation" govern the interpretation of voter initiatives. *San Francisco Taxpayers Association v. Board of Supervisors of CCSF*, 2 Cal. 4th 571, 577 (1992). First, the Court must address the "statutory language, giving the words their ordinary meaning. If the statutory language is not ambiguous, then the plain meaning of the language governs. If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the analyses and argument contained in the official ballot pamphlet, and the ostensible objects to be achieved." *People v. Lopez*, 34 Cal. 4th 1002, 1006 (2005) (internal citations omitted). In addition, the Court must consider that the "fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law." *People v. Pieters*, 52 Cal. 3d 894, 898 (1991).

Lastly, under the governing law of the City and County of San Francisco, "[n]o initiative or declaration of policy approved by the voters shall be subject to veto, or to amendment or repeal except by the voters, unless such initiative or declaration of policy shall otherwise provide." S.F. Charter § 14.101.

**C.     Specific Language of the Ordinance and Indicia of Voters' Intent.**

The provisions of Proposition K that are relevant to the alleged full-time driving requirement are found in sections 2, 3 and 4 of the ordinance. Section 2 regulates applications for new permits and provides in subsection (b):

5

> No permit shall be issued unless the person applying for the permit shall declare under penalty of perjury his or her intention actively and personally to engage as permittee driver under any permit issued to him or her for at least four hours during any 24 hour period on at least 75 percent of the business days during the calendar year. No more than one permit shall be issued to any one person.

S.F. Admin. Code Appx. 6 § 2(b).

Section 3 sets forth several criteria for issuance of new permits, including an incorporation by reference to section 2(b), that "the applicant will be a full-time driver, within the meaning of Section 2(b) of this Ordinance, of the taxicab or other motor vehicle for hire." *Id*. at § 3(d).

Section 4 of the Proposition imposes a requirement that permit holders actively operate a taxicab under their permit. Subdivision (a) provides in pertinent part:

> All permittees ... shall regularly and daily operate their taxicab or other motor vehicle for hire business during each day of the year to the extent reasonably necessary to meet the public demand for such taxicab or motor vehicle for hire service. Upon abandonment of such business for a period of 10 consecutive days by a permittee or operator, the Police Commission shall, after five days' written notice to the permittee or operator, revoke the permit of permits of such permittee or operator; provided, however, that the Chief of Police ... may on written application grant to the holder of any permit hereunder permission to suspend operation pursuant to such permit for a period not to exceed 90 calendar days in any one 12 month period in case of sickness, death, or other similar hardship.

*Id.* at § 4(a). The same subsection provides that "All such permits and all rights granted under them may be rescinded and ordered revoked by the Police Commission for good cause." *Id.*

The plain meaning of sections 2 and 3 indicate that the Ordinance requires applicants to state under penalty of perjury that they intend to be full-time drivers and to issue a permit, that the applicant actually will be a full-time driver of the motor vehicle. Plaintiffs contend that the specific language of section 2 and 3 of the Ordinance refer merely to applicants for permits, not to the permit holders themselves. In other words, Plaintiffs contend, the full-time driver requirement only applies upon the application process, but not to the permittees. The Court finds this argument unpersuasive. The pledge to be a full-time driver after the applicant has received the permit would otherwise be an empty promise without abiding by the terms of the pledge. The pledge requires that the applicant will comply with his or her declared intent. Although such a promise relates to probable future conduct, the finding is made in connection

1 with the issuance of the permit and therefore bears on the qualification of the expected
2 permitholder.

3 Next, Plaintiffs argue that only Section 4 applies to permit holders and the language of
4 the Ordinance requires only that the permittee regularly and daily operate their taxicab, not that
5 they regularly and daily drive their taxicab. Section 4, which clearly refers to permittees,
6 requires that the permit holder "regularly and daily operate their taxicab or other motor vehicle
7 for hire business during each day of the year to the extent reasonably necessary to meet the
8 public demand for such taxicab or motor vehicle for hire service." S.F. Admin. Code Appx. 6 §
9 4(a). Although there is no question that the plain language of the Ordinance requires the
10 holders of the permits to operate their taxicab full-time. However, Plaintiffs essentially argue
11 that "operate" does not mean "drive." Plaintiffs contend that "operating" a taxicab includes
12 other tasks such as paying annual fees, providing insurance, and performing routine record
13 keeping.

14 Again, the Court finds this argument unconvincing. In the context of legislation which
15 requires that the permit applicant pledge his or her commitment to be the full-time driver of the
16 taxicab, it is clear from the plain meaning of the text that the requirement to operate the taxicab
17 full-time was meant to reflect the full-time driving requirement. The peripheral tasks associated
18 with maintaining a taxicab business do not amount to the "operation" of a taxicab.

19 However, even if the Court were to find there was any ambiguity in the text of the
20 Ordinance, the probable intent of the voters in passing the initiative can be discerned from the
21 "official statements made to the voters in connection with propositions of law they are
22 requested to approve or reject." *Creighton v. City of Santa Monica*, 160 Cal. App. 3d 1011,
23 1018 (1984); *see also Amador Valley Joint Union High School Dist. v. State Board of*
24 *Equalization*, 22 Cal. 3d 208, 246 (1978) (holding that ballot arguments "may be helpful in
25 determining the probable meaning of uncertain language").

26 In the official ballot argument in favor of Proposition K, the proponents stated that the
27 previously existing taxi permitting system hurt the "individual taxicab driver who wants to
28 obtain a permit and be allowed to engage in the taxicab business himself." (Defendants'

7

1  Request, Ex. C at 37.) The ballot argument goes on to explain: "Under this initiative ... those
2  who own permits with the sole purpose of reselling them for an enormous profit could not do
3  so. Then unused, the permits would return to the Police Commission where new permits would
4  be issued to people who actually want to drive a taxicab." (*Id.*) It is clear that those in favor of
5  passing the initiative intended that City-owned taxi medallions become accessible to working
6  cab drivers, who are actually driving their own taxis, and not simply leasing out the permits for
7  profit. It is clear from the ballot arguments that the intent of the original initiative, as
8  understood by the voters who approved it, was to enable actual taxi cab drivers access to City-
9  owned permits. Accordingly, both the plain language of the initiative as well as the intent of
10 the voters supports the requirement that the permittee be a full-time driver.

### D.  Driving Requirement is Essential Eligibility Requirement.

Under Title II of the ADA, a public entity is required to make "reasonable modifications" in policies, practices, or procedures to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making such modifications would "fundamentally alter" the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7). Title II "does not require States to compromise their essential eligibility criteria for public programs. It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual is otherwise eligible for the service." *Tennessee v. Lane*, 541 U.S. at 531-32 (citing 42 U.S.C. § 12131(2)).

Plaintiffs contend that there is no full-time driving requirement in the Ordinance and therefore, waiving such a requirement does not constitute waiver of an essential eligibility requirement. On this basis, Plaintiffs contend that waiver of full-time driving would not fundamentally alter the City's taxi medallion program. However, the Court finds that the initiative, as well as its implementing legislation, does in fact contain the full-time driving requirement.

Each of the individual plaintiffs is "unable to operate his taxicab vehicle personally." (Complaint at ¶¶ 7, 8.) The record reveals that Mr. Slone's disability is permanent. (Machen Decl., Ex. A at 2, Ex. B at1.) The record is unclear about the potential duration of Mr.

8

Merrithew's disability at this time. (*Id.*, Ex. E at 2.) However, Plaintiffs request that the City "reliev[e] them of the 'full-time driver' provisions of the Police Code ... until their disabilities have medically resolved," "subject to annual review." (*See* Complaint at ¶¶ 11, 16.) However, because they cannot drive, there is no modification short of waiving the full-time driving requirement altogether that would allow Plaintiffs to satisfy the essential eligibility requirement.

The removal of one of the requirements, even annually, does not constitute a reasonable modification of the requirement. A program eligibility requirement is essential when the program's purposes could not be achieved without the it. *Alexander v. Choate*, 469 U.S. 287, 300-301 (1985). The text of the initiative requires that permit applicants make a pledge to be full-time drivers. S.F. Admin. Code Appx. 6 § 2(b). The ballot arguments specifically state that the clear intent of the Proposition was to enable actual cab drivers an opportunity to obtain a permit and be allowed to engage in the taxicab business himself. (*See* Defendants' Request for Judicial Notice, Ex. C at 37.) Based on the text of the initiative itself and the ballot arguments, the Court finds that the full-time driving requirement is an essential eligibility requirement. Plaintiffs' requested waiver of the requirement would fundamentally alter the nature of the service, program, or activity. *See* 28 C.F.R. § 35.130(b)(7). Accordingly, the Court finds that the requested modification of the City's medallion program is not mandated by the ADA.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion for summary judgment. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: June 30, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

9